# EXHIBIT A

**Verification, Case Docket and Superior Court Documents**

VERIFICATION

STATE OF ARIZONA   )
           ) ss.
County of Maricopa   )

   I, Julie M. Rhodes, hereby state, under penalty of perjury, that the following information is true to my knowledge, information, and belief:

   1.  I am one of the attorneys for State Defendants in the matter of *Bianca Jimenez-Bencebi, et al.*, CV2023-007002, currently pending in the Superior Court of the State of Arizona, County of Maricopa, before Judge Brad Astrowsky.

   2.  On October 3, 2023, I filed a Notice of Removal under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446 seeking to remove *Bianca Jimenez-Bencebi, et al.,* CV2023-007002, to the United States District Court for the District of Arizona.

   3.  In compliance with 28 U.S.C. § 1441(a), 28 U.S.C. § 1446, and LRCiv. 3.6(b), I certify that the attached documents are true and accurate copies of pleadings and other documents that were filed in the Superior Court of the State of Arizona, Maricopa County, **Bianca Jimenez-Bencebi**, *et al.*, CV2023-007002.

   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

   DATED this 3rd day of October, 2023.

                 _____
                 Julie M. Rhodes

#11549802



Powered by **Google Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2023-007002 | Judge: | Astrowsky, Brad |
| File Date: | 5/8/2023 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Bianca Jimenez-Bencebi | Plaintiff | Female | Thomas Connelly |
| Jiaro Abrego Zavaleta | Plaintiff | Male | Thomas Connelly |
| L J | In The Matter Of (IMO) | Unknown | Pro Per |
| State Of Arizona | Defendant | | Julie Rhodes |
| Arizona Department Of Child Safety | Defendant | | Pro Per |
| Carin Patchin | Defendant | Unknown | Julie Rhodes |
| Tracey Del Fiacco | Defendant | Female | Julie Rhodes |
| Amanda Davisson | Defendant | Female | Julie Rhodes |
| Michael Faust | Defendant | Male | Julie Rhodes |
| Gregory McKay | Defendant | Male | Julie Rhodes |
| K J | In The Matter Of | Unknown | Pro Per |
| K A J | In The Matter Of | Unknown | Pro Per |
| J A J | In The Matter Of | Unknown | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 10/2/2023 | ORD - Order | 10/2/2023 | |

**NOTE:** IT IS FURTHER ORDERED extending the Answer deadline for Defendant Faust from September 28th, 2023 to October 4th, 2023.

| | | | |
|---|---|---|---|
| 9/20/2023 | STP - Stipulation | 9/23/2023 | |

**NOTE:** STIPULATION TO EXTEND ANSWER DEADLINE TO OCTOBER 4, 2023

| | | | |
|---|---|---|---|
| 9/12/2023 | AFS - Affidavit Of Service | 9/19/2023 | |

**NOTE:** MICHAEL FAUST

| | | | |
|---|---|---|---|
| 9/12/2023 | AFS - Affidavit Of Service | 9/19/2023 | |

**NOTE:** MICHAEL FAUST

| | | | |
|---|---|---|---|
| 9/8/2023 | MXS - Motion To Extend Time For Service | 9/13/2023 | |

**NOTE:** Plaintiffs Motion to Extend Deadline for Service of Process Defendant Faust

| | | | |
|---|---|---|---|
| 9/7/2023 | AFS - Affidavit Of Service | 9/19/2023 | |

**NOTE:** GREGORY MCKAY

| | | | |
|---|---|---|---|
| 9/7/2023 | AFS - Affidavit Of Service | 9/19/2023 | |

**NOTE:** STATE OF ARIZONA

| | | | |
|---|---|---|---|
| 9/7/2023 | AFS - Affidavit Of Service | 9/19/2023 | |

**NOTE:** AMANDA DAVISSON

| | | | |
|---|---|---|---|
| 9/1/2023 | AMC - Amended Complaint | 9/6/2023 | |

**NOTE:** First Amended Complaint

| | | | |
|---|---|---|---|
| 8/1/2023 | OXS - Order To Extend Time For Service | 8/1/2023 | |

**NOTE:** IT IS HEREBY ORDERED granting the motion

| | | | |
|---|---|---|---|
| 7/27/2023 | MXS - Motion To Extend Time For Service | 7/27/2023 | |

**NOTE:** EXPEDITED MOTION TO ENLARGE TIME FOR SERVICE OF PROCESS

| | | | |
|---|---|---|---|
| 7/12/2023 | 322 - ME: Notice Of Intent To Dismiss | 7/12/2023 | |
| 7/6/2023 | NOT - Notice | 7/6/2023 | |

**NOTE:** NOTICE OF CHANGE OF FIRM NAME AND CHANGE OF COUNSEL WITHIN THE SAME LAW FIRM

| | | | |
|---|---|---|---|
| 5/8/2023 | COM - Complaint | 5/9/2023 | |

**NOTE:** COMPLAINT

| 5/8/2023 | CSH - Coversheet | 5/9/2023 |

**NOTE:** Civil Cover Sheet

| 5/8/2023 | CCN - Cert Arbitration - Not Subject | 5/9/2023 |

**NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

| 5/8/2023 | SUM - Summons | 5/9/2023 |

**NOTE:** Summons

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951246

1   Thomas A. Connelly (AZ Bar #019430)
2   Robert T. Mills (AZ Bar #018853)
    Sean A. Woods (AZ Bar #028930)
3   **MILLS + WOODS LAW PLLC**
    5055 North 12th Street, Suite 101
4   Phoenix, Arizona 85014
5   Telephone 480.999.4556
    docket@millsandwoods.com
6

7   DeeAn Gillespie Strub (AZ Bar #009987)
8   Sandra Daussin (AZ Bar #037274)
    GILLESPIE, SHIELDS, GOLDFARB,
9   & TAYLOR
    7319 North 16th Street
10  Phoenix, Arizona 85020
    Telephone: (602) 870-9700
11  Fax: (602) 870-9783
12  mailroom@gillaw.com

13  *Attorneys for Plaintiff*

14

15           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

16              **IN AND FOR THE COUNTY OF MARICOPA**

17  BIANCA JIMENEZ-BENCEBI, an
18  individual; JIARO ABREGO ZAVALETA,     Case No.: **CV2023-007002**
    an individual; and L.J., a minor, through his
19  parent and guardian BIANCA JIMENEZ-
    BENCEBI,                                        **COMPLAINT**
20
                          Plaintiffs,
21
                 v.
22                                                **JURY TRIAL REQUESTED**

23  STATE OF ARIZONA, a government entity;
24  ARIZONA DEPARTMENT OF CHILD
    SAFETY, a governmental entity; CARIN
25  PATCHIN, individually and as an employee
    with the State of Arizona Department of
26  Child Safety and JOHN DOE PATCHIN, her
    spouse; TRACEY DEL FIACCO,
27  individually and as an employee with the
28  State of Arizona Department of Child Safety

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

and JOHN DOE DEL FIACCO, her spouse; AMANDA DAVISSON, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE DAVISSON, her spouse; MICHAEL FAUST, as Director, Arizona Department of Child Safety, and JANE DOE FAUST, his spouse; GREGORY MCKAY, as Former Director, Arizona Department of Child Safety, and JANE DOE MCKAY, his spouse; JOHN and JANE DOES 1-5; and BLACK ENTITIES 1-5,

Defendants.

Plaintiffs Bianca Jimenez-Bencebi, Jiaro Abrego Zavaleta, and L.J.[1], (together "Plaintiffs") by and through their counsel, file this Complaint against the Defendants the State of Arizona, the Arizona Department of Child Safety, Carin Patchin and her spouse, Tracey Del Fiacco and her spouse, Amanda Davisson and her spouse, Michael Faust and his spouse, Gregory McKay and his spouse, John and Jane Does 1-5, and Black Entities 1-5. Plaintiffs state and allege as follows:

## **JURISDICTION AND VENUE**

1.      Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

2.      The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.      This Court has original subject matter jurisdiction over the claims made in this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution.

4.      The acts and events giving rise to the causes of action alleged herein occurred in Maricopa County, Arizona, and all Defendants are subject to the personal jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided under Arizona law and the Arizona Rules of Civil Procedure.

---

[1] L.J. is a fictitious name used to protect the identity of a minor.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5.      Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## THE PARTIES

6.      Plaintiff Bianca Jimenez-Bencebi ("Bianca") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Bianca resided in Maricopa County, Arizona.

7.      Plaintiff Jiaro Abrego Zavaleta ("Jiaro") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Jiaro resided in Maricopa County, Arizona.

8.      Plaintiff L.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, L.J. resided in Maricopa County, Arizona.

9.      Defendant State of Arizona is a government entity that acts by and through its officials, employees, and agents, including, without limitation, each of the other Defendants in this action.

10.      Defendant the Arizona Department of Child Safety ("DCS") is a governmental entity that acts by and through its officials, employees, and agents, including without limitation, each of the other non-governmental entity Defendants in this action.

11.      Defendant Carin Patchin ("Patchin") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Patchin was, at all times relevant to the present Complaint, an employee of the State of Arizona through DCS. At all times relevant to this Complaint, Patchin was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.      Defendant Tracey Del Fiacco ("Del Fiacco") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Del Fiacco was, at all times relevant to the present Complaint, an employee of the State of Arizona through the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

DCS. At all times relevant to this Complaint, Del Fiacco was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

13.     Defendant Amanda Davisson ("Davisson") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Davisson was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Davisson was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.     Defendant Michael Faust ("Faust") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Faust served, at times relevant to this Complaint, as the Director of the DCS. At times relevant to this complaint, Faust was the official policymaker for the DCS. He is named herein in his official capacity.

15.     Defendant Gregory McKay ("McKay") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Before Faust was the DCS Director, McKay was, at times relevant to this Complaint, the Director of the DCS. At times relevant to this complaint, McKay was the official policymaker for the DCS. He is named herein in his official capacity.

16.     John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiffs and who are, therefore, designated by fictitious names. Plaintiffs will ask leave of the Court to substitute the true names of the said parties prior to the entry of Judgement herein.

17.     Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

18.    At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs alleges, upon information and belief, that each Defendant was and is the agent, employee, principal, employer, co-conspirator, or any combination thereof of each of the remaining defendants, vice versa, or both. In addition, Plaintiffs alleges, upon information and belief, that the Defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above Defendants conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any combination thereof, each of the remaining Defendants in committing the acts herein alleged or failed to prevent such acts when having the power, duty, or authority to do so with full knowledge of said acts.

## **FACTUAL ALLEGATIONS**[2]

### I.    BACKGROUND FACTS

19.    Bianca   Jimenez-Bencebi ("Bianca")   is the natural mother of L.J. (D.O.B. 06/27/2005), K.J. (D.O.B. 05/16/2016), J.M.J. (D.O.B. 08/25/2017), K.A.J. (D.O.B 03/05/2019), and J.A.J. (D.O.B. 02/12/2020).

20.    Jiaro Abrego Zavaleta ("Jiaro") is married to Bianca and is the father of K.A.J. and J.A.J.

21.    L.J. was living with his natural father in Puerto Rico when DCS first began its wrongful interference with this family. L.J. wanted to return to Arizona to be with his mother, as he has a close relationship with her. However, both L.J. and Bianca were fearful that if he returned, he too would be unlawfully seized and detained by DCS, as were all his siblings. As a result, L.J. remained living with his father in Puerto Rico and spoke to his mother by phone daily, and sometimes twice a day.

---

[2] Plaintiffs makes the allegations in this Complaint based upon personal knowledge as to those matters in which she had personal involvement and upon information and belief as to all other matters.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**A.  While living in Missouri, Bianca conceives a child by rape.**

22.    In 2016, Bianca was living in Missouri with L.J. and K.J. On or around 30 November 2016, Bianca was raped and J.M.J. was conceived. At the time of the rape, L.J. was 11 years old and K.J. was six months.

23.    L.J. knew of the rape and was traumatized, but neither L.J. nor Bianca had any trauma therapy to deal with this violent crime. L.J. reported the rape to the police.

24.    When Bianca was eight months pregnant, on 17 July 2017, L.J. was acting out and Bianca allegedly hit and bit him. L.J. called the police, and Bianca was arrested. There was no trial.

25.    Bianca pled guilty to a misdemeanor charge of physically abusing L.J upon advice of counsel that this would be the quickest path to resolution. Bianca served a 120-day jail sentence for this misdemeanor charge. It was her first, and only criminal offense.

26.    Until this time, there was no question if Bianca could parent her son and daughter. As a single mother, she alone clothed, housed, fed, educated, and cared for her children.

27.    While Bianca served her sentence, J.M.J. was born on 25 August 2017; and K.J. and J.M.J. (after his birth) were placed in foster care. Bianca voluntarily let L.J. live with his father in Puerto Rico.

28.    After her release, Bianca allowed L.J. to stay with his father in Puerto Rico, believing this was in his best interest.

29.    The State of Missouri returned K.J. and J.M.J. to Bianca in December 2017, a few weeks after she was released from jail.

30.    When the children were returned, the Missouri social workers wrote many positive things about Bianca's parenting, including the fact that L.J. was polite and well-educated and that K.J. was well-cared for and had a strong bond with her mother. DCS never reported this positive information to the juvenile court during any of the dependency proceedings.

Mills ◦ Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

6

**B.    Bianca moves to Arizona.**

31.    In January 2018, Bianca moved from Missouri to Arizona to live with Jiaro, who she later married, and his sister.

32.    Bianca's standards for cleanliness were much higher than her Jiaro's sister's.

33.    In late August 2018, Jiaro's sister threw Bianca out of the house because of a dispute over housekeeping. Bianca was pregnant with K.A.J. at the time.

34.    Because of the abrupt eviction, Bianca suffered a temporary period of housing instability which lasted only a few weeks. During this time, Bianca, K.A.J. and J.M.J. spent a few days in a homeless shelter, Gift of Mary Shelter.

35.    On 06 September 2018, when Bianca, K.A.J. and J.M.J. were homeless, Bianca brought J.M.J. to a medical appointment to keep his vaccinations up to date. This medical professional and mandatory reporter noted nothing unusual about J.M.J. and did not report Bianca. This was a mere eight days before DCS involvement with this family, when  K.J. and J.M.J. were removed on false pretenses.

**II.    PROCEDURAL HISTORY**

36.    The procedural history is as follows:

a.    K.J. and J.M.J. wrongfully removed from Bianca's loving care in September 2018 as the result of Patchin and Davisson's failure to investigate and false allegations of abuse and neglect.

b.    The first dependency petition was filed in September 2018 as to K.J. and J.M.J.

c.    On 24 January 2019, DCS filed a petition to terminate Bianca's parental rights to K.J. and J.M.J.

d.    During these dependency proceedings, K.A.J. (D.O.B. 03/05/2019) was born and she was removed immediately at birth.

e.    The removal of K.A.J. was based on Patchin and Davisson's steadfast adherence to a malicious and distorted view that Bianca is an aggressive ex-felon and that Jiaro is too passive to protect his children from this menace.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

f.     In January 2020, Bianca's parental rights were severed as to K.J. and J.M.J, but the severance was overturned on procedural grounds.

g.     On 14 December 2020, DCS filed another petition to terminate the parent-child relationship as to K.J., J.M.J., and K.A.J.

h.     During these proceedings, J.A.J. was born (D.O.B. 02/12/2020) and he was immediately removed at birth.

i.     On 20 May 2021, DCS amended the December 2020 severance petition to include J.A.J. The petition was now for the termination of the parent-child relationship as to all four children (K.J., J.M.J., K.A.J., and J.A.J.)

j.     The decision to remove J.A.J. and to include him in the severance petition was based on Patchin and Davisson's adherence to their false narrative that Bianca was an aggressive boy-hating felon, and Jiaro cannot protect his children.

k.     On 11 May 2022, the juvenile court ruled from the bench to severe Bianca's rights as to J.M.J, based on neglect under A.R.S. § 8-533(B)(2). At the same time, the juvenile court changed the case plan from severance to reunification for K.J, K.A.J., and J.A.J. The court ordered DCS to have a meeting with parents within 30 days of 11 May 2022 ruling to start the reunification process.

37.     For the first six weeks after the 11 May 2022 order, DCS cancelled all of Plaintiffs ' supervised visits with their children.

38.     In direct violation of the 11 May 2022 order, DCS took no affirmative steps toward implementing the reunification case plan until more than five months later.

39.     To date, DCS has not yet dismissed the dependency one year later. K.J, K.A.J., and J.A.J. are now living with Bianca and Jiaro.

40.     Defendant Patchin served as the DCS Caseworker at all times relevant between October 2018 to March 2021.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

41.     At all times relevant after March 2021, Defendant Del Fiacco was the DCS Caseworker.

42.     At all times relevant, DCS employee Defendant Davisson was the supervisor for Patchin and Del Fiacco.

43.     DCS agents Patchin and Del Fiacco deceived the juvenile court by presenting information that they knew, or reasonably should have known, was false.

44.     DCS supervisor Davisson directed or ratified Patchin and Del Fiacco's wrongful acts. Davisson also signed Patchin and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

45.     The actions of the DCS agents in seizing and detaining K.J., J.M.J., K.A.J, and J.A.J. violated Plaintiffs ' constitutional rights and statutory rights under Arizona state law.

## III.   UNLAWFUL SEIZURE AND DETENTION OF K.J. AND J.M.J.

### A.  DCS removes K.J. and J.M.J. on 14 September 2018

46.     On 14 September 2018, DCS removed K.J and J.M.J. The following events led to this removal.

    a.     While at the Gift of Mary Shelter, money was stolen from Bianca's purse.

    b.     When she complained about the theft, Bianca was asked to leave.

    c.     Later, a hotline call was made to DCS. Upon information and believe, the thief called DCS to blame-shift and to avoid also being removed from the shelter.

    d.     DCS failed to investigate this incident thoroughly, and no eyewitnesses were produced to testify.

    e.     Based only on this hearsay from a witness who had a motive to lie, Caseworker Patchin reported to the juvenile court that Bianca threatened a person with a knife at the Gift of Mary Shelter, left J.M.J. in his car seat for

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

extended times, prevented others from feeding J.M.J., and only paid attention to K.J.

47.     None of the allegations made in the hotline call were true.

48.     Bianca never threatened anyone, and never left J.M.J. in his car seat.

49.     While it was true that she did not let strangers at the Gift of Mary Shelter feed J.M.J. any and all solid foods, any loving mother in this situation would have done the same. J.M.J. was only 12 months old at the time and he had some difficulties swallowing certain solid foods and had problems digesting cow's milk.

50.     Both J.M.J. and K.J. were taken to Phoenix Children's Hospital "PCH" for physical examination upon removal by DCS on 14 September 2018.

51.     Even though there were no issues found with K.J., she was immediately taken into foster care and never returned to Bianca.

52.     J.M.J. was admitted to PCH and found to have mild to moderate malnutrition.

**B.  J.M.J. is Admitted to PCH and Released to His "Adoptive" Parents**

53.     J.M.J. was in-patient at PCH from 14 September 2018 to 20 September 2018.

54.     On the day of removal, the medical records note that J.M.J. could sit on his own, pull to stand, and was active, crawling, playful and happy, and that he had a total of one small fine scratch (~3/4 inch), one small bruise (~1/4 inch) on his cheek, and three small bruises (~1/4 to 3/8 inch) on his right thigh.

55.     Mongolian spots were found on his back and buttocks, as well as some areas of hyperpigmentation. He had no bruising *at all* on his back; and the shape of J.M.J.'s head was normal, and not noted as flat.

56.     After six days in the hospital, PCH at the instruction of DCS, discharged J.M.J. to his "adoptive" mothers.

**C.  J.M.J.'s Medical Records Show He Had an Organic Feeding Issue**

57.     After one week in foster care, J.M.J.'s lost weight below is admission weight. J.M.J.'s body weight was 17.3 pounds when he was admitted to PCH on 14 September 2018, and was 17.1 pounds on 26 September 2018, after one week in foster care.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

58.     That is, because of his organic feeding issue, J.M.J. became more malnourished while in DCS custody.

59.     This exculpatory evidence was immediately evident to Caseworker Patchin, but she knowingly or recklessly ignored it.

**D. DCS Petition's to Terminate Bianca's Parental Rights to K.J. and J.M.J.**

60.     On 24 January 2019, DCS filed a petition to terminate Bianca's parental rights as to K.J. and J.M.J.

61.     DCS Caseworker Patchin, under the supervision of Davisson, perpetuated the following false narrative in the DCS petition, reports to the juvenile court, and in testimony:

a.     Bianca was homeless for several months in 2018;

b.     J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.     J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.     Bianca did not like J.M.J. because was a baby conceived by rape;

e.     K.J. had scratches on her face evidencing abuse;

f.     Bianca was aggressive, as reported by a nameless witness at a homeless shelter; and

g.     Bianca had been convicted of felonious child abuse in Missouri in 2017.

62.     None of these allegations are true.

63.     Patchin documented throughout the DCS records her false narrative that at J.M.J.'s removal, he was feeble, severely malnourished, and had non-accidental bruising all over his back. These records were shared with the Court and with multiple service providers. None of these allegations are true.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

64.     Patchin also falsely alleged in her reports and in testimony to the juvenile court that Bianca is an aggressive ex-felon who hates boys and is a danger to her children. This allegation is not true.

65.     Patchin's statements were provably false, as follows:

a.      Bianca's home instability was brief, measured in weeks not months.

b.      During the interval of housing instability, Bianca managed to take J.M.J. for his one-year checkup and vaccinations with the assistance of her now husband Jiaro. Bianca did this because she loves her son, and she was doing her best to take care of him. Upon physical exam of J.M.J. this medical provider, a mandatory reporter, saw no reason to report Bianca to DCS.

c.      Bianca's purported aggressiveness was actually an attempt at blame-shifting by the thief who stole Bianca's money at the Gift of Mary Shelter.

d.      J.M.J. was not severely malnourished or feeble in any way when in Bianca's care.

e.      J.M.J. lost weight one week *after* he was taken into DCS custody.

f.      The foster parents also noted that J.M.J. was "choking while eating" and he was evaluated by doctors for a feeding issue after six months in DCS care.

g.      J.M.J.'s mild or moderate malnutrition in September 2018 was most likely attributable to this feeding issue rather that any neglect on Bianca's part.

66.     Within months of DCS involvement, just after Bianca successfully completed parent aid services, Patchin inexplicably changed the case plan from family reunification to severance as to J.M.J and K.J.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## IV.  UNLAWFUL SEIZURE AND DETENTION OF K.A.J. AND J.A.J.

### A.  The DCS False Narrative Continues.

67.    Patchin, under the supervision of Davisson, continued to fabricate allegations to justify removing K.A.J. and J.A.J., both immediately at birth, and for keeping K.J. and J.M.J. in the State's care.

68.    The gravamen of DCS agents' allegations were that Bianca's general aggression and hatred of boys remained uncured, rendering her an unfit parent, and that Jiaro was too passive to protect his children from Bianca.

69.    Specifically, Patchin fabricated the following allegations to support removing K.A.J. and J.A.J. and to keep all of the children in State's care:

a.    on one occasion in July 2019 Bianca allegedly shouted at her therapist, Dr. Hanley;

b.    on one occasion, while in labor in the hospital, Bianca allegedly stated she would name J.A.J. "Motherfucker;"

c.    Bianca allegedly has gender dysmorphic disorder; and

d.    Bianca allegedly willfully neglected J.M.J. because she hates boys.

70.    None of these allegations were true.

71.    Dr. Hanley stated in a report dated 28 August 2019 that "there is a good chance that [Bianca] has completed what she needs to do for DCS." Contrast this with what Patchin falsely reported in a Comprehensive Safety and Risk Assessment dated 8 October 2019 that "[in] August 2019, Rossana [Hanley] was extremely discouraged with the lack of progress by Bianca."

72.    Dr. Hanley never stated in her notes that Bianca shouted at her or was aggressive towards her in any way.

73.    Patchin frequently took liberties with the truth to ensure her reporting on Bianca aligned with her false agenda.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

74.    Reports from Jiaro's service providers were also positive, and contrary to DCS's "too-passive to protect" narrative. Still, Patchin ignored these positive reports.

75.    Patchin's allegation that Bianca wanted to name J.A.J. "Motherfucker" while she labored at his birth is wholly unsubstantiated hearsay. Given the import of this allegation, it would be reasonable that the medical staff at the hospital would make a record of it. However, there is no such record.

76.    Patchin included this highly prejudicial, salacious statement in her Court Reports and in her testimony, and it was the basis for DCS's unlawful seizure and detention of J.A.J.

**B. Bianca does not hate boys, despite DCS's allegations otherwise.**

77.    Patchin also attributed Bianca's alleged hatred of boys to a made-up mental illness "gender dysphoria."

78.    "Gender dysphoria" is a diagnosis in the DSM-5 which means a person has a strong desire to be another gender. However, when Patchin and other DCS agents used this term, it seems they intended to convey that Bianca hates male children because she was raped.

79.    Bianca was never diagnosed by any therapist with gender dysphoria.

80.    DCS failed to interview her oldest son, L.J. If they had, they would have learned that to this day, he loves Bianca very much.

81.    DCS also ignored the obvious fact that Bianca is married to Jiaro, a man.

82.    There is absolutely no credible evidence that Bianca hates boys and men, or ever held such a view.

**C. Patchin's malice and animus towards Bianca is manifest.**

83.    Patchin ignored that Bianca was actually diagnosed by her PhD therapist, Dr. Hanley, with "adjustment disorder with depressed mood."

84.    According to the DMS-5, "adjustment disorder" means "[t]he development of emotional or behavioral symptoms *in response to an identifiable stressor(s)* occurring

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

within 3 months of the onset of the stressor(s)." (*See* Table 3.19, DSM-IV to DSM-5 Adjustment Disorders Comparison - Impact of the DSM-IV to DSM-5 Changes on the National Survey on Drug Use and Health - NCBI Bookshelf (nih.gov)). This diagnosis makes sense, given the fact that Bianca's four children were unjustifiably removed by DCS – and two of them within moments of their birth.

85.     Patchin's animus toward Bianca is evident throughout the record. One example is an email exchange, where Bianca raised a concern that her daughter was wearing shoes that were too small at one of the supervised visits. Patchin passed along Bianca's concern to the foster mother, along with a scoffing, "HAHAHAHAHA!!"

86.     Patchin also wrote several insulting comments in emails to Bianca's service providers, such as accusing her of being a liar and making derogatory comments about her appearance (i.e., her choice of lipstick).

87.     During Patchin's testimony to the Court during the second severance trial, the tone of her voice and her body language demonstrated a tremendous personal scorn towards Bianca.

88.     Patchin's aggressive and malicious prosecution was evident in how DCS handled Bianca's visits with her children during the first dependency and severance proceedings. When the Court severed Bianca's rights as to K.J. and J.M.J. in January 2020, Bianca appealed the severance on procedural grounds. The severance was reversed, and Bianca requested to have visits reinstated with her children. However, DCS refused to re-intestate these visits, pending the final ruling on their second severance petition. As a result, Bianca has been unable to see K.J. since January 2020 or J.M.J. since early November 2018.

### D. Caseworker Del Fiacco replaces Caseworker Patchin

89.     In March or April of 2021, Del Fiacco took over the role of the DCS Caseworker. Davisson was Del Fiacco's supervisor.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

90.     When Caseworker Del Fiacco took over in March or April 2021, Del Fiacco re-alleged Patchin's false allegations.

91.     Del Fiacco knew Patchin's allegations were false recklessly disregarded the exculpatory facts that were evidenced in the record.

92.     At a 10 January 2022, hearing, Del Fiacco testified that she had met with Mother only twice in the 10 to 11 months she had been on the case, and that she had never observed the parents during a visit with their children. Still, Del Fiacco falsely alleged that Bianca focused on the "wrong things" during the visits.

93.     These "wrong things" were that Bianca was concerned that her daughter had a very large bruise on her leg, red marks on her private parts, and tangled unkempt hair.

94.     Del Fiacco was the only individual who considered Bianca's concerns as "wrong things."

95.     The parent supervisor at Cradles to Crayons, Christina Martinez, testified at trial that Bianca's concerns about her daughter were accurate and reasonable.

96.     When Ms. Martinez supported Bianca's motion for increase visits with her children at trial, the State provided the following false statement in their response:

> "While the current service provider with Cradles to Crayons stated during trial proceedings that they do not see an issue with increasing visitations, their report dated 05 November 2021 suggests otherwise. Christina Martinez and her Supervisor who both signed off on the report, stated, '*Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children*.' This statement does not suggest Bianca has addressed the behavioral concerns that brought the children into departmental care."

97.     Both Ms. Martinez and her supervisor later stated that the italicized statement above (i.e. *Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children*) was provided by DCS at intake and was not reflective of their assessment of Bianca on 05 November 2021.

98.     This distortion shows the State blindly relied on DCS's false narrative to support the unsupportable position the Bianca is danger to her children.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

99.    DCS and the State deliberately and maliciously refused to view Bianca as anything other than a dangerous aggressor.

## V.    THE SECOND SEVERANCE TRIAL ENDS IN MAY 2022.

100.    The juvenile court finally recognized at the end of the second severance trial in May 2022, that DCS's picture of Bianca as an abuser and Jiaro as a passive inept father was not accurate.

101.    This family has suffered dearly because of the unconstitutional and unlawful removal and detention of K.J., J.M.J., K.A.J., and J.A.J.

102.    Since September 2018 until six weeks after the May 2022 order changing the case plan to reunification, Bianca's has had only limited and, at times, no access to K.J. and J.M.J. In addition, both Bianca and Jiaro were deprived of the joy of taking K.A.J. and J.A.J. home as newborns and watching them grow from birth.

103.    L.J. too has suffered, as he has lost his siblings, and has lived in fear of being taken into foster care if he were to visit his mother in Arizona. This irrevocable loss of time is unconscionable.

## A.  Defendants Knew or Should Have Known Plaintiffs' Legal Rights

104.    At all relevant times DCS and its agents, Patchin, Del Fiacco, Davisson Faust and McKay ("State Defendants") knew or should have known the well-established law that the U.S. Constitution protects the fundamental right of parents to make decisions concerning the care, custody, upbringing, management, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

105.    At all relevant times State Defendants knew or should have known that fit parents are presumed to act in the best interests of their children. *Id*. at 68; *Doe v. Heck*, 327 F.3d 492, 521 (7th Cir. 2003).

106.    At all relevant times State Defendants knew or should have known that in Arizona, until a court declares a parent unfit, the law requires State actors to presume that a parent is fit and acting in the best interest of their child. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 119 (2018).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

17

107.   At all relevant times State Defendants knew or should have known that the right to family association is sheltered against the government's unwarranted usurpation, disregard, or disrespect, *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996), and families have a well-established constitutional right to live together without governmental interference, *Arce v. Children's Hospital Los Angeles*, 211 Cal.App.4th 1455, 1473 (Cal. App. 2012).

108.   At all relevant times State Defendants knew or should have known that State actors are not permitted to ignore the dictates of the United States Constitution. *Wallis v. Spencer*, 202 F.3d 1126, 1130 (9th Cir. 1999).

109.   At all relevant times State Defendants knew or should have known that any motive to protect a child from abuse does not override a parent's constitutional rights. *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999); *Franz v. Lytle*, 997 F.2d 784, 792-93 (10th Cir. 1993).

110.   At all relevant times State Defendants knew or should have known that the government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents. *Calabretta*, 189 F.3d at 820.

111.   At all relevant times State Defendants knew or should have known that each parent's conduct must be assessed separately – any implication against one parent does not constitute "specific, articulable evidence" to justify removal from the other parent. *Wallis*, 202 F.3d at 1140-41, 1142 n.14; *Fredenburg v. County of Santa Clara*, 407 Fed. Appx. 114, 115-16 (9th Cir. 2010).

112.   At all relevant times State Defendants knew or should have known that at the time K.J., J.M.J, K.A.J., and J.A.J. were seized, it was well established that the First, Fourth, and Fourteenth Amendments to the United States Constitution that any infringement upon the right to familial association must be by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest. See, e.g., *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

113.   At all relevant times State Defendants knew or should have known that the Fourth Amendment protects the child from unlawful searches and seizures.

114.   At all relevant times State Defendants knew or should have known that a parent's right to continued custody of their child arises under the First and Fourteenth Amendments and is composed of both a substantive and procedural component.

115.   At all relevant times State Defendants knew or should have known that a social worker, or other government agent, acts under color of state law while acting or purporting to act in his or her official capacity, or while exercising his or her responsibilities pursuant to state law. *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000).

116.   Given the facts of this case, Plaintiffs are entitled to relief under 42 U.S.C. § 1983 and Arizona state law.

## CLAIMS

## CLAIM ONE - UNLAWFUL SEIZURE AND DETENTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' Right to Freedom of Association under the First Amendment and Due Process under the Fourteenth and Fourth Amendments to the U.S. Constitution for unlawfully seizing and detaining K.J., J.M.J., J.A.J. and K.A.J.)**

117.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

118.   Patchin failed to conduct a prompt and thorough investigation, as is required under A.R.S. § 8-456(C)(1), before filing the dependency petitions for K.J., J.M.J. J.M.J. and K.J. which falsely alleged abuse, neglect, aggressive behavior by Bianca, and a failure to protect by Jiaro.

119.   After J.M.J. and K.J. and were removed, Patchin consistently insisted on the false narrative that J.M.J. was severely malnourished, feeble, unable to sit up, and badly bruised by Bianca.

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

120.   Davisson failed to ensure Patchin's investigation met the statutory requirements under A.R.S. § 8-456(C)(1), to "make a prompt and thorough investigation" and that the DCS petition was truthful.

121.   None of Patchin's allegations were true or supported by any of the records. Yet, Patchin continued with and embellished this false narrative to support keeping K.J. and J.M.J. in foster care and to also remove J.A.J. and K.A.J. immediately at birth.

122.   When Patchin retired, Del Fiacco doggedly pursued the same false narrative that Bianca was an aggressive mother who hates boys and was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace.

123.   Patchin substantially participated in the unlawful seizure of J.A.J. and K.A.J. by perpetuating the false narrative in Court filings that Bianca abused and neglected J.M.J., that she was an aggressive mother who hates boys, that she was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace.

124.   Patchin substantially participated in the unlawful detention of K.J., J.M.J, J.A.J. and K.A.J. in State's care by perpetuating her false narrative in Court filings and to DCS service providers that Bianca abused and neglected J.M.J., that she was an aggressive dangerous parent who hates boys, and that Jiaro cannot protect the children.

125.   Del Fiacco substantially participated in the unlawful detention of K.J., J.M.J., J.A.J. and K.A.J. by perpetuating the DCS false narrative in Court filings and in her testimony.

126.   As Patchin and Del Fiacco's supervisor, Davisson substantially participated in the unlawful seizure of J.A.J. and K.A.J. and detention of K.J., J.M.J, J.A.J. and K.A.J. in State's care by authorizing Patchin and Del Fiacco's false filings and false.

127.   At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the Fourteenth Amendment protects the rights of parents and children to live together without government interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

128.    At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Lee v. City of Los Angeles*, 250 F. 3d 668, 685 (9th Cir. 2001).

129.    At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that a state official "cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued," the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, and the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1138-1141.

130.    At the relevant times when K.J., J.M.J., J.A.J. and K.A.J. were seized and detained, DCS agents, Patchin, Del Fiacco, Davisson did not have any information that established reasonable cause to believe that these children were in imminent danger of serious bodily injury and there were no exigent circumstances.

131.    Prior to the relevant times when K.J., J.M.J., J.A.J. and K.A.J. were seized and detained, DCS agents, Patchin, Del Fiacco, and Davisson did not first pursue reasonable avenues of investigation.

132.    At the relevant times when Patchin, Del Fiacco, Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., the scope of the intrusion was not reasonably necessary to avert any specific injury, and, even if it were, the intrusion was longer than necessary to avert the injury.

133.    At the relevant times when Patchin, Del Fiacco, Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., each of them, acted under the color of law.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

134.    Because of DCS's wrongful seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., L.J. and Bianca were reasonably afraid to have him return to live with his mother. L.J. stayed away for four long years, even though he missed his mother dearly.

135.    Patchin, Del Fiacco, and Davisson violated Bianca, Jiaro, and L.J.'s the constitutional rights with their unlawful conduct.

136.    As a direct and proximate result of the violation of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages, in an amount not yet ascertained but which shall be shown according to proof at trial.

## **CLAIM TWO - JUDICIAL DECEPTION**

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' right to Due Process under the Fourth and Fourteenth Amendments for making misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

137.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

138.    It is well established that liability for a § 1983 claim will lie for judicial deception. *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997).

139.    Although, the Ninth Circuit has "recognized absolute immunity for social workers ... for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," the "scope of absolute immunity for social workers is extremely narrow." *Miller v. Gammie*, 335 F.3d 889, 989 (9th Cir. 2003).

140.    Absolute immunity does not extend to the fabrication of false evidence or perjury. *Hardwick v. County of Orange,* 844 F. 3d 1112 (9th Cir. 2017).

141.    There is no absolute or qualified immunity for making false statements to a court, including signing a petition under penalty of perjury. *Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997); *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008); *Miller*, 335 F.3d at 897; *Hardwick*, 844 F.3d at 1118.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

142.   At all relevant times, "the constitutional right to be free from the knowing presentation of false or perjured evidence" was clearly established. *Hardwick*, 844 F. 3d 1112; *see also Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000); *Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996).

143.   During their testimony under oath and in reports to the juvenile, Patchin and Del Fiacco made statements which were false and/or demonstrated a reckless disregard for the truth, including, but not limited to the false testimony.

144.   Patchin made the following false statements in testimony and/or in reports to the juvenile court to support DCS's false petitions. None of these allegations are true:

a.   Bianca was homeless for several months in 2018;

b.   J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.   J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.   Bianca did not like J.M.J. because was a baby conceived by rape;

e.   K.J. had scratches on her face evidencing abuse;

f.   Bianca was aggressive;

g.   Bianca had been convicted of felonious child abuse in Missouri in 2017;

h.   on one occasion in July 2019 Bianca shouted at her therapist, Dr. Hanley;

i.   on one occasion, while in labor in the hospital, Bianca stated she would name J.A.J. "Motherfucker;"

j.   Bianca has gender dysmorphic disorder; and

k.   Bianca willfully neglected J.M.J. because she hates boys.

145.   Del Fiacco reiterated Patchin's false narrative to the court in testimony and/or in reports to the juvenile court.  In addition, Del Fiacco added that Bianca focused on the

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

23

"wrong things" during her supervised visits with her children.   No other DCS service provider agreed with this assessment by Del Fiacco.

146.    Davisson directed or ratified Patchin and Del Fiacco wrongful judicial deception.

147.    Davisson signed Patchin and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

148.    When committing these acts of judicial deception, Patchin, Del Fiacco, and Davisson were acting under color of law.

149.    As a direct and proximate result of the violations of Plaintiffs ' constitutional rights by judicial deception, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM THREE - FAILURE TO MAKE REASONABLE EFFORTS

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs right to Due Process under the Fourth and Fourteenth Amendments for failing to make reasonable efforts to preserve the family relationship.)**

150.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

151.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32.  A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

152.    At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

24

153.   At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

154.   At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W*., 247 Ariz. at 19, ¶ 49.

155.   Patchin, Del Fiacco, and Davisson violated Bianca's right to the State's reasonable efforts to reunite them by failing to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and when, among other things, they (1) relied on false hearsay provided by a blame-shifting thief at the Gift of Mary Shelter; (2) failed to investigate the positive information from Missouri social workers; (3) failed to speak with L.J. who loves his mother very much; (4) failed to consider that a J.M.J. was examined by a mandatory reporter only one week prior to the false DCS hotline call; (5) failed to review the medical records which showed that when J.M.J. was placed in foster care, weighed less than he did when he was in Bianca's care; and (6) falsely asserted to the trial court that wanted to name J.A.J. "Motherfucker."

156.   Arizona law, specifically A.R.S. § 514(B), requires that DCS "place a child in the least restrictive type of placement available, consistent with the best interest of the child."

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

157.    Arizona law, specifically A.R.S. § 514(B), mandates that placement of a child in a kinship care with a member of the child's family is a less restrictive placement than placement with a foster family.

158.    Patchin, Del Fiacco, and Davisson violated Bianca's right to the State's reasonable efforts to reunite her with her children by failing to keep all of the children together in one foster home.

159.    Patchin and Davisson violated Bianca's right to the State's reasonable efforts to reunite her with her children by repeatedly denying her visitation rights during the various dependency proceedings, and even after the case plan was changed to reunification in May 2022.

160.    When they violated Bianca's right to the State's reasonable efforts to reunite them, Patchin, Del Fiacco, and Davisson were acting under color of law.

161.    As a direct and proximate result of the violations of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## **CLAIM FOUR - MEDICAL DECISIONS**

**(Under 42 U.S.C. § 1983, Patchin, Del Fiacco, Davisson, Faust and McKay are liable for violating Plaintiffs right to Due Process under the Fourteenth Amendment to the U.S. Constitution to make medical decisions for E.F.)**

162.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

163.    At all relevant times, it was well established that the constitutional due process "right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless a "neutral fact

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

26

finder" determines, through due process hearing, that parent is not acting in child's best interests)).

164.    At all relevant times, it was well established that: "All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other institution, including: The right to make health care decisions for the minor child, including rights pursuant to §§ 15-873, 36-2271 and 36-2272, unless otherwise prohibited by law." A.R.S. § 1-602(A)(5).

165.    At all relevant times, it was well established that until there is a finding of dependency by a court, which legally entitles DCS "to temporarily invade" a parent's rights to "legal custody" of their child, that the state has no legal right to invade the constitutional and legal rights of a parent to make medical decisions for their child. *Diana H. v. Rubin*, 217 Ariz. 131, 134 ¶ 13 (2007).

166.    At all relevant times, it was well established that "the requirement that [the state child welfare organization] provide parental notice and obtain consent" before a child in its care and/or custody is provided medical treatment is not "inconsistent with [the state child welfare organization's] obligation to provide routine or emergency medical care to children in its custody." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018).

167.    Patchin, Del Fiacco, Davisson, Faust, and McKay interfered with Bianca and Jiaro's constitutional right to make medical decisions for their seized and detained children disallowing them from attending medical appointments while they were in State's care.

168.    When they violated Bianca and Jiaro's constitutional rights, their seized and detained children and each of them, were acting under color of law.

169.    As a direct and proximate result of the violations of her constitutional rights, Bianca suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## **CLAIM FIVE - MEDICAL TREATMENTS**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

27

**(Under 42 U.S.C. § 1983 Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable for violating Plaintiffs right to Due Process Right under the Fourteenth Amendment to the U.S. Constitution to be with E.F. during medical treatment.)**

170.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

171.    At all relevant times, it was well established that the "Constitution assures parents that, in the absence of parental consent, [medical treatment] of their child may not be undertaken … at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an [treatment] exist and that the administration of the procedure is reasonable under all the circumstances." Wallis, 202 F.3d at 1141 (9th Cir. 2000). "Moreover, parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id*.

172.    Patchin, Del Fiacco, Davisson, Faust, and McKay interfered with Bianca and Jiaro's constitutional right to be present during their seized and detained children's medical appointments.

173.    When they violated Bianca and Jiaro's constitutional rights, Patchin, Del Fiacco, Davisson, Faust, and McKay and each of them, were acting under color of law.

174.    As a direct and proximate result of the violations of her constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM SIX - NEGLIGENCE PER SE

**(Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable for violating A.R.S § 8-451, § 8-453, and/or § 8-456)**

175.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

28

176.   Under Arizona law, "[a] person who violates a legislative enactment that establishes the standard of care or that has been adopted by a court as the relevant standard of care is negligent per se and the violation is conclusive as to negligence." *St. George v. Plimpton*, 241 Ariz. 163, 166, 384 P.3d 1243, 1246 (Ct. App. 2016).

177.   The Arizona legislature has enacted laws which establish the standard of care for DCS and its employees and agents.

### FAUST AND MCKAY'S VIOLATION OF A.R.S. § 8-451 AND § 8-453

178.   Under A.R.S. § 8-451, "the primary purpose of the department is to protect children."

179.   Under A.R.S. § 8-453, the director of the DCS has the duty to "[f]ormulate policies, plans and programs to effectuate the … purposes of the department."

180.   Upon information and belief, DCS agents acted in accordance with the Department's policies, plans and programs in place at the time, which were not protective of children. For example, DCS has no policies, plans, or programs in place to ensure its agents comply with A.R.S. § 8-456.

181.   As a direct and proximate cause of Faust and McKay's negligence pe say, minor children L.J., K.J., J.M.J., K.A.J., and J.A.J. were not protected; instead, they were irreparably harmed.

182.   Plaintiffs were directly and proximately harmed by Faust and McKay's violations of A.R.S. §§ 8-451 and 8-453.

183.   Directors Faust and McKay are liable for negligence per se for violations of A.R.S. §§ 8-451 and 8-453.

### PATCHIN, DEL FIACCO, AND DAVISSON'S VIOLATE A.R.S. § 8-456(A)

184.   Under A.R.S § 8-456(A), DCS "shall train all investigators in forensic interviewing and processes and the protocols … [and] [t]he training must include…[t]he duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

185.   As alleged in the paragraphs' above, Patchin, Del Fiacco, Davisson did not protect the legal and due process rights of Plaintiffs when they engaged in judicial deception to violate Plaintiffs ' constitutional rights.

186.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, and Davisson's violation of A.R.S. § 8-456(A).

187.   Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(A).

**PATCHIN, DEL FIACCO, AND DAVISSON'S VIOLATE A.R.S. § 8-456(C)(1)**

188.   Pursuant to A.R.S. § 8-456(C)(1), Arizona's legislature has sought to protect the rights of parents by requiring DCS to "make a prompt and thorough investigation" of any condition "that would tend to support or refute the allegation that the child is a victim of abuse or neglect."

189.   Patchin, Del Fiacco, Davisson investigations were not thorough, in violation of A.R.S. § 8-456(C)(1).

190.   The overwhelming evidence in DCS's possession at the time of J.M.J. and K.J.'s removal and detention, was counter to Patchin's false narrative. This evidence included the medical records from J.M.J.'s hospitalization at PCH in September 2018, which found J.M.J. to be playful, happy, but mildly to moderately malnourished. He was also found to have Mongolian spots on his back. Patchin distorted these records to report to the Court and Bianca's service providers that at removal, J.M.J. was so severely malnourished he could barely sit up and his back was badly bruised.

191.   Patchin's misrepresentation was permanently baked into the record and formed the basis for the juvenile court's severance of Bianca's rights as to J.M.J. in May 2022.

192.   DCS was also in possession of countless records from various parent aids, such as Christine Martinez, who held a positive view of Jiaro and Bianca.

193.   DCS knew that Bianca's therapist, Dr. Hadley, also held a positive view of Bianca.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

194.    Reports from Jiaro's service providers were also positive, and contrary to DCS's invisible father narrative.

195.    Patchin and Del Fiacco maliciously and falsely provided reports to the court and testimony that alleged Bianca was an aggressive and dangerous mother, while Jiaro was inept to protect his children from her.

196.    Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, Davisson's violation of A.R.S. § 8-456(C)(1).

197.    Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(C)(1).

### CLAIM SEVEN - ABUSE OF PROCESS

**(Defendant Patchin, Del Fiacco, and Davidson are liable to Plaintiffs for Abuse of Process)**

198.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

199.    The elements of an abuse-of-process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App.1982).

200.    A party can demonstrate the latter element by "showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Id*. In the context of this tort, Arizona interprets "process" as encompassing "the entire range of procedures incident to the litigation process." *Id*. at 352.

201.    As alleged in the paragraphs above, Caseworker Patchin filed two fraudulent dependency petitions and two fraudulent severance petitions.

202.    Patchin was motivated by a malicious, personal dislike of Bianca. Patchin's animus toward Bianca is evidenced in various emails, where she engaged in unbridled ad hominin attacks; for example, characterizing Bianca as a crude liar and insulting her lipstick. This is malice.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

203.    Patchin filed the fraudulent petitions under the negligent supervision of Davisson.

204.    Davisson knew, or should have known, the overwhelming evidence in the record did not support Patchin's false allegations. Davisson knew or should have known of Patchin's personal animus toward Bianca, as evidenced in the record. Yet, Davisson supported the malicious crusade against Bianca.

205.    Caseworker Del Fiacco supported Patchin's malicious crusade when Patchin retired. Del Fiacco either knew or should have known that the record did not support Patchin's false and malicious allegations. Del Fiacco either knew or should have known of Patchin's personal animus toward Bianca, as was evident in Patchin's emails, in her reports, and in her testimony at trial which was witnessed by Del Fiacco.

206.    Patchin's filing and prosecution of the dependency petitions that were supported only by falsehoods is an abuse of the judicial process.

207.    Davisson and Del Fiacco's prosecution of these petitions was an abuse of the judicial process.

208.    Despite the overwhelming evidence that Bianca and Jiaro are fit parents, Patchin and Del Fiacco, under the supervision of Davisson, continued to press charges.

209.    Even after the juvenile court denied the severance as to K.J., K.A.J., and J.A.J. on 11 May 2022, DCS defied court orders to meet within 30 days initiate the reunification process. Instead, DCS failed to initiate any meaningful steps until five months after being ordered to do so.

210.    Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, Davisson's abuse of process. Patchin, Del Fiacco, Davisson are liable for this harm.

## **CLAIM EIGHT - GROSS NEGLIGENCE / LEGAL RIGHTS**

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Faust, and McKay are liable for exercising Gross Negligence in carrying out their duty to protect the legal rights of children and families.)**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

211.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

212.    Plaintiffs re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

213.    Under A.R.S. § 8-802 (D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

214.    "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the Plaintiffs is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

215.    Patchin, Del Fiacco, Davisson, Faust and McKay acted with gross negligence and breached their duty to protect Plaintiffs ' legal rights when they failed to properly investigate whether DCS should remove the children from their parent's care.

216.    Patchin, Del Fiacco, Davisson, Faust and McKay and each of them, acted with gross negligence and breached their duty to protect the legal rights of Bianca by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

217.    Patchin, Del Fiacco, Davisson, Faust and McKay acted with gross negligence and breached their duty to protect Plaintiffs ' legal rights by limiting, and at times forbidding, Bianca and Jiaro's visits with the children.

218.    Patchin, Del Fiacco, Davisson acted with gross negligence and breached their duty to protect Plaintiffs ' legal rights when they made representations to the court that were false and/or demonstrated a reckless disregard for the truth.

219.    As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breach of their duty, Plaintiffs suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM NINE - GROSS NEGLIGENCE / REASONABLE EFFORTS**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Mr. Faust, and Mr. McKay and each of them, are for exercising Gross Negligence in carrying out their duty to make reasonable and/or diligent efforts to preserve the family relationship.)**

220. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

221. At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32. A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

222. At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

223. At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

224. A.R.S. § 8-533(B)(8) requires DCS agents to make a diligent effort to provide appropriate reunification services.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

34

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

225.    At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W*., 247 Ariz. at 19,¶ 49. "[A]bsent reasonable modifications to…rehabilitative services offered to a disabled parent, a department has failed to perform its duty under the ADA to reasonably accommodate a disability and, in turn, its obligation to make reasonable efforts to rehabilitate the parent." *People in Interest of S.K*., 440 P. 3d 1240, 1249 (Co. App. 2019).

226.    Patchin, Del Fiacco, Davisson, Faust, McKay and each of them, acted with gross negligence and breached their duty to make reasonable and/or diligent efforts to preserve the family relationship by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

227.    As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's gross negligence, Plaintiffs suffered irreparable harm, including but not limited to, the permanent loss of her parental rights, and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TEN - GROSS NEGLIGENCE EXERCISED BY DCS EMPLOYEES

**(Under established Arizona law, Defendants Faust and McKay are liable to Plaintiffs for the Gross Negligence exercised by Defendant employees of DCS in carrying out their duties.)**

228.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

229.    Faust and McKay owed a duty to Plaintiffs to ensure that the employees, officers, and agents of DCS were qualified to serve in their respective roles before hiring and assigning employees to act as investigators and/or case managers for DCS.

230.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that employees, officers, and agents of DCS were

properly qualified before hiring and assigning employees to act as investigators and/or case managers for DCS.

231.   Faust and McKay also owed a duty to Plaintiffs to ensure that the employees, officers, and agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

232.   Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that the employees, officers, and/or agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

233.   Under Arizona law, specifically A.R.S. § 8-456(A)(2), DCS is required to ensure that all DCS investigators were properly trained on their "duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

234.   Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that all DCS investigators were properly trained on their duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.

235.   As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships forever, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**CLAIM ELEVEN – UNLAWFUL DCS POLICIES AND PRACTICES**

**(Under 42 U.S.C. § 1983, Defendant Arizona Department of Child Safety is liable for the unconstitutional acts of its employees which were committed pursuant to a policy and/or practice of DCS.)**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

36

236.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

237.   Defendant Arizona Department of Child Safety, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

238.   DCS, and those individual defendants in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiffs to establish, implement, and/or follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiffs under the United States Constitution, including under the First and Fourteenth Amendments. This includes, without limitation, the protection of the right to familial relations; the right to privacy; and the rights to substantive and procedural due process.

239.   DCS established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to:

a.   the policy of using trickery, duress, fabrications and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the juvenile court, causing an interference with parents' rights, including those as to familial relations;

b.   the policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agent, employees, and state actors, in providing the constitutional protections guaranteed to individuals and families, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency-type proceedings;

c.   the policy of setting forth allegations in juvenile dependency petitions against parents claiming child abuse and/or neglect and/or other

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

unsubstantiated allegations regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

d.    the policy, practice, or custom of making knowingly false allegations of child abuse and/or neglect in juvenile dependency petitions signed under penalty of perjury, motions, or other documents filed with the juvenile court as a means of intimidating parents, whether or not true, or forcing a parent to adjudicate a matter knowing that the courts most often sustain allegations, whether justified by extant evidence or not;

e.    the policy of fraudulently charging parents with child abuse and/or neglect where none exist; and

f.    the policy of failing to take appropriate action to ensure that appropriate and meaningful visitation occurs.

240.   The customs, policies, and/or practices listed herein are not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Bianca reserves their right to amend this pleading as more information becomes available.

241.   It was obvious that the policies described herein that were instituted and/or maintained by DCS would lead to constitutional violations like the violations suffered by Plaintiffs , and DCS was deliberately indifferent to the consequent constitutional violations that would inevitably occur as a direct result of its policies.

242.   DCS was indifferent to the consequences that would be established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution.

243.   DCS, breached its duties and obligations to Plaintiffs including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

38

policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the DCS employees to engage in the unlawful and unconstitutional conduct alleged herein.

244.    DCS, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that DCS employees would, and did, cause Plaintiffs to be injured and damaged by DCS's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in the contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies subjected them to injunctive relief which Plaintiffs asserts herein.

245.    These actions, and/or inactions, of DCS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs has sustained general and specific damages to an extent and in an amount to be proven at trial. Plaintiffs has incurred and will continue to incur, attorneys' fees, costs, and expenses, including those authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

## **CLAIM TWELVE - IIED**

**(Under established Arizona law, Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable to Plaintiffs for Intentional Infliction of Emotional Distress ("IIED")**

246.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

247.    "The tort of intentional infliction of emotional distress requires proof of three elements: First, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

must indeed occur as a result of defendant's conduct." *Citizen Publ'g. Co. v. Miller*, 210 Ariz. 513, 516, ¶ 11, 115 P.3d 107, 110 (2005) (emphasis in original).

248.   Patchin, Del Fiacco, Davisson, Faust, and McKay's conduct was extreme and outrageous. The unwarranted removal of a child from their loving parent and then wrongfully and falsely accusing the parent of neglect and abuse is extreme and outrageous. What's worse, is that DCS repeated this offense four times.

249.   Bianca was suffering from a very brief interval of home instability at the time J.M.J. and K.J. were removed.

250.   Patchin accused Bianca of abusing and starving her son, because she falsely claimed the Mongolian spots on his back were bruises, and because she exaggerated his mild to moderate malnutrition, which was due to an organic feeding issue, as severe malnutrition.

251.   There were absolutely no signs of abuse or neglect of K.J., but DCS removed her anyway and immediately placed her in a foster care, where she has remained for the past four years.

252.   J.A.J. and K.A.J. were removed immediately at birth from both Bianca and Jiaro, on the outrageous false allegation that Bianca was aggressive and hated boys and that Jiaro could not protect his children.

253.   The grief any loving parent would suffer in such circumstances is palpable and immeasurable.

254.   Patchin, Del Fiacco, Davisson, Faust, and McKay intended to cause Plaintiffs' emotional distress or had reckless disregard for the certainty that distress would result from their conduct.

255.   Patchin, Del Fiacco, Davisson, Faust, and McKay conduct caused Plaintiffs' severe emotional distress.

256.   Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**PRAYER FOR RELIEF**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**WHEREFORE, Plaintiffs prays for relief as follows:**

**A.**   **General damages and special damages according to proof, but in no event less than $3,000,000, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress;**

**B.**   **For injunctive relief in the form of DCS agreeing to provide training to all DCS case workers regarding**

- When exigent circumstances exist that justify the unwarranted seizure of a child;

- The psychological trauma and harm suffered by children and family that occurs when DCS removes a child from the custody of his or her parent;

- That prior to removing a child from the custody of his or her parent, DCS has a legal and constitutional obligation to conduct a thorough investigation into any allegations justifying removal, including investigating facts, witnesses, and evidence that refutes the allegations;

- That it is a violation of the Constitutional rights of children and parents to make misrepresentations or omissions to the court which are false and/or which demonstrate a reckless disregard for the truth; and;

- That facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of the services provided by the State and thus all reasonable efforts must be expended to ensure that a visitation occurs regularly and as scheduled.

**C.**

**D.**   **The training described in (B) above must be provided, at a minimum, annually to all DCS case workers and must be included in the training provided to persons upon their becoming a DCS case worker;**

**E.**   **For taxable costs and pre- and post-judgment interest to the extent permitted by law;**

**F.**   **For punitive and/or exemplary damages to the extent permitted by law and in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**G.**     For attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and state law, as applicable; and,

**G.**     For such other relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 8th day of May 2023.

MILLS + WOODS LAW PLLC

By_____/s/ Thomas A. Connelly_____
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

    DeeAn Gillespie Strub
    Sandra Daussin
    7319 North 16th Street
    Phoenix, AZ 85020

    *Attorneys for Plaintiffs*

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951247

**Plaintiff's Attorneys:**

Thomas A Connelly - Primary Attorney
Bar Number: 019430, issuing State: AZ
Law Firm: Mills + Woods Law, PLLC
5055 N. 12th St. Suite 101
Phoenix, AZ 85014
Telephone Number: (480)999-4556X1008
Email address: tconnelly@millsandwoods.com

Deean Gillespie Strub
Bar Number: 009987, issuing State: AZ
Law Firm: Gillespie Shields
Telephone Number: (602)870-9700

Sandra Daussin
Bar Number: 037274, issuing State: AZ
Law Firm: Gillespie Shields
Telephone Number: (602)870-9700

**CV2023-007002**

**Plaintiffs:**

BIANCA JUMENEZ-BENCEBI

JIARO ABREGO ZAVALETA

BIANCA JIMENEZ-BENCEBI, a parent for L. J., a minor
Minor's Date of Birth: 06/27/2005

**Defendants:**

STATE OF ARIZONA

ARIZONA DEPARTEMENT OF CHILD SAFETY

CARIN PATCHIN

JOHN DOE PATCHIN

TRACEY DEL FIACCO

AZTurboCourt.gov Form Set #7973633

JOHN DOE DEL FIACCO

AMANDA DAVISSON

JOHN DOE DAVISSON

MICHAEL FAUST

JANE DOE FAUST

GREGORY MCKAY

JANE DOE MCKAY

JOHN AND JANE DOES 1-5

BLACK ENTITIES 1-5

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: 42 USC SEC 1983, ARS 12-641

AZTurboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951246

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Sandra Daussin (AZ Bar #037274)
GILLESPIE, SHIELDS, GOLDFARB,
& TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| BIANCA JIMENEZ-BENCEBI, an individual; JIARO ABREGO ZAVALETA, an individual; and L.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF ARIZONA, a government entity; ARIZONA DEPARTMENT OF CHILD SAFETY, a governmental entity; CARIN PATCHIN, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE PATCHIN, her spouse; TRACEY DEL FIACCO, individually and as an employee with the State of Arizona Department of Child Safety | Case No.: **CV2023-007002** <br><br> **COMPLAINT** <br><br><br> **JURY TRIAL REQUESTED** |

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

and JOHN DOE DEL FIACCO, her spouse; AMANDA DAVISSON, individually and as an employee with the State of Arizona Department of Child Safety and JOHN DOE DAVISSON, her spouse; MICHAEL FAUST, as Director, Arizona Department of Child Safety, and JANE DOE FAUST, his spouse; GREGORY MCKAY, as Former Director, Arizona Department of Child Safety, and JANE DOE MCKAY, his spouse; JOHN and JANE DOES 1-5; and BLACK ENTITIES 1-5,

Defendants.

Plaintiffs Bianca Jimenez-Bencebi, Jiaro Abrego Zavaleta, and L.J.[1], (together "Plaintiffs") by and through their counsel, file this Complaint against the Defendants the State of Arizona, the Arizona Department of Child Safety, Carin Patchin and her spouse, Tracey Del Fiacco and her spouse, Amanda Davisson and her spouse, Michael Faust and his spouse, Gregory McKay and his spouse, John and Jane Does 1-5, and Black Entities 1-5. Plaintiffs state and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

2.      The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3.      This Court has original subject matter jurisdiction over the claims made in this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution.

4.      The acts and events giving rise to the causes of action alleged herein occurred in Maricopa County, Arizona, and all Defendants are subject to the personal jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided under Arizona law and the Arizona Rules of Civil Procedure.

---

[1] L.J. is a fictitious name used to protect the identity of a minor.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5.      Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## THE PARTIES

6.      Plaintiff Bianca Jimenez-Bencebi ("Bianca") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Bianca resided in Maricopa County, Arizona.

7.      Plaintiff Jiaro Abrego Zavaleta ("Jiaro") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Jiaro resided in Maricopa County, Arizona.

8.      Plaintiff L.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, L.J. resided in Maricopa County, Arizona.

9.      Defendant State of Arizona is a government entity that acts by and through its officials, employees, and agents, including, without limitation, each of the other Defendants in this action.

10.     Defendant the Arizona Department of Child Safety ("DCS") is a governmental entity that acts by and through its officials, employees, and agents, including without limitation, each of the other non-governmental entity Defendants in this action.

11.     Defendant Carin Patchin ("Patchin") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Patchin was, at all times relevant to the present Complaint, an employee of the State of Arizona through DCS. At all times relevant to this Complaint, Patchin was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.     Defendant Tracey Del Fiacco ("Del Fiacco") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Del Fiacco was, at all times relevant to the present Complaint, an employee of the State of Arizona through the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

DCS. At all times relevant to this Complaint, Del Fiacco was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

13.     Defendant Amanda Davisson ("Davisson") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Davisson was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Davisson was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.     Defendant Michael Faust ("Faust") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Faust served, at times relevant to this Complaint, as the Director of the DCS. At times relevant to this complaint, Faust was the official policymaker for the DCS. He is named herein in his official capacity.

15.     Defendant Gregory McKay ("McKay") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Before Faust was the DCS Director, McKay was, at times relevant to this Complaint, the Director of the DCS. At times relevant to this complaint, McKay was the official policymaker for the DCS. He is named herein in his official capacity.

16.     John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiffs and who are, therefore, designated by fictitious names. Plaintiffs will ask leave of the Court to substitute the true names of the said parties prior to the entry of Judgement herein.

17.      Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

4

Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

18. At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs alleges, upon information and belief, that each Defendant was and is the agent, employee, principal, employer, co-conspirator, or any combination thereof of each of the remaining defendants, vice versa, or both. In addition, Plaintiffs alleges, upon information and belief, that the Defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above Defendants conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any combination thereof, each of the remaining Defendants in committing the acts herein alleged or failed to prevent such acts when having the power, duty, or authority to do so with full knowledge of said acts.

## **FACTUAL ALLEGATIONS**[2]

### I. BACKGROUND FACTS

19. Bianca Jimenez-Bencebi ("Bianca") is the natural mother of L.J. (D.O.B. 06/27/2005), K.J. (D.O.B. 05/16/2016), J.M.J. (D.O.B. 08/25/2017), K.A.J. (D.O.B 03/05/2019), and J.A.J. (D.O.B. 02/12/2020).

20. Jiaro Abrego Zavaleta ("Jiaro") is married to Bianca and is the father of K.A.J. and J.A.J.

21. L.J. was living with his natural father in Puerto Rico when DCS first began its wrongful interference with this family. L.J. wanted to return to Arizona to be with his mother, as he has a close relationship with her. However, both L.J. and Bianca were fearful that if he returned, he too would be unlawfully seized and detained by DCS, as were all his siblings. As a result, L.J. remained living with his father in Puerto Rico and spoke to his mother by phone daily, and sometimes twice a day.

---

[2] Plaintiffs makes the allegations in this Complaint based upon personal knowledge as to those matters in which she had personal involvement and upon information and belief as to all other matters.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**A. While living in Missouri, Bianca conceives a child by rape.**

22.     In 2016, Bianca was living in Missouri with L.J. and K.J. On or around 30 November 2016, Bianca was raped and J.M.J. was conceived. At the time of the rape, L.J. was 11 years old and K.J. was six months.

23.     L.J. knew of the rape and was traumatized, but neither L.J. nor Bianca had any trauma therapy to deal with this violent crime. L.J. reported the rape to the police.

24.     When Bianca was eight months pregnant, on 17 July 2017, L.J. was acting out and Bianca allegedly hit and bit him. L.J. called the police, and Bianca was arrested. There was no trial.

25.     Bianca pled guilty to a misdemeanor charge of physically abusing L.J upon advice of counsel that this would be the quickest path to resolution. Bianca served a 120-day jail sentence for this misdemeanor charge. It was her first, and only criminal offense.

26.     Until this time, there was no question if Bianca could parent her son and daughter. As a single mother, she alone clothed, housed, fed, educated, and cared for her children.

27.     While Bianca served her sentence, J.M.J. was born on 25 August 2017; and K.J. and J.M.J. (after his birth) were placed in foster care. Bianca voluntarily let L.J. live with his father in Puerto Rico.

28.     After her release, Bianca allowed L.J. to stay with his father in Puerto Rico, believing this was in his best interest.

29.     The State of Missouri returned K.J. and J.M.J. to Bianca in December 2017, a few weeks after she was released from jail.

30.     When the children were returned, the Missouri social workers wrote many positive things about Bianca's parenting, including the fact that L.J. was polite and well-educated and that K.J. was well-cared for and had a strong bond with her mother. DCS never reported this positive information to the juvenile court during any of the dependency proceedings.

**B.    Bianca moves to Arizona.**

31.    In January 2018, Bianca moved from Missouri to Arizona to live with Jiaro, who she later married, and his sister.

32.    Bianca's standards for cleanliness were much higher than her Jiaro's sister's.

33.    In late August 2018, Jiaro's sister threw Bianca out of the house because of a dispute over housekeeping. Bianca was pregnant with K.A.J. at the time.

34.    Because of the abrupt eviction, Bianca suffered a temporary period of housing instability which lasted only a few weeks. During this time, Bianca, K.A.J. and J.M.J. spent a few days in a homeless shelter, Gift of Mary Shelter.

35.    On 06 September 2018, when Bianca, K.A.J. and J.M.J. were homeless, Bianca brought J.M.J. to a medical appointment to keep his vaccinations up to date. This medical professional and mandatory reporter noted nothing unusual about J.M.J. and did not report Bianca. This was a mere eight days before DCS involvement with this family, when K.J. and J.M.J. were removed on false pretenses.

**II.    PROCEDURAL HISTORY**

36.    The procedural history is as follows:

a.    K.J. and J.M.J. wrongfully removed from Bianca's loving care in September 2018 as the result of Patchin and Davisson's failure to investigate and false allegations of abuse and neglect.

b.    The first dependency petition was filed in September 2018 as to K.J. and J.M.J.

c.    On 24 January 2019, DCS filed a petition to terminate Bianca's parental rights to K.J. and J.M.J.

d.    During these dependency proceedings, K.A.J. (D.O.B. 03/05/2019) was born and she was removed immediately at birth.

e.    The removal of K.A.J. was based on Patchin and Davisson's steadfast adherence to a malicious and distorted view that Bianca is an aggressive ex-felon and that Jiaro is too passive to protect his children from this menace.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

7

f.      In January 2020, Bianca's parental rights were severed as to K.J. and J.M.J, but the severance was overturned on procedural grounds.

g.      On 14 December 2020, DCS filed another petition to terminate the parent-child relationship as to K.J., J.M.J., and K.A.J.

h.      During these proceedings, J.A.J. was born (D.O.B. 02/12/2020) and he was immediately removed at birth.

i.      On 20 May 2021, DCS amended the December 2020 severance petition to include J.A.J. The petition was now for the termination of the parent-child relationship as to all four children (K.J., J.M.J., K.A.J., and J.A.J.)

j.      The decision to remove J.A.J. and to include him in the severance petition was based on Patchin and Davisson's adherence to their false narrative that Bianca was an aggressive boy-hating felon, and Jiaro cannot protect his children.

k.      On 11 May 2022, the juvenile court ruled from the bench to severe Bianca's rights as to J.M.J, based on neglect under A.R.S. § 8-533(B)(2). At the same time, the juvenile court changed the case plan from severance to reunification for K.J, K.A.J., and J.A.J. The court ordered DCS to have a meeting with parents within 30 days of 11 May 2022 ruling to start the reunification process.

37.      For the first six weeks after the 11 May 2022 order, DCS cancelled all of Plaintiffs ' supervised visits with their children.

38.      In direct violation of the 11 May 2022 order, DCS took no affirmative steps toward implementing the reunification case plan until more than five months later.

39.      To date, DCS has not yet dismissed the dependency one year later. K.J, K.A.J., and J.A.J. are now living with Bianca and Jiaro.

40.      Defendant Patchin served as the DCS Caseworker at all times relevant between October 2018 to March 2021.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

41.     At all times relevant after March 2021, Defendant Del Fiacco was the DCS Caseworker.

42.     At all times relevant, DCS employee Defendant Davisson was the supervisor for Patchin and Del Fiacco.

43.     DCS agents Patchin and Del Fiacco deceived the juvenile court by presenting information that they knew, or reasonably should have known, was false.

44.     DCS supervisor Davisson directed or ratified Patchin and Del Fiacco's wrongful acts. Davisson also signed Patchin and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

45.     The actions of the DCS agents in seizing and detaining K.J., J.M.J., K.A.J, and J.A.J. violated Plaintiffs ' constitutional rights and statutory rights under Arizona state law.

## III.    UNLAWFUL SEIZURE AND DETENTION OF K.J. AND J.M.J.

### A.  DCS removes K.J. and J.M.J. on 14 September 2018

46.     On 14 September 2018, DCS removed K.J and J.M.J. The following events led to this removal.

a.      While at the Gift of Mary Shelter, money was stolen from Bianca's purse.

b.      When she complained about the theft, Bianca was asked to leave.

c.      Later, a hotline call was made to DCS. Upon information and believe, the thief called DCS to blame-shift and to avoid also being removed from the shelter.

d.      DCS failed to investigate this incident thoroughly, and no eyewitnesses were produced to testify.

e.      Based only on this hearsay from a witness who had a motive to lie, Caseworker Patchin reported to the juvenile court that Bianca threatened a person with a knife at the Gift of Mary Shelter, left J.M.J. in his car seat for

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

extended times, prevented others from feeding J.M.J., and only paid attention to K.J.

47.     None of the allegations made in the hotline call were true.

48.     Bianca never threatened anyone, and never left J.M.J. in his car seat.

49.     While it was true that she did not let strangers at the Gift of Mary Shelter feed J.M.J. any and all solid foods, any loving mother in this situation would have done the same. J.M.J. was only 12 months old at the time and he had some difficulties swallowing certain solid foods and had problems digesting cow's milk.

50.     Both J.M.J. and K.J. were taken to Phoenix Children's Hospital "PCH" for physical examination upon removal by DCS on 14 September 2018.

51.     Even though there were no issues found with K.J., she was immediately taken into foster care and never returned to Bianca.

52.     J.M.J. was admitted to PCH and found to have mild to moderate malnutrition.

**B.  J.M.J. is Admitted to PCH and Released to His "Adoptive" Parents**

53.     J.M.J. was in-patient at PCH from 14 September 2018 to 20 September 2018.

54.     On the day of removal, the medical records note that J.M.J. could sit on his own, pull to stand, and was active, crawling, playful and happy, and that he had a total of one small fine scratch (~3/4 inch), one small bruise (~1/4 inch) on his cheek, and three small bruises (~1/4 to 3/8 inch) on his right thigh.

55.     Mongolian spots were found on his back and buttocks, as well as some areas of hyperpigmentation. He had no bruising *at all* on his back; and the shape of J.M.J.'s head was normal, and not noted as flat.

56.     After six days in the hospital, PCH at the instruction of DCS, discharged J.M.J. to his "adoptive" mothers.

**C.  J.M.J.'s Medical Records Show He Had an Organic Feeding Issue**

57.     After one week in foster care, J.M.J.'s lost weight below is admission weight. J.M.J.'s body weight was 17.3 pounds when he was admitted to PCH on 14 September 2018, and was 17.1 pounds on 26 September 2018, after one week in foster care.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

58.    That is, because of his organic feeding issue, J.M.J. became more malnourished while in DCS custody.

59.    This exculpatory evidence was immediately evident to Caseworker Patchin, but she knowingly or recklessly ignored it.

**D. DCS Petition's to Terminate Bianca's Parental Rights to K.J. and J.M.J.**

60.    On 24 January 2019, DCS filed a petition to terminate Bianca's parental rights as to K.J. and J.M.J.

61.    DCS Caseworker Patchin, under the supervision of Davisson, perpetuated the following false narrative in the DCS petition, reports to the juvenile court, and in testimony:

a.    Bianca was homeless for several months in 2018;

b.    J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.    J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.    Bianca did not like J.M.J. because was a baby conceived by rape;

e.    K.J. had scratches on her face evidencing abuse;

f.    Bianca was aggressive, as reported by a nameless witness at a homeless shelter; and

g.    Bianca had been convicted of felonious child abuse in Missouri in 2017.

62.    None of these allegations are true.

63.    Patchin documented throughout the DCS records her false narrative that at J.M.J.'s removal, he was feeble, severely malnourished, and had non-accidental bruising all over his back. These records were shared with the Court and with multiple service providers. None of these allegations are true.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

11

64.     Patchin also falsely alleged in her reports and in testimony to the juvenile court that Bianca is an aggressive ex-felon who hates boys and is a danger to her children. This allegation is not true.

65.     Patchin's statements were provably false, as follows:

a.      Bianca's home instability was brief, measured in weeks not months.

b.      During the interval of housing instability, Bianca managed to take J.M.J. for his one-year checkup and vaccinations with the assistance of her now husband Jiaro. Bianca did this because she loves her son, and she was doing her best to take care of him. Upon physical exam of J.M.J. this medical provider, a mandatory reporter, saw no reason to report Bianca to DCS.

c.      Bianca's purported aggressiveness was actually an attempt at blame-shifting by the thief who stole Bianca's money at the Gift of Mary Shelter.

d.      J.M.J. was not severely malnourished or feeble in any way when in Bianca's care.

e.      J.M.J. lost weight one week *after* he was taken into DCS custody.

f.      The foster parents also noted that J.M.J. was "choking while eating" and he was evaluated by doctors for a feeding issue after six months in DCS care.

g.      J.M.J.'s mild or moderate malnutrition in September 2018 was most likely attributable to this feeding issue rather that any neglect on Bianca's part.

66.     Within months of DCS involvement, just after Bianca successfully completed parent aid services, Patchin inexplicably changed the case plan from family reunification to severance as to J.M.J and K.J.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

12

## IV.   UNLAWFUL SEIZURE AND DETENTION OF K.A.J. AND J.A.J.

### A.   The DCS False Narrative Continues.

67.   Patchin, under the supervision of Davisson, continued to fabricate allegations to justify removing K.A.J. and J.A.J., both immediately at birth, and for keeping K.J. and J.M.J. in the State's care.

68.   The gravamen of DCS agents' allegations were that Bianca's general aggression and hatred of boys remained uncured, rendering her an unfit parent, and that Jiaro was too passive to protect his children from Bianca.

69.   Specifically, Patchin fabricated the following allegations to support removing K.A.J. and J.A.J. and to keep all of the children in State's care:

> a.   on one occasion in July 2019 Bianca allegedly shouted at her therapist, Dr. Hanley;
>
> b.   on one occasion, while in labor in the hospital, Bianca allegedly stated she would name J.A.J. "Motherfucker;"
>
> c.   Bianca allegedly has gender dysmorphic disorder; and
>
> d.   Bianca allegedly willfully neglected J.M.J. because she hates boys.

70.   None of these allegations were true.

71.   Dr. Hanley stated in a report dated 28 August 2019 that "there is a good chance that [Bianca] has completed what she needs to do for DCS." Contrast this with what Patchin falsely reported in a Comprehensive Safety and Risk Assessment dated 8 October 2019 that "[in] August 2019, Rossana [Hanley] was extremely discouraged with the lack of progress by Bianca."

72.   Dr. Hanley never stated in her notes that Bianca shouted at her or was aggressive towards her in any way.

73.   Patchin frequently took liberties with the truth to ensure her reporting on Bianca aligned with her false agenda.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

74. Reports from Jiaro's service providers were also positive, and contrary to DCS's "too-passive to protect" narrative. Still, Patchin ignored these positive reports.

75. Patchin's allegation that Bianca wanted to name J.A.J. "Motherfucker" while she labored at his birth is wholly unsubstantiated hearsay. Given the import of this allegation, it would be reasonable that the medical staff at the hospital would make a record of it. However, there is no such record.

76. Patchin included this highly prejudicial, salacious statement in her Court Reports and in her testimony, and it was the basis for DCS's unlawful seizure and detention of J.A.J.

**B. Bianca does not hate boys, despite DCS's allegations otherwise.**

77. Patchin also attributed Bianca's alleged hatred of boys to a made-up mental illness "gender dysphoria."

78. "Gender dysphoria" is a diagnosis in the DSM-5 which means a person has a strong desire to be another gender. However, when Patchin and other DCS agents used this term, it seems they intended to convey that Bianca hates male children because she was raped.

79. Bianca was never diagnosed by any therapist with gender dysphoria.

80. DCS failed to interview her oldest son, L.J. If they had, they would have learned that to this day, he loves Bianca very much.

81. DCS also ignored the obvious fact that Bianca is married to Jiaro, a man.

82. There is absolutely no credible evidence that Bianca hates boys and men, or ever held such a view.

**C. Patchin's malice and animus towards Bianca is manifest.**

83. Patchin ignored that Bianca was actually diagnosed by her PhD therapist, Dr. Hanley, with "adjustment disorder with depressed mood."

84. According to the DMS-5, "adjustment disorder" means "[t]he development of emotional or behavioral symptoms *in response to an identifiable stressor(s)* occurring

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

within 3 months of the onset of the stressor(s)." (*See* Table 3.19, DSM-IV to DSM-5 Adjustment Disorders Comparison - Impact of the DSM-IV to DSM-5 Changes on the National Survey on Drug Use and Health - NCBI Bookshelf (nih.gov)). This diagnosis makes sense, given the fact that Bianca's four children were unjustifiably removed by DCS – and two of them within moments of their birth.

85.     Patchin's animus toward Bianca is evident throughout the record. One example is an email exchange, where Bianca raised a concern that her daughter was wearing shoes that were too small at one of the supervised visits. Patchin passed along Bianca's concern to the foster mother, along with a scoffing, "HAHAHAHAHA!!"

86.     Patchin also wrote several insulting comments in emails to Bianca's service providers, such as accusing her of being a liar and making derogatory comments about her appearance (i.e., her choice of lipstick).

87.     During Patchin's testimony to the Court during the second severance trial, the tone of her voice and her body language demonstrated a tremendous personal scorn towards Bianca.

88.     Patchin's aggressive and malicious prosecution was evident in how DCS handled Bianca's visits with her children during the first dependency and severance proceedings. When the Court severed Bianca's rights as to K.J. and J.M.J. in January 2020, Bianca appealed the severance on procedural grounds. The severance was reversed, and Bianca requested to have visits reinstated with her children. However, DCS refused to re-intestate these visits, pending the final ruling on their second severance petition. As a result, Bianca has been unable to see K.J. since January 2020 or J.M.J. since early November 2018.

**D. Caseworker Del Fiacco replaces Caseworker Patchin**

89.     In March or April of 2021, Del Fiacco took over the role of the DCS Caseworker. Davisson was Del Fiacco's supervisor.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

90.     When Caseworker Del Fiacco took over in March or April 2021, Del Fiacco re-alleged Patchin's false allegations.

91.     Del Fiacco knew Patchin's allegations were false recklessly disregarded the exculpatory facts that were evidenced in the record.

92.     At a 10 January 2022, hearing, Del Fiacco testified that she had met with Mother only twice in the 10 to 11 months she had been on the case, and that she had never observed the parents during a visit with their children. Still, Del Fiacco falsely alleged that Bianca focused on the "wrong things" during the visits.

93.     These "wrong things" were that Bianca was concerned that her daughter had a very large bruise on her leg, red marks on her private parts, and tangled unkempt hair.

94.     Del Fiacco was the only individual who considered Bianca's concerns as "wrong things."

95.     The parent supervisor at Cradles to Crayons, Christina Martinez, testified at trial that Bianca's concerns about her daughter were accurate and reasonable.

96.     When Ms. Martinez supported Bianca's motion for increase visits with her children at trial, the State provided the following false statement in their response:

> "While the current service provider with Cradles to Crayons stated during trial proceedings that they do not see an issue with increasing visitations, their report dated 05 November 2021 suggests otherwise. Christina Martinez and her Supervisor who both signed off on the report, stated, '*Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children.*' This statement does not suggest Bianca has addressed the behavioral concerns that brought the children into departmental care."

97.     Both Ms. Martinez and her supervisor later stated that the italicized statement above (i.e. *Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children*) was provided by DCS at intake and was not reflective of their assessment of Bianca on 05 November 2021.

98.     This distortion shows the State blindly relied on DCS's false narrative to support the unsupportable position the Bianca is danger to her children.

16

99. DCS and the State deliberately and maliciously refused to view Bianca as anything other than a dangerous aggressor.

## V.  THE SECOND SEVERANCE TRIAL ENDS IN MAY 2022.

100. The juvenile court finally recognized at the end of the second severance trial in May 2022, that DCS's picture of Bianca as an abuser and Jiaro as a passive inept father was not accurate.

101. This family has suffered dearly because of the unconstitutional and unlawful removal and detention of K.J., J.M.J., K.A.J., and J.A.J.

102. Since September 2018 until six weeks after the May 2022 order changing the case plan to reunification, Bianca's has had only limited and, at times, no access to K.J. and J.M.J. In addition, both Bianca and Jiaro were deprived of the joy of taking K.A.J. and J.A.J. home as newborns and watching them grow from birth.

103. L.J. too has suffered, as he has lost his siblings, and has lived in fear of being taken into foster care if he were to visit his mother in Arizona. This irrevocable loss of time is unconscionable.

### A.  Defendants Knew or Should Have Known Plaintiffs' Legal Rights

104. At all relevant times DCS and its agents, Patchin, Del Fiacco, Davisson Faust and McKay ("State Defendants") knew or should have known the well-established law that the U.S. Constitution protects the fundamental right of parents to make decisions concerning the care, custody, upbringing, management, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

105. At all relevant times State Defendants knew or should have known that fit parents are presumed to act in the best interests of their children. *Id*. at 68; *Doe v. Heck*, 327 F.3d 492, 521 (7th Cir. 2003).

106. At all relevant times State Defendants knew or should have known that in Arizona, until a court declares a parent unfit, the law requires State actors to presume that a parent is fit and acting in the best interest of their child. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 119 (2018).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

107.    At all relevant times State Defendants knew or should have known that the right to family association is sheltered against the government's unwarranted usurpation, disregard, or disrespect, *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996), and families have a well-established constitutional right to live together without governmental interference, *Arce v. Children's Hospital Los Angeles*, 211 Cal.App.4th 1455, 1473 (Cal. App. 2012).

108.    At all relevant times State Defendants knew or should have known that State actors are not permitted to ignore the dictates of the United States Constitution. *Wallis v. Spencer*, 202 F.3d 1126, 1130 (9th Cir. 1999).

109.    At all relevant times State Defendants knew or should have known that any motive to protect a child from abuse does not override a parent's constitutional rights. *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999); *Franz v. Lytle*, 997 F.2d 784, 792-93 (10th Cir. 1993).

110.    At all relevant times State Defendants knew or should have known that the government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents. *Calabretta*, 189 F.3d at 820.

111.    At all relevant times State Defendants knew or should have known that each parent's conduct must be assessed separately – any implication against one parent does not constitute "specific, articulable evidence" to justify removal from the other parent. *Wallis*, 202 F.3d at 1140-41, 1142 n.14; *Fredenburg v. County of Santa Clara*, 407 Fed. Appx. 114, 115-16 (9th Cir. 2010).

112.    At all relevant times State Defendants knew or should have known that at the time K.J., J.M.J, K.A.J., and J.A.J. were seized, it was well established that the First, Fourth, and Fourteenth Amendments to the United States Constitution that any infringement upon the right to familial association must be by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest. See, e.g., *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

113.    At all relevant times State Defendants knew or should have known that the Fourth Amendment protects the child from unlawful searches and seizures.

114.    At all relevant times State Defendants knew or should have known that a parent's right to continued custody of their child arises under the First and Fourteenth Amendments and is composed of both a substantive and procedural component.

115.    At all relevant times State Defendants knew or should have known that a social worker, or other government agent, acts under color of state law while acting or purporting to act in his or her official capacity, or while exercising his or her responsibilities pursuant to state law. *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000).

116.    Given the facts of this case, Plaintiffs are entitled to relief under 42 U.S.C. § 1983 and Arizona state law.

## CLAIMS

## CLAIM ONE - UNLAWFUL SEIZURE AND DETENTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' Right to Freedom of Association under the First Amendment and Due Process under the Fourteenth and Fourth Amendments to the U.S. Constitution for unlawfully seizing and detaining K.J., J.M.J., J.A.J. and K.A.J.)**

117.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

118.    Patchin failed to conduct a prompt and thorough investigation, as is required under A.R.S. § 8-456(C)(1), before filing the dependency petitions for K.J., J.M.J. J.M.J. and K.J. which falsely alleged abuse, neglect, aggressive behavior by Bianca, and a failure to protect by Jiaro.

119.    After J.M.J. and K.J. and were removed, Patchin consistently insisted on the false narrative that J.M.J. was severely malnourished, feeble, unable to sit up, and badly bruised by Bianca.

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

120. Davisson failed to ensure Patchin's investigation met the statutory requirements under A.R.S. § 8-456(C)(1), to "make a prompt and thorough investigation" and that the DCS petition was truthful.

121. None of Patchin's allegations were true or supported by any of the records. Yet, Patchin continued with and embellished this false narrative to support keeping K.J. and J.M.J. in foster care and to also remove J.A.J. and K.A.J. immediately at birth.

122. When Patchin retired, Del Fiacco doggedly pursued the same false narrative that Bianca was an aggressive mother who hates boys and was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace.

123. Patchin substantially participated in the unlawful seizure of J.A.J. and K.A.J. by perpetuating the false narrative in Court filings that Bianca abused and neglected J.M.J., that she was an aggressive mother who hates boys, that she was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace.

124. Patchin substantially participated in the unlawful detention of K.J., J.M.J, J.A.J. and K.A.J. in State's care by perpetuating her false narrative in Court filings and to DCS service providers that Bianca abused and neglected J.M.J., that she was an aggressive dangerous parent who hates boys, and that Jiaro cannot protect the children.

125. Del Fiacco substantially participated in the unlawful detention of K.J., J.M.J., J.A.J. and K.A.J. by perpetuating the DCS false narrative in Court filings and in her testimony.

126. As Patchin and Del Fiacco's supervisor, Davisson substantially participated in the unlawful seizure of J.A.J. and K.A.J. and detention of K.J., J.M.J, J.A.J. and K.A.J. in State's care by authorizing Patchin and Del Fiacco's false filings and false.

127. At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the Fourteenth Amendment protects the rights of parents and children to live together without government interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

128.   At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Lee v. City of Los Angeles*, 250 F. 3d 668, 685 (9th Cir. 2001).

129.   At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that a state official "cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued," the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, and the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1138-1141.

130.   At the relevant times when K.J., J.M.J., J.A.J. and K.A.J. were seized and detained, DCS agents, Patchin, Del Fiacco, Davisson did not have any information that established reasonable cause to believe that these children were in imminent danger of serious bodily injury and there were no exigent circumstances.

131.   Prior to the relevant times when K.J., J.M.J., J.A.J. and K.A.J. were seized and detained, DCS agents, Patchin, Del Fiacco, and Davisson did not first pursue reasonable avenues of investigation.

132.   At the relevant times when Patchin, Del Fiacco, Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., the scope of the intrusion was not reasonably necessary to avert any specific injury, and, even if it were, the intrusion was longer than necessary to avert the injury.

133.   At the relevant times when Patchin, Del Fiacco, Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., each of them, acted under the color of law.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

21

134.     Because of DCS's wrongful seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., L.J. and Bianca were reasonably afraid to have him return to live with his mother. L.J. stayed away for four long years, even though he missed his mother dearly.

135.     Patchin, Del Fiacco, and Davisson violated Bianca, Jiaro, and L.J.'s the constitutional rights with their unlawful conduct.

136.     As a direct and proximate result of the violation of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages, in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TWO - JUDICIAL DECEPTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' right to Due Process under the Fourth and Fourteenth Amendments for making misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

137.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

138.     It is well established that liability for a § 1983 claim will lie for judicial deception. *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997).

139.     Although, the Ninth Circuit has "recognized absolute immunity for social workers ... for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," the "scope of absolute immunity for social workers is extremely narrow." *Miller v. Gammie*, 335 F.3d 889, 989 (9th Cir. 2003).

140.     Absolute immunity does not extend to the fabrication of false evidence or perjury. *Hardwick v. County of Orange,* 844 F. 3d 1112 (9th Cir. 2017).

141.     There is no absolute or qualified immunity for making false statements to a court, including signing a petition under penalty of perjury. *Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997); *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008); *Miller*, 335 F.3d at 897; *Hardwick*, 844 F.3d at 1118.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

142.     At all relevant times, "the constitutional right to be free from the knowing presentation of false or perjured evidence" was clearly established. *Hardwick*, 844 F. 3d 1112; *see also Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000); *Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996).

143.     During their testimony under oath and in reports to the juvenile, Patchin and Del Fiacco made statements which were false and/or demonstrated a reckless disregard for the truth, including, but not limited to the false testimony.

144.     Patchin made the following false statements in testimony and/or in reports to the juvenile court to support DCS's false petitions. None of these allegations are true:

a.     Bianca was homeless for several months in 2018;

b.     J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.     J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.     Bianca did not like J.M.J. because was a baby conceived by rape;

e.     K.J. had scratches on her face evidencing abuse;

f.     Bianca was aggressive;

g.     Bianca had been convicted of felonious child abuse in Missouri in 2017;

h.     on one occasion in July 2019 Bianca shouted at her therapist, Dr. Hanley;

i.     on one occasion, while in labor in the hospital, Bianca stated she would name J.A.J. "Motherfucker;"

j.     Bianca has gender dysmorphic disorder; and

k.     Bianca willfully neglected J.M.J. because she hates boys.

145.     Del Fiacco reiterated Patchin's false narrative to the court in testimony and/or in reports to the juvenile court.  In addition, Del Fiacco added that Bianca focused on the

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

23

"wrong things" during her supervised visits with her children. No other DCS service provider agreed with this assessment by Del Fiacco.

146. Davisson directed or ratified Patchin and Del Fiacco wrongful judicial deception.

147. Davisson signed Patchin and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

148. When committing these acts of judicial deception, Patchin, Del Fiacco, and Davisson were acting under color of law.

149. As a direct and proximate result of the violations of Plaintiffs' constitutional rights by judicial deception, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM THREE - FAILURE TO MAKE REASONABLE EFFORTS

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs right to Due Process under the Fourth and Fourteenth Amendments for failing to make reasonable efforts to preserve the family relationship.)**

150. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

151. At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32. A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

152. At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

153.   At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

154.   At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W*., 247 Ariz. at 19, ¶ 49.

155.   Patchin, Del Fiacco, and Davisson violated Bianca's right to the State's reasonable efforts to reunite them by failing to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and when, among other things, they (1) relied on false hearsay provided by a blame-shifting thief at the Gift of Mary Shelter; (2) failed to investigate the positive information from Missouri social workers; (3) failed to speak with L.J. who loves his mother very much; (4) failed to consider that a J.M.J. was examined by a mandatory reporter only one week prior to the false DCS hotline call; (5) failed to review the medical records which showed that when J.M.J. was placed in foster care, weighed less than he did when he was in Bianca's care; and (6) falsely asserted to the trial court that wanted to name J.A.J. "Motherfucker."

156.   Arizona law, specifically A.R.S. § 514(B), requires that DCS "place a child in the least restrictive type of placement available, consistent with the best interest of the child."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

25

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

157.    Arizona law, specifically A.R.S. § 514(B), mandates that placement of a child in a kinship care with a member of the child's family is a less restrictive placement than placement with a foster family.

158.    Patchin, Del Fiacco, and Davisson violated Bianca's right to the State's reasonable efforts to reunite her with her children by failing to keep all of the children together in one foster home.

159.    Patchin and Davisson violated Bianca's right to the State's reasonable efforts to reunite her with her children by repeatedly denying her visitation rights during the various dependency proceedings, and even after the case plan was changed to reunification in May 2022.

160.    When they violated Bianca's right to the State's reasonable efforts to reunite them, Patchin, Del Fiacco, and Davisson were acting under color of law.

161.    As a direct and proximate result of the violations of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## **CLAIM FOUR - MEDICAL DECISIONS**

**(Under 42 U.S.C. § 1983, Patchin, Del Fiacco, Davisson, Faust and McKay are liable for violating Plaintiffs right to Due Process under the Fourteenth Amendment to the U.S. Constitution to make medical decisions for E.F.)**

162.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

163.    At all relevant times, it was well established that the constitutional due process "right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless a "neutral fact

26

finder" determines, through due process hearing, that parent is not acting in child's best interests)).

164.    At all relevant times, it was well established that: "All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other institution, including: The right to make health care decisions for the minor child, including rights pursuant to §§ 15-873, 36-2271 and 36-2272, unless otherwise prohibited by law." A.R.S. § 1-602(A)(5).

165.    At all relevant times, it was well established that until there is a finding of dependency by a court, which legally entitles DCS "to temporarily invade" a parent's rights to "legal custody" of their child, that the state has no legal right to invade the constitutional and legal rights of a parent to make medical decisions for their child. *Diana H. v. Rubin*, 217 Ariz. 131, 134 ¶ 13 (2007).

166.    At all relevant times, it was well established that "the requirement that [the state child welfare organization] provide parental notice and obtain consent" before a child in its care and/or custody is provided medical treatment is not "inconsistent with [the state child welfare organization's] obligation to provide routine or emergency medical care to children in its custody." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018).

167.    Patchin, Del Fiacco, Davisson, Faust, and McKay interfered with Bianca and Jiaro's constitutional right to make medical decisions for their seized and detained children disallowing them from attending medical appointments while they were in State's care.

168.    When they violated Bianca and Jiaro's constitutional rights, their seized and detained children and each of them, were acting under color of law.

169.    As a direct and proximate result of the violations of her constitutional rights, Bianca suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## **CLAIM FIVE - MEDICAL TREATMENTS**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**(Under 42 U.S.C. § 1983 Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable for violating Plaintiffs right to Due Process Right under the Fourteenth Amendment to the U.S. Constitution to be with E.F. during medical treatment.)**

170.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

171.   At all relevant times, it was well established that the "Constitution assures parents that, in the absence of parental consent, [medical treatment] of their child may not be undertaken … at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an [treatment] exist and that the administration of the procedure is reasonable under all the circumstances." Wallis, 202 F.3d at 1141 (9th Cir. 2000). "Moreover, parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id*.

172.   Patchin, Del Fiacco, Davisson, Faust, and McKay interfered with Bianca and Jiaro's constitutional right to be present during their seized and detained children's medical appointments.

173.   When they violated Bianca and Jiaro's constitutional rights, Patchin, Del Fiacco, Davisson, Faust, and McKay and each of them, were acting under color of law.

174.   As a direct and proximate result of the violations of her constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM SIX - NEGLIGENCE PER SE

**(Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable for violating A.R.S § 8-451, § 8-453, and/or § 8-456)**

175.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

28

176.     Under Arizona law, "[a] person who violates a legislative enactment that establishes the standard of care or that has been adopted by a court as the relevant standard of care is negligent per se and the violation is conclusive as to negligence." *St. George v. Plimpton*, 241 Ariz. 163, 166, 384 P.3d 1243, 1246 (Ct. App. 2016).

177.     The Arizona legislature has enacted laws which establish the standard of care for DCS and its employees and agents.

### FAUST AND MCKAY'S VIOLATION OF A.R.S. § 8-451 AND § 8-453

178.     Under A.R.S. § 8-451, "the primary purpose of the department is to protect children."

179.     Under A.R.S. § 8-453, the director of the DCS has the duty to "[f]ormulate policies, plans and programs to effectuate the … purposes of the department."

180.     Upon information and belief, DCS agents acted in accordance with the Department's policies, plans and programs in place at the time, which were not protective of children. For example, DCS has no policies, plans, or programs in place to ensure its agents comply with A.R.S. § 8-456.

181.     As a direct and proximate cause of Faust and McKay's negligence pe say, minor children L.J., K.J., J.M.J., K.A.J., and J.A.J. were not protected; instead, they were irreparably harmed.

182.     Plaintiffs were directly and proximately harmed by Faust and McKay's violations of A.R.S. §§ 8-451 and 8-453.

183.     Directors Faust and McKay are liable for negligence per se for violations of A.R.S. §§ 8-451 and 8-453.

### PATCHIN, DEL FIACCO, AND DAVISSON'S VIOLATE A.R.S. § 8-456(A)

184.     Under A.R.S § 8-456(A), DCS "shall train all investigators in forensic interviewing and processes and the protocols … [and] [t]he training must include…[t]he duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

185.   As alleged in the paragraphs' above, Patchin, Del Fiacco, Davisson did not protect the legal and due process rights of Plaintiffs when they engaged in judicial deception to violate Plaintiffs' constitutional rights.

186.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, and Davisson's violation of A.R.S. § 8-456(A).

187.   Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(A).

### PATCHIN, DEL FIACCO, AND DAVISSON'S VIOLATE A.R.S. § 8-456(C)(1)

188.   Pursuant to A.R.S. § 8-456(C)(1), Arizona's legislature has sought to protect the rights of parents by requiring DCS to "make a prompt and thorough investigation" of any condition "that would tend to support or refute the allegation that the child is a victim of abuse or neglect."

189.   Patchin, Del Fiacco, Davisson investigations were not thorough, in violation of A.R.S. § 8-456(C)(1).

190.   The overwhelming evidence in DCS's possession at the time of J.M.J. and K.J.'s removal and detention, was counter to Patchin's false narrative. This evidence included the medical records from J.M.J.'s hospitalization at PCH in September 2018, which found J.M.J. to be playful, happy, but mildly to moderately malnourished. He was also found to have Mongolian spots on his back. Patchin distorted these records to report to the Court and Bianca's service providers that at removal, J.M.J. was so severely malnourished he could barely sit up and his back was badly bruised.

191.   Patchin's misrepresentation was permanently baked into the record and formed the basis for the juvenile court's severance of Bianca's rights as to J.M.J. in May 2022.

192.   DCS was also in possession of countless records from various parent aids, such as Christine Martinez, who held a positive view of Jiaro and Bianca.

193.   DCS knew that Bianca's therapist, Dr. Hadley, also held a positive view of Bianca.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

194.   Reports from Jiaro's service providers were also positive, and contrary to DCS's invisible father narrative.

195.   Patchin and Del Fiacco maliciously and falsely provided reports to the court and testimony that alleged Bianca was an aggressive and dangerous mother, while Jiaro was inept to protect his children from her.

196.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, Davisson's violation of A.R.S. § 8-456(C)(1).

197.   Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(C)(1).

## CLAIM SEVEN - ABUSE OF PROCESS

**(Defendant Patchin, Del Fiacco, and Davidson are liable to Plaintiffs for Abuse of Process)**

198.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

199.   The elements of an abuse-of-process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App.1982).

200.   A party can demonstrate the latter element by "showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Id*. In the context of this tort, Arizona interprets "process" as encompassing "the entire range of procedures incident to the litigation process." *Id*. at 352.

201.   As alleged in the paragraphs above, Caseworker Patchin filed two fraudulent dependency petitions and two fraudulent severance petitions.

202.   Patchin was motivated by a malicious, personal dislike of Bianca. Patchin's animus toward Bianca is evidenced in various emails, where she engaged in unbridled ad hominin attacks; for example, characterizing Bianca as a crude liar and insulting her lipstick. This is malice.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

203.   Patchin filed the fraudulent petitions under the negligent supervision of Davisson.

204.   Davisson knew, or should have known, the overwhelming evidence in the record did not support Patchin's false allegations. Davisson knew or should have known of Patchin's personal animus toward Bianca, as evidenced in the record. Yet, Davisson supported the malicious crusade against Bianca.

205.   Caseworker Del Fiacco supported Patchin's malicious crusade when Patchin retired. Del Fiacco either knew or should have known that the record did not support Patchin's false and malicious allegations. Del Fiacco either knew or should have known of Patchin's personal animus toward Bianca, as was evident in Patchin's emails, in her reports, and in her testimony at trial which was witnessed by Del Fiacco.

206.   Patchin's filing and prosecution of the dependency petitions that were supported only by falsehoods is an abuse of the judicial process.

207.   Davisson and Del Fiacco's prosecution of these petitions was an abuse of the judicial process.

208.   Despite the overwhelming evidence that Bianca and Jiaro are fit parents, Patchin and Del Fiacco, under the supervision of Davisson, continued to press charges.

209.   Even after the juvenile court denied the severance as to K.J., K.A.J., and J.A.J. on 11 May 2022, DCS defied court orders to meet within 30 days initiate the reunification process. Instead, DCS failed to initiate any meaningful steps until five months after being ordered to do so.

210.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, Davisson's abuse of process. Patchin, Del Fiacco, Davisson are liable for this harm.

## CLAIM EIGHT - GROSS NEGLIGENCE / LEGAL RIGHTS

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Faust, and McKay are liable for exercising Gross Negligence in carrying out their duty to protect the legal rights of children and families.)**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

211. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

212. Plaintiffs re-alleges and incorporates by reference each and every allegation set forth in the paragraphs above.

213. Under A.R.S. § 8-802 (D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

214. "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the Plaintiffs is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

215. Patchin, Del Fiacco, Davisson, Faust and McKay acted with gross negligence and breached their duty to protect Plaintiffs ' legal rights when they failed to properly investigate whether DCS should remove the children from their parent's care.

216. Patchin, Del Fiacco, Davisson, Faust and McKay and each of them, acted with gross negligence and breached their duty to protect the legal rights of Bianca by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

217. Patchin, Del Fiacco, Davisson, Faust and McKay acted with gross negligence and breached their duty to protect Plaintiffs ' legal rights by limiting, and at times forbidding, Bianca and Jiaro's visits with the children.

218. Patchin, Del Fiacco, Davisson acted with gross negligence and breached their duty to protect Plaintiffs ' legal rights when they made representations to the court that were false and/or demonstrated a reckless disregard for the truth.

219. As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breach of their duty, Plaintiffs suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM NINE - GROSS NEGLIGENCE / REASONABLE EFFORTS

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

33

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Mr. Faust, and Mr. McKay and each of them, are for exercising Gross Negligence in carrying out their duty to make reasonable and/or diligent efforts to preserve the family relationship.)**

220.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

221.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec*., 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32.  A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

222.    At all relevant times, it was well established that DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec*., 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

223.    At all relevant times, it was well established that "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

224.    A.R.S. § 8-533(B)(8) requires DCS agents to make a diligent effort to provide appropriate reunification services.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

34

225.    At all relevant times, it was well-established that in determining whether DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review DCS' actions during the entirety of time the child has been in DCS' care. *Donald W.*, 247 Ariz. at 19,¶ 49. "[A]bsent reasonable modifications to…rehabilitative services offered to a disabled parent, a department has failed to perform its duty under the ADA to reasonably accommodate a disability and, in turn, its obligation to make reasonable efforts to rehabilitate the parent." *People in Interest of S.K.*, 440 P. 3d 1240, 1249 (Co. App. 2019).

226.    Patchin, Del Fiacco, Davisson, Faust, McKay and each of them, acted with gross negligence and breached their duty to make reasonable and/or diligent efforts to preserve the family relationship by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

227.    As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's gross negligence, Plaintiffs suffered irreparable harm, including but not limited to, the permanent loss of her parental rights, and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TEN - GROSS NEGLIGENCE EXERCISED BY DCS EMPLOYEES

**(Under established Arizona law, Defendants Faust and McKay are liable to Plaintiffs for the Gross Negligence exercised by Defendant employees of DCS in carrying out their duties.)**

228.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

229.    Faust and McKay owed a duty to Plaintiffs to ensure that the employees, officers, and agents of DCS were qualified to serve in their respective roles before hiring and assigning employees to act as investigators and/or case managers for DCS.

230.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that employees, officers, and agents of DCS were

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

35

properly qualified before hiring and assigning employees to act as investigators and/or case managers for DCS.

231.   Faust and McKay also owed a duty to Plaintiffs to ensure that the employees, officers, and agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

232.   Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that the employees, officers, and/or agents of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

233.   Under Arizona law, specifically A.R.S. § 8-456(A)(2), DCS is required to ensure that all DCS investigators were properly trained on their "duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

234.   Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that all DCS investigators were properly trained on their duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.

235.   As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships forever, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

## CLAIM ELEVEN – UNLAWFUL DCS POLICIES AND PRACTICES

**(Under 42 U.S.C. § 1983, Defendant Arizona Department of Child Safety is liable for the unconstitutional acts of its employees which were committed pursuant to a policy and/or practice of DCS.)**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

236.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

237.    Defendant Arizona Department of Child Safety, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

238.    DCS, and those individual defendants in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiffs to establish, implement, and/or follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiffs under the United States Constitution, including under the First and Fourteenth Amendments. This includes, without limitation, the protection of the right to familial relations; the right to privacy; and the rights to substantive and procedural due process.

239.    DCS established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to:

a.    the policy of using trickery, duress, fabrications and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the juvenile court, causing an interference with parents' rights, including those as to familial relations;

b.    the policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agent, employees, and state actors, in providing the constitutional protections guaranteed to individuals and families, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency-type proceedings;

c.    the policy of setting forth allegations in juvenile dependency petitions against parents claiming child abuse and/or neglect and/or other

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

37

unsubstantiated allegations regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

d.      the policy, practice, or custom of making knowingly false allegations of child abuse and/or neglect in juvenile dependency petitions signed under penalty of perjury, motions, or other documents filed with the juvenile court as a means of intimidating parents, whether or not true, or forcing a parent to adjudicate a matter knowing that the courts most often sustain allegations, whether justified by extant evidence or not;

e.      the policy of fraudulently charging parents with child abuse and/or neglect where none exist; and

f.      the policy of failing to take appropriate action to ensure that appropriate and meaningful visitation occurs.

240.    The customs, policies, and/or practices listed herein are not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Bianca reserves their right to amend this pleading as more information becomes available.

241.    It was obvious that the policies described herein that were instituted and/or maintained by DCS would lead to constitutional violations like the violations suffered by Plaintiffs , and DCS was deliberately indifferent to the consequent constitutional violations that would inevitably occur as a direct result of its policies.

242.    DCS was indifferent to the consequences that would be established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution.

243.    DCS, breached its duties and obligations to Plaintiffs including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

38

policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the DCS employees to engage in the unlawful and unconstitutional conduct alleged herein.

244.   DCS, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that DCS employees would, and did, cause Plaintiffs to be injured and damaged by DCS's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in the contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies subjected them to injunctive relief which Plaintiffs asserts herein.

245.   These actions, and/or inactions, of DCS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs has sustained general and specific damages to an extent and in an amount to be proven at trial. Plaintiffs has incurred and will continue to incur, attorneys' fees, costs, and expenses, including those authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

## **CLAIM TWELVE - IIED**

**(Under established Arizona law, Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable to Plaintiffs for Intentional Infliction of Emotional Distress ("IIED")**

246.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above.

247.   "The tort of intentional infliction of emotional distress requires proof of three elements: First, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress

must indeed occur as a result of defendant's conduct." *Citizen Publ'g. Co. v. Miller*, 210 Ariz. 513, 516, ¶ 11, 115 P.3d 107, 110 (2005) (emphasis in original).

248.    Patchin, Del Fiacco, Davisson, Faust, and McKay's conduct was extreme and outrageous. The unwarranted removal of a child from their loving parent and then wrongfully and falsely accusing the parent of neglect and abuse is extreme and outrageous. What's worse, is that DCS repeated this offense four times.

249.    Bianca was suffering from a very brief interval of home instability at the time J.M.J. and K.J. were removed.

250.    Patchin accused Bianca of abusing and starving her son, because she falsely claimed the Mongolian spots on his back were bruises, and because she exaggerated his mild to moderate malnutrition, which was due to an organic feeding issue, as severe malnutrition.

251.    There were absolutely no signs of abuse or neglect of K.J., but DCS removed her anyway and immediately placed her in a foster care, where she has remained for the past four years.

252.    J.A.J. and K.A.J. were removed immediately at birth from both Bianca and Jiaro, on the outrageous false allegation that Bianca was aggressive and hated boys and that Jiaro could not protect his children.

253.    The grief any loving parent would suffer in such circumstances is palpable and immeasurable.

254.    Patchin, Del Fiacco, Davisson, Faust, and McKay intended to cause Plaintiffs' emotional distress or had reckless disregard for the certainty that distress would result from their conduct.

255.    Patchin, Del Fiacco, Davisson, Faust, and McKay conduct caused Plaintiffs' severe emotional distress.

256.    Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**PRAYER FOR RELIEF**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

40

**WHEREFORE, Plaintiffs prays for relief as follows:**

**A.**      **General damages and special damages according to proof, but in no event less than $3,000,000, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress;**

**B.**      **For injunctive relief in the form of DCS agreeing to provide training to all DCS case workers regarding**

- When exigent circumstances exist that justify the unwarranted seizure of a child;

- The psychological trauma and harm suffered by children and family that occurs when DCS removes a child from the custody of his or her parent;

- That prior to removing a child from the custody of his or her parent, DCS has a legal and constitutional obligation to conduct a thorough investigation into any allegations justifying removal, including investigating facts, witnesses, and evidence that refutes the allegations;

- That it is a violation of the Constitutional rights of children and parents to make misrepresentations or omissions to the court which are false and/or which demonstrate a reckless disregard for the truth; and;

- That facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of the services provided by the State and thus all reasonable efforts must be expended to ensure that a visitation occurs regularly and as scheduled.

**C.**

**D.**      **The training described in (B) above must be provided, at a minimum, annually to all DCS case workers and must be included in the training provided to persons upon their becoming a DCS case worker;**

E.      **For taxable costs and pre- and post-judgment interest to the extent permitted by law;**

F.      **For punitive and/or exemplary damages to the extent permitted by law and in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**G.**     **For attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and state law, as applicable; and,**

**G.**     **For such other relief as the Court deems just and proper under the circumstances.**

**RESPECTFULLY SUBMITTED** this 8th day of May 2023.

MILLS + WOODS LAW PLLC

By_____/s/ Thomas A. Connelly_____
Thomas A. Connelly
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

DeeAn Gillespie Strub
Sandra Daussin
7319 North 16th Street
Phoenix, AZ 85020

*Attorneys for Plaintiffs*

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951247

**Plaintiff's Attorneys:**

Thomas A Connelly - Primary Attorney
Bar Number: 019430, issuing State: AZ
Law Firm: Mills + Woods Law, PLLC
5055 N. 12th St. Suite 101
Phoenix, AZ 85014
Telephone Number: (480)999-4556X1008
Email address: tconnelly@millsandwoods.com

Deean Gillespie Strub
Bar Number: 009987, issuing State: AZ
Law Firm: Gillespie Shields
Telephone Number: (602)870-9700

Sandra Daussin
Bar Number: 037274, issuing State: AZ
Law Firm: Gillespie Shields
Telephone Number: (602)870-9700

**CV2023-007002**

**Plaintiffs:**

BIANCA JUMENEZ-BENCEBI

JIARO ABREGO ZAVALETA

BIANCA JIMENEZ-BENCEBI, a parent for L. J., a minor
Minor's Date of Birth: 06/27/2005

**Defendants:**

STATE OF ARIZONA

ARIZONA DEPARTEMENT OF CHILD SAFETY

CARIN PATCHIN

JOHN DOE PATCHIN

TRACEY DEL FIACCO

AZTurboCourt.gov Form Set #7973633

JOHN DOE DEL FIACCO

AMANDA DAVISSON

JOHN DOE DAVISSON

MICHAEL FAUST

JANE DOE FAUST

GREGORY MCKAY

JANE DOE MCKAY

JOHN AND JANE DOES 1-5

BLACK ENTITIES 1-5

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: 42 USC SEC 1983, ARS 12-641

AZTurboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951249

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: STATE OF ARIZONA

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951248

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2023-007002**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Thomas A Connelly /s/
Plaintiff/Attorney for Plaintiff

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951250

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: ARIZONA DEPARTEMENT OF CHILD SAFETY

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951251

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: CARIN PATCHIN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
    Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951252

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BIANCA JUMENEZ-BENCEBI, et al.<br>Plaintiff(s),<br>v.<br>STATE OF ARIZONA, et al.<br>Defendant(s). | Case No.  **CV2023-007002**<br><br>**SUMMONS** |

To: JOHN DOE PATCHIN

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951253

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2023-007002**

**SUMMONS**

To: TRACEY DEL FIACCO

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973833

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951254

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: JOHN DOE DEL FIACCO

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951255

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2023-007002**

**SUMMONS**

To: AMANDA DAVISSON

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951256

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: JOHN DOE DAVISSON

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
   Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

AZturboCourt.gov Form Set #7973633

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951257

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: MICHAEL FAUST

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951258

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: JANE DOE FAUST

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951259

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No. **CV2023-007002**

**SUMMONS**

To: GREGORY MCKAY

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZturboCourt.gov Form Set #7973633

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951260

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: JANE DOE MCKAY

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951261

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JUMENEZ-BENCEBI, et al.
Plaintiff(s),
v.
STATE OF ARIZONA, et al.
Defendant(s).

Case No.  **CV2023-007002**

**SUMMONS**

To: JOHN AND JANE DOES 1-5

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson,</u>
    <u>Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's</u>
    <u>approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
5/8/2023 6:23:24 PM
Filing ID 15951262

Person/Attorney Filing: Thomas A Connelly
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556X1008
E-Mail Address: tconnelly@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019430, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BIANCA JUMENEZ-BENCEBI, et al.<br>Plaintiff(s),<br>v.<br>STATE OF ARIZONA, et al.<br>Defendant(s). | Case No. **CV2023-007002**<br><br>**SUMMONS** |

To: BLACK ENTITIES 1-5

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.


GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA


SIGNED AND SEALED this Date: *May 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7973633

2

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
7/6/2023 12:54:59 PM
Filing ID 16243434

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Mark Shields (AZ Bar #018614)
**GILLESPIE, SHIELDS, & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

BIANCA JIMENEZ-BENCEBI, et al

                Plaintiffs,

     v.

STATE OF ARIZONA, et al

                Defendants.

Case No.: CV2023-007002

**NOTICE OF
CHANGE OF FIRM NAME AND
CHANGE OF COUNSEL WITHIN
THE SAME LAW FIRM**

     PLEASE TAKE NOTE that the law firm Gillespie, Shields, Goldfarb & Taylor has changed its name to Gillespie, Shields, & Taylor ("the Firm"). In addition, Sandra Daussin of the Firm hereby withdraws as counsel of record for Plaintiffs Bianca Jimenez-Bencebi, Jiaro Abrego Zavaleta, and L.J.[1], (together "Plaintiffs"). Mark Shields of the Firm, email mshield@gillaw.com, telephone (480) 985-4000, now represents Plaintiff. There are no

_____

[1] L.J. is a fictitious name used to protect the identity of a minor.

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

other changes. Plaintiff continues to be represented by DeeAn Gillespie Strub of the Firm, and by Tom Connelly, Robert Mills, and Sean Woods of Mills + Woods Law PLLC.

**RESPECTFULLY SUBMITTED** this 6th day of July.

**MILLS + WOODS LAW PLLC**

By_____*/s/ Thomas A. Connelly*_____
        Thomas A. Connelly
        Robert T. Mills
        Sean A. Woods
        5055 North 12th Street, Suite 101
        Phoenix, AZ 85014

**GILLESPIE, SHIELDS, & TAYLOR**

        DeeAn Gillespie Strub
        Mark Shields
        7319 North 16th Street
        Phoenix, AZ 85020

        *Attorneys for Plaintiffs*

**ORIGINAL** E-Filed this 6th day of July 2023 with the Clerk of the Maricopa County Superior Court.

_____*/s/ Chase Martins*_____

2

Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
07/12/2023
by Superior Court Admin
on behalf of Clerk of the
Superior Court

Ct. Admin
Deputy

07/08/2023

COURT ADMINISTRATION

**Case Number:** CV2023-007002

**Bianca Jimenez-Bencebi**

**V.**

**State Of Arizona**

---

The Judge assigned to this action is the Honorable Brad Astrowsky

## NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 05/08/2023 is subject to dismissal pursuant to Rule 4 (i) of the Arizona Rules of Civil Procedure. The deadline for completing service is 08/07/2023. If the time for completing service has not been extended by the court and no defendants have been served by this date, the case will be dismissed without prejudice.

All documents required to be filed with the court should be electronically filed through Arizona Turbo Court at www.azturbocourt.gov.

Superior Court of Maricopa County - integrated Court Information System
## Endorsee Party Listing
Case Number: CV2023-007002

| Party Name | Attorney Name | |
|---|---|---|
| Bianca Jimenez-Bencebi | Thomas A Connelly | Bar ID: 019430 |
| Jiaro Abrego Zavaleta | Thomas A Connelly | Bar ID: 019430 |

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
7/27/2023 11:12:19 AM
Filing ID 16350281

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
tconnelly@millsandwoods.com
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BIANCA JIMENEZ-BENCEBI, *et al.*, | Case No.: CV2023-007002 |
| Plaintiffs, | **EXPEDITED MOTION TO ENLARGE TIME FOR SERVICE OF PROCESS** |
| v. | |
| STATE OF ARIZONA, *et al.*, | (Hon. Brad Astrowsky) |
| Defendants. | (EXPEDITED RULING REQUESTED) |

Plaintiffs, by and through undersigned counsel, pursuant to A.R.Civ.P. Rule 4(i) hereby requests the Court grant an enlargement of time amend the complaint and to serve Defendants for good cause shown.

## MEMORANDUM OF POINTS AND AUTHORITIES

On May 8, 2023, Plaintiffs filed the Complaint against Defendants State of Arizona, Arizona Department of Child Safety, Carin Patchin, John Doe Patchin, Tracey Del Fiacco, John Doe Fiacco, Amanda Davisson, John Doe Davisson, Michael Faust, Jane Doe Faust, Gregory McKay, Jane Doe McKay, John and Jane Does 1-5, Clack Entities 1-5.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Following the termination of the underlying dependency proceedings on May 25, 2023, and after the Complaint here was filed, Plaintiffs obtained new information material to the claims set forth in the Complaint. This newly acquired information is critical to the case and merits careful consideration while amending the complaint.

In addition to the new information, the attorney who drafted the Complaint and was tasked with amending it based upon the receipt of this new information, left the Gillespie, Shields, & Taylor law firm. She left the firm due to unforeseen circumstances and provided very little notice before moving to the State of Alaska.

Another attorney from the Gillespie firm, Mark Shields, filed a notice of substitution of counsel on July 6, 2023. The departure of Ms. Daussin and subsequent necessary substitution of Mr. Shields was unexpected. He needs additional time to become fully acquainted with the complexities of the case and to amend the Complaint to better serve the interests of justice.

Plaintiffs' counsel is committed to diligently representing Plaintiffs' interests, and it is essential to have sufficient time to amend the Complaint before serving it on Defendants.  Granting an enlargement of time to serve Defendants will allow Plaintiffs time to amend the and then serve the amended complaint. This manner of proceeding will ensure a clear and focused presentation of the Plaintiffs' claims. Granting the enlargement of time for service will also preserve judicial resources and avoid unnecessary and duplicative process serving fees by having to serve Defendants only once.

Furthermore, Plaintiffs to date have not been able to identify addresses of all Defendants for personal service. Plaintiffs continue to diligently strive to obtain the addresses of all Defendants to effectuate personal service of the summons and the (amended) complaint. Due to the unique circumstances surrounding this case and the involvement of multiple parties and agencies, this process has taken longer than initially anticipated.

Therefore, for good cause shown, Plaintiffs request that this Court extend the time and enlarge the deadline for service of process for a period of thirty (30) days, until

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

2

September 8, 2023, to allow time for Plaintiffs to amend the Complaint and then serve summons and the amended Complaint.

      **RESPECTFULLY SUBMITTED** this 27th day of July.

                **MILLS + WOODS LAW PLLC**

                By_____*/s/ Thomas A. Connelly*_____
                   Thomas A. Connelly
                   Robert T. Mills
                   Sean A. Woods
                   5055 North 12th Street, Suite 101
                   Phoenix, AZ 85014

                **GILLESPIE, SHIELDS, & TAYLOR**

                   DeeAn Gillespie Strub
                   Mark Shields
                   7319 North 16th Street
                   Phoenix, AZ 85020

                   *Attorneys for Plaintiffs*

**ORIGINAL** E-Filed this 26th day of July 2023
with the Clerk of the Maricopa County Superior Court.

*/s/ Chase Martins*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

3

Granted with Modifications
***See eSignature page***

Case 2:23-cv-02075-MTM   Document 1-3   Filed 10/03/23   Page 129 of 189

Clerk of the Superior Court
*** Electronically Filed ***
L. Gilbert, Deputy
8/1/2023 8:00:00 AM
Filing ID 16362637

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| BIANCA JIMENEZ-BENCEBI, *et al.*, | Case No.: CV2023-007002 |
| Plaintiffs, | |
| v. | **ORDER** |
| STATE OF ARIZONA, *et al.*, | |
| Defendants. | |

The Court, having received Plaintiffs' Motion to Enlarge Time for Service of Process and good cause appearing,

**IT IS HEREBY ORDERED** granting the motion and extending the deadline for Plaintiffs to serve their amended complaint up to and including September 8, 2023.

Dated this _____ day of July 2023.

_____
Honorable Brad Astrowsky
Maricopa County Superior Court Judge

eSignature Page 1 of 1

Filing ID: 16362637   Case Number: CV2023-007002
Original Filing ID: 16350281

_____

**Granted with Modifications**



/S/ Brad Astrowsky Date: 7/31/2023
_____
Judicial Officer of Superior Court

**ENDORSEMENT PAGE**

CASE NUMBER: CV2023-007002                    SIGNATURE DATE: 7/31/2023

E-FILING ID #: 16362637                            FILED DATE: 8/1/2023 8:00:00 AM

THOMAS A CONNELLY

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
9/1/2023 3:18:36 PM
Filing ID 16536634

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| BIANCA JIMENEZ-BENCEBI, an individual; | Case No.: CV2023-007002 |
| JIARO ABREGO ZAVALETA, an individual; | **FIRST AMENDED COMPLAINT** |
| L.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI; | |
| K.J., a minor, through her parent and guardian BIANCA JIMENEZ-BENCEBI; | |
| K.A.J., a minor, through her parent and guardian BIANCA JIMENEZ-BENCEBI; and | **JURY TRIAL REQUESTED** |
| J.A.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI, | |
| Plaintiffs, | |
| v. | |
| STATE OF ARIZONA, a government entity; CARIN PATCHIN, individually and as an | |

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1  employee with the State of Arizona
   Department of Child Safety;
2  TRACEY DEL FIACCO, individually and as
3  an employee with the State of Arizona
   Department of Child Safety;
4  AMANDA DAVISSON, individually and as
   an employee with the State of Arizona
5  Department of Child Safety;
6  MICHAEL FAUST, as Director, Arizona
   Department of Child Safety; and
7  GREGORY MCKAY, as Former Director,
   Arizona Department of Child Safety;
8

9
                                    Defendants.

10
         Plaintiffs Bianca  Jimenez-Bencebi,  Jiaro Abrego Zavaleta, L.J., K.J., K.A.J., and

11
   J.A.J. (together "Plaintiffs") by and through their counsel, file this Complaint against the

12
   Defendants the State of Arizona, the Arizona Department of Child Safety, Carin Patchin,

13
   Tracey Del Fiacco, Amanda Davisson, Michael Faust, and Gregory McKay.  Plaintiffs state

14
   and allege as follows:

15
                          **JURISDICTION AND VENUE**

16
         1.      Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and

17
   Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871,

18
   42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

19
         2.      The amount in controversy exceeds the minimal jurisdictional limits of this

20
   Court.

21
         3.      This Court has original subject matter jurisdiction over the claims made in

22
   this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution.

23
         4.      The acts and events giving rise to the causes of action alleged herein

24
   occurred in Maricopa County, Arizona, and all Defendants are subject to the personal

25
   jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided

26
   under Arizona law and the Arizona Rules of Civil Procedure.

27

28

                                        2

5.      Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## THE PARTIES

6.      Plaintiff Bianca Jimenez-Bencebi ("Bianca") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Bianca resided in Maricopa County, Arizona.

7.      Plaintiff Jiaro Abrego Zavaleta ("Jiaro") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Jiaro resided in Maricopa County, Arizona.

8.      Plaintiff L.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At most times relevant to the present Complaint, L.J. resided in Maricopa County, Arizona.

9.      Plaintiff K.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, K.J. resided in Maricopa County, Arizona.

10.     Plaintiff K.A.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, K.A.J. resided in Maricopa County, Arizona.

11.     Plaintiff J.A.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, J.A.J. resided in Maricopa County, Arizona.

12.     Defendant State of Arizona, is a government entity, operating through several agencies, including the Arizona Department of Child Safety ("DCS"), which acts by and through its officials, employees, and agents, including, without limitation, each of the other Defendants in this action.

13.     Defendant Carin Patchin ("Patchin") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Patchin was, at all

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

3

times relevant to the present Complaint, an employee of the State of Arizona through DCS. At all times relevant to this Complaint, Patchin was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.     Defendant Tracey Del Fiacco ("Del Fiacco") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Del Fiacco was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Del Fiacco was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

15.     Defendant Amanda Davisson ("Davisson") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Davisson was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Davisson was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

16.     Defendant Michael Faust ("Faust") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Faust served, at times relevant to this Complaint, as the Director of the DCS. At times relevant to this complaint, Faust was the official policymaker for the DCS and acting under the color of law as an employee of the State for DCS. He is named herein in his individual and official capacity.

17.     Defendant Gregory McKay ("McKay") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Before Faust was the DCS Director, McKay was, at times relevant to this Complaint, the Director of the DCS. At times relevant to this complaint, McKay was the official policymaker and acting under the color of law as an employee of the State and for DCS. He is named herein in his individual and official capacity.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18.     John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiffs and who are, therefore, designated by fictitious names. Plaintiffs will ask leave of the Court to substitute the true names of the said parties prior to the entry of Judgement herein.

19.     Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

20.     At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs alleges, upon information and belief, that each Defendant was and is the agent, employee, principal, employer, co-conspirator, or any combination thereof of each of the remaining defendants, vice versa, or both. In addition, Plaintiffs alleges, upon information and belief, that the Defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above Defendants conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any combination thereof, each of the remaining Defendants in committing the acts herein alleged or failed to prevent such acts when having the power, duty, or authority to do so with full knowledge of said acts.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**FACTUAL ALLEGATIONS**[1]

I.   **BACKGROUND FACTS**

21.   Bianca  Jimenez-Bencebi ("Bianca")  is the natural mother of L.J. (born in 2005), K.J. (born in 2016), J.M.J. (born in 2017), K.A.J. (born in 2019), and J.A.J. (born in 2020).

22.   Jiaro Abrego Zavaleta ("Jiaro") is married to Bianca and is the father of K.A.J. and J.A.J.

23.   L.J. was living with his natural father in Puerto Rico when DCS began its wrongful interference with this family. L.J. wanted to return to Arizona to be with his mother, as he has a close relationship with her. However, both L.J. and Bianca were fearful that if he returned, he too would be unlawfully seized and detained by DCS, as were all his siblings. As a result, L.J. remained living with his father in Puerto Rico and spoke to his mother by phone daily, and sometimes twice a day.

A. **While living in Missouri, Bianca conceives a child by rape.**

24.   In 2016, Bianca was living in Missouri with L.J. and K.J. On or around 30 November 2016, Bianca was raped and J.M.J. was conceived. At the time of the rape, L.J. was 11 years old and K.J. was six months.

25.   L.J. knew of the rape and was traumatized, but neither L.J. nor Bianca had any trauma therapy to deal with this violent crime. L.J. reported the rape to the police.

26.   When Bianca was eight months pregnant, on 17 July 2017, L.J. was acting out and Bianca allegedly hit and bit him. L.J. called the police, and Bianca was arrested. There was no trial.

27.   Bianca pled guilty to a misdemeanor charge of physically abusing L.J upon advice of counsel that this would be the quickest path to resolution. Bianca served a 120-day jail sentence for this misdemeanor charge. It was her first, and only criminal offense.

---

[1] Plaintiffs makes the allegations in this Complaint based upon personal knowledge as to those matters in which she had personal involvement and upon information and belief as to all other matters.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

28.     Until this time, there was no question if Bianca could parent her son and daughter. As a single mother, she alone clothed, housed, fed, educated, and cared for her children.

29.     While Bianca served her sentence, J.M.J. was born on 25 August 2017; and K.J. and J.M.J. (after his birth) were placed in foster care. Bianca voluntarily let L.J. live with his father in Puerto Rico.

30.     After her release, Bianca allowed L.J. to stay with his father in Puerto Rico, believing this was in his best interest.

31.     The State of Missouri returned K.J. and J.M.J. to Bianca in December 2017, a few weeks after she was released from jail.

32.     When the children were returned, the Missouri social workers wrote many positive things about Bianca's parenting, including the fact that L.J. was polite and well-educated and that K.J. was well-cared for and had a strong bond with her mother. DCS never reported this positive information to the juvenile court during any of the dependency proceedings.

**B.      Bianca moves to Arizona.**

33.     In January 2018, Bianca moved from Missouri to Arizona to live with Jiaro, who she later married, and his sister.

34.     Bianca's standards for cleanliness were much higher than her Jiaro's sister's.

35.     In late August 2018, Jiaro's sister threw Bianca out of the house because of a dispute over housekeeping. Bianca was pregnant with K.A.J. at the time.

36.     Because of the abrupt eviction, Bianca suffered a temporary period of housing instability which lasted only a few weeks. During this time, Bianca, K.A.J. and J.M.J. spent a few days in a homeless shelter, Gift of Mary Shelter.

37.     On 06 September 2018, when Bianca, K.A.J. and J.M.J. were homeless, Bianca brought J.M.J. to a medical appointment to keep his vaccinations up to date. This medical professional and mandatory reporter noted nothing unusual about J.M.J. and did not report Bianca. This was a mere eight days before DCS involvement with this family,

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

when K.J. and J.M.J. were unlawfully seized and removed under false pretenses.

## II.  PROCEDURAL HISTORY

38.  The procedural history is as follows:

a.  K.J. and J.M.J. wrongfully removed from Bianca's loving care in September 2018 as the result of Patchin and Davisson's failure to investigate and false allegations of abuse and neglect.

b.  The first dependency petition was filed in September 2018 as to K.J. and J.M.J.

c.  On 24 January 2019, DCS filed a petition to terminate Bianca's parental rights to K.J. and J.M.J.

d.  During these dependency proceedings, on 5 March 2019 K.A.J. was born and she was removed immediately at birth.

e.  The removal of K.A.J. was based on Patchin and Davisson's steadfast adherence to a malicious and distorted view that Bianca is an aggressive ex-felon and that Jiaro is too passive to protect his children from this menace.

f.  In January 2020, Bianca's parental rights were severed as to K.J. and J.M.J, but the severance was overturned on procedural grounds.

g.  On 14 December 2020, DCS filed another petition to terminate the parent-child relationship as to K.J., J.M.J., and K.A.J.

h.  During these proceedings, on 12 February 2020, J.A.J. was born and he was immediately removed at birth.

i.  On 20 May 2021, DCS amended the December 2020 severance petition to include J.A.J. The petition was now for the termination of the parent-child relationship as to all four children (K.J., J.M.J., K.A.J., and J.A.J.)

j.  The decision to remove J.A.J. and to include him in the severance petition was based on Patchin and Davisson's adherence to their false

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

narrative that Bianca was an aggressive boy-hating felon, and Jiaro cannot protect his children.

k.      On 11 May 2022, the juvenile court ruled from the bench to severe Bianca's rights as to J.M.J, based on neglect under A.R.S. § 8-533(B)(2). At the same time, the juvenile court changed the case plan from severance to reunification for K.J, K.A.J., and J.A.J. The court ordered DCS to have a meeting with parents within 30 days of 11 May 2022 ruling to start the reunification process.

39.     For the first six weeks after the 11 May 2022 order, DCS cancelled all of Plaintiffs' supervised visits with their children.

40.     In direct violation of the 11 May 2022 order, DCS took no affirmative steps toward implementing the reunification case plan until more than five months later.

41.     DCS involvement continued until May 25, 2023, when the juvenile court dismissed the dependency action and ended the State, DCS and its agents' involvement. K.J, K.A.J., and J.A.J. are now living with Bianca and Jiaro.

42.     Defendant Patchin served as the DCS Caseworker at all times relevant between October 2018 to March 2021.

43.     At all times relevant after March 2021, Defendant Del Fiacco was the DCS Caseworker.

44.     At all times relevant, DCS employee Defendant Davisson was the supervisor for Patchin and Del Fiacco.

45.     DCS agents Patchin and Del Fiacco deceived the juvenile court by presenting information that they knew, or reasonably should have known, was false.

46.     DCS supervisor Davisson directed or ratified Patchin and Del Fiacco's wrongful acts. Davisson also signed Patchin and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

47.     The actions of the DCS agents in seizing and detaining K.J., J.M.J., K.A.J, and J.A.J. violated Plaintiffs' constitutional rights and statutory rights under Arizona state law.

## III.     UNLAWFUL SEIZURE AND DETENTION OF K.J. AND J.M.J.

### A.  DCS removes K.J. and J.M.J. on 14 September 2018

48.     On 14 September 2018, DCS removed K.J and J.M.J. The following events led to this removal.

a.     While at the Gift of Mary Shelter, money was stolen from Bianca's purse.

b.     When she complained about the theft, Bianca was asked to leave.

c.     Later, a hotline call was made to DCS. Upon information and belief, the thief called DCS to blame-shift and to avoid also being removed from the shelter.

d.     DCS failed to investigate this incident thoroughly, and no eyewitnesses were produced to testify.

e.     Based only on this hearsay from a witness who had a motive to lie, Caseworker Patchin reported to the juvenile court that Bianca threatened a person with a knife at the Gift of Mary Shelter, left J.M.J. in his car seat for extended times, prevented others from feeding J.M.J., and only paid attention to K.J.

49.     None of the allegations made in the hotline call were true.

50.     Bianca never threatened anyone, and never left J.M.J. in his car seat.

51.     While it was true that she did not let strangers at the Gift of Mary Shelter feed J.M.J. all solid foods, any loving mother in this situation would have done the same. J.M.J. was only 12 months old at the time and he had some difficulties swallowing certain solid foods and had problems digesting cow's milk.

52.     Both J.M.J. and K.J. were taken to Phoenix Children's Hospital "PCH" for physical examination upon removal by DCS on 14 September 2018.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

10

53.     Even though there were no issues found with K.J., she was immediately taken into foster care and never returned to Bianca.

54.     J.M.J. was admitted to PCH and found to have mild to moderate malnutrition.

**B. J.M.J. is Admitted to PCH and Released to His "Adoptive" Parents**

55.     J.M.J. was in-patient at PCH from 14 September 2018 to 20 September 2018.

56.     On the day of removal, the medical records note that J.M.J. could sit on his own, pull to stand, and was active, crawling, playful and happy, and that he had a total of one small fine scratch (~3/4 inch), one small bruise (~1/4 inch) on his cheek, and three small bruises (~1/4 to 3/8 inch) on his right thigh.

57.     Mongolian spots were found on his back and buttocks, as well as some areas of hyperpigmentation. He had no bruising *at all* on his back; and the shape of J.M.J.'s head was normal, and not noted as flat.

58.     After six days in the hospital, PCH at the instruction of DCS on behalf of the State, discharged J.M.J. to his "adoptive" mothers.

**C. J.M.J.'s Medical Records Show He Had an Organic Feeding Issue**

59.     After one week in foster care, J.M.J. lost weight below is admission weight. J.M.J.'s body weight was 17.3 pounds when he was admitted to PCH on 14 September 2018, and was 17.1 pounds on 26 September 2018, after one week in foster care.

60.     That is, because of his organic feeding issue, J.M.J. became more malnourished while in the State and DCS custody.

61.     This exculpatory evidence was immediately evident to Caseworker Patchin, but she knowingly or recklessly ignored it.

**D. DCS Petition's to Terminate Bianca's Parental Rights to K.J. and J.M.J.**

62.     On 24 January 2019, DCS filed a petition to terminate Bianca's parental rights as to K.J. and J.M.J.

63.     DCS Caseworker Patchin, under the supervision of Davisson, perpetuated the following false narrative in the DCS petition, reports to the juvenile court, and in testimony:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

11

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

a.    Bianca was homeless for several months in 2018;

b.    J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.    J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.    Bianca did not like J.M.J. because was a baby conceived by rape;

e.    K.J. had scratches on her face evidencing abuse;

f.    Bianca was aggressive, as reported by a nameless witness at a homeless shelter; and

g.    Bianca had been convicted of felonious child abuse in Missouri in 2017.

64.    None of these allegations are true.

65.    Patchin documented throughout the DCS records her false narrative that at J.M.J.'s removal, he was feeble, severely malnourished, and had non-accidental bruising all over his back. These records were shared with the Court and with multiple service providers. None of these allegations are true.

66.    Patchin also falsely alleged in her reports and in testimony to the juvenile court that Bianca is an aggressive ex-felon who hates boys and is a danger to her children. This allegation is not true.

67.    Patchin's statements were provably false, as follows:

a.    Bianca's home instability was brief, measured in weeks not months.

b.    During the interval of housing instability, Bianca managed to take J.M.J. for his one-year checkup and vaccinations with the assistance of her now husband Jiaro. Bianca did this because she loves her son, and she was doing her best to take care of him. Upon physical exam of J.M.J. this medical provider, a mandatory reporter, saw no reason to report Bianca to DCS.

c.    Bianca's purported aggressiveness was actually an attempt at blame-shifting by the thief who stole Bianca's money at the Gift of Mary Shelter.

12

d.     J.M.J. was not severely malnourished or feeble in any way when in Bianca's care.

e.     J.M.J. lost weight one week *after* he was taken into DCS custody.

f.     The foster parents also noted that J.M.J. was "choking while eating" and he was evaluated by doctors for a feeding issue after six months in DCS care.

g.     J.M.J.'s mild or moderate malnutrition in September 2018 was most likely attributable to this feeding issue rather that any neglect on Bianca's part.

68.     Within months of DCS involvement, just after Bianca successfully completed parent aid services, Patchin inexplicably changed the case plan from family reunification to severance as to J.M.J and K.J.

## IV.     UNLAWFUL SEIZURE AND DETENTION OF K.A.J. AND J.A.J.

### A.     The DCS False Narrative Continues.

69.     Patchin, under the supervision of Davisson, continued to fabricate allegations to justify removing K.A.J. and J.A.J., both immediately at birth, and for keeping K.J. and J.M.J. in the State's care.

70.     The gravamen of the State and DCS agents' allegations were that Bianca's general aggression and hatred of boys remained uncured, rendering her an unfit parent, and that Jiaro was too passive to protect his children from Bianca.

71.     Specifically, Patchin fabricated the following allegations to support removing K.A.J. and J.A.J. and to keep all the children in State's care:

a.     on one occasion in July 2019 Bianca allegedly shouted at her therapist, Dr. Hanley;

b.     on one occasion, while in labor in the hospital, Bianca allegedly stated she would name J.A.J. "Motherfucker;"

c.     Bianca allegedly has gender dysmorphic disorder; and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

d.      Bianca allegedly willfully neglected J.M.J. because she hates boys.

72.     None of these allegations were true.

73.     Dr. Hanley stated in a report dated 28 August 2019 that "there is a good chance that [Bianca] has completed what she needs to do for DCS." Contrast this with what Patchin falsely reported in a Comprehensive Safety and Risk Assessment dated 8 October 2019 that "[in] August 2019, Rossana [Hanley] was extremely discouraged with the lack of progress by Bianca."

74.     Dr. Hanley never stated in her notes that Bianca shouted at her or was aggressive towards her in any way.

75.     Patchin frequently took liberties with the truth to ensure her reporting on Bianca aligned with her false agenda.

76.     Reports from Jiaro's service providers were also positive, and contrary to DCS's "too-passive to protect" narrative. Still, Patchin ignored these positive reports.

77.     Patchin's allegation that Bianca wanted to name J.A.J. "Motherfucker" while she labored at his birth is wholly unsubstantiated hearsay. Given the import of this allegation, it would be reasonable that the medical staff at the hospital would make a record of it. However, there is no such record.

78.     Patchin included this highly prejudicial, salacious statement in her Court Reports and in her testimony, and it was the basis for DCS's unlawful seizure and detention of J.A.J.

**B. Bianca does not hate boys, despite DCS's allegations otherwise.**

79.     Patchin also attributed Bianca's alleged hatred of boys to a made-up mental illness "gender dysphoria."

80.     "Gender dysphoria" is a diagnosis in the DSM-5 which means a person has a strong desire to be another gender. However, when Patchin and other State and DCS agents used this term, it seems they intended to convey that Bianca hates male children because she was raped.

81.     Bianca was never diagnosed by any therapist with gender dysphoria.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

82.   The State and DCS failed to interview her oldest son, L.J. If they had, they would have learned that to this day, he loves Bianca very much.

83.   The State and DCS also ignored the obvious fact that Bianca is married to Jiaro, a man.

84.   There is no credible evidence that Bianca hates boys and men, or ever held such a view.

**C. Patchin's malice and animus towards Bianca is manifest.**

85.   Patchin ignored that Bianca was actually diagnosed by her PhD therapist, Dr. Hanley, with "adjustment disorder with depressed mood."

86.   According to the DMS-5, "adjustment disorder" means "[t]he development of emotional or behavioral symptoms *in response to an identifiable stressor(s)* occurring within 3 months of the onset of the stressor(s)." (*See* Table 3.19, DSM-IV to DSM-5 Adjustment Disorders Comparison - Impact of the DSM-IV to DSM-5 Changes on the National Survey on Drug Use and Health - NCBI Bookshelf (nih.gov)). This diagnosis makes sense, given the fact that Bianca's four children were unjustifiably removed by DCS – and two of them within moments of their birth.

87.   Patchin's animus toward Bianca is evident throughout the record. One example is an email exchange, where Bianca raised a concern that her daughter was wearing shoes that were too small at one of the supervised visits. Patchin passed along Bianca's concern to the foster mother, along with a scoffing, "HAHAHAHAHA!!"

88.   Patchin also wrote several insulting comments in emails to Bianca's service providers, such as accusing her of being a liar and making derogatory comments about her appearance (i.e., her choice of lipstick).

89.   During Patchin's testimony to the Court during the second severance trial, the tone of her voice and her body language demonstrated a tremendous personal scorn towards Bianca.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

90.     Patchin's aggressive and malicious prosecution was evident in how the State, DCS and its agents handled Bianca's visits with her children during the first dependency and severance proceedings. When the Court severed Bianca's rights as to K.J. and J.M.J. in January 2020, Bianca appealed the severance on procedural grounds. The severance was reversed, and Bianca requested to have visits reinstated with her children. However, DCS and its agents refused to re-intestate these visits, pending the final ruling on their second severance petition. As a result, Bianca has been unable to see K.J. since January 2020 or J.M.J. since early November 2018.

**D.    Caseworker Del Fiacco replaces Caseworker Patchin**

91.     In March or April of 2021, Del Fiacco took over the role of the State's DCS Caseworker. Davisson was Del Fiacco's supervisor.

92.     When Caseworker Del Fiacco took over in March or April 2021, Del Fiacco re-alleged Patchin's false narrative and allegations.

93.     Del Fiacco knew Patchin's allegations were false recklessly disregarded the exculpatory facts that were evidenced in the record.

94.     At a 10 January 2022, hearing, Del Fiacco testified that she had met with Mother only twice in the 10 to 11 months she had been on the case, and that she had never observed the parents during a visit with their children. Still, Del Fiacco falsely alleged that Bianca focused on the "wrong things" during the visits.

95.     These "wrong things" were that Bianca was concerned that her daughter had a very large bruise on her leg, red marks on her private parts, and tangled unkempt hair.

96.     Del Fiacco was the only individual who considered Bianca's concerns as "wrong things."

97.     The parent supervisor at Cradles to Crayons, Christina Martinez, testified at trial that Bianca's concerns about her daughter were accurate and reasonable.

98.     When Ms. Martinez supported Bianca's motion for increase visits with her children at trial, the State provided the following false statement in their response:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

> "While the current service provider with Cradles to Crayons stated during trial proceedings that they do not see an issue with increasing visitations, their report dated 05 November 2021 suggests otherwise. Christina Martinez and her Supervisor who both signed off on the report, stated, '*Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children*.' This statement does not suggest Bianca has addressed the behavioral concerns that brought the children into departmental care."

99.     Both Ms. Martinez and her supervisor later stated that the italicized statement above (i.e. *Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children*) was provided by the State through DCS at intake and was not reflective of their assessment of Bianca on 05 November 2021.

100.     This distortion shows the State blindly relied on the State, DCS and its agents' false narrative to support the unsupportable position the Bianca is danger to her children.

101.     DCS and the State deliberately and maliciously refused to view Bianca as anything other than a dangerous aggressor.

102.     On February 4, 2022, Carlos J. Vega, PSY.D. issued his report regarding Bianca's psychological evaluation.  Dr. Vega found that the State and DCS were essential mistreating Bianca rather than assisting her, re-victimizing her, Bianca struggling with depression due to the removal of her children, there was insufficient reason for the State and DCS to suspect any risk on the part of Biana and no basis that she would be unsafe with her children.

V.     **THE SECOND SEVERANCE TRIAL ENDS IN MAY 2022.**

103.     The juvenile court finally recognized at the end of the second severance trial in May 2022, that the State, DCS and their agents' picture of Bianca as an abuser and Jiaro as a passive inept father was inaccurate.

104.     This family has suffered dearly because of the unconstitutional and unlawful removal and detention of K.J., J.M.J., K.A.J., and J.A.J.

105.   Since September 2018 until six weeks after the May 2022 order changing the case plan to reunification, Bianca's has had only limited and, at times, no access to K.J. and J.M.J. In addition, both Bianca and Jiaro were deprived of the joy of taking K.A.J. and J.A.J. home as newborns and watching them grow from birth.

106.   L.J. too has suffered, as he has lost his siblings, and has lived in fear of being taken into foster care if he were to visit his mother in Arizona. This irrevocable loss of time is unconscionable.

**A. Defendants Knew or Should Have Known Plaintiffs' Legal Rights**

107.   At all relevant times the State, DCS and its agents, Patchin, Del Fiacco, Davisson, Faust and McKay ("State Defendants") knew or should have known the well-established law that the U.S. Constitution protects the fundamental right of parents to make decisions concerning the care, custody, upbringing, management, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

108.   At all relevant times State Defendants knew or should have known that fit parents are presumed to act in the best interests of their children. *Id*. at 68; *Doe v. Heck*, 327 F.3d 492, 521 (7th Cir. 2003).

109.   At all relevant times State Defendants knew or should have known that in Arizona, until a court declares a parent unfit, the law requires State actors to presume that a parent is fit and acting in the best interest of their child. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 119 (2018).

110.   At all relevant times State Defendants knew or should have known that the right to family association is sheltered against the government's unwarranted usurpation, disregard, or disrespect, *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996), and families have a well-established constitutional right to live together without governmental interference, *Arce v. Children's Hospital Los Angeles*, 211 Cal.App.4th 1455, 1473 (Cal. App. 2012).

111.   At all relevant times State Defendants knew or should have known that State actors are not permitted to ignore the dictates of the United States Constitution. *Wallis v. Spencer*, 202 F.3d 1126, 1130 (9th Cir. 1999).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

112.    At all relevant times State Defendants knew or should have known that any motive to protect a child from abuse does not override a parent's constitutional rights. *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999); *Franz v. Lytle*, 997 F.2d 784, 792-93 (10th Cir. 1993).

113.    At all relevant times State Defendants knew or should have known that the government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents. *Calabretta*, 189 F.3d at 820.

114.    At all relevant times State Defendants knew or should have known that each parent's conduct must be assessed separately – any implication against one parent does not constitute "specific, articulable evidence" to justify removal from the other parent. *Wallis*, 202 F.3d at 1140-41, 1142 n.14; *Fredenburg v. County of Santa Clara*, 407 Fed. Appx. 114, 115-16 (9th Cir. 2010).

115.    At all relevant times State Defendants knew or should have known that at the time K.J., J.M.J, K.A.J., and J.A.J. were seized, it was well established that the First, Fourth, and Fourteenth Amendments to the United States Constitution that any infringement upon the right to familial association must be by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest. See, e.g., *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999).

116.    At all relevant times State Defendants knew or should have known that the Fourth Amendment protects the child from unlawful searches and seizures.

117.    At all relevant times State Defendants knew or should have known that a parent's right to continued custody of their child arises under the First and Fourteenth Amendments and is composed of both a substantive and procedural component.

118.    At all relevant times State Defendants knew or should have known that a social worker, or other government agent, acts under color of state law while acting or purporting to act in his or her official capacity, or while exercising his or her responsibilities pursuant to state law. *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

19

119.   Given the facts of this case, Plaintiffs are entitled to relief under 42 U.S.C. § 1983 and Arizona state law.

## CLAIMS
### CLAIM ONE - UNLAWFUL SEIZURE AND DETENTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' Right to Freedom of Association under the First Amendment and Due Process under the Fourteenth and Fourth Amendments to the U.S. Constitution for unlawfully seizing and detaining K.J., J.M.J., J.A.J. and K.A.J.)**

120.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

121.   Patchin failed to conduct a prompt and thorough investigation, as is required under A.R.S. § 8-456(C)(1), before filing the dependency petitions for K.J., J.M.J. J.M.J. and K.J. which falsely alleged abuse, neglect, aggressive behavior by Bianca, and a failure to protect by Jiaro.

122.   After J.M.J. and K.J. and were removed, Patchin consistently insisted on the false narrative that J.M.J. was severely malnourished, feeble, unable to sit up, and badly bruised by Bianca.

123.   Davisson failed to ensure Patchin's investigation met the statutory requirements under A.R.S. § 8-456(C)(1), to "make a prompt and thorough investigation" and that the DCS petition was truthful.

124.   None of Patchin's allegations were true or supported by any of the records. Yet, Patchin continued with and embellished this false narrative to support keeping K.J. and J.M.J. in foster care and to also remove J.A.J. and K.A.J. immediately at birth.

125.   When Patchin retired, Del Fiacco doggedly pursued the same false narrative that Bianca was an aggressive mother who hates boys and was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace.

126.   Patchin substantially participated in the unlawful seizure of J.A.J. and K.A.J. by perpetuating the false narrative in Court filings that Bianca abused and neglected J.M.J.,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

that she was an aggressive mother who hates boys, that she was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace.

127.  Patchin substantially participated in the unlawful detention of K.J., J.M.J, J.A.J. and K.A.J. in State's care by perpetuating her false narrative in Court filings and to DCS service providers that Bianca abused and neglected J.M.J., that she was an aggressive dangerous parent who hates boys, and that Jiaro cannot protect the children.

128.  Del Fiacco substantially participated in the unlawful detention of K.J., J.M.J., J.A.J. and K.A.J. by perpetuating the DCS false narrative in Court filings and in her testimony.

129.  As Patchin and Del Fiacco's supervisor, Davisson substantially participated in the unlawful seizure of J.A.J. and K.A.J. and detention of K.J., J.M.J, J.A.J. and K.A.J. in State's care by authorizing Patchin and Del Fiacco's false filings and false.

130.  At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the Fourteenth Amendment protects the rights of parents and children to live together without government interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

131.  At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Lee v. City of Los Angeles*, 250 F. 3d 668, 685 (9th Cir. 2001).

132.  At the time Patchin and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that a state official or an individual "cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued," the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, and the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1138-1141.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

21

133.   At the relevant times when K.J., J.M.J., J.A.J. and K.A.J. were seized and detained, DCS agents, Patchin, Del Fiacco, Davisson did not have any information that established reasonable cause to believe that these children were in imminent danger of serious bodily injury and there were no exigent circumstances.

134.   Prior to the relevant times when K.J., J.M.J., J.A.J. and K.A.J. were seized and detained, the State and DCS agents, Patchin, Del Fiacco, and Davisson did not first pursue reasonable avenues of investigation.

135.   At the relevant times when Patchin, Del Fiacco, Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., the scope of the intrusion was not reasonably necessary to avert any specific injury, and, even if it were, the intrusion was longer than necessary to avert the injury.

136.   At the relevant times when Patchin, Del Fiacco, Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., each of them, individually acted under the color of law.

137.   Because of the State and DCS's wrongful seizure and detention of K.J., J.M.J., J.A.J. and K.A.J., L.J. and Bianca were reasonably afraid to have him return to live with his mother. L.J. stayed away for four long years, even though he missed his mother dearly.

138.   Patchin, Del Fiacco, and Davisson violated Bianca, Jiaro, and L.J.'s the constitutional rights with their unlawful conduct.

139.   As a direct and proximate result of the violation of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages, in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TWO - JUDICIAL DECEPTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' right to Due Process under the Fourth and Fourteenth Amendments for making misrepresentations and/or**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

22

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

140.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

141.    It is well established that liability for a § 1983 claim will lie for judicial deception. *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997).

142.    Although, the Ninth Circuit has "recognized absolute immunity for social workers ... for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," the "scope of absolute immunity for social workers is extremely narrow." *Miller v. Gammie*, 335 F.3d 889, 989 (9th Cir. 2003).

143.    Absolute immunity does not extend to the fabrication of false evidence or perjury. *Hardwick v. County of Orange,* 844 F. 3d 1112 (9th Cir. 2017).

144.    There is no absolute or qualified immunity for making false statements to a court, including signing a petition under penalty of perjury. *Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997); *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008); *Miller*, 335 F.3d at 897; *Hardwick*, 844 F.3d at 1118.

145.    At all relevant times, "the constitutional right to be free from the knowing presentation of false or perjured evidence" was clearly established. *Hardwick*, 844 F. 3d 1112; *see also Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000); *Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996).

146.    During their testimony under oath and in reports to the juvenile, Patchin and Del Fiacco made statements which were false and/or demonstrated a reckless disregard for the truth, including, but not limited to the false testimony.

147.    Patchin made the following false statements in testimony and/or in reports to the juvenile court to support the State and DCS's false petitions. None of these allegations are true:

      a.    Bianca was homeless for several months in 2018;

23

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

b.      J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.      J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.      Bianca did not like J.M.J. because was a baby conceived by rape;

e.      K.J. had scratches on her face evidencing abuse;

f.      Bianca was aggressive;

g.      Bianca had been convicted of felonious child abuse in Missouri in 2017;

h.      on one occasion in July 2019 Bianca shouted at her therapist, Dr. Hanley;

i.      on one occasion, while in labor in the hospital, Bianca stated she would name J.A.J. "Motherfucker;"

j.      Bianca has gender dysmorphic disorder; and

k.      Bianca willfully neglected J.M.J. because she hates boys.

148.    Del Fiacco reiterated Patchin's false narrative to the court in testimony and/or in reports to the juvenile court.  In addition, Del Fiacco added that Bianca focused on the "wrong things" during her supervised visits with her children.  No other State or DCS service provider agreed with this assessment by Del Fiacco.

149.    Davisson directed or ratified Patchin and Del Fiacco wrongful judicial deception.

150.    Davisson signed Patchin and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

151.    When committing these acts of judicial deception, Patchin, Del Fiacco, and Davisson were acting individually under color of law.

152.    As a direct and proximate result of the violations of Plaintiffs' constitutional rights by judicial deception, Plaintiffs suffered irreparable harm and will continue to suffer

general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM THREE - FAILURE TO MAKE REASONABLE EFFORTS

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs right to Due Process under the Fourth and Fourteenth Amendments for failing to make reasonable efforts to preserve the family relationship.)**

153.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

154.   At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id.* at 192, ¶32.  A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id.*

155.   At all relevant times, it was well established that the State and DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at ¶ 37.

156.   At all relevant times, it was well established that the State and "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id.* at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out- of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id.* at 20, ¶ 50.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

157.   At all relevant times, it was well-established that in determining whether the State and DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review the State and DCS' actions during the entirety of time the child has been in the State and DCS' care. *Donald W*., 247 Ariz. at 19, ¶ 49.

158.   Patchin, Del Fiacco, and Davisson violated Bianca's right to the State's reasonable efforts to reunite them by failing to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and when, among other things, they (1) relied on false hearsay provided by a blame-shifting thief at the Gift of Mary Shelter; (2) failed to investigate the positive information from Missouri social workers; (3) failed to speak with L.J. who loves his mother very much; (4) failed to consider that a J.M.J. was examined by a mandatory reporter only one week prior to the false DCS hotline call; (5) failed to review the medical records which showed that when J.M.J. was placed in foster care, weighed less than he did when he was in Bianca's care; and (6) falsely asserted to the trial court that wanted to name J.A.J. "Motherfucker."

159.   Arizona law, specifically A.R.S. § 514(B), requires that the State and DCS "place a child in the least restrictive type of placement available, consistent with the best interest of the child."

160.   Arizona law, specifically A.R.S. § 514(B), mandates that placement of a child in a kinship care with a member of the child's family is a less restrictive placement than placement with a foster family.

161.   Patchin, Del Fiacco, and Davisson violated Bianca's right to the State's reasonable efforts to reunite her with her children by failing to keep all the children together in one foster home.

162.   Patchin and Davisson violated Bianca's right to the State's reasonable efforts to reunite her with her children by repeatedly denying her visitation rights during the various dependency proceedings, and even after the case plan was changed to reunification in May 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

26

163.   When they violated Bianca's right to the State's reasonable efforts to reunite them, Patchin, Del Fiacco, and Davisson were acting in their individual capacity and under color of law.

164.   As a direct and proximate result of the violations of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM FOUR - MEDICAL DECISIONS

**(Under 42 U.S.C. § 1983, Patchin, Del Fiacco, Davisson, Faust and McKay are liable for violating Plaintiffs right to Due Process under the Fourteenth Amendment to the U.S. Constitution to make medical decisions for E.F.)**

165.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

166.   At all relevant times, it was well established that the constitutional due process "right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless a "neutral fact finder" determines, through due process hearing, that parent is not acting in child's best interests)).

167.   At all relevant times, it was well established that: "All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other institution, including: The right to make health care decisions for the minor child, including rights pursuant to §§ 15-873, 36-2271 and 36-2272, unless otherwise prohibited by law." A.R.S. § 1-602(A)(5).

168.   At all relevant times, it was well established that until there is a finding of dependency by a court, which legally entitles the State and DCS "to temporarily invade" a parent's rights to "legal custody" of their child, that the state has no legal right to invade

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

the constitutional and legal rights of a parent to make medical decisions for their child. *Diana H. v. Rubin*, 217 Ariz. 131, 134 ¶ 13 (2007).

169.    At all relevant times, it was well established that "the requirement that [the state child welfare organization] provide parental notice and obtain consent" before a child in its care and/or custody is provided medical treatment is not "inconsistent with [the state child welfare organization's] obligation to provide routine or emergency medical care to children in its custody." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018).

170.    Patchin, Del Fiacco, Davisson, Faust, and McKay interfered with Bianca and Jiaro's constitutional right to make medical decisions for their seized and detained children disallowing them from attending medical appointments while they were in State's care.

171.    When they violated Bianca and Jiaro's constitutional rights, their seized and detained children and each of them, were acting individually and under color of law.

172.    As a direct and proximate result of the violations of her constitutional rights, Bianca suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM FIVE - MEDICAL TREATMENTS

**(Under 42 U.S.C. § 1983 Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable for violating Plaintiffs right to Due Process Right under the Fourteenth Amendment to the U.S. Constitution to be with E.F. during medical treatment.)**

173.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

174.    At all relevant times, it was well established that the "Constitution assures parents that, in the absence of parental consent, [medical treatment] of their child may not be undertaken … at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an [treatment] exist and that the administration of the procedure is reasonable under all the circumstances." Wallis, 202 F.3d at 1141 (9th Cir. 2000). "Moreover, parents have a right arising from the liberty interest in family association to be with their children while they

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id*.

175.   Patchin, Del Fiacco, Davisson, Faust, and McKay interfered with Bianca and Jiaro's constitutional right to be present during their seized and detained children's medical appointments.

176.   When they violated Bianca and Jiaro's constitutional rights, Patchin, Del Fiacco, Davisson, Faust, and McKay and each of them, were acting individually and under color of law.

177.   As a direct and proximate result of the violations of her constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM SIX - NEGLIGENCE PER SE

**(Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable for violating A.R.S § 8-451, § 8-453, and/or § 8-456)**

178.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

179.   Under Arizona law, "[a] person who violates a legislative enactment that establishes the standard of care or that has been adopted by a court as the relevant standard of care is negligent per se and the violation is conclusive as to negligence." *St. George v. Plimpton*, 241 Ariz. 163, 166, 384 P.3d 1243, 1246 (Ct. App. 2016).

180.   The Arizona legislature has enacted laws which establish the standard of care for DCS and its employees and agents.

### FAUST AND MCKAY'S VIOLATION OF A.R.S. § 8-451 AND § 8-453

181.   Under A.R.S. § 8-451, "the primary purpose of the department is to protect children."

182.   Under A.R.S. § 8-453, the State's director of the DCS has the duty to "[f]ormulate policies, plans and programs to effectuate the … purposes of the department."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

183.   Upon information and belief, the State and DCS agents acted in accordance with the Department's policies, plans and programs in place at the time, which were not protective of children. For example, the State and DCS has no policies, plans, or programs in place to ensure its agents comply with A.R.S. § 8-456.

184.   As a direct and proximate cause of Faust and McKay's negligence per se, minor children L.J., K.J., J.M.J., K.A.J., and J.A.J. were not protected; instead, they were irreparably harmed.

185.   Plaintiffs were directly and proximately harmed by Faust and McKay's violations of A.R.S. §§ 8-451 and 8-453.

186.   Directors Faust and McKay are liable for negligence per se for violations of A.R.S. §§ 8-451 and 8-453.

**PATCHIN, DEL FIACCO, AND DAVISSON'S VIOLATE A.R.S. § 8-456(A)**

187.   Under A.R.S § 8-456(A), the State and DCS "shall train all investigators in forensic interviewing and processes and the protocols … [and] [t]he training must include…[t]he duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

188.   As alleged in the paragraphs' above, Patchin, Del Fiacco, Davisson did not protect the legal and due process rights of Plaintiffs when they engaged in judicial deception to violate Plaintiffs' constitutional rights.

189.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, and Davisson's violation of A.R.S. § 8-456(A).

190.   Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(A).

**PATCHIN, DEL FIACCO, AND DAVISSON'S VIOLATE A.R.S. § 8-456(C)(1)**

191.   Pursuant to A.R.S. § 8-456(C)(1), Arizona's legislature has sought to protect the rights of parents by requiring the State and DCS to "make a prompt and thorough investigation" of any condition "that would tend to support or refute the allegation that the child is a victim of abuse or neglect."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

192.   Patchin, Del Fiacco, Davisson investigations were not thorough, in violation of A.R.S. § 8-456(C)(1).

193.   The overwhelming evidence in the State and DCS's possession at the time of J.M.J. and K.J.'s removal and detention, was counter to Patchin's false narrative. This evidence included the medical records from J.M.J.'s hospitalization at PCH in September 2018, which found J.M.J. to be playful, happy, but mildly to moderately malnourished. He was also found to have Mongolian spots on his back. Patchin distorted these records to report to the Court and Bianca's service providers that at removal, J.M.J. was so severely malnourished he could barely sit up and his back was badly bruised.

194.   Patchin's misrepresentation was permanently baked into the record and formed the basis for the juvenile court's severance of Bianca's rights as to J.M.J. in May 2022.

195.   The State and DCS were also in possession of countless records from various parent aids, such as Christine Martinez, who held a positive view of Jiaro and Bianca.

196.   The State and DCS knew that Bianca's therapist, Dr. Hadley, also held a positive view of Bianca.

197.   Reports from Jiaro's service providers were also positive, and contrary to the State and DCS's invisible father narrative.

198.   Patchin and Del Fiacco maliciously and falsely provided reports to the court and testimony that alleged Bianca was an aggressive and dangerous mother, while Jiaro was inept to protect his children from her.

199.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, Davisson's violation of A.R.S. § 8-456(C)(1).

200.   Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(C)(1).

## **CLAIM SEVEN - ABUSE OF PROCESS**

**(Defendant Patchin, Del Fiacco, and Davidson are liable to Plaintiffs for Abuse of Process)**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

201.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

202.   The elements of an abuse-of-process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App.1982).

203.   A party can demonstrate the latter element by "showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Id*. In the context of this tort, Arizona interprets "process" as encompassing "the entire range of procedures incident to the litigation process." *Id*. at 352.

204.   As alleged in the paragraphs above, Caseworker Patchin filed two fraudulent dependency petitions and two fraudulent severance petitions.

205.   Patchin was motivated by a malicious, personal dislike of Bianca. Patchin's animus toward Bianca is evidenced in various emails, where she engaged in unbridled ad hominin attacks; for example, characterizing Bianca as a crude liar and insulting her lipstick. This is malice.

206.   Patchin filed the fraudulent petitions under the negligent supervision of Davisson.

207.   Davisson knew, or should have known, the overwhelming evidence in the record did not support Patchin's false allegations. Davisson knew or should have known of Patchin's personal animus toward Bianca, as evidenced in the record. Yet, Davisson supported the malicious crusade against Bianca.

208.   Caseworker Del Fiacco supported Patchin's malicious crusade when Patchin retired. Del Fiacco either knew or should have known that the record did not support Patchin's false and malicious allegations. Del Fiacco either knew or should have known of Patchin's personal animus toward Bianca, as was evident in Patchin's emails, in her reports, and in her testimony at trial which was witnessed by Del Fiacco.

209.   Patchin's filing and prosecution of the dependency petitions that were supported only by falsehoods is an abuse of the judicial process.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

32

210.   Davisson and Del Fiacco's prosecution of these petitions was an abuse of the judicial process.

211.   Despite the overwhelming evidence that Bianca and Jiaro are fit parents, Patchin and Del Fiacco, under the direct supervision of Davisson, continued to press charges.

212.   Even after the juvenile court denied the severance as to K.J., K.A.J., and J.A.J. on 11 May 2022, the State and DCS defied court orders to meet within 30 days initiate the reunification process. Instead, the State and DCS failed to initiate any meaningful steps until five months after being ordered to do so.

213.   Plaintiffs were directly and proximately irreparably harmed by Patchin, Del Fiacco, Davisson's abuse of process. Patchin, Del Fiacco, Davisson are liable for this harm.

## CLAIM EIGHT - GROSS NEGLIGENCE / LEGAL RIGHTS

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Faust, and McKay are liable for exercising Gross Negligence in carrying out their duty to protect the legal rights of children and families.)**

214.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

215.   Plaintiffs re-alleges and incorporates by reference every allegation set forth in the paragraphs above.

216.   Under A.R.S. § 8-802 (D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

217.   "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the Plaintiffs is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

33

218.   Patchin, Del Fiacco, Davisson, Faust and McKay acted with gross negligence and breached their duty to protect Plaintiffs' legal rights when they failed to properly investigate whether the State and DCS should remove the children from their parent's care.

219.   Patchin, Del Fiacco, Davisson, Faust and McKay and each of them, acted with gross negligence and breached their duty to protect the legal rights of Bianca by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

220.   Patchin, Del Fiacco, Davisson, Faust and McKay acted with gross negligence and breached their duty to protect Plaintiffs' legal rights by limiting, and at times forbidding, Bianca and Jiaro's visits with the children.

221.   Patchin, Del Fiacco, Davisson acted with gross negligence and breached their duty to protect Plaintiffs' legal rights when they made representations to the court that were false and/or demonstrated a reckless disregard for the truth.

222.   As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breach of their duty, Plaintiffs suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## **CLAIM NINE - GROSS NEGLIGENCE / REASONABLE EFFORTS**

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Mr. Faust, and Mr. McKay and each of them, are for exercising Gross Negligence in carrying out their duty to make reasonable and/or diligent efforts to preserve the family relationship.)**

223.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

224.   At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec*., 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32.  A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

225.   At all relevant times, it was well established that the State and DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). The State and DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

226.   At all relevant times, it was well established that the State and "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019).  The State and "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require the State and "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

227.   A.R.S. § 8-533(B)(8) requires the State and DCS agents to make a diligent effort to provide appropriate reunification services.

228.   At all relevant times, it was well-established that in determining whether the State and DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review the State and DCS' actions during the entirety of time the child has been in the State and DCS' care. *Donald W.*, 247 Ariz. at 19, ¶ 49. "[A]bsent reasonable modifications to…rehabilitative services offered to a disabled parent, a department has failed to perform its duty under the ADA to reasonably accommodate a disability and, in turn, its obligation to make reasonable efforts to rehabilitate the parent." *People in Interest of S.K.*, 440 P. 3d 1240, 1249 (Co. App. 2019).

229.   Patchin, Del Fiacco, Davisson, Faust, McKay and each of them, acted with gross negligence and breached their duty to make reasonable and/or diligent efforts to

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

35

preserve the family relationship by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

230.    As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's gross negligence, Plaintiffs suffered irreparable harm, including but not limited to, the permanent loss of her parental rights, and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TEN - GROSS NEGLIGENCE EXERCISED BY DCS EMPLOYEES

**(Under established Arizona law, Defendants Faust and McKay are liable to Plaintiffs for the Gross Negligence exercised by Defendant employees of DCS in carrying out their duties.)**

231.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

232.    Faust and McKay owed a duty to Plaintiffs to ensure that the employees, officers, and agents of the State and DCS were qualified to serve in their respective roles before hiring and assigning employees to act as investigators and/or case managers for DCS.

233.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that employees, officers, and agents of the State and DCS were properly qualified before hiring and assigning employees to act as investigators and/or case managers for the State and DCS.

234.    Faust and McKay also owed a duty to Plaintiffs to ensure that the employees, officers, and agents of the State and DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

235.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that the employees, officers, and/or agents of the State and DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

36

236.    Under Arizona law, specifically A.R.S. § 8-456(A)(2), the State and DCS are required to ensure that all the State and DCS investigators were properly trained on their "duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

237.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that all the State and DCS investigators were properly trained on their duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.

238.    As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breaches of these duties, Plaintiffs were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships forever, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

## CLAIM ELEVEN – UNLAWFUL DCS POLICIES AND PRACTICES

**(Under 42 U.S.C. § 1983, Defendant State of Arizona and Arizona Department of Child Safety is liable for the unconstitutional acts of its employees which were committed pursuant to a policy and/or practice of DCS.)**

239.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

240.    Defendant State and DCS, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

241.    The State and DCS, and those individual defendants in their official and individual capacity who had supervisory and/or policy making authority, had a duty to Plaintiffs to establish, implement, and/or follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiffs under the United States Constitution, including under the First and Fourteenth Amendments. This includes,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

37

without limitation, the protection of the right to familial relations; the right to privacy; and the rights to substantive and procedural due process.

242.     The State and DCS established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to:

        a.     the policy of using trickery, duress, fabrications and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the juvenile court, causing an interference with parents' rights, including those as to familial relations;

        b.     the policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agent, employees, and state actors, in providing the constitutional protections guaranteed to individuals and families, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency-type proceedings;

        c.     the policy of setting forth allegations in juvenile dependency petitions against parents claiming child abuse and/or neglect and/or other unsubstantiated allegations regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

        d.     the policy, practice, or custom of making knowingly false allegations of child abuse and/or neglect in juvenile dependency petitions signed under penalty of perjury, motions, or other documents filed with the juvenile court as a means of intimidating parents, whether or not true, or forcing a parent to adjudicate a matter knowing that the courts most often sustain allegations, whether justified by extant evidence or not;

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

e.      the policy of fraudulently charging parents with child abuse and/or neglect where none exist; and

f.      the policy of failing to take appropriate action to ensure that appropriate and meaningful visitation occurs.

243.   The customs, policies, and/or practices listed herein are not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Bianca reserves their right to amend this pleading as more information becomes available.

244.   It was obvious that the policies described herein that were instituted and/or maintained by the State and DCS would lead to constitutional violations like the violations suffered by Plaintiffs, the State and DCS was deliberately indifferent to the consequent constitutional violations that would inevitably occur as a direct result of its policies.

245.   The State and DCS was indifferent to the consequences that would be established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution.

246.   The State and DCS, breached its duties and obligations to Plaintiffs including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the State and DCS employees to engage in the unlawful and unconstitutional conduct alleged herein.

247.   The State and DCS, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that the State and DCS employees would, and did, cause Plaintiffs to be injured and damaged by the State's and DCS's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

breaches occurred in the contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies subjected them to injunctive relief which Plaintiffs asserts herein.

248.    These actions, and/or inactions, of the State and DCS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs has sustained general and specific damages to an extent and in an amount to be proven at trial. Plaintiffs has incurred and will continue to incur, attorneys' fees, costs, and expenses, including those authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

## CLAIM TWELVE - IIED

**(Under established Arizona law, Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable to Plaintiffs for Intentional Infliction of Emotional Distress ("IIED")**

249.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

250.    "The tort of intentional infliction of emotional distress requires proof of three elements: First, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publ'g. Co. v. Miller*, 210 Ariz. 513, 516, ¶ 11, 115 P.3d 107, 110 (2005) (emphasis in original).

251.    Patchin, Del Fiacco, Davisson, Faust, and McKay's conduct was extreme and outrageous. The unwarranted removal of a child from their loving parent and then wrongfully and falsely accusing the parent of neglect and abuse is extreme and outrageous. What's worse, is that DCS on behalf of the State repeated this offense four times.

252.    Bianca was suffering from a very brief interval of home instability at the time J.M.J. and K.J. were removed.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

40

253.   Patchin accused Bianca of abusing and starving her son, because she falsely claimed the Mongolian spots on his back were bruises, and because she exaggerated his mild to moderate malnutrition, which was due to an organic feeding issue, as severe malnutrition.

254.   There were absolutely no signs of abuse or neglect of K.J., but DCS on behalf of the State removed her anyway and immediately placed her in a foster care, where she has remained for the past four years.

255.   J.A.J. and K.A.J. were removed immediately at birth from both Bianca and Jiaro, on the outrageous false allegation that Bianca was aggressive and hated boys and that Jiaro could not protect his children.

256.   The grief any loving parent would suffer in such circumstances is palpable and immeasurable.

257.   Patchin, Del Fiacco, Davisson, Faust, and McKay intended to cause Plaintiffs' emotional distress or had reckless disregard for the certainty that distress would result from their conduct.

258.   Patchin, Del Fiacco, Davisson, Faust, and McKay conduct caused Plaintiffs' severe emotional distress.

259.   Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

## CLAIM THIRTEEN
## NEGLIGENT SUPERVISION, TRAINING AND RETENTION

**(Under established Arizona Law, Defendants State, DCS, Davisson, Faust and McKay are liable to Plaintiffs for the Negligent Supervision, Negligent Training and Negligent Retention)**

260.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

261.   Defendants the State, DCS, Davisson, Faust and McKay had the duty to supervise the actions of its agents and employees.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

262.    Under A.R.S. § 8-802(D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

263.    Defendants the State, DCS, Davisson, Faust and McKay are required to train its agents and employees to comply with the law and make reasonable efforts to reunite parents with their children.

264.    Defendants the State, DCS, Davisson, Faust and McKay are required to train and supervise their agents and employees to follow the policies, plans, or programs in place as set forth by law, the State and DCS.

265.    Defendants the State, DCS, Davisson, Faust and McKay had a duty to adequately supervise, train, control, and otherwise monitor the activities of its agents and employees to avoid unreasonable risk of harm to Plaintiffs.

266.    Defendants the State, DCS, Davisson, Faust and McKay allowed Defendants Patchin and Del Fiacco to pursue a false narrative and allegations against Bianca and allowed the unlawful seizure of her children and allowed them to continue their false narrative in Court filings and testimony.

267.    Defendants the State, DCS, Davisson, Faust and McKay knew or should have known that its employees and agents had received inadequate training and supervision, were failing to follow procedures and were acting illegally.

268.    Defendants State, DCS, Davisson, Faust and McKay had knowledge, either constructive or actual, of the incident in which its agents and employees i.e., Patchin and Del Fiacco failed to adequately protect the Plaintiff's from harm.

269.    Defendants the State, DCS, Davisson, Faust and McKay's inadequate supervision over its employees and agents, especially Patchin and Del Fiacco, breached their duty to Plaintiffs.

270.    Defendants the State, DCS, Davison, Faust and McKay had a duty to retain only competent, qualified, and safe employees and agents.  Defendants the State, DCS,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

42

Davisson, Faust and McKay's breach of their supervisory and training duties to Plaintiffs was the direct and proximate cause of the loss suffered by Plaintiffs.

271.   Defendants the State, DCS, Davisson, Faust and McKay breached their duty of retention to Plaintiffs by retaining negligent, incompetent, unfit, and dangerous employees and agents.

272.   As a direct and proximate result of Defendants the State, DCS, Davisson, Faust and McKay's negligent supervision, training and negligent retention of incompetent, unfit, and dangerous employees, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs prays for relief as follows:**

A.   **General damages and special damages according to proof, but in no event less than $3,000,000, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress;**

B.   **For injunctive relief in the form of DCS agreeing to provide training to all DCS case workers regarding**

- When exigent circumstances exist that justify the unwarranted seizure of a child;

- The psychological trauma and harm suffered by children and family that occurs when DCS removes a child from the custody of his or her parent;

- That prior to removing a child from the custody of his or her parent, DCS has a legal and constitutional obligation to conduct a thorough investigation into any allegations justifying removal, including investigating facts, witnesses, and evidence that refutes the allegations;

- That it is a violation of the Constitutional rights of children and parents to make misrepresentations or omissions to the court which are false and/or which demonstrate a reckless disregard for the truth; and;

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

43

- That facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of the services provided by the State and thus all reasonable efforts must be expended to ensure that a visitation occurs regularly and as scheduled.

**C.   The training described in (B) above must be provided, at a minimum, annually to all DCS case workers and must be included in the training provided to persons upon their becoming a DCS case worker;**

D.   **For taxable costs and pre- and post-judgment interest to the extent permitted by law**;

E.   **For punitive and/or exemplary damages to the extent permitted by law and in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;**

F.   **For attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and state law, as applicable; and,**

G.   **For such other relief as the Court deems just and proper under the circumstances.**

**RESPECTFULLY SUBMITTED** this 1st day of September 2023.

MILLS + WOODS LAW PLLC

By_____/s/ Thomas A. Connelly_____
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

GILLESPIE, SHIELDS & TAYLOR

    DeeAn Gillespie Strub
    7319 North 16th Street
    Phoenix, AZ 85020

    *Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
9/8/2023 3:07:28 PM
Filing ID 16567144

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| BIANCA JIMENEZ-BENCEBI, an individual; | Case No.: CV2023-007002 |
| JIARO ABREGO ZAVALETA, an individual; | |
| L.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI; | **PLAINTIFFS MOTION TO EXTEND DEADLINE FOR SERVICE OF PROCESS AS TO DEFENDANT FAUST** |
| K.J., a minor, through her parent and guardian BIANCA JIMENEZ-BENCEBI; | |
| K.A.J., a minor, through her parent and guardian BIANCA JIMENEZ-BENCEBI; and | (*Assigned to the Hon. Brad Astrowsky*) |
| J.A.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI, | |
| Plaintiffs, | |
| v. | |
| STATE OF ARIZONA, a government entity; CARIN PATCHIN, individually and as an | |

*(Sidebar, rotated:)* MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

1 | employee with the State of Arizona
Department of Child Safety;

2 | TRACEY DEL FIACCO, individually and as
an employee with the State of Arizona

3 | Department of Child Safety;

4 | AMANDA DAVISSON, individually and as
an employee with the State of Arizona

5 | Department of Child Safety;

6 | MICHAEL FAUST, as Director, Arizona
Department of Child Safety; and

7 | GREGORY MCKAY, as Former Director,

8 | Arizona Department of Child Safety;

9 |                          Defendants.

10

11

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

12      Plaintiffs, by and through undersigned counsel, and pursuant to Rules 4(i) and 6(b),

13  *Ariz.R.Civ.P.*, respectfully request that the Court extend the deadline to serve Defendant

14  Michael Faust ("Defendant") by thirty-one (31) days, from September 8, 2023, to October

15

16  9, 2023.

17      Between September 1, 2023, and September 8, 2023, Plaintiffs' process server has

18  made numerous attempts, including multiple attempts on the same day, to personally serve

19  Defendant. It appears that Defendant is intentionally avoiding service. Plaintiffs anticipate

20  filing a motion for alternative method of service in the near future, after the process server

21

22  provides Plaintiffs with an affidavit detailing the service attempts.

23      For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an

24  order extending the deadline to serve Defendant by 31 days, from September 8, 2023, to

25

26  October 9, 2023. A proposed form of order has been lodged herewith.

27  / . / . / . /

28

**RESPECTFULLY SUBMITTED** this 8th day of September 2023.

MILLS + WOODS LAW PLLC

By_____/s/ DeeAn Gillespie Strub___
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

GILLESPIE, SHIELDS & TAYLOR

    DeeAn Gillespie Strub
    7319 North 16th Street
    Phoenix, AZ 85020

    *Attorneys for Plaintiffs*

**ORIGINAL** E-Filed/E-Served this 8th day of

September, 2023, with the Clerk of the

Maricopa County Superior Court.

KRIS MAYS
Attorney General
State of Arizona
15 s. 15th Avenue
Phoenix, AZ 85007
*Attorneys for State Defendants*

*/s/ Heather Stamps_____*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

3

CLERK OF THE
SUPERIOR COURT
RECEIVED NE LOBBY
DOCUMENT DEPOSITORY

**2023 SEP -7  PM 4: 32**

**FILED**
**BY L. RAMIREZ, DEP**

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

BLANCA JIMENEZ-BENCEBI, et al.

Plaintiff(s)

vs.

STATE OF ARIZONA, et al.

Defendant(s)

Case No.:    CV2023 - 007002

**PROOF OF SERVICE**

I,         Larry White         , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie Strub, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020
    Documents to be served: 1. Summons 2. First Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: Gregory McKay

**SERVICE DETAILS**

Manner of Service: In person delivery

To (Name): Gregory McKay

At this location: 32021 N. 61st Street, Cave Creek, Arizona 85331

On this date:  9/5/2023                    At this time:  1:05 p.m.

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this __7th__ day of __September__, 2023, by the affiant.

Signature of Notary Public

LJ Legal Service

722 E. Osborn Road, #335

Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 597251
Expires March 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED NE LOBBY
DOCUMENT DEPOSITORY

**2023 SEP -7 PM 4:32**

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

**FILED**
**BY L. RAMIREZ, DEP**

BLANCA JIMENEZ-BENCEBI, et al.

Plaintiff(s)

Case No.:   CV2023 - 007002

vs.

PROOF OF SERVICE

STATE OF ARIZONA, et al.

Defendant(s)

I,        Larry White        , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie Strub, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. First Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: Amanda Davisson

SERVICE DETAILS

Manner of Service: In person delivery

To (Name): Amanda Davisson

At this location: 818 W. Fairmont Avenue, Phoenix, Arizona 85013

On this date:  9/5/2023                At this time:  6:45 p.m.

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this  7th  day of  September , 2023, by the affiant.

L/ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

Signature of Notary Public



CHERYL PRITCHETT
Notary Public · State of Arizona
MARICOPA COUNTY
Commission # 597251
Expires March 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED NE LOBBY
DOCUMENT DEPOSITORY

2023 SEP -7 PM 4: 31

FILED
BY L. RAMIREZ, DEP

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

BLANCA JIMENEZ-BENCEBI, et al.                    Case No.:   CV2023 - 007002

Plaintiff(s)

                 vs.                    PROOF OF SERVICE

STATE OF ARIZONA, et al.

Defendant(s)

I,      Larry White    , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie Strub, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. First Amended Complaint 3. Certificate Of Compulsory Arbitration

Entity/Person being served: State of Arizona

### SERVICE DETAILS

Manner of Service: In person delivery

To (Name): Shon Kirkpatrick, Administrative Assistant for Arizona Attorney General's Office authorized to accept

At this location: 2005 N. Central Avenue, Phoenix, Arizona 85004

On this date:  9/5/2023             At this time:  9:30 a.m.

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this 7th day of September 2023, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

CHERYL PRITCHETT
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 597251
Expires March 30, 2025

CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #1
DOCUMENT DEPOSITORY



23 SEP 12 PM 2:46

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

**FILED**

BIANCA JIMENEZ-BENCEBI, an individual; et al.

Plaintiff(s)

vs.

STATE OF ARIZONA, a government entity; et al.

Defendant(s)

Case No.:  CV2023 - 007002

**BY M. PATTERSON, DEP**

PROOF OF SERVICE

I,   Shante Pritchett   , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie Strub, Gillespie Shields Goldfarb & Taylor; 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

Documents to be served: 1. Summons 2. Complaint

Entity/Person being served: Michael Faust

### SERVICE DETAILS

Manner of Service: In person delivery

To (Name): Mia, Daughter, she is of suitable age and discretion. She is authorized to accept for Michael Faust at his usual place of abode.

At this location: 7958 W. Molly Drive, Peoria, Arizona 85383

On this date:   9/8/2023                      At this time:   6:40 p.m.

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this  8th  day of  September  2023, by the affiant.

Signature of Notary Public

LJ Legal Service

722 E. Osborn Road, #335

Phoenix, Arizona 85014

**LARRY WHITE**
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612977
Expires October 10, 2025



CLERK OF THE
SUPERIOR COURT
RECEIVED CCB #1
DOCUMENT DEPOSITORY

23 SEP 12 PM 2: 45

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

**FILED**
**BY M. PATTERSON, DEP**

BIANCA JIMENEZ-BENCEBI, an individual; et al.                    Case No.:    CV2023 - 007002

Plaintiff(s)

                            vs.                                              PROOF OF SERVICE

STATE OF ARIZONA, a government entity; et al.

Defendant(s)

     I,    Shante Pritchett    , declare that I am a citizen of the United States, over the age of eighteen and not a party to this action and that within the boundaries of the state where service was affected, I was authorized by law to perform said service.

Received documents from: DeeAn Gillespie Strub, Gillespie Shields Goldfarb & Taylor, 7319 N. 16th Street, Suite 100, Phoenix, Arizona 85020

  Documents to be served: 1. Summons 2. Complaint

Entity/Person being served: Michael Faust

SERVICE DETAILS

Manner of Service: In person delivery

To (Name): Mia, Daughter, she is of suitable age and discretion. She is authorized to accept for Michael Faust at his usual place of abode.

At this location: 7958 W. Molly Drive, Peoria, Arizona 85383

On this date:  9/8/2023                At this time:  6:40 p.m.

State of Arizona

County of Maricopa

SUBSCRIBED AND SWORN to before me this  8th  day of  September  2023, by the affiant.

Signature of Notary Public

LJ Legal Service
722 E. Osborn Road, #335
Phoenix, Arizona 85014

**LARRY WHITE**
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 612377
Expires October 10, 2025

1 | Kristin K. Mayes
Attorney General

2

3 | Julie M. Rhodes (016313)
Michael R. Niederbaumer (031931)

4 | Assistant Attorneys General
2005 North Central Avenue

5 | Phoenix, Arizona 85007-2926
Telephone: (602) 542-7612 –JR

6 | Telephone  (602)-542-8346-- MN
Fax: (602) 542-3393

7 | DefensePhx@azag.gov

8 | Julie.Rhodes@azag.gov

9 | Michael.Niederbaumer@azag.gov
*Attorney for State Defendants*

10

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11

**IN AND FOR THE COUNTY OF MARICOPA**

12 | Case No: CV2023-007002

BIANCA JIMENEZ-BENCEBI, an
13 | Individual; JIARO ABREGO
ZAVALETA, an individual;
14 | L.J., a minor, through his parent and
guardian BIANCA JIMENEZ-BENCEBI;
**STIPULATION TO EXTEND**
15 | K.J., a minor, through her parent and
guardian BIANCA JIMENEZ-BENCEBI;
**ANSWER DEADLINE TO OCTOBER**
**4, 2023**
16 | K.A.J., a minor, through her parent and
guardian BIANCA JIMENEZ-BENCEBI;
17 | and J.A.J., a minor, through his parent and
guardian BIANCA JIMENEZ-BENCEBI,

18 | Plaintiffs,

19

20 | vs.

21 | STATE OF ARIZONA, a government
entity; CARIN PATCHIN, individually
22 | and as an employee with the State of
Arizona Department of Child Safety;
23 | TRACEY DEL FIACCO, individually as
an employee with the State of Arizona
24 | Department of Child Safety; AMANDA
DAVISSON, individually and as an
25 | employee with the State of Arizona
Department of Child Safety; MICHAEL
26 | FAUST as Director, Arizona Department
of Child Safety; and GREGORY MCKAY
27 | as Former Director, Arizona

28 | Defendants.

(Assigned to the Hon. Brad Astrowsky)

Defendants State of Arizona, Carin Patchin, Tracy[1] DelFiacco, Amanda Davisson, Michael Faust and Gregory McKay, collectively ("State Defendants") and Plaintiffs hereby stipulate to extend the Answer deadline from September 25, 2023 for Defendants State of Arizona, Defendant Davisson, and Defendant McKay to October 4, 2023. The parties further agree to extend the Answer deadline for Defendant Faust from September 28, 2023 to October 4, 2023.

RESPECTFULLY SUBMITTED this 20th day September, 2023.

Kristin K. Mayes
Attorney General


*/s/  Julie M. Rhodes*
Julie M. Rhodes
Michael R. Niederbaumer
Assistant Attorneys General
*Attorneys for State Defendants*


*/s/  Thomas A. Connelly(With Permission)*
Thomas A. Connelly
DeeAn Gillespie Strub
*Attorneys forPlaintiffs*


ORIGINAL of the foregoing filed via AZTurboCourt.com and COPY e-mailed this 20th day of September, 2023, to:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
Attorneys for Plaintiffs

---

[1] Tracy DelFiacco's name is spelled Tracey in the First Amended Complaint. The correct spelling is Tracy.

1    DeeAn Gillespie Strub
     GILLESPIE, SHIELDS & TAYLOR
2    7319 North 16th Street
     Phoenix, Arizona 85020
3    mailroom@gillaw.com
     Attorneys for Plaintiffs
4

5

     *By /s/  B. Rojo*
6    LMS22-0354 | G202221043-1 | #11533670

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Granted with Modifications

***See eSignature page***

Clerk of the Superior Court
*** Electronically Filed ***
C. Lockhart, Deputy
10/2/2023 8:00:00 AM
Filing ID 16676745

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| BIANCA JIMENEZ-BENCEBI, an Individual; JIARO ABREGO ZAVALETA, an individual; L.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI; K.J., a minor, through her parent and guardian BIANCA JIMENEZ-BENCEBI; K.A.J., a minor, through her parent and guardian BIANCA JIMENEZ-BENCEBI; and J.A.J., a minor, through his parent and guardian BIANCA JIMENEZ-BENCEBI, | Case No: CV2023-007002 |
| Plaintiffs, | |
| vs. | **ORDER** |
| STATE OF ARIZONA, a government entity; CARIN PATCHIN, individually and as an employee with the State of Arizona Department of Child Safety; TRACY DEL FIACCO, individually as an employee with the State of Arizona Department of Child Safety; AMANDA DAVISSON, individually and as an employee with the State of Arizona Department of Child Safety; MICHAEL FAUST as Director, Arizona Department of Child Safety; and GREGORY MCKAY as Former Director, Arizona | |
| Defendants. | |

Upon stipulation of counsel and good cause appearing, it is hereby ORDERED that the Answer deadline for Defendants State of Arizona, Defendant Davisson, and Defendant McKay is extended from September 25th, 2023 to October 4th, 2023.

IT IS FURTHER ORDERED extending the Answer deadline for Defendant Faust from September 28th, 2023 to October 4th, 2023.

Dated this _____ day of September, 2023.

_____
Honorable Brad Astrowsky
Maricopa County Superior Court Judge

# eSignature Page 1 of 1

Filing ID: 16676745   Case Number: CV2023-007002
Original Filing ID: 16624244

_____

**Granted with Modifications**



/S/ Brad Astrowsky Date: 9/29/2023
_____
Judicial Officer of Superior Court

## ENDORSEMENT PAGE

CASE NUMBER: CV2023-007002                SIGNATURE DATE: 9/29/2023

E-FILING ID #: 16676745                         FILED DATE: 10/2/2023 8:00:00 AM

JULIE M RHODES

THOMAS A CONNELLY