Kristin K. Mayes
Attorney General

Julie M. Rhodes (016313)
Michael R. Niederbaumer (031931)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7612 – JR
Telephone: (602) 542-8346 – MN
Fax: (602) 542-3393
DefensePhx@azag.gov
Julie.Rhodes@azag.gov
Michael.Niederbaumer@azag.gov

*Attorneys for State Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bianca Jimenez-Bencebi, an individual; Jiaro Abrego Zavaleta, an individual; L.J, a minor, through his parent and guardian, Bianca Jimenez-Bencebi; K.J., a minor, through his parent and guardian, Bianca Jimenez-Bencebi; K.A.J, a minor, through her parent and guardian Bianca Jimenez-Bencebi; and J.A.J., a minor, through his parent and guardian Bianca Jimenez-Bencebi, <br><br> Plaintiffs, <br><br> v. <br><br> State of Arizona, a government entity; Carin Patchin, individually and as an employee with the State of Arizona Department of Child Safety; Tracey Del Fiacco, individually and as an employee with the State of Arizona Department of Child Safety; Amanda Davisson, individually and an employee with the State of Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; and Gregory McKay, as Former Director, Arizona Department of Child Safety, <br><br> Defendants. | Case No: 2:23-cv-02075-MTM <br><br><br> **STATE DEFENDANTS' MOTION TO DISMISS** |

Defendants State of Arizona, Carin Patchin, Tracy[1] Del Fiacco, Amanda Davisson, Michael Faust and Gregory McKay, collectively ("State Defendants")[2] move for an order dismissing Plaintiffs' First Amended Complaint ("FAC"). Dismissal is appropriate because (1) L.J. has no standing to sue; (2) DCS is a non-jural entity and cannot be sued; (3) Plaintiffs fail to state a cause of action for supervisor liability; (4) the statute of limitations has expired; (5) Plaintiffs failed to serve a timely notice of claim; (6) issue and/or claim preclusion apply; and (7) Defendants are protected by qualified immunity. This motion is supported by the following Memorandum of Points and Authorities, Exhibits "A", and the Court's entire record. All counts require dismissal with prejudice because the deficiencies cannot be corrected through amendment.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND

This lawsuit arises out of an underlying state court proceeding where the Arizona Department of Child Safety ("DCS") removed four children on different dates from the legal and physical custody of Plaintiffs. The child, L.J., is not and has never been in the care, custody, and control of the DCS; instead, throughout the operative timeframe the minor was residing in Puerto Rico with his biological father. The first two children, K.J. and J.M.J., were removed from Plaintiff Jimenez's legal custody on September 14, 2018. (FAC ¶¶ 48, 52). That matter progressed to a termination hearing based on DCS's motion to terminate the parent-child relationship filed on January 24, 2019. (*Id.* ¶ 38(c)). That motion was granted in January 2020. (*Id*. ¶¶ 38(f), 90)). Because of a jurisdictional defect under the Uniform Child Custody Jurisdiction and Enforcement Act

---

[1]Tracy Del Fiacco's name is spelled Tracey in the First Amended Complaint ("FAC"). The correct spelling is Tracy.

[2] Plaintiffs do not list the Arizona Department of Child Safety ("DCS") in the caption but do list the agency in counts 11 and 13. During the meet and confer, Plaintiffs' counsel disputed that DCS was intended as a party and stated the FAC only alleged that the State of Arizona was operating through DCS. To the extent this Court interprets the language as DCS being a party, dismissal is addressed in section III(B). The State of Arizona as a party under 42 U.S.C. § 1983 is also addressed in section III(B).

("UCCJEA"), DCS conceded error on appeal and the case was remanded to the state court. (*Id.* ¶ 38(f), 90)).

While this dependency case was ongoing, Plaintiff Jimenez gave birth to K.A.J. on March 5, 2019 and the child was removed from her care. (*Id.* ¶ 38(d)). Subsequently, a second termination motion was filed on December 14, 2020 seeking to terminate K.J., J.M.J., and K.A.J. (*Id.* ¶ (38(g)). While this severance proceeding was ongoing, Plaintiff Jimenez gave birth to her fifth child, J.A.J., who was also removed. (*Id.* ¶ 38(h)). The severance motion was subsequently amended on May 20, 2021 to include all four children (K.J., J.M.J., K.A.J., and J.A.J.) and the parent-child relationship between Jimenez and J.M.J. was terminated on May 11, 2022. (*Id.* ¶¶ 38(i), (k), 89). The state court did not terminate the parent-child relationship between K.J., K.A.J., and J.A.J. in that decision. (*Id.* ¶ 38(k)). J.M.J. is not a party to this lawsuit as his legal relationship to Plaintiff Jimenez has been terminated.

The state court continued to monitor the family and K.J., K.A.J., and J.A.J. were returned to Plaintiffs' care and the state court dismissed the underlying dependency on May 25, 2023. (*Id.* ¶ 41). Plaintiffs' first civil complaint was filed on May 8, 2023 and the FAC (operative complaint) was filed on September 1, 2023.

The FAC names Defendants Patchin and Del Fiacco as the DCS case specialists. Defendant Davisson was the supervisor for Patchin and Del Fiacco. The remaining two Defendants, McKay and Faust, are former DCS Directors. The FAC includes thirteen total claims (six federal and seven state) outlined as follows:

| Claim | Violation | Defendant |
|---|---|---|
| 1 | § 1983 unlawful seizure and detention | Patchin, Del Fiacco, and Davisson |
| 2 | § 1983 judicial deception | Patchin, Del Fiacco, and Davisson |
| 3 | § 1983 failure to make reasonable efforts | Patchin, Del Fiacco, and Davisson |
| 4 | § 1983 medical decisions | Patchin, Del Fiacco, Davisson, Faust, and McKay |
| 5 | § 1983 medical treatments | Patchin, Del Fiacco, Davisson, Faust, and McKay |
| 6 | negligence per se | Patchin, Del Fiacco, Davisson, Faust, and McKay |

| 7 | abuse of process | Patchin, Del Fiacco, and Davisson |
|---|---|---|
| 8 | gross negligence | Patchin, Del Fiacco, Davisson, Faust, and McKay |
| 9 | gross negligence/reasonable efforts | Patchin, Del Fiacco, Davisson, Faust, and McKay |
| 10 | gross negligence exercised by DCS employees | Faust and McKay |
| 11 | § 1983 unlawful DCS policies and practices | State and DCS |
| 12 | Intentional infliction of emotional distress | Patchin, Del Fiacco, Davisson, Faust, and McKay |
| 13 | Negligent supervision, training and retention | State, DCS, Davisson, Faust, and McKay |

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); Fed. R. Civ. P. 8(a). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim...is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While Rule 8(a) does not require detailed factual allegations "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal* at 678. In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp. 2d 1035, 1042 (C.D. Cal. 1998).

Leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). But, futility alone justifies denying a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

## III.  LEGAL ARGUMENT

### A.  L.J. Has No Standing as a Sibling and Requires Dismissal

It is well established in the Ninth Circuit that "[S]iblings do not possess a cognizable liberty interest to assert a loss of familial association claim under the Fourteenth Amendment." *Monterrosa v. City of Vallejo*, 2:20-cv-01563-TLN-DB, WL 516736, *11 (E.D. Cal. Feb. 11, 2021) (citing *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991)) ("We adopt the earlier and better rule of *Bell*. Neither the legislative history nor Supreme Court precedent support an interest for siblings consonant with that recognized for parent and children."). This is binding precedent precluding siblings from possessing a familial association claim. *See J.P. by and through Villanueva v. Cnty. Of Alamanda*, 803 Fed. App'x 106, 109 (9th Cir. 2020) (unpublished) ("*Ward v. San Jose* [], we explicitly ruled that siblings do not possess a cognizable liberty interest to assert a loss of familial association claim under the Fourteenth Amendment. No basis exists to disregard this precedent simply because the claim is raised under the First Amendment rather than the Fourteenth Amendment.").

Although the FAC is vague on the specific constitutional violations that L.J. asserts, it appears grounded in his relationship to his siblings, which does not constitute a viable cause of action. (FAC ¶ 106) (L.J. too has suffered, as he lost his siblings…). Dismissal of L.J. is appropriate.

### B.  DCS is a Non-Jural Entity and Cannot Be Sued Under Section 1983 or State Law; The State of Arizona Also Cannot be Sued Under Section 1983—Counts 11 and 13

Neither DCS nor the State of Arizona are "persons" under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Neeley v. Arizona*, No. CV-19-

05899-PHX-DJH, 2022 WL 44676, at *8 (D. Ariz. Jan. 5, 2022)[3] ("The Court finds DCS is not a 'person' under § 1983 because it is not a 'local governing body' under *Monell*… DCS, however, is a state agency, not a municipality. *Monell* is therefore inapposite."). A court has no jurisdiction over a governmental entity unless the plaintiff can establish that it is legally capable of being sued. *Yamamoto v. Santa Cruz County Bd. of Sup'rs*, 124 Ariz. 538, 539 (App. 1979). Governmental agencies have only those powers granted by their enabling statutes, including the ability to sue or be sued. *Braillard v. Maricopa County*, 224 Ariz. 481, 487 (App. 2010). The enabling legislation of DCS does not provide power to DCS to sue or be sued. *See* A.R.S. § 36-2903 et seq. DCS is a non-jural entity and cannot be sued at all, either under § 1983 or under state law.[4] *Neeley*, 2022 WL 44676, at *7.

Section 1983 "actions do not lie against a State." *Arizonans for Official English v. Arizona*, 502 U.S. 43, 69 (1997). Section 1983 "provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will* at 66 (1989). For these reasons, it is appropriate to dismiss count 11 in its entirety and appropriate to dismiss DCS from count 13.

### C. Supervisors Davisson, Faust, and McKay Require Dismissal for Failure to State a Claim—Counts 1, 2, 3, 4, 5

For a § 1983 claim, Plaintiffs must provide a short and plain statement that provides Defendants notice of their "integral participation" in each of the alleged constitutional violations. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996). Government officials cannot be held liable under § 1983 for actions of their subordinates merely on a theory of *respondeat superior*. *Iqbal* at 676. Instead, a plaintiff must allege that a supervisor "set[] in motion a series of acts by others which the actor knows or

---

[3] Thomas Connelly and DeeAn Gillespie Strub are attorneys of record in this matter.

[4] This claim should be dismissed as "obviously frivolous." A claim is legally frivolous when it lacks an arguable basis in either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

1   reasonably should know would cause others to inflict the constitutional injury." *McRorie*

2   *v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986). And to establish intent, "knowing

3   acquiescence" is not enough. *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir.

4   2012).

5          The FAC defectively alleges § 1983 claims against supervisors based on the

6   supervisors only "ratifying" their subordinates conduct. Counts 1-5 name Davisson and

7   counts 4-5 name Faust and McKay. The allegations against Davisson are that she (1)

8   failed to ensure the investigation met the statutory requirements; (2) "authorized" false

9   filings; (3) directed or ratified; (4) signed false reports that were filed in juvenile court;

10  (5) and interfered in Plaintiffs constitutional rights by seizing and detaining the children.

11  (FAC ¶¶ 123, 129-138, 149-150, 158, 161-162, 170, 175). The FAC is devoid of any

12  allegations that Davisson knew the information was "false" when she signed off on a

13  court report or how she specifically was involved in the seizure of any of the children.

14         Even fewer factual details are provided regarding participation by Faust and

15  McKay; counts 4 and 5 generally state that Faust and McKay (as well as Davisson)

16  violated Plaintiffs right to make medical decisions and attend medical appointments

17  because the children were seized and detained. There is no mention regarding any

18  specific appointments or medical decisions that Davisson, Faust, or McKay made on

19  behalf of any child; therefore these limited facts are insufficient to state any plausible

20  federal claim for relief—the language is conclusory at best. It is impermissible to allege

21  claims against supervisory defendants merely because they were supervisors. To hold a

22  defendant liable for damages, the wrongdoer must personally cause the violation. *See*

23  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). "Liability under section 1983

24  arises only upon a showing of personal participation by the defendant." *Taylor v. List*,

25  880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.

26  1979). It is appropriate to dismiss Davisson, Faust, and McKay from all § 1983 claims

27  (counts 1-5).

28         **D.    Statute of Limitations is Expired—§ 1983 Counts 1, 2, 3, 4, 5**

### 1.      Count 1

All allegations referencing an unlawful or illegal seizure of K.J. (count 1)[5] are expired based on the face of the FAC. K.J. was removed by DCS on September 14, 2018, so the two year statute of limitations for any federal claim expired on September 14, 2020. (FAC ¶¶ 48, 52). The Complaint was not filed until May 8, 2023—2.5 years later. (Complaint). Likewise, K.A.J. was removed on March 5, 2019, so all claims expired on March 5, 2021. (*Id.* ¶ 38(d)). Finally, J.A.J. was removed on February 12, 2020, so any claims expired by February 12, 2022.

Section 1983 does not contain its own statute of limitation; instead, federal courts borrow the forum state's personal injury statute of limitation. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Arizona's statute of limitations for personal injury is two years. *See* A.R.S. § 12-542. Federal law does determine when the cause of action accrues. *Belanus v. Clark*, 7906 F.3d 1021, 1025 (9th Cir. 2015). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 1025. The allegations in count one—failure to make a prompt and thorough investigation and perpetuating a false narrative that J.M.J. was severely malnourished, feeble, unable to sit up, and badly bruised by Bianca—were all known by Plaintiffs at the time of the initial removal in 2018. Per the FAC, this "false narrative" was the basis for the two subsequent removals of K.A.J. and J.A.J., both occurring more than two years before the Complaint was filed. (FAC ¶¶ 121-129).

Despite Plaintiffs' inclusion of "detention" allegations, the original removal and detention was all based on the "false narrative" about the condition of J.M.J. at removal on September 14, 2018. (*Id*. ¶ 122). *Wallace* at 391 (holding that the cause of action based upon the warrantless removal of the children from plaintiffs' care accrued once the juvenile court detained the child through legal process). Here the legal process was first commenced in September, 2018 with the filing of a dependency petition on J.K.

---

[5] Count one lists J.M.J. as one of the children being unlawfully seized, but he is not listed in the caption and any legal rights to the child were terminated by the state court. It is believed he is listed in error.

(FAC ¶ 38(b)). K.A.J. was included in the legal process in March 2019 and J.A.J. was included in February 2020. (*Id.* ¶ 38). Plaintiffs have not articulated any arguments demonstrating why they were not on notice of the injury at the time each child was removed, added to the dependency petition, and became a party to the underlying state court proceeding.

Any proposed arguments supporting application of the continual tort doctrine must be disregarded because this claim is controlled by federal law, not state law; and under federal law accrual occurs when the Plaintiff knew or should have known about the injury. *Belanus* at 1025. Simply put, the state law continuing tort doctrine does not apply to the federal claims. *Wallace* at 388 (holding that "the accrual date of a § 1983 cause of action is a question of federal law that is no resolved by reference to state law"); see also *Wostrel v. Arizona*, CV-22-00312-PHX-DLR, WL 2308417, *7 (D. Ariz. Mar. 1, 2023)[6] (finding continual tort doctrine "neither here nor there" for determining when a § 1983 claim accrues).

### 2.    Count 2

Count two alleging judicial deception is equally barred by the statute of limitations for the same reasons noted above. Specifically, Plaintiffs had notice of this alleged "false narrative" no later than February 2020 because the claim is "Patchin fabricated the following allegations to support removing K.A.J. and J.A.J. and to keep all the children in State's care. (FAC ¶ 71). To explain, count two outlines eleven facts that Plaintiffs claim were "false statements" provided to the court during Defendant Patchin's testimony or in her written reports to the court. (*Id.* ¶ 147(a-k)). This alleged false narrative included: (1) Bianca was homeless for several months in 2018; (2) J.M.J. was so severely malnourished he was feeble and could barely sit up; (3) J.M.J. had a flat head, distended stomach and non-accidental bruising…; (4) Bianca did not like J.M.J. because he was conceived by rape; (5) K.J. had scratches on her face evidencing abuse; (6) Bianca was aggressive; (7) Bianca had been convicted of felonious child abuse in

---

[6] Thomas Connelly and DeeAn Gillespie Strub are attorneys of record in this matter.

1   Missouri…; (8) … in July 2019 Bianca shouted at her therapist …; (9)…while in labor

2   Bianca said she would name J.A.J. "Motherfucker" (DOB 2/12/20); (10) Bianca has

3   gender dysmorphic disorder; and (11) Bianca willfully neglected J.M.J. because she

4   hates boys. (*Id.* ¶ 147).

5       The first seven "facts" relied upon by Plaintiffs simply reiterate the allegations in

6   paragraph 63. Paragraph 63 specifically sets forth the contents of the ***January 24, 2019***

7   termination petition; so it is clear Plaintiffs knew about this alleged judicial deception no

8   later than January 24, 2019 when the termination petition was filed. (*Id*. ¶ 63). Incident

9   (8) above references July 2019 and incident (9) above references the birth of J.A.J. in

10  February 2020. Since Plaintiffs allege Defendant Patchin used these facts as the basis to

11  remove K.A.J. and J.A.J., they had knowledge of all of these facts no later than February

12  2020. (*Id.* ¶ 71). Plaintiffs simply cannot convincingly argue that they did not know the

13  details of the "false narrative" when the FAC itself states it was used as the basis for the

14  removal of K.A.J. in March, 2019 and the removal of J.A.J. in February 2020. (*Id.* ¶¶

15  38(d)(h)). Count two cannot survive and requires dismissal with prejudice because the

16  FAC unequivocally establishes the information was known absolutely no later than

17  February 12, 2020 when the last child was removed.

18              **3.    Counts 3, 4, 5**

19      Finally, Plaintiffs' familial relationships claims (counts 3, 4, and 5) accrued on

20  the date each individual child was removed; (1) K.J. on September 14, 2018; (2) K.A.J.

21  on March 5, 2019; and (3) J.A.J. on February 12, 2020. (*Id.* ¶¶ 38(a)(d)(h)). It is proper

22  to assess familial interference claims under the Fourteenth Amendment. *See Moore v.*

23  *Cnty. of Sacramento, Dep't of Child, Fam. and Adult Servs*., 2:19-cv-844-JAM-KJN PS,

24  2020 WL 2489736, at *7 (E.D. Cal. May 14, 2020) (citing *Wallace v. Kato*, 549 U.S.

25  384, 391–92 (2007)); *see Ybarra-Johnson v. Arizona*, CV-14-00171-PHX-GMS, 2014

26  WL 5843358, at *4 (D. Ariz. Nov. 12, 2014) (dismissing plaintiffs' claim as untimely

27  where children were removed more than two years before the filing of the complaint,

28

notwithstanding defendant's "discrete unlawful acts" of fabricating evidence and suppressing exculpatory information after the removal).

The case law is well-settled that all "discrete unlawful acts" occurring post-removal still accrue at removal. Because the last removal occurred more than two years before Plaintiffs filed the original complaint in May 2023, Plaintiffs' § 1983 claims for familial interference (counts 3-5) are untimely and further amendment is futile.

### E.   State Claims 6, 7, 8, 9, 10, 12 and 13 are Also Expired

The remaining state claims asserting negligence, negligent training, gross negligence, intentional infliction of emotional distress, and even abuse of process are expired. For state law claims, "[a]ll actions against any public entity or public employee ***shall be brought within one year after the cause of action accrues*** and not afterward." A.R.S. § 12-821 (emphasis added). The plain language of the NOC statute is as follows:

> B.   For the purposes of this section, a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage

A.R.S. § 12-821.01(B). There is no doubt that a state claim needs to be filed within one year; and further no doubt that when suing the state or a state employee, the accrual date is controlled by A.R.S. § 12-821.[7] Since the statute controls, there is no reason to look to common law or any other legal theory such as the "continuing tort theory" or the "continuing violation theory".

*Walton v. Arizona*, CV-16-03597 WL 5997441 (D. Ariz. June 27, 2017)[8] is instructive. In *Walton*, the Court found Plaintiff could not look to continuing violation theory under common law because the accrual was controlled by the notice of claim statute. The *Walton* Court relied on *Watkins v. Arpaio*, 239 Ariz. 168 (App. 2016), which held "[t]he statutes governing accrual and limitations of a claim against a public

---

[7] State Defendants concede that the state claims of K.J., K.A.J., and J.A.J. are not time barred, due to their status as minors.

[8] DeeAn Gillespie is attorney of record in this matter.

1   employee preclude application of the 'continuing wrong' doctrine to save either of

2   *Watkins* claims." *Id*. at *5. *Walton* specifically rejected the argument that a state claim

3   for intentional infliction of emotional distress claim did not accrue until "much later

4   after the 'continuing investigation of him cumulatively caused him emotional distress'"

5   *Walton* at *5.

6        Again, the accrual date for these torts coincides with the removal dates for the

7   individual children—with the latest removal occurring on February 12, 2020. Since the

8   state claims expired February 12, 2021 and the Complaint was not filed until May 8,

9   2023, all state claims are expired. This holds true even for the abuse of process claim

10   (count seven). Count seven accrued when Plaintiffs possessed "[K]nowledge sufficient

11   to identify that wrong occurred and caused injury." *Cruz v. City of Tucson*, 243 Ariz. 69,

12   74 (App. 2017) (citing *Doe v. Roe*, 191 Ariz. 313 (1998)). *Cruz* denounced the

13   proposition that an abuse of process claim did not accrue until entry of final judgment.

14   *Id*. at 73-74.

15        Plaintiffs' FAC asserts that Defendant Patchin abused the process by filing two

16   fraudulent dependency petitions and two fraudulent severance petitions. (FAC ¶ 204).

17   The FAC then states the last severance petition including all four children K.J., J.M.J.,

18   K.A.J, and J.A.J, was filed on May 20, 2021. (FAC ¶ 38(i)). As the state statute of

19   limitations in only one year, this claim expired on May 20, 2022 and the Complaint was

20   not timely when filed on May 8, 2023.

21       **F.**    **Failure to Serve a Timely Notice of Claim Bars All State Claims**

22        Arizona law requires that a plaintiff timely serve a public employee with a notice

23   of claim "within one hundred eighty days after the cause of action accrues." A.R.S. § 12-

24   821.01(A). Compliance with the notice of claim statute is a "mandatory" and "essential"

25   prerequisite to maintaining an action against the State Defendants. *Pritchard v. State*,

26   163 Ariz. 427, 432 (1990).

27

28

Here, Plaintiffs' Jimenez, Abrego, and L.J.[9] served a notice of claim on the State, Faust, and McKay on November 16, 2022. Patchin and Del Fiacco were served in late December, 2022. The notice of claim itself is dated November 8, 2022, so it is undisputed that no Defendant received the claim prior to that date. (Notice of Claim, Exhibit "A").[10] The notice of claim is untimely because the accrual date for the state claims is each removal date specific to each child. A.R.S. § 12-821.01(B) dictates the accrual date "[W]hen the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." Counts 6-13 (excluding 11) allege negligence, negligence per se, gross negligence, abuse of process, and intentional infliction of emotional distress. The last child was removed on February 12, 2020. (FAC 38(h)). The 180 day deadline to serve the notice of claim expired August 11, 2021 (Feb. 12, 2020 plus 180 days). *Scoins v. Goddard*, CV-05-2933-PHX-FJM, 2007 WL 2807755, at *5 (D. Ariz. Sept. 25, 2007) (finding plaintiff "realized she had been injured by these defendants as soon as she lost custody of her children" and therefore plaintiff's failure to comply with A.R.S. § 12–821.01 barred plaintiff's state law claims). *Scions* specifically rejected the argument that the cause of action did not accrue until the child was released from the wardship of the court. *Id*. at *5.

### F. Plaintiffs Fail to State a Viable Cause of Action Because They Were Afforded Due Process in the State Court Case—Counts 3, 4, 5

[9] The other minors were not listed as claimants' within the notice of claim.

[10] In *Garcia, L.G., A.G., J.G., K.J. v. The Arizona Department of Economic Security*, 2:15-cv-02637, 2016 WL174688 (D. Ariz. March 4, 2016) The Court held that a Notice of Claim is a public record. "The Court may consider a Rule 12(b)(6) motion that includes matters of public record. *See Strategic Dev. & Constr. Inc. v. Roosevelt Partners, LLC*., 224 Ariz. 60, 64, ¶ 13 (App. 2010) (citing *Phx. Newspapers, Inc. v. Ellis*, 215 Ariz. 268, 272 ¶ 17, 159 P3d. 578, 582 (App. 2007)). In Arizona state courts interpreting notice of claim rules permit the court to consider affidavits and exhibits when determining jurisdictional fact issues not intertwined with fact issues raised by a plaintiff's claim on the merits without converting a motion to dismiss to a motion for summary judgment. *Moulton v. Napolitano*, 205 Ariz. 506, 511, ¶ 8 (App. 2003). The jurisdictional issue in dispute here is whether State Defendants were timely served with a Notice of Claim as required under A.R.S. §12-821.01.

No one disputes that the right to familial association is a fundamental liberty interest. *Keates v. Koile,* 883 F.3d 1228, 1236 (9th Cir. 2018). "As with other fundamental rights, however, parental rights are not absolute." *Kent K. v. Bobby M.*, 210 Ariz. 27, 284 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 7532 1982). It is also well settled that no constitutional violation is present if due process was afforded to the Plaintiffs. "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky* at 753. A procedural due process claim involves two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood United School Dist.,* 149 F.3d 971, 982 (9th Cir. 1998).

Here, counts 3-5 involve allegations that State Defendants failed to make reasonable efforts to preserve the family relationship and interfered with medical decisions and treatment. These claims fail because it is clear from the FAC's face that the state court provided Plaintiffs with due process. Numerous examples of state court involvement are noted in the FAC.

- The first dependency petition was filed. (FAC ¶ 38(b));

- DCS filed a petition to terminate parental rights (*Id.* ¶ 38(c));

- In January 2020 Bianca's parental rights were severed as to K.J. and J.M.J. but the severance was overturned on procedural grounds (*Id.* ¶ 38(f));

- DCS filed another petition to terminate the parent-child relationship … (*Id.* ¶ 38(g));

- On 11 May 2022, the juvenile court ruled from the bench … (*Id.* ¶ 38(k));

- DCS involvement continued until May 25, 2023, when the juvenile court dismissed the dependency action … (*Id.* ¶ 41);

- Patchin … in testimony. (*Id.* ¶ 63);

- These records were shared with the Court … (*Id.* ¶ 65);

- Patchin also falsely alleged in her reports and in testimony to the juvenile court…(*Id*. ¶ 66);

- Patchin included … states in her Court Reports and in her testimony … (*Id*. ¶ 78);

- During Patchin's testimony to the Court during the second severance trial … (*Id*. ¶ 89);

- At a 10 January 2022, hearing, Del Fiacco testified … (*Id*. ¶ 94); and

- The juvenile court finally recognized at the end of the second severance trial … (*Id*. ¶ 103).

The FAC is replete with examples of testimony and exhibits considered by the state court in two severance trials, and even reference appellate review. (*Id.* ¶ 38(f)). Plaintiffs do not assert any restrictions on their ability to raise issues in the state court proceedings, thus due process was afforded to Plaintiffs and no constitutional violations occurred; therefore no valid claims exist.

### G. Defendants are Afforded Qualified Immunity Protections for the Section 1983 Claims

Qualified immunity shields state employees from money damages and attaches unless a constitutional right (1) was violated and (2) that right was "clearly established" at the time. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1992)). A legal principle is "clearly established" when it derives from "settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (citation and internal quotation marks omitted). To pierce the protections of qualified immunity, Plaintiffs must show there is clear precedent that would put an official on notice that what they were doing is unlawful. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991). Plaintiffs have not done so in this matter.

In regard to the original removal on September 14, 2018, Plaintiffs argue that State Defendants could not rely on information contained in a hotline report. "None of the allegations made in the hotline call were true." (FAC ¶ 49). However, Plaintiffs

provide no legal authority to support the proposition that relying on information received in a hotline report violates a constitutionally protected right; instead the Arizona statutes require the agency receive all reports of abuse/neglect. *See* A.R.S. § 8-455. Plaintiffs next assert that Defendant Patchin relied on "hearsay" contained in the hotline report, but again relying on hearsay during a DCS investigation does not violate a clearly established constitutional right. (*Id.* ¶ 48 (e)). A hotline call can be made anonymously and by their very nature can and do include hearsay. *See* A.A.C. R21-3-201(c) (The Department shall accept an anonymous communication if the source refuses … ).

Third, Plaintiffs complain about a flawed investigation, but Plaintiffs are not entitled to dictate how an investigation is performed. Simply being subjected to a DCS investigation, standing alone, does not impede a liberty interest. *Capp v. County of San Diego,* 940 F.3d 1046, 1060 (9th Cir. 2019). Also, challenging the thoroughness of an investigation also fails to violate a clearly established right. "For the plaintiff merely to show that defendants could have come to a different conclusion than the one they reached is not enough to overcome the defense of qualified immunity." *Carrol v. Robinson*, 178 Ariz. 453, 458 (App. 1994).

The same holds true for any allegations that State Defendants failed to include exculpatory evidence in "records" provided to the Court. (FAC ¶ 65). *Patterson v. Miller,* 451 F.3d 1125, 1151-55 (9th Cir. 2020) (rejecting a claim that social workers failed to provide a juvenile court with what plaintiff believed to be "exculpatory" evidence because plaintiff was well aware of the "exculpatory" evidence and there was no evidence that she was denied the opportunity to put forth any exculpatory evidence on her own behalf and with the assistance of her attorney). Here, Plaintiffs did have numerous opportunities to put forth exculpatory evidence in the state court proceedings—the FAC states at least two severance trials occurred. (FAC ¶ 89).

Plaintiffs fail to allege any specific missteps by Defendant Patchin during the investigation; instead they disagree about word choice and interpretation of the events and information secured in the investigation. Simply because Plaintiff Jimenez

characterizes the events differently than Defendants does not make her version true nor does it establish that Defendant Patchin's investigation was so clearly flawed that a reasonable social worker would be on notice that her conduct violated the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). As an example, Plaintiffs' FAC cites to medical records regarding J.M.J. involving treatment he received post-removal, but this does not establish that Defendant Patchin had access to these records on September 14, 2018 when the removal occurred.[11]

### H.   Issue and Claim Preclusion Bar This Lawsuit

#### 1.   Issue Preclusion

"Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (citing *Montana v. United States*, 440 U.S 147, 153-54 (1979). Essentially, the doctrine of collateral estopple (issue preclusion) precludes re-litigating an issue or fact in a later case when, in a previous case, the same issue was "actually litigated, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full and fair opportunity to litigate." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986). The rationale behind this doctrine is the "principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Federal Say and Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1952). An issue may be precluded from re-litigation "even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

---

[11] In fact, the exact opposite is established. The FAC establishes that J.M.J. was hospitalized from September 14-20, 2018 and discussed medical records from a visit occurring on September 26, 2018. (FAC ¶¶ 56, 59). If the removal occurred on September 14, 2018 these records would not have existed and would not have been available to Defendant Patchin to consider as part of her investigation.

1   Here, as noted above, due process procedures were in effect and Plaintiffs did actually
2   litigate multiple dependency proceedings and two severance trials. (FAC ¶ 38).

3     The Ninth Circuit decision *Smith v. Banner Health Sys.,* 621 F.App'x 876, 880
4   (9th Cir. 2015) (mem. dec.) addressed whether summary judgment was appropriate to
5   preclude a § 1983 claim of familial interference when a juvenile court made factual
6   findings supporting continued custody of the child. *Smith* at 880. The exact fact pattern
7   was also addressed in *Kasdan v. County of Los Angeles*, CV-12-06793 GAF, 2014 WL
8   6669354 (C.D. Cal. Nov. 24, 2014). In *Kasdan*, the Plaintiff fully litigated a juvenile
9   dependency proceeding and afterward filed a section 1983 action claiming the state
10  employees lied and suppressed evidence in the state court proceeding. "[T]he Court
11  found that issue preclusion bar[red] *Kasdan* from relitigating the veracity of the state
12  court witnesses in this federal civil rights lawsuit." *Id*. at *1. "These principles apply
13  where a dissatisfied litigant claims that she lost her case because her opponent lied,
14  falsified documents or destroyed evidence so long as the issue was addressed in the prior
15  proceeding." *Id*. at *4 (citing *Cedars-Sinai Medical v. Superior Court*, 18 Cal. 4th 1, 10
16  (1998).

17    *Grimes v. Ayerdis*, 16-cv-06870-WHO, 2018 WL 3730314 (N.D. Cal. Aug. 6,
18  2018) also addressed issue preclusion when the claim was fabricated evidence in the
19  underlying state court proceeding. In *Grimes*, Plaintiff attempted to re-litigate the
20  removal of his child and whether or not the evidence was fabricated. Again, identical to
21  our fact pattern. In *Grimes* the Court found (1) the same parties appeared in the prior
22  proceeding, (2) the issues of removal and fabricated evidence were actually litigated, and
23  (3) the state court exercised final judgment. The Court determined the legality of the
24  children's removal and his fabrication claims were decided against him in the state court
25  case and the juvenile court made factual findings on the weight of the evidence thus
26  precluding relitigation. The elements for issue preclusion are met.

27    The Ninth Circuit applies collateral estoppel to issues in a section 1983 claim that
28  were litigated in a state court if the state court's ruling would be binding under state law.

*Lombardi v. City of El Cajon*, 117 F.3d 1117, 1121 (9th Cir. 1997). And in Arizona, collateral estoppel applies to issues decided in the juvenile court. *Crosby-Garbotz v. Fell*, 246 Ariz. 54, 55 (2019).

### 1.  Same parties

The Plaintiffs and Defendants are the same parties in the underlying state court dependency proceedings. The Arizona Attorney General's Office represents DCS in both matters.

### 2.  Issues were litigated and decided in state court/Plaintiffs had full and fair opportunity

Here, judicial deception allegedly occurred in September, 2018 and continued throughout the entire state court proceeding. The FAC clearly establishes that three dependency petitions were filed as well as two severance actions. (FAC ¶¶ 38, 62). The state court heard two severance trials and ultimately ruled in May, 2022, terminating one child and allowing the other three children to return to Plaintiffs' care. (*Id.* ¶ 89). The court of appeals was involved and overturned the first severance proceeding. (*Id.* ¶ 38). The FAC is riddled with references to "testimony" provided by Defendant Patchin, all of which is subject to cross-examination in the state matter. *See supra* III(F).

### 3.  Issues necessary to decide the merits

The issues at stake in the two cases are identical: whether removal and retention of custody was appropriate. There is no doubt the state court decided this issue on its merits. The extensive factual background provided in the FAC demonstrates the same information was presented to the state court in the dependency proceedings.

- Plaintiffs' FAC references medical records and a medical diagnosis and also references that records were "shared with the Court". (FAC ¶¶ 55-65).

- The FAC also references service providers and completion of services. (*Id.* ¶ 68).

- References the reinstatement of visitation after the first severance proceeding. (*Id.* ¶ 90).

- January 10, 2022 hearing where Del Fiacco testified. (*Id.* ¶ 94).

- Parent supervisor testified at trial. (*Id.* ¶ 97).

- The juvenile court finally recognized at the end of the second severance trial in May 2022 that the State, DCS and their agents' picture of Bianca as an abuser and Jiaro as a passive inept father was inaccurate. (*Id.* ¶ 103).

### B.    Claim Preclusion

The judicially created doctrine of claim preclusion "bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). In Arizona, *res judicata* will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties was, or might have been, determined in the former action. *Hall v. Lalli*, 194 Ariz. 54 (1999). Arizona follows the "same evidence test" in which "the plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action." *Pettit v. Pettit*, 218 Ariz. 529, 532 (App. 2008). To determine claim preclusion this Court again must look to the law of the State of Arizona. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir.1997). In order for claim preclusion to attach under Arizona law, there must be (1) a final judgment on the merits, (2) common identity of the parties and the capacity in which they appeared, (3) common identity of the subject matter, and (4) common identity of the cause of action. *Hall* at 750.

Here, a final judgment did issue in the state court proceeding on May 11, 2022. (FAC ¶ 38(k)). Second, the parties are identical in both proceedings. Third, both actions concern the behavior and acts of DCS and its employees. *See Beseder, Inc. v. Osten Art, Inc.*, No. CV 05-00031-PHX-NVW, 2006 WL 2730769 *5-6 (D. Ariz. Sept. 25, 2006) (finding the third element of claim preclusion satisfied where the same conduct was the subject matter of both state court counterclaims and a cause of action before the district court). The fact Plaintiffs are now arguing constitutional violations does not change the

1   analysis. *Ferguson v. County of Los Angeles*, CV 12-06865 JAK, 2014 WL 12949968

2   (C.D. Cal. June 5, 2014). In *Ferguson*, the civil lawsuit challenged the accuracy of the

3   DCFS [Department of Children and Family Services] reports during the initial detention

4   hearing and the adjudication. The Court found Plaintiffs' argument unpersuasive and

5   instead found the claims were identical—the well-elaborated constitutional right to live

6   together without government interference.

7         Fourth, even the final element is met: common identify of the cause of action.

8   *Sunkist* at 283. From the face of the FAC it is apparent that the evidence needed to

9   sustain Plaintiffs' arguments for judicial deception is identical to the evidence presented

10  to the state court. For instance, the contents of the hotline report, the medical records,

11  service provider reports, and testimony were all provided to the state court. (FAC ¶¶ 48,

12  65, 66, 78, 89, 94, 97, 98, 103). Plaintiffs' position in the state court proceedings was

13  focused on alleged errors in the underlying dependency petition and court reports, which

14  is identical to the evidence available in this matter.

15  **IV.   CONCLUSION**

16        First, L.J. should be dismissed as a party because he has no standing to sue for

17  interference with familial association as a sibling. Second, DCS requires dismissal as it

18  is a non-jural entity and cannot be sued; and the State requires dismissal from the federal

19  claim. Third, all claims are barred by the statute of limitations, so all counts should be

20  dismissed with no leave to amend. Fourth, all state claims are barred by an untimely

21  notice of claim, so counts 5-10, 12, and 13 should be dismissed with no leave to amend.

22  Fifth, all § 1983 claims should be dismissed against Davisson, Faust, and McKay since

23  they are based solely on *respondeat superior* theory. Sixth, qualified immunity attaches

24  to all federal claims. Finally, issue and claim preclusion prevent this lawsuit from

25  proceeding.

26  **V.   CERTIFICATE**

27        Pursuant to Local Rule 12.1, undersigned counsel certifies that on October 4,

28  2023 prior to filing State Defendants' Motion to Dismiss, the parties spoke about the

1    arguments contained therein. No agreements were reached.

2         DATED this 12th of October, 2023.

3                                             Kristin K. Mayes
                                             Attorney General
4

5
                                             */s/  Michael R. Niederbaumer*
6                                             Julie M. Rhodes
                                             Michael R. Niederbaumer
7                                             Assistant Attorneys General
                                             *Attorneys for State Defendants*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   I certify that I electronically transmitted
    the attached document to the Clerk's Office
2   using the CM/ECF System for filing and
    transmittal of a Notice of Electronic Filing
3   to the following, if CM/ECF registrants, and
    mailed a copy of same to any non-registrants,
4   this 12th day of October, 2023:

5   Thomas A. Connelly
    Robert T. Mills
6   Sean A. Woods
    MILLS + WOODS LAW PLLC
7   5055 North 12th Street, Suite 101
    Phoenix, Arizona 85014
8   docket@millsandwoods.com
    *Attorneys for Plaintiffs*

9
    DeeAn Gillespie Strub
10  GILLESPIE, SHIELDS & TAYLOR
    7319 North 16th Street
11  Phoenix, Arizona 85020
    mailroom@gillaw.com
12  *Attorneys for Plaintiffs*

13
    */s/  Katie Landreth*
14  LMS22-0354 | G202221043-1 | #11598519

15

16

17

18

19

20

21

22

23

24

25

26

27

28