Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12ᵗʰ Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS & TAYLOR**
7319 North 16ᵗʰ Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bianca Jimenez-Bencebi, *et al* <br><br> Plaintiffs, <br><br> v. <br><br> State of Arizona, *et al* <br><br> Defendants. | Case No.: 2:23-cv-02075-DWL <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS** <br><br> (Hon. Dominic W. Lanza) |

    Plaintiffs, by and through their counsel, hereby respond in opposition to the State of Arizona, Carin Patchin, Tracy Del Fiacco, Amanda Davisson, Michael Faust, and Gregroy McKay ("State Defendants") *State Defendants' Motion to Dismiss* (Doc. 6) (the "motion"). The following Memorandum of Points and Authority demonstrate why the motion must be denied.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## MEMORANDUM OF POINTS AND AUTHORITY

## I.     INTRODUCTION

Bianca Jimenez-Bencebi, Jiaro Abrego Zavaleta, L.J., K.J., K.A.J., and J.A.J, (collectively, "Plaintiffs") assert thirteen claims in the First Amended Complaint ("FAC") against State Defendants. Claims arising under 42 U.S.C. § 1983 are: **Claim One** (Unlawful Seizure and Detention), **Claim Two** (Judicial Deception); **Claim Three** (Failure to Make Reasonable Efforts) against Patchin, Del Fiacco, and Davisson; **Claim Four** (Medical Decisions); **Claim Five** (Medical Treatments) against Patchin, Del Fiacco, Davisson, Faust, and McKay; and **Claim Eleven** (Unlawful DCS Policies and Practices) against State Defendant State of Arizona.

Plaintiffs assert the following state-law claims: **Claim Six** (Negligence per se) against Patchin, Del Fiacco, Davisson, Faust, and McKay; **Claim Seven** (Abuse of Process) against Patchin, Del Fiacco, and Davisson; **Claim Eight** (Gross Negligence/Legal Rights); **Claim Nine** (Gross Negligence/Reasonable Efforts) against Patchin, Del Fiacco, Davisson, Faust, and Mckay; **Claim Ten** (Gross Negligence Exercised by DCS Employees) against Faust and McKay; **Claim Twelve** (Intentional Infliction of Emotional Distress) against Patchin, Del Fiacco, Davisson, Faust, and McKay; **Claim Thirteen** (Negligent Supervision, Training, and Retention) against State of Arizona, Davisson, Faust, and McKay.

State Defendants have moved to dismiss all claims against them on the basis of: (1) L.J. has no standing to sue; (2) DCS is a non-jural entity and cannot be sued; (3) Plaintiffs fail to state a cause of action for supervisor liability; (4) the statute of limitations has expired; (5) Plaintiffs failed to serve a timely notice of claim; (6) issue and/or claim preclusion; and (7) State Defendants are protected by qualified immunity. *See* Mot. at 2:1-10. As detailed below, State Defendants' motion must be denied in its entirety as none of these arguments have any merit.

## II.   <u>FACTUAL BACKGROUND</u>

Plaintiff Bianca Jimenez-Bencebi is the mother of L.J., K.J., J.M.J[1]., K.A.J., and J.A.J.; and Jiaro Arbrego Zavaleta is the father of K.A.J. and J.A.J. FAC ¶¶ 21, 22. In November 2016, Bianca was raped and J.M.J. was conceived. *Id.* at ¶ 24. L.J. knew of the rape and was traumatized but neither L.J. nor Bianca had trauma therapy to deal with the violent crime. *Id.* ¶ 25. L.J. was living with his natural father in Puerto Rico when the Arizona Department of Child Safety ("DCS") began its wrongful interference with this family. *Id.* ¶ 23. L.J. and Bianca were fearful that if he returned to Arizona, he too would be unlawfully seized and detained by DCS, like his siblings. *Id.*

In September 2018, while at Gift of Mary Shelter, money was stolen from Bianca's purse, when she complained, Bianca was asked to leave. *Id.* ¶ 48(a). Later, a hotline call was made to DCS, upon information and belief the thief made the call to shift the blame or create a smokescreen. *Id.* ¶ 48(b). DCS failed to investigate, no eyewitnesses were produced to testify. *Id.* ¶ 48(c). Based on hearsay from the caller who had motive to lie, caseworker Patchin reported to the juvenile court that Bianca threatened a person with a knife at the Gift of Mary Shelter, left J.M.J in his car seat for extended periods of times, and prevented others from feeding J.M.J. *Id.* ¶¶ 48(d), (e).

On 14 September 2018, as the result of Patchin's and Davisson's failure to investigate the false allegations of abuse and neglect, K.J. and J.M.J. were wrongfully removed from Bianca's care and custody. *Id.* ¶ 38(a). Both J.M.J. and K.J. were taken to Phoenix Children's Hospital ("PCH") for physical examination upon removal by DCS. *Id.* ¶ 52. Even though there were no issues of abuse or neglect found with K.J., she was immediately taken into foster care and never returned to Bianca. *Id.* ¶ 53.

The first dependency petition was filed in September 2018 as to K.J. and J.M.J. *Id.* ¶ 38(c). Davisson failed to ensure that Patchin's investigation met the statutory requirements under A.R.S. § 8-456(C)(1). *Id.* ¶ 123. During the dependency proceedings,

---

[1] J.M.J. was a child of Bianca who was unlawfully seized in September 2018 but is not a party to this lawsuit and no claims are being brought on J.M.J.'s behalf.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

in March 2019 K.A.J. was born and immediately removed from Bianca at birth. *Id.* ¶ 38(d). The removal of K.A.J. was based on Patchin's and Davisson's steadfast adherence to a malicious and distorted view that Bianca is an aggressive ex-felon and that Jiaro is too passive to protect K.A.J. from this menace of a mother. *Id.* ¶ 38(e).

In January 2020, Bianca's parental rights were severed as to K.J. and J.M.J, but the severance was overturned on procedural grounds. *Id.* ¶ 38(f).

On December 14, 2020, DCS filed another petition to terminate the parent-child relationships as to K.J., J.M.J., and K.A.J. *Id.* ¶ 38(g). During these proceedings, in February 2021, J.A.J. was born and immediately removed at birth. *Id.* ¶ 38(h).

In March 2021, Del Fiacco took over as the DCS caseworker. *Id.* ¶ 43. Then, on 20 May 2021, DCS amended the December 2020 severance petition to include J.A.J. for the termination of the parent-child relationship as to all four children (K.J., J.M.J., K.A.J., and J.A.J.) based on Patchin, Del Fiacco, and Davisson's adherence to their false narrative that Bianca was an aggressive boy-hating felon and Jiaro cannot protect his children. *Id.* ¶¶ 38(i), (j); 129-136.

The juvenile court finally recognized at the end of the second severance trial in May 2022, that the State's, DCS's, and their agents' portrayals of Bianca as an abuser and Jiaro as a passive, inept father was inaccurate. *Id.* ¶ 103. On 11 May 2022, the juvenile court ruled to sever Bianca's rights as to J.M.J., based on neglect, and change the case plan from severance to reunification for K.J., K.A.J., and J.A.J., instructing DCS to have a meeting with the parents within thirty (30) days to start the reunification process. *Id.* ¶ 38(k). However, DCS ignored the court's Order and, for the first six weeks following the Order, cancelled all of the parent's supervised visits. *Id.* ¶ 39. Patchin, Del Fiacco, and Davisson violated Plaintiffs' rights when they failed reasonable efforts to reunite the parents with their children. *Id.* ¶¶ 157-162. DCS took no affirmative steps toward implementing the reunification case plan for over five months. *Id.* ¶ 40.

DCS involvement with this family continued until May 25, 2023, when the juvenile court dismissed the dependency action and ended the State Defendants' involvement. *Id.* ¶

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

4

___. K.J., K.A.K., and J.A.J. are now living with their parents and thriving. *Id.* ¶ 41. Davisson, as a supervisor and in accordance with DCS policy and procedures, approved of, directed, or ratified all the wrongful conduct by her respective subordinates, Patchin and Del Fiacco, including their false narratives about the parents. *Id.* ¶¶ 46, 129-136. Davisson signed Patchin and Del Fiacco's false reports and directed and caused their filing in the juvenile court, in accordance with DCS policy and procedure. *Id.* ¶ 150.

### III.   **APPLICABLE LAW**

FRCP Rule 12 (b)(6) provides that a party can move the court to dismiss a complaint if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal citations omitted). "A claim has *facial plausibility* when the plaintiffs plead factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* Furthermore, "[i]n deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141 (N.D. Cal. 2020) (internal citation omitted). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   Consequently, motions to dismiss are disfavored and are to be granted only if there is no

2   cognizable factual or legal basis for the claim.

3   **IV.   <u>ANALYSIS</u>**

4       **A.   <u>L.J. Has Legal Standing as a Child</u>**

5         State Defendants claim that L.J. has no standing to bring a constitutional claim for

6   the loss of familial association on basis of loss of siblings. *See* Mot. at 5:4-22. However,

7   L.J.'s familial association claim is for the loss of his mother. FAC ¶¶ 23, 106, 129-137.

8         "It is well established that a parent has a 'fundamental liberty interest' in 'the

9   companionship and society of his or her child' and that 'the state's interference with that

10  liberty interest without due process of law is remedial under 42 U.S.C. § 1983.' " *Lee v.*

11  *City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Kelson v. City of*

12  *Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985. "[T]his constitutional interest in familial

13  companionship and society logically extends to protect children from unwarranted state

14  interference with their relationships with their parents." *Id.* (quotation omitted). In addition,

15  "[t]he First Amendment also protects family relationships, that presupposes 'deep

16  attachments and commitments to the necessarily few other individuals with whom one

17  shares not only a special community of thoughts, experiences, and beliefs but also

18  distinctively personal aspects of one's life.'" *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir.

19  2018) (quoting *Lee*, 250 F.3d 685*); see also Bd. of Directors of Rotary Int'l v. Rotary Club*

20  *of Duarte*, 481 U.S. 537, 545 (1987) ("the First Amendment protects…family

21  relationships").

22        L.J. clearly has the right and standing to bring a claim for the loss of familial

23  association for the loss suffered by him as to his relationship with mother.

24      **B.   <u>The State of Arizona, by and through DCS, are Subject to Liability</u>**

25          <u>**Under Arizona and Federal Law**</u>

26        State Defendants argue that Plaintiffs' Claim 11 (Unlawful DCS Policies and

27  Practices) and their state law Claim 13 (Negligent Supervision, Training and Retention)

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

against the State and DCS should be dismissed as they cannot be sued under § 1983. *See* Mot. at 5-6: 23-17.

First, DCS is <u>not</u> a named Defendant in this matter. *See* FAC at 1:27-2:8 (DCS not listed as a Defendant in the caption); *see also* FAC ¶¶ 6-17 (DCS not identified as one of "The Parties"). Indeed, Plaintiffs intentionally removed DCS as a Defendant in the First Amended Complaint. *Compare* (Doc. 1-3 at 5:23-6:8 (original Complaint caption naming Arizona Department of Child Safety as a Defendant)) *with* (Doc. 1-3 at 132:27-133:8 (First Am. Compl. caption not naming Arizona Department of Child Safety as a Defendant)). Rather, in the operative complaint, the First Amended Complaint (Doc. 1-3 at 132-175), DCS is merely identified as an "agency" through which the State of Arizona, who is a party, is alleged to have acted. FAC ¶ 12. Thus, and again, DCS itself is not a Defendant and is not being sued – a fact that Plaintiffs' counsel discussed and clarified for State Defendants' counsel in their meet and confer discussions *before* State Defendants filed their motion. Plaintiffs also explained and clarified to State Defendants that to the extent the parenthetical descriptions for Claims 11 or 13 state "State of Arizona *and* Arizona Department of Child Safety", that "and" should be replaced with "through". *See* FAC at 37:16. Further, it was explained and clarified that to the extent any of the allegations in Claims 11 state "Defendant State and DCS", the "and" should be replaced with "through", as the "and" was a scrivener's error left over from the original Complaint in which DCS was a named Defendant. *See* FAC ¶¶ 240-242, 244-248. Similarly, it was discussed with State Defendants that to the extent any allegations in Claim 13 state "Defendants the State, DCS,…", that "DCS," should be stricken, as leaving "DCS," in the FAC was a scrivener's error in not removing that language left over from the original Complaint. Plaintiffs agree for the sake of the present motion only that DCS is a non-jural entity not subject to being sued. However, that does not mean that the State of Arizona cannot be sued as the governmental body responsible for the actions of DCS employees, as intended in the FAC and discussed next.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Second, as Claims 11 and 13 pertain to the State, acting by and through DCS and its employees, it is well established that a government entity or subdivision is liable for the constitutional violations of its employees when its employees commit a constitutional violation and, at the time of the constitutional violation, the government entity or subdivision has an established custom or policy that inflicts an injury of constitutional magnitude. *See Cloutheir v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). Such liability may be premised on account of deliberate acts as well as omissions "when such omission amount to the local government's own official policy." *Id*. Thus "a failure to train or supervise can amount to a 'policy or custom' sufficient to impose liability," on the government entity or subdivision, *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006), where it amounts to "deliberate indifference to the rights of persons with whom the officers come into contact." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (internal alterations omitted). To establish liability of a government entity or subdivision, i.e., "*Monell* liability", plaintiffs must show: (1) they were deprived of a constitutional right; (2) the government entity or subdivision had a policy; (3) the policy amounted to a deliberate indifferent to the plaintiff's constitutional rights; and (4) the policy was the 'moving force behind the constitutional violation." *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 110-111 (9th Cir. 2001) (*quoting Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (internal quotations omitted)).

Plaintiffs can generally establish that a policy exists in three ways. First, they can identify an explicit policy promulgated by the entity that employees followed and that led to the deprivation of an individual's constitution rights. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978). The failure to promulgate explicit policy or failure to appropriately train employees has also resulted in liability where the failure was the result of the entity's "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Where the need for a policy is so obvious considering the risk of constitutional violations, this conscious or deliberate choice can be inferred. *Id.* at 390 n.10 ("[T]he need to train officers in the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to the constitutional rights" (citation omitted).).

Third, plaintiffs can show that even though an explicit policy may not be identified at filing or through discovery, a permanent, widespread, and settled custom existed that state employees followed and that led to the deprivation of constitutional rights. *Thompson v. City of Los Ang*eles, 885 F.2d 1439, 1444 (9th Cir. 1989). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9t Cir. 1996).

Fourth, plaintiffs may be able to show following discovery that the constitutional deprivation occurred pursuant to a directive by a decisionmaker with final authority to make binding policy. *See*, e.g., *Davis v City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

Finally, the United States Supreme Court has flatly rejected any 'heightened pleading standard" for *Monell* claims, as such a standard would be "impossible to square...with liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarran City Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Here, Plaintiffs have sufficiently alleged facts which would support a finding of liability against the State of Arizona – by and through DCS employees. Additionally, Plaintiffs can bring a state law claim against the State of Arizona as §1983 and it case law does not apply to state law claims. Therefore, Plaintiffs' claims against the State of Arizona, for conduct by and through DCS and its employees, should not be dismissed.

**C.**     <u>The § 1983 Claims Against DCS Supervisor Davisson, and Directors Faust and McKay, Must Not Be Dismissed for Failure to State a Claim</u>

State Defendants move to dismiss all § 1983 Claims (Claims 1, 2, 3, 4, and 5) against DCS supervisors Davisson and former Directors Faust and McKay on the basis that

Plaintiffs have failed to provide a short and plain statement as to their "integral participation" in each of the allegations. *See* Mot. at 6:18-7:13. To support this assertion, State Defendants make the following disingenuous argument: Plaintiffs must allege a supervisor "set in motion a series of acts" that would cause others to inflict constitutional injury and to establish intent. *See* Mot. at 6:23-7:4. This is an incorrect statement of the law, particularly at the pleading stage.

"A supervisor *can be liable in his individual capacity* for his own culpable *action or <u>inaction</u> in the training, supervision, or control of his subordinate*; for his *acquiescence in the constitutional deprivation*; or for *conduct that showed a reckless or callous indifference to the right of others... .*" *Keates*, 883 F.3d at 1242-43 (emphasis added, internal citations and quotations omitted.) Furthermore, "the claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Id.* Thus, a supervisory official can be liable for a § 1983 violation '[e]ven if [they are] not directly involved in the allegedly unconstitutional conduct." *Id.* Furthermore, the Ninth Circuit held "[a]lthough '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*,' supervisory officials may be liable on the basis of their own acts or *<u>omissions</u>*," including supervising "with deliberate indifference toward the possibility that deficient performance of the task may contribute to a civil rights deprivation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (*quoting Iqbal*, 129 S.Ct. at 1948) (some internal quotation marks omitted, emphasis added.)

Plaintiffs here do allege the wrongful act(s) committed by each state Defendant and how these acts give rise to the claimed violations of Plaintiffs' constitutional rights. *See supra* § II, <u>Factual Background</u>; *see also* FAC ¶¶ 46, 107, 129-136, 158, 161-162, 175, 181, 187-192, 207-201, 218-220, 229, 237-238 (not necessarily an exhaustive list). Plaintiffs' claims against Davisson are based on direct, not vicarious, liability; and as noted above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1
2
3
4
5
6
7
8
9

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, Plaintiffs have reason to believe that discovery will show that not only did these supervisors and former directors ratify their employees' wrongful conduct, but actually and actively directed the wrongful conduct. Thus, Plaintiffs have pled that each and all supervisors and former directors acquiesced to the unconstitutional conduct of their subordinates, and under *Keates*, these supervisors and former directors can be held directly liable for this conduct. *Keates*, 883 F.3d at 1242-43. The claims against the supervisors and former directors here are for their own actions, or failures to act, and not simply in the manner of *respondeat superior*. State Defendants' argument regarding *respondeat superior* is a red herring – it has no relevance here and lacks merit.

### D.   Plaintiffs' Claims Did Not Accrue Until May 25, 2023

State Defendants argue that the statute of limitations expired for Plaintiffs' § 1983 – Claim 1 (Unlawful Seizure and Detention), Claim 2 (Judicial Deception), Claim 3 (Failure to Make Reasonable Efforts), Claim 4 (Medical Decisions), and Claim 5 (Medical Treatments) based on each date of removal of the respective child(ren). *See Mot.* at 7:28-11:20. Defendants are mistaken that the date of each removal is the accrual date for Plaintiffs' § 1983 claims. Rather, the correct accrual date is when Plaintiffs are no longer facing a Sophie's Choice of either cooperating with DCS and its agents to hopefully effectuate a swift reunification or the family, or antagonizing DCS and its agents by filing suit against them. Thus, the earliest possible accrual date is the termination of the dependency proceedings on 25 May 2023.[2] Requiring parents to file a lawsuit against persons holding inordinate power over their visitation rights and when (or if) their children would be returned to them within two years of removal – while the dependency proceedings are pending (proceedings during which any rational parent wants to be cooperative with the Department to regain custody of their children) – as opposed to within two years of when those persons no longer held that Damocles' sword over parents, is

---

[2] State Defendants have conceded that that the claims of minor Plaintiffs K.J., K.A.J., and J.A.J are not time barred due to their status as minors.  L.J. is also a minor and his claims are not time barred pursuant A.R.S. §12-821.01(D).

inconsistent with the purposes of §1983 and its distinct significance in the child welfare context.

Federal courts look to state law for the length of the limitations period applicable to § 1983 claims, and to federal law to determine when a § 1983 claim accrues. *McDonough v. Smith*, 139 S.Ct. 2149, 2155 (2019) (citing *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed 2d 973 (2007)). Importantly, "[w]here, [as here] for example, a particular claim may not realistically be brought while a violation is ongoing, such claims may accrue later. *Id.* (*citing Wallace*, 549 U.S. at 389, 127 S.Ct. 1091). The Supreme Court's decision in *McDonough* supports that either the date the dependency petition was terminated and DCS and Defendants were no longer holding sway over Plaintiffs' parental rights, and Plaintiffs regained unrestricted care and custody of their children, i.e., May 25, 2023 (FAC ¶ 41), as the proper accrual date for their § 1983 claims. The complaint filed on May 5, 2023, was thus timely.

*McDonough* addressed the accrual date for a § 1983 claim against defendants for fabricating evidence against the plaintiff in an earlier criminal case. The Supreme Court concluded that the accrual date for the plaintiff's § 1983 claim was not the date he knew that fabricated evidence had been used, but the date the earlier proceedings against him terminated in his favor. *Id.*, 139 S.Ct. at 2154-55. The court noted that the "accrual analysis begins with identifying the specific constitutional right alleged to have been infringed." *Id.* at 2155. The court considered the fabricated evidence claim to arise under the Due Process Clause of the Fourteenth Amendment, as do familial association claims, which sought to "vindicate a right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Id.* The Supreme Court then considered the correct accrual date by "referring to the common-law principles governing analogous torts." *Id.* at 2156. The plaintiff in *McDonough* argued, and the Supreme Court agreed, that his § 1983 fabricated-evidence claim was most analogous to the common-law tort of malicious prosecution. *Id.* The Supreme Court then stated, "[w]e follow the analogy where it leads: McDonough could not bring his fabricated evidence claim under § 1983 prior to favorable termination

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    of his prosecution." *Id.* The Supreme Court noted the policy of considerations that
2    supported its finding – the desire to avoid parallel criminal and civil litigation over the
3    same subject matter and possibility of conflicting results. *Id.* at 2157.

4        The same reasoning and result apply here because of the State Defendants'
5    inordinate position of power over families caught within the dependency machinery. If
6    Bianca and Jiaro's claims accrued the moment each child was taken into state custody, then
7    they would have faced the "untenable choice" that worried the Supreme Court in
8    *McDonough*:  either let their claims expire or file a civil lawsuit against the state actors
9    restricting their visits and seeking to sever their parental rights in concurrent dependency
10   proceedings. *See id* at 2158. Under *McDonough*, the correct accrual date for Bianca's and
11   Jiaro's claims is when the dependency proceedings terminated regaining full care and
12   custody of their children on May 23, 2023. Their § 1983 claims were timely filed.

13       In addition, the doctrine of continuing torts applies when there are a series of related
14   or multiple wrongful acts or omissions. *See Cruz v. City of Tucson*, 243 Ariz. 69, 74 (App.
15   2017). In these matters, "accrual begins at the termination of the wrongdoing, rather than
16   at the beginning. *Id*. (internal citations omitted); *see also, accord Heard v. Sheahan*, 253
17   F.3d 316, 319 (7th Cir. 2001) (the continuing torts doctrine applies "when it would be
18   unreasonable to require or even permit [plaintiffs] to sue separately over every incident of
19   the defendant's unlawful conduct."). Here, Bianca and Jiaro did not regain their full
20   parental rights until 23 May 2023. The doctrine of continuing torts applies here as it would
21   have been impractical for Bianca and Jiaro to file a lawsuit every time they were injured
22   by State Defendants unlawful interference with their family with each removal of one of
23   their children, i.e., September 2018 for K.J., March 2019 for K.A.J, and February 2020 for
24   J.A.J.

25   **E.    <u>Plaintiffs' State Law Claims and Notice of Claim were Timely</u>**

26       State Defendants argue that Plaintiffs' state law claims: Claim Six (negligence per
27   se),  Claim Seven (abuse of process), Claim Eight (gross negligence / legal rights), Claim
28   Nine (gross negligence / reasonable efforts), Claim Ten (gross negligence exercised by

1   DCS employees), Claim Eleven (unlawful DCS policies and practices), Claim Twelve
2   (intentional infliction of emotional distress), and Claim Thirteen (negligent supervision,
3   training, and retention) should all be dismissed as untimely for failure to serve a timely
4   notice of claim and file suit within one year of the accrual date for state claims specific to
5   each child's removal date.  *See Mot.* at 12:21-13:18. Their argument fails.

6        Under A.R.S. § 12-821.01, a notice of claim must be "filed within one hundred
7   eighty days after the cause of action accrues" or the claim is barred. A.R.S. § 12-821.01(A).
8   A claim accrues when "the damaged party realizes he or she has been damaged and knows
9   or reasonably should know the cause, source, act, event, instrumentality, or condition that
10  caused or contributed to the damage." A.R.S. § 12-821.01(B). Arizona courts have held,
11  that "[a]n *analysis of the elements* of the underlying claim *is necessary to determine when*
12  *a cause of action accrues.*" *Rogers v. Bd. of Regents of Univ. of Arizona*, 233 Ariz. 262,
13  265 (App. 2013) (emphasis added) (citations omitted). The Arizona Court of Appeals has
14  interpreted § 12-821.01(B) "as a codification of the discovery rule for determining when
15  causes of action against public entities…accrue." *Thompson v. Pima Cty.,* 226 Ariz.  42,
16  46 ¶ 12 (App.2010). Courts have held that the reason for the continuing torts doctrine is
17  "to allow a plaintiff [to] reach back to [the tort's] beginning even if that lies outside the
18  statutory limitations period, when it would be unreasonable to require or even permit him
19  to sue separately over every incident of defendant's unlawful conduct." *Heard v. Sheahan*,
20  553 F.3d 316, 319 (7th Cir. 2001).

21       The United State Supreme Court discussed the contours of the discovery rule for
22  determining when causes of action accrue when, as here, the claims arise from conduct of
23  state actors during a state initiated judicial proceeding. *McDonough*, 139 S.Ct. at 2158.  In
24  *McDonough* it was alleged that Smith used fabricated evidence to pursue criminal charges.
25  *Id.* at 2153. "McDonough was acquitted, then sued Smith under 42 U.S.C. § 1983." *Id.*
26  The case called on the court to determine when McDonough's cause of action against
27  Smith had accrued. This case also concerns the accrual of claims involving the conduct of

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

state actors during a state initiated judicial proceedings, *McDonough* is thus instructive in determining the accrual date for Plaintiffs' state law claims.

As state above, the Supreme Court noted that its analysis of the accrual date was to be governed by "common-law tort principles." *McDonough*, 139 S.C. at 2155 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). The accrual date is "presumptively when the plaintiff has a complete and present cause of action, though the answer is not always so simple." *Id.* (internal quotation marks and citation omitted). "Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Id.* This rule is "rooted in pragmatic concerns with avoiding parallel…litigation over the same subject matter and the related possibility of conflicting…judgments." *Id*. at 2157.

In *McDonough*, McDonough's claims challenged the validity of the criminal proceedings against him. Likewise, here, Plaintiffs' claims challenge the validity of the state-initiated dependency proceedings against them. In *McDonogh*, the Supreme Court held that such a claim cannot accrue "while those … proceedings are ongoing." *Id.* at 2158. "The soundness of the conclusion," the Court held "is reinforced by the consequences that would follow from" any other "approach." *Id.* If the claim accrued at any other time, it "would impose a ticking limitations clock" on those facing judicial action. *Id.* "Such a rule," the court noted, "would create practical problems in jurisdictions where prosecution regularly last nearly as long as – or even longer than – the relevant civil limitations period." *Id.* It forces potential claimants to "face an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *Id.*

Any other approach to the accrual of Bianca's and Jiaro's claims would raise the same problems. Dependency and termination proceedings regularly last much longer than one hundred eighty days, or even a year. Thus, under any other approach, parents with potential claims against state actors would face an untenable choice between letting their claims expire and filing suit against the very state actors who are seeking to have their

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

children declared dependent or to have their parental rights permanently terminated. Both options are undesirable and fraught with peril. "Moreover," the Supreme Court noted, "the parallel civil litigation that would result if plaintiffs chose the second option would run counter to core principles of federalism, comity, consistency, and judicial economy." *Id.*

In *McDonough* the court noted "[b]ecause a civil claim such as McDonough's, asserting that fabricated evidence was used to pursue a criminal judgment, implicates the same concerns" as that at issue in a malicious prosecution claim, "it makes sense to adopt the same rule" for the date of accrual. *Id*. at 2157. Likewise, because Bianca's and Jiaro's state law claims implicate the same concerns at issue in *McDonough,* the same accrual rule applies too – the claims do not accrue until the underlying state initiated judicial proceeding (i.e., the dependency or termination proceeding) ended. Since the state court proceedings ended on May 23, 2023, with a dismissal of the dependency, *see* **Exhibit 1** at 3 (Minute Entry dated May 25, 2023), Plaintiffs had until November 26, 2023 to file a Notice of Claim, and May 23, 2024 to file a lawsuit. Here, the Notice of Claim was filed on November 8, 2022, and the original Complaint was filed May 8. 2023, both events well within the required time periods.

**F.      Plaintiffs Were Not Afforded Due Process for Their Civil Rights Claims**

State Defendants argue that Plaintiffs were afforded due process in state court so Claims 3, 4 and 5 should be dismissed. *See* Mot. at 13:19-15:13. Besides other problems with their argument, State Defendants incorrectly assert that parental rights are protected only by procedural due process. Parents' rights are fundamental liberty interests, and the heightened protection of substantive due process applies. *See Troxel v. Granvill*, 530 U.S. 57-65-66, 120 S.Ct. 2054, 2060, 147 L.Ed. 2d 49 (2000). "Courts have characterized the right to familial association as having both a substantive and procedural component." *Keates*, 883 F.3d at 1236 (quotation omitted). Substantive due process can be violated "regardless of the procedures used." *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765-66 (6th Cir. 2020).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1. **Procedural due process violations**

"While the right is a fundamental liberty interest, officials may interfere with the right if they provide with the parents fundamentally fair procedures." *Id.* (quotation and citations omitted). The first of these "fundamentally fair procedures" includes a reasonable, pre-deprivation investigation. "An official 'cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued.'" *Keates*, 883 F.3d at 1237 (*quoting Wallis v Spencer*, 202 F.3d 1126, 1138).

In fact, this fundamentally fair procedure is guaranteed by Arizona law. A.R.S. § 8-846 provides in pertinent part that:

> After receiving a DCS report from the centralized intake hotline pursuant to § 8-455, an investigator shall do all of the following: **Make a prompt and through investigation. An investigation must evaluate and determine the nature, extent and cause of any condition created by the parents, guardian or custodian or an adult member of the victim's household that would tend to support or refute the allegations that the child is a victim of abuse or neglect** and determine the name, age and condition of other children in the home. If an investigator has sufficient information to determine that the child is not a victim of abuse or neglect, the investigator may close the investigation.

A.R.S. §8-456(D)(1) (emphasis added)

"A liberty interest may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009) (quotation omitted). "[D]eliberately fabricating evidence in child abuse proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty or property interest is at stake." *Costanich v. Dep't of Soc. & Heath Servs*., 627 F.3d 1101, 1108 (9th Cir. 2010).

State Defendants violated Plaintiffs' due process rights when they failed to reasonably investigate the anonymous hotline tip, and had they done so, they would have determined that the information was false. However, that did not absolve State Defendants from the requirement of fundamentally fair procedures as their allegations within the petitions were false and misleading.

17

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2.    **Substantive due process violations**

A "shock the conscience" test is used to determine if substantive due process is violated by acts of a governmental official. *See Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1153 (D. Or. 2021*); see also Cnty of Sacromento v. Lewis*, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 171617, 140 L.Ed.2d 1043 (1998) (substantive due process protects against the arbitrary or oppressive exercise of government power). When determining if an act "shocks the conscience," courts will consider if a legitimate government interest motivated the government official, if the act was intentional, and if they knew there was substantial risk of serious harm. *Siefert*, 951 F.3d at 766-67.

State Defendants acts were arbitrary, motivated by the employees' time pressures, workload, and unwillingness to fully investigate the allegations, rather than for the legitimate state interest of protecting children. State Defendants also knew, as would any reasonable DCS employee, that there was a substantial risk of serious harm if K.J., K.A.J., and J.A.J. removals were unwarranted. The state court hearings did not cure the procedural due process violations because State Defendants continued on their path of removal even after the juvenile court requested reunification. But State Defendants ignored that order and withheld the children for an additional five months. State Defendants' conduct shocks the conscience and was in violation of Plaintiffs' substantive due process rights. *See Gunter*, 577 F. Supp.3d at 1153; *Cnty of Sacramento*, 523 U.S. at 845-46; *Siefert*, 951 F.3d at 766-767.

G.    **State Defendants are Not Entitled to Qualified Immunity for § 1983 Claims**

State Defendants make the erroneous claim that they are entitled to qualified immunity for § 1983 claims. Qualified immunity precludes liability if the state actor's "conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense, which Plaintiffs had no obligation to plead around. *See, e.g., Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

The purpose of this doctrine is to balance two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officals from harassment, distraction, and liability when they perform their duties reasonably." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9ᵗʰ Cir. 2021) (quotation omitted). To determine whether State Defendants are entitled to qualified immunity, the Court considers two independent questions: (1) whether their conduct violated a statutory or constitutional right, and (2) whether that right was "clearly established" at the time of the incident. *District of Columbia v. Wesby*, 538 U.S. 48, 62 (2018). For the purposes of qualified immunity, a right is clearly established if "a reasonable officer would recognize that his or her conduct violates the right under the circumstances faced, and in light of the law that existed at that time." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9ᵗʰ Cir. 2006). The court need not, however, find "a prior case with identical, or even materially similar facts;" it is enough that "the preexisting law provided the defendants with fair warning that there conduct is unlawful." *Id.*

When State Defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the court can determine, based on the complaint itself, that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9ᵗʰ Cir. 2016) (*quoting Groten v. California*, 251 F.3d 844, 851 (9ᵗʰ Cir. 2001)). While courts may consider qualified immunity at the pleadings stage, "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates*, 883 F.3d at 1234. "If a state official 'submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarding the truth, . . . he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost.'" *Id*. at 1240.

In this case, State Defendants failed to conduct a thorough investigation into the false allegations but instead wrongfully removed the children. State Defendants deceived the juvenile court by presenting information they knew or reasonable should have known was false. FAC ¶ 45.  Even Davisson signed the false reports filed with the juvenile court,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

in accordance with DCS policy. State Defendants false narrative is fully set forth in Plaintiffs' First Amended Complaint. *Id.* at ¶¶ 48-49, 63-67, 69-84, 94-99, 124-128, 146-150.  State Defendants have provided no basis to support their claim for qualified immunity based upon the allegations in the First Amended Complaint.

## H.   Issue and Claim Preclusion Do Not Bar This Lawsuit

State Defendants erroneously argue that Plaintiffs are precluded from bringing § 1983 claim as these issues were already adjudicated and decided by the juvenile court. The ultimate final judgment of the Arizona juvenile court was the dismissal of DCS' dependency petitions. The juvenile court got it right. Plaintiffs are not seeking to have this Court provide relief from the juvenile court's judgment. Rather, this lawsuit deals with the conduct of State Defendants that led to the removal of the children in the first place in violating Plaintiffs' constitutional rights.

### 1.   Issue preclusion does not apply

Issue Preclusion does not apply to issues presented in this lawsuit. Issue preclusion applies when: (1) the issue of fact to be litigated was actually litigated in a prior action; (2) a final judgment was entered; (3) the party against who the doctrine is to be invoked had an opportunity to litigate the matter and did litigate it; and (4) such issue or fact was essential to the prior judgment. *Chaney v. Building Co. v. City of Tucson*, 148 Ariz. 571, 716 P.2d 28, 30 (1986).

State Defendants cannot satisfy the elements for issue preclusion. First, the issues at stake are not the same in this matter as those in the dependency proceeding. In the dependency action, the minor children's custody was at stake, and the State Defendants' civil liability was not. The issues at stake in this case (e.g., unlawful seizure and detention; judicial deception; failure to make reasonable efforts; medical decisions; medical treatments; negligence per se; abuse of process; gross negligence/legal rights; gross negligence/reasonable efforts; gross negligence exercised by DCS employees; unlawful DCS policies and practices; intentional infliction of emotional distress; and negligent

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    supervision, training and retention) were not litigated and determined by the juvenile court

2    dependency action.  Plaintiffs did not have a full and fair opportunity to litigate these issues

3    and did not do so.  State Defendants motion to dismiss on issue preclusion should be denied.

### 2.   <u>Claim preclusion does not apply to this case</u>

5        Claim preclusion is not applicable. The claims in the juvenile dependency

6    proceeding were different than the claims in this case, meaning there is no "identity of

7    claims," as required for claim preclusion.

8        To determine the preclusive, or res judicata, effect of the state juvenile court

9    ligation, this Court must look to the law of the State of Arizona. *Sunkist Growers, Inc. v.*

10   *Fisher*, 104 F.3d 280, 283 (9th Cir. 1997). In civil litigation, claim preclusion "means that

11   'a final judgment on the merits in a prior suit involving the same parties or their privies

12   bars a second suit based on the same claim.'" *Cocchia v. Testa Trustee of Karen M. Testa*

13   *Separate Property Trust*, 536 P.3d 273, 279 (App. 2023) (quoting *Lawrence T. v. Dept'*

14   *Child Safety*, 246 Ariz. 260, 261 ¶ 8 (App. 2019)). Arizona and federal courts apply

15   different tests for the identity of claims element. Under Arizona law, for an action to be

16   barred, it must be based on the same cause of action asserted in the prior proceeding.

17   *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 934 F.2d 801, 804 (App. 1997) (citing *Chaney*

18   *Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986); *Niensted v. Witzel*,

19   133 Ariz. 348, 355, 651 P.2d 876, 883 (App. 1982)). "If no additional evidence is needed

20   to prevail in the second action than that needed in the first, then the second action is barred."

21   *Id.*

22       Claim preclusion does not apply to this lawsuit. Here, there is no unfavorable state

23   judgment, no appeal, and no issue of preclusion before this Court. There were interim

24   decisions made by a juvenile court, and after almost five years, on May 25, 2023, the

25   juvenile court dismissed the dependency and returned the children to Bianca and Jiaro. The

26   juvenile court's only involvement was to determine if Bianca and Jiaro were fit to parent

27   their children. There were no legal issues before the juvenile court regarding the violation

28   of Plaintiffs' constitutional rights under §1983.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## IV.    <u>CONCLUSION</u>

A motion to dismiss can be granted only if, when drawing all reasonable inference in favor of the Plaintiffs, there is no cognizable factual or legal basis for the claim. *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1949, 173 L.Ed. 2d 868; *Bell Atl. Corp*, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L. Ed. 2d at 929; *Earth Islan Inst.*, 464 F. Supp. 3d at 1141. Here, the State Defendants fail to meet this standard.  Plaintiffs' claims are well-pled and timely.

WHEREFORE, Plaintiffs request the Court to deny State Defendants' Motion to Dismiss in its entirety.

**RESPECTFULLY SUBMITTED** this 8th day of November 2023.

MILLS + WOODS LAW PLLC

By____*/s/ Thomas A. Connelly*_____
  Thomas A. Connelly
  Robert T. Mills
  Sean A. Woods
  5055 North 12th Street, Suite 101
  Phoenix, AZ 85014

GILLESPIE, SHIELDS & TAYLOR

  DeeAn Gillespie Strub
  Jenny D. Jansch
  7319 North 16th Street
  Phoenix, AZ 85020

  *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of November 2023, I electronically transmitted the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

  */s/  Thomas A. Connelly*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556