Kristin K. Mayes
Attorney General

Julie M. Rhodes (016313)
Michael R. Niederbaumer (031931)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7612 – JR
Telephone: (602) 542-8346 – MN
Fax: (602) 542-3393
DefensePhx@azag.gov
Julie.Rhodes@azag.gov
Michael.Niederbaumer@azag.gov

*Attorneys for State Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bianca Jimenez-Bencebi, an individual; Jiaro Abrego Zavaleta, an individual; L.J, a minor, through his parent and guardian, Bianca Jimenez-Bencebi; K.J., a minor, through his parent and guardian, Bianca Jimenez-Bencebi; K.A.J, a minor, through her parent and guardian Bianca Jimenez-Bencebi; and J.A.J., a minor, through his parent and guardian Bianca Jimenez-Bencebi,<br><br>Plaintiffs,<br><br>v.<br><br>State of Arizona, a government entity; Carin Patchin, individually and as an employee with the State of Arizona Department of Child Safety; Tracey Del Fiacco, individually and as an employee with the State of Arizona Department of Child Safety; Amanda Davisson, individually and an employee with the State of Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; and Gregory McKay, as Former Director, Arizona Department of Child Safety,<br><br>Defendants. | Case No: 2:23-cv-02075-DWL<br><br>**STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

Pursuant to Ariz. R. Civ. P. 12(b)(6) Defendants State of Arizona, Carin Patchin, Tracy Del Fiacco, Amanda Davisson, Michael Faust, and Gregory McKay, collectively ("State Defendants") request this Court dismiss Plaintiffs' First Amended Complaint ("FAC") with prejudice. Plaintiff's Response does not adequately address the multiple fatal defects in the FAC nor does the Response properly calculate the accrual date for the state and federal claims; electing to present policy arguments in lieu of applicable law. First, Plaintiff's FAC is barred by both the statute of limitations and the failure to timely serve a notice of claim; neither of which is amenable to amendment. Second, Plaintiffs do not provide additional facts or law to support the proposition that L.J. has standing to sue. Finally, all State Defendants are subject to qualified immunity protections and the doctrines of preclusion control. This Reply is supported by the following Memorandum of Points and Authorities and the Court's entire record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    BACKGROUND**

The critical facts of this case are not in dispute. This lawsuit stems from a State Court proceeding where Plaintiffs challenged the removal, dependency, and termination of their parental rights to four children. K.J. and J.M.J. were removed from Plaintiff Jimenez's legal custody on September 14, 2018. (FAC ¶¶ 48, 52). Plaintiff Jimenez gave birth to K.A.J. on March 5, 2019 and that child was also removed by the Department of Child Safety ("DCS"). (*Id.* ¶ 38(d)). Plaintiff Jimenez gave birth to her fifth child, J.A.J., who was removed immediately after birth. (*Id.* ¶ 38(h)). Ultimately, four children were subject to a termination proceeding that concluded with a ruling from the State Court on May 11, 2022. (*Id.* 38(i), (k), 89). The State Court did not terminate the parent-child relationship between K.J, K.A.J., and J.A.J. in that decision, but did terminate Plaintiff Jimenez's legal relationship with J.M.J. (*Id.* ¶ 38(k)).

The State Court and DCS remained involved with the family until the dependency action was dismissed on May 25, 2023. (*Id.* ¶ 41). Plaintiffs' first civil complaint was filed on May 8, 2023 and the FAC (operative complaint) was filed on September 1,

2023.[1] The State Court proceedings included three dependency petitions and two severance actions. (*Id.*¶¶ 38, 62). The court of appeals was involved and overturned the first severance proceeding on procedural grounds. (*Id.* ¶ 38).

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court is bound to accept the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The district court has broad discretion to deny leave to amend where a plaintiff has already amended a complaint. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir.1996)). Futility alone justifies denying a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

## III.   LEGAL ARGUMENT

### A.   L.J. Does Not Have a Viable Cause of Action

Plaintiffs' concede that L.J. lacks standing to sue in his role as a sibling, which is consistent with legal authority. Plaintiffs' acknowledge that binding precedent exists precluding siblings from possessing a familial association claim. *See J.P. by and through Villanueva v. Cnty. Of Alamanda*, 803 Fed. App'x 106, 109 (9th Cir. 2020) (citing *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991).

Plaintiffs now assert that L.J.'s claims are based on DCS's interference in his relationship with Plaintiff Jimenez; however, the FAC is devoid of facts supporting steps taken by State Defendants to interfere in this familial relationship. Instead, Plaintiff Jimenez asserts she and L.J. were "fearful" that if he returned to her care he would be

---

[1] Plaintiffs' policy argument focuses on the impropriety of simultaneously maintaining a federal civil rights case while involved in a state court proceeding; however, Plaintiffs did so in this circumstance as the Complaint was filed before the State Court case concluded.

1  removed. (FAC ¶¶ 23, 106, 137). Paragraphs 129-137 are cited as factual support for this
2  position, but those paragraphs discuss the seizure of the other children, not the seizure of
3  L.J. The FAC specifically states that L.J. stayed away for four years after Plaintiff
4  Jimenez "voluntarily" let L.J. live with his father in Puerto Rico believing this was in his
5  best interests. (*Id.* ¶¶ 29-30, 137). The only plausible interpretation of these facts is that
6  State Defendants did not interfere with this relationship, only that Plaintiff Jimenez and
7  L.J. "feared" that they might. State Defendants cannot logically be found liable for
8  actions not taken.[2] In fact, it is alleged that State Defendants never even interviewed L.J.
9  so it is clear from the face of the FAC that he was not a part of the State Court
10 proceedings. (*Id.* ¶ 82).

  **B.**   **It is Appropriate to Dismiss DCS as a Party; The State of Arizona, Faust, and McKay Acting in Their Official Capacity Cannot be Sued Under Section 1983 Nor Under State Law—Counts 11, 13**

  Plaintiffs concede that DCS was not intended to be named as a Defendant in this matter and that dismissal of DCS is appropriate, despite the numerous scrivener errors in the FAC.[3] (Doc. 11).

  Plaintiffs fail to present any plausible defense to dismissing the State, Faust, and McKay (in their official capacity). (Doc. 11, ¶¶ 16-17). It is well-established that the State of Arizona is not a person under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Neeley v. Arizona*, No. CV-19-05899-PHX-DJH, 2022 WL 44676, at *8 (D. Ariz. Jan. 5, 2022). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity. *Will*, 491

---

[2] Paragraph 8 states that "at most times relevant to the present Complaint, L.J. resided in Maricopa County, Arizona" which is contrary to the body of the FAC. (FAC ¶ 8).
[3] Plaintiffs refer repeatedly to the meet and confer conversation explaining that the numerous scrivener errors were discussed during that meeting. Despite their contention, Plaintiffs never filed a Second Amended Complaint fixing the errors and making the document clear that DCS was not a party to the lawsuit. (Doc. 11).

U.S. at 66. The State is entitled to a dismissal with prejudice for all claims under Section 1983 because "actions do not lie against a State." *Arizonans for Official English v. Arizona*, 502 U.S. 43, 69 (1997). In addition, Count 13 against the State requires dismissal as the Eleventh Amendment bars suits in federal court against states on the basis of violations of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-25 (1984). Count 13 is a state law claim for negligent supervision, training and retention.

A lawsuit against Faust and McKay in their official capacities is also not authorized. "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71.

Plaintiffs rely on an array of cases to support their position that this lawsuit can be maintained against the State—by and through DCS employees—but these cases all involve lawsuits against municipalities and local governments, not against a State. *Cloutheir v. County of Contra Costa,* 591 F.3d 1232, 1249 (9th Cir. 2010) (The Clouthiers may recover from the **County** under § 1983 for failure to prevent harm to Clouthier under one of three theories of municipal liability.) (emphasis added; overruled on other grounds); *Anderson v. Warner*, 4541 F.3d 1063, 1070 (9th Cir. 2007) (In order to hold the **County** liable under § 1983, Anderson must show…) (emphasis added); *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (To prevail on this claim, Galen was required to establish that the **County** had a deliberate policy, custom, or practice that was the "moving force" behind the constitutional violation he suffered.) (emphasis added). Plaintiffs are attempting to backdoor a *Monell* claim by suing the State of Arizona for actions of the DCS employees. This is strictly forbidden. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "States and their agencies and state employees sued in their official capacities are not proper defendants under Section 1983 and therefore cannot be sued under the statute." *Scott v. County of Maricopa*, CV-22-00607-PHX-DLR, 2022 WL 1154796 (April 19, 2022).

5

### C. Supervisors Davisson, Faust, and McKay Named in Their Individual Capacity Require Dismissal for Failure to State a Claim—Counts 1-5

#### 1. Individual acts or omissions

Plaintiffs' argument for holding Davisson, Faust, and McKay liable in their individual capacity must be based on each individual's own acts or omissions. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, the FAC does not contain facts pertaining to the individual conduct of these three State Defendants. This is blatantly obvious regarding Defendants Faust and McKay as both Faust and McKay are identified in the FAC as the official policymakers acting as Directors of DCS (McKay preceded Faust). As noted above, they cannot be sued in their official capacity for any federal claims; but the FAC also names them in their individual capacity. Yet, each individual's respective involvement is not mentioned in the allegations regarding the seizure or detention any of any of the children, nor in the allegations regarding the failure to make reasonable efforts to reunify the family. (Counts 1-3).

Faust and McKay are then named in Counts 4 and 5 with allegations they violated Plaintiffs' due process rights by making medical decisions and restricting Plaintiffs from attending medical treatments for E.F.[4] These two Counts stem from the seizure and detention allegations, but neither Faust nor McKay were alleged to have participated in those actions. (FAC ¶¶ 120-164). Even the practice of "incorporating by reference" does not resolve these deficiencies because neither Faust nor McKay is named in the "Factual Allegations" and no details about their individual participation are mentioned. (*Id.* ¶¶ 21-119). The facts are simply insufficient to support a § 1983 claim of integral participation. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996).

Counts 1-5 name Davisson as the supervisor to Patchin and Del Fiacco and allege she (1) failed to ensure the investigation met the statutory requirements; (2) "authorized"

---

[4] This is a presumed typographical error. It is being interpreted as referencing the children in this action.

6

1  false filings; (3) directed or ratified various actions (4) signed false reports that were
2  filed in juvenile court; (5) and interfered in Plaintiffs constitutional rights by seizing and
3  detaining the children. (FAC ¶¶ 123, 129-138, 149-150, 158, 161-162, 170, 175). Even
4  though more details are present for Davisson, the FAC still does not contain sufficient
5  facts to establish that Davisson knew the investigation was lacking or knew that
6  information contained in the filings, including court reports, was false. There are no
7  descriptions on how Davisson "directed or ratified" the alleged wrongful judicial
8  deception, nor any details about how Davisson participated in the seizure and detention
9  of the children. *See generally* FAC. "Liability under section 1983 arises only upon a
10 showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045
11 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). It is
12 appropriate to dismiss Davisson, Faust, and McKay from all § 1983 claims (Counts 1-5).

**2.  Knowledge of subordinate's constitutional violations**

If not personally involved in the acts, liability can still attach if Davisson, Faust, and McKay had knowledge of the unconstitutional conduct of their subordinates. *Starr*, 652 F.3d. at 1207. *Starr* requires Plaintiffs show that Davisson, Faust, and McKay breached a duty to Plaintiffs which was the proximate cause of the injury by either setting in motion a series of acts by others or knowingly refusing to terminate a series of acts by others. *Id*. at 1207 (citing *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). It is essential to establish (1) alleged knowledge of the constitutional violation, (2) of culpable actions of the subordinates, and (3) inaction in response. *Estate of Mendez v. City of Ceres*, 390 F.Supp.3d 1189, (E.D. Ca. 2019). The essential "knowing" element is missing from Plaintiffs' FAC. In *Starr*, the Court reiterated many examples of the information Sheriff Baca (Defendant) had at his disposal which created the basis for his knowledge. For example, the Court recounted a Department of Justice investigation, a Findings letter, weekly reports, and a Memorandum of Understanding; which Baca actually signed requiring him to address

and correct the continuous constitutional violations. *Id*. at 1209. No such examples of information known to Davisson, Faust, or McKay appear in the FAC.

Plaintiffs' quote *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) as support for their claims, but this is misplaced. In *Keates*, the Court specifically found that the complaint ***failed*** to allege that Director Carter (former DCS Director) had knowledge of the constitutional deprivations and acquiesced in them. *Id*. at 1243, ¶ 25.

> The complaint here does not allege that Carter was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that Carter promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused Koile's allegedly unconstitutional conduct. These allegations do not suffice to state a claim of supervisory liability.

There are no facts asserting former DCS Directors Faust and McKay were knowledgeable about any subordinates violating Plaintiffs' right by denying medical decision-making authority and denying attendance at appointments, so dismissal is appropriate. (Counts 4-5). Even the allegations against Davisson are suspect because she is simply lumped together with Patchin and Del Fiacco, but individual acts are not described. *See generally* FAC.

**D.   Federal Statute of Limitations is Expired—§ 1983 Counts 1-5, 11**

Plaintiffs' mistakenly calculate the accrual date as May 25, 2023 for all claims but provide no convincing argument supporting that position. Instead, Plaintiffs rely on policy considerations and surmise that maintaining a federal lawsuit while involved in a dependency proceeding is ill-advised and illogical. (Doc. 11); n. 1. Plaintiffs rely on *McDonough v. Smith*, 588 U.S. —, 139 S.Ct. 2149, 2155 (2019), but this reliance is misplaced for a number of reasons. First, *McDonough* is a criminal case, not a civil case. Second, the identified tort in *McDonough* was malicious prosecution; not illegal seizure/detention, nor interference in familial association, nor even judicial deception. Third, it is well-settled that malicious prosecution claims require a judgment in defendant's favor, which is not an element in any of the torts alleged by Plaintiffs. (*See*

*generally* FAC). This element alone justifies the accrual calculation at the conclusion of the act and is not supported in other contexts.

Federal law determines when the cause of action accrues. *Belanus v. Clark*, 7906 F.3d 1021, 1025 (9th Cir. 2015). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 1025. This is well-established principal. Despite Plaintiffs' attempts, the *Wallace* case is more applicable to these facts than *McDonough* because *Wallace* deals with the tort of false imprisonment and McDonough discusses malicious prosecution. *Wallace v. Kato*, 549 U.S. 384, (2007) (statutes of limitations begins to run once the claimant is detained pursuant to legal process). *Ybarra-Johnson v. Arizona,* CV-14-00171-PHJX-GMSD, 2014 WL 5843358 at *4 (D. Ariz. Nov. 12, 2014) discusses a similar fact pattern to the case at bar.

> According to the facts as alleged, since the initial removal of Ybarra–Johnson's sons from her custody, Defendants have filed false reports to the court, threatened and coerced Plaintiffs, fabricated favorable evidence, suppressed exculpatory documents, and otherwise engaged in a course of conduct that violated Plaintiffs' constitutional rights…However, the "continuing violations" doctrine was not designed to extend the statute of limitations in cases involving discrete unlawful acts or continuing ill effects from an injury occurring outside the limitations period. (citations omitted). The allegations of the Complaint alone, even liberally construed in light of our notice pleading system, do not properly yield a finding that Plaintiffs' § 1983 claims arising out of the seizure of I.E.J. and W.P. and the subsequent custody hearing are timely. Plaintiffs knew or had reason to know of their injuries on the date that the children were removed from the home. Although the Plaintiffs have alleged wrongful acts on behalf of Defendants that occurred after the initial removal of Ybarra–Johnson's eldest children, at most Plaintiffs have identified several discrete, injury-producing acts of which the Plaintiff should have been aware when they occurred-not a continuing violation.

(*Id.* *4). Here, the allegations are surprisingly similar. Additionally, since the FAC outlines the removal dates and commencement of legal proceedings, this Court can clearly interpret the appropriate accrual dates and dismiss accordingly: (1) K.J. on

September 14, 2018; (2) K.A.J. on March 5, 2019; and (3) J.A.J. on February 12, 2020. (FAC ¶¶ 38(a)(d)(h)). All are expired.

Federal claims also do not trigger the continuing tort doctrine. *See Wostrel v. Arizona*, CV-22-00312-PHX-DLR, 2023 WL 2308417, *7 (D. Ariz. Mar. 1, 2023) (finding continual tort doctrine "neither here nor there" for determining when a § 1983 claim accrues).

### E. State Claims are Barred by Expired Statute of Limitations and Untimely Notice of Claim—Counts 6-10, 12-13—Continuing Tort Theory Does Not Apply

Plaintiffs' seek to circumvent application of the codified discovery rule in A.R.S. § 12-821.01 by arguing the continuing tort doctrine extends the statute of limitations for the state claims; but this is erroneous. First, it must be noted that the accrual definition in A.R.S. § 12-821.01(B) applies to both the notice of claim and the filing of the action. *See Rogers*, *v. Board of Regents of University of Arizona*, 233 Ariz. 262, 265, ¶ 7 (App. 2013) (citing *Dube v. Likins*, 21 Ariz. 406 (App. 2007). Essentially, the statute codified the common law discovery rule. *See Thompson v. Pima County*, 226 Ariz. 42, 46 (App. 2010) (citing *Walton v. Arizona*, CV-16-03597 2017 WL 5997441 *4 (D. Ariz. June 27, 2017). Plaintiffs' conflate two concepts in their reliance on *Rogers*. Although *Rogers* does states that "[a]n analysis of the elements of the underlying claim is necessary to determine when a cause of action accrues"; and, it is true that certain torts may have different accrual dates due to the elements, this does not undercut application of the discovery rule applicable via the statute for most torts. *Rogers,* 233 Ariz. at 265.

In *Watkins,* the Court stated A.R.S. § 12-821.01 applies "regardless of the tort" whether it be intentional infliction of emotional distress, defamation, intentional interference with contract or invasion of privacy and requires a plaintiff to serve a timely notice of claim "after he or she knows of injury caused by the tortious act." *Watkins v. Arpaio*, 239 Ariz. 168, 173, ¶ 18 (Ariz. Ct. App. 2016) (declining to apply continuing tort doctrine to intentional infliction of emotional distress claim); *see Walton* at *5 (declining to toll accrual of plaintiff's claims until she regained custody of her children).

10

*Scions* is also enlightening. *Scoins v. Goddard*, CV-05-2933, 2007 WL 2807755, at *5 (D. Ariz. Sept. 25, 2007) (mem. decision, overruling risk on other grounds) (finding plaintiff "realized that she had been injured by the defendants as soon as she lost custody of her children" and therefore plaintiff's failure to comply with A.R.S. § 12–821.01 barred plaintiff's state law claims). *Scions* specifically rejected the argument that the cause of action did not accrue until the child was released from the wardship of the court. *Id*. at *5. In *Scions*, the Court looked at a factually similar case scenario.

> Plaintiffs assert claims under 42 U.S.C. § 1983, arguing that they were deprived of their due process rights under the Fourteenth Amendment, as well as their right to be free from unreasonable searches and seizures under the Fourth Amendment. They also assert numerous state law claims, including negligence, negligent hiring, training and supervision, intentional and negligent infliction of emotional distress, malicious prosecution, medical malpractice, breach of fiduciary duty, and child abuse and neglect under A.R.S. § 13–3623.

*Scions*, *2. *Scions* specifically dealt with allegations that Defendants acted with deliberate indifference, malice, reckless disregard, and neglect when they violated CPS's procedures, failed to investigate known discrepancies, took CQ when there was no exigency, made knowing false statements, failed to provide family reunification services and showed an utter and gross dereliction of duties. These allegations are consistent with Plaintiffs' FAC which includes negligence, gross negligence, abuse of process, and intentional infliction of emotional distress.

Plaintiffs incorrectly rely on *Cruz v. City of Tucson* for the proposition that the doctrine of continuing torts applies to the abuse of process claim (Count 7). *Cruz v. City of Tucson*, 243 Ariz. 69, 74 (App. 2017). However, the *Cruz* Court did not reach that issue because *Cruz* alleged no acts occurring within the 180 day timeline. Instead, *Cruz* **dismissed** the argument that the abuse of process claim did not accrue until a final judgment was issued in the previous case. *Id*. at 73, ¶ 15 (emphasis added).

Here, the parties agree the notice of claim was filed on November 8, 2022. (Doc., 11 at 16:15-16). Since the last child was removed on February 12, 2020, that is the latest

accrual date. (FAC ¶ 38(h)). Therefore, the 180 day deadline to serve the notice of claim expired August 11, 2021 (Feb. 12, 2020 plus 180 days) and the state statute of limitations expired on February 12, 2021. The Complaint was not filed until May 8, 2023 so all state counts require dismissal.

### F. Procedural and Substantive Due Process Rights Were Not Violated

#### 1. Procedural Due Process

Plaintiffs' provided no convincing case law or additional facts to challenge the premise that they failed to receive procedural due process in the underlying dependency proceedings. A procedural due process violation may arise when a state official removes a child from a parent's care. *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007). However, two elements are necessary (1) deprivation of a right and (2) denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Here, Plaintiffs argue State Defendants should have conducted a more thorough investigation and not relied on the information provided by the source. It is not an allegation that they deliberately fabricated or created evidence, although there are disputes regarding word choice (severely malnourished versus mild to moderate malnutrition). (FAC ¶¶ 48, 54, 63). Plaintiffs may dispute the thoroughness of the investigation, but simply asserting they would have come to a different conclusion is not enough. *Carroll v. Robinson*, 178 Ariz. 453, 458 (App. 1994).

Although, it is well-settled that the loss of time with a child implicates a liberty interest; it is not well-settled that specific steps taken or omitted during an investigation constitutes a violation. "[A]nd the court is not aware of any precedent which establishes that failure to include a parent in an investigation either because of a failure to notify, or ill-will as Plaintiff alleges, amounts to a constitutional violation." *Daurio v. Arizona Department of Child Safety*, CV-18-03299-PHX-GMS, 2020 WL 6940812 *4 (Nov. 25, 2020). The allegations in *Daurio* are similar to the case at bar—dissatisfaction with the investigation.

> Here, there is no closely corresponding factual or legal precedent which clearly established Plaintiff's procedural due process rights. Plaintiff alleges

his rights were violated because he was not provided with protections mandated by the 'scheme of laws, administrative rules and policies protecting familial relationships in DCS investigation'.

*Daurio* at *4.

### 2. Substantive due process

Plaintiffs then switch focus and argue a lack of substantive due process. A substantive due process claim of impermissible interference in the familial association arises when a state official harms a parent or child in a manner that "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2009). Plaintiffs have not presented sufficient facts to support their position that any of individual State Defendant "shocked the conscience" by their actions in not investigating more thoroughly, relying on the source, removing the children, filing a dependency proceeding, and filing alleged false information with the State Court. Without these details, the due process argument fails.

To prove a deliberate fabrication claim, the plaintiff must provide that the (1) defendant official deliberately fabricated the evidence, and (2) that the deliberate fabrication caused the plaintiff's deprivation of liberty. *Patterson v. Miller*, 451 F.Supp.3d 1125, 1145 (D. Ariz. 2020). *Patterson* addressed a circumstance where DCS employees allegedly "deliberately fabricated" evidence in the juvenile court dependency proceeding by incorporating out-of-court statements in the reports to the court. The *Patterson* court found that the records containing potential hearsay showed why the agency conducted its investigation, explained that agency was on notice regarding allegations made concerning mother and her child, and explained course of agency's investigation. *Id.* at 1147. Essentially, the reports included a summary of the hotline report, which was necessary to apprise the court of the reasons for DCS involvement and were not being offered in the reports to prove the truth. This case also addressed the "suppression" of evidence and the failure to include exculpatory evidence in the DCS reports; but held that because Plaintiff "had access to, possessed or had the opportunity to present all the documents, State Defendants did not suppress or improperly omit

anything." *Id*. at 1153. Here, there is no evidence State Defendants deliberately fabricated the information but rather the allegation is that State Defendants included the hotline information and other collateral information obtained during the investigation in the reports to the court. Since it is also clear that Plaintiffs had the opportunity to challenge that information during the dependency proceedings, no constitutional violation occurred.

### G. Qualified Immunity Applies

The parties agree that qualified immunity shields state employees from money damages and attaches unless a constitutional right (1) was violated and (2) that right was "clearly established" at the time. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1992)). And all agree that qualified immunity can be addressed at the motion to dismiss phase. *Keates,* 883 F.3d at 1234. Finally, the parties agree that a legal principle is "clearly established" when it derives from "settled law, (citation omitted) which means it is dictated by controlling authority or a robust consensus of cases or persuasive authority". *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

That being said, Plaintiffs' Response provide no additional clarity to support their position that State Defendants adopted "knowingly false information" and incorporated that information into the state court filings. Plaintiffs clearly believe the information received by the hotline was false; but that does not challenge the fact the information was received by DCS nor does it make the information actually false. Further, the statutes require DCS present to the court in a court report the reasons the child was removed, which inherently requires notifying the court about the hotline referral. *See* A.R.S. § 8-824(H)(1). It appears Plaintiffs believe a "right" exists to dictate the thoroughness of the investigation and that State Defendants were on notice that this "right" was clearly established; yet, no legal authority is provided because no legal authority exists stating a parent gets to dictate the thoroughness of the investigation. The same holds true for State Defendants' reliance on hearsay during the investigation. There

exists no legal authority stating State Defendants cannot rely on verbal information provided by medical professionals and sources. Essentially, Plaintiffs dispute the authenticity of the information provided to DCS by the source, and dispute this information should have been provided to the juvenile court; but no legal principle supports this position. Parties in dependency proceedings typically disagree on facts, which is why court involvement is necessary; but nothing in the actions taken by any State Defendant interfered with Plaintiffs' clearly established constitutional right. At best, they assert a broad claim, but it is not supported by the facts contained in the FAC. Furthermore, Plaintiffs had numerous opportunities to present exculpatory evidence and to challenge the facts in the State Court proceedings; transitioning into the preclusion arguments noted below.

**H.     Issue and Claim Preclusion Bar This Lawsuit**

**1.     Issue preclusion applies**

The parties agree that collateral estopple applies when a party had the ability to fully and fairly litigate in a previous court proceeding. *See Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986). The matter before this Court is precisely the class of cases that are subject to collateral estopple. The face of the FAC demonstrates the State Court made factual findings to support continued custody of the children throughout the proceedings, which is consistent with the holding in *Smith v. Banner Health Sys.,* 621 F.App'x 876, 880 (9th Cir. 2015) (mem. decision). Plaintiffs are simply dissatisfied with the State Court proceedings and the decisions made in that process regarding the removal and continued detention of the minor children. Issue preclusion applies equally to Plaintiffs' claims that State Defendants did not make reasonable efforts and did not allow the Plaintiffs to make medical decisions or attend appointments. Here, Plaintiffs wrongly assert the issues are different in the two cases, but that is inaccurate.

First, Plaintiffs' challenge the seizure (Court 1) of the children (at various points in time) based on allegedly erroneous information gleaned through a deficient investigation and provided to the Court (Count 2). Title 8 allows the parties to fully

15

litigate the "seizure" and challenge the allegedly erroneous information relied upon by the State Defendants and provided to the Court. There is no dispute that the State Court heard testimony and received exhibits on this specific issue. (FAC ¶¶ 38, 46, 63, 65, 66, 78, 89, 90, 94, 97, 102); *See generally* Ariz. R. Juv. P. Title 8.

Second, Plaintiffs challenge the continued detention of the children and argue negligence in State Defendants' actions in providing reasonable efforts (Count 3) and allowing Plaintiffs' to make medical decisions (Count 4) and attend medical appointments (Count 5). Title 8 mandates the State Court review services, including contact with child, and make findings regarding reasonable efforts, so these issues were also addressed in the underlying State Court action. *See* A.R.S. §§ 8-8-825,-843, -846, -847. The FAC specifically addresses testimony and reports from providers regarding the provision of services, which were shared with the State Court. (FAC ¶¶ 97-99, 102). Plaintiffs erroneously allege that State Defendants changed the case plan from "family reunification" to severance, but that decision is made by the State Court judge.[5] (*Id.* ¶ 68); *See* A.R.S. §§ 8-845, -862.

Third, the negligence claims assert violations of Title 8 statutes, including a lack of training and supervision (Counts 6-13); but the parties were able to question witnesses regarding education, training, experience, and DCS policies and procedures and bring those alleged deficiencies to the State Court's attention in the dependency proceedings. The State Court has a duty to assess the credibility of a witness and to override decisions made by State Defendants. Even the abuse of process claim (Count 7) is continually reviewed by the State Court as that Court has authority to issue orders and made decisions relating to the litigation.

**2.  Claim preclusion also applies**

The judicially created doctrine of claim preclusion "bar(s)will all grounds for recovery which could have been asserted, whether they were or not, in a

---

[5] Plaintiffs' FAC is internally inconsistent because it also states that the juvenile court changed the case plan from severance to reunification. (FAC ¶ 38(k)).

prior suit between the same parties on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (internal quotations and citations omitted). Plaintiffs first assert that no judgments were issued by the State Court; but that is disingenuous because final appealable judgments were entered by a court of competent jurisdiction in January, 2020 and again on May 11, 2022. (FAC ¶ 38(f)(k)); *Hall v. Lalli,* 194 Ariz. 54 (1999). This first judgment was appealed and overturned and the second judgment reunified Plaintiff Jimenez with three of her children. (*Id.* ¶ 38(f)(k)).

Second, in order to prove this civil rights case, Plaintiffs will utilize the exact same evidence as presented to the State Court. *Pettit v. Pettit*, 218 Ariz. 529, 531 (App. 2008). This lawsuit will involve deposing State Defendants and the Plaintiffs, who all testified or could have been subpoenaed to testify in the State Court proceedings. It may include depositions or testimony from service provides contracted by the State to provide services to the family—again persons who have testified or could have been subpoenaed to testify in the underlying case. It will involve exhibits such as the DCS case file, State Court records, and provider reports—all available in the underlying proceeding. Plaintiffs' FAC reference the content of State of Missouri records, Phoenix Children's Hospital records, a Dr. Hanley report, therapy records, DCS emails, Cradles to Crayon records, and a report from Dr. Vega. (FAC ¶ 32, 56, 73, 81, 85, 87, 98, 102). The overlap of evidence is apparent and just because this is a constitutional violations case not a dependency proceeding does not alter the analysis. *Ferguson v. County of Los Angeles*, CV12-06865 JAK, 2014 WL 12949968 (C.D. Cal. June 5, 2014).

## IV.   CONCLUSION

State Defendants request this Court dismiss this entire lawsuit with Plaintiffs taking nothing. The statute of limitations is expired on all claims when utilizing the proper accrual dates, that latest being February 12, 2020. Dismissal of the state claims is equally mandated for the failure to timely serve the notice of claim, applying the same accrual dates. Dismissal of Davisson, Faust, and McKay is required as insufficient facts

1  are present to support individual liability or knowledge of constitutional violations
2  perpetrated by their subordinates. All State Defendants are entitled to qualified
3  immunity; and finally, the doctrines of issue and claim preclusion prohibit this lawsuit
4  from proceeding.

DATED this 20th day of November, 2023.

Kristin K. Mayes
Attorney General

*/s/Julie M. Rhodes*
Julie M. Rhodes
Michael R. Niederbaumer
Assistant Attorneys General
*Attorneys for State Defendants*

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 20th day of November, 2023:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
*Attorneys for Plaintiffs*

DeeAn Gillespie Strub
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
mailroom@gillaw.com
*Attorneys for Plaintiffs*

*/s/slf*
LMS22-0354 | G202221043-1 | #11693241