1  Thomas A. Connelly (AZ Bar #019430)
2  Robert T. Mills (AZ Bar #018853)
   Sean A. Woods (AZ Bar #028930)
3  **MILLS + WOODS LAW PLLC**
   5055 North 12th Street, Suite 101
4  Phoenix, Arizona 85014
   Telephone 480.999.4556
5  docket@millsandwoods.com
6
7  DeeAn Gillespie Strub (AZ Bar #009987)
8  Jenny D. Jansch (AZ Bar #024431)
   GILLESPIE, SHIELDS & TAYLOR
9  7319 North 16th Street
   Phoenix, Arizona 85020
10 Telephone: (602) 870-9700
11 Fax: (602) 870-9783
   mailroom@gillaw.com
12
   *Attorneys for Plaintiff*
13
14  **IN THE** ~~SUPERIOR COURT OF THE STATE OF ARIZONA~~UNITED STATES
15
    **DISTRICT COURT**
16
    ~~IN AND~~ **FOR THE** ~~COUNTY OF MARICOPA~~DISTRICT OF ARIZONA
17

| | |
|---|---|
| ~~BIANCA~~ Bianca ~~JIMENEZ~~Jimenez-~~BENCEBI~~Bencebi, an individual; <br><br> ~~JIARO~~ Jiaro ~~ABREGO~~ Abrego ~~ZAVALETA~~Zavaleta, an individual; <br><br> L.J., a minor, through his parent and guardian ~~BIANCA~~Bianca ~~JIMENEZ~~Jimenez-~~BENCEBI~~Bencebi; <br><br> K.J., a minor, through her parent and guardian ~~BIANCA~~ Bianca ~~JIMENEZ~~Jimenez-~~BENCEBI~~Bencebi; <br><br> K.A.J., a minor, through her parent and guardian ~~BIANCA~~Bianca ~~JIMENEZ~~Jimenez-~~BENCEBI~~Bencebi; and <br><br> J.A.J., a minor, through his parent and guardian ~~BIANCA~~Bianca ~~JIMENEZ~~Jimenez-~~BENCEBI~~Bencebi, | Case No.: ~~CV2023-007002~~23-cv-02075-PHX-DWL <br><br> ~~FIRST~~ **SECOND** **AMENDED COMPLAINT** <br><br> (Hon. Dominic W. Lanza) <br><br> **JURY TRIAL REQUESTED** |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

|  |  |
|---|---|
| Plaintiffs, | |
| v. | |
| ~~STATE~~ State ~~OF~~ of ~~ARIZONA~~Arizona, a government entity; ~~CARIN~~ Carin ~~PATCHIN~~Patchin, individually and as an employee with the State of Arizona Department of Child Safety; ~~TRACEY~~ Tracey ~~DEL~~ Del ~~FIACCO~~Fiacco, individually and as an employee with the State of Arizona Department of Child Safety; ~~AMANDA~~ Amanda ~~DAVISSON~~Davisson, individually and as an employee with the State of Arizona Department of Child Safety; ~~MICHAEL~~ Michael ~~FAUST~~Faust, as Director, Arizona Department of Child Safety; and ~~GREGORY~~ Gregory ~~MCKAY~~McKay, as Former Director, Arizona Department of Child Safety; | |
| Defendants. | |

Plaintiffs Bianca Jimenez-Bencebi, Jiaro Abrego Zavaleta, L.J., K.J., K.A.J., and J.A.J. (together "Plaintiffs") by and through their counsel, file this Complaint against the Defendants the State of Arizona, ~~the Arizona Department of Child Safety,~~ Carin Patchin, Tracey Del Fiacco, Amanda Davisson, Michael Faust, and Gregory McKay. Plaintiffs state and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs bring this civil rights lawsuit pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, A.R.S. § 12-641, and Arizona common law.

2.      The amount in controversy exceeds the minimal jurisdictional limits of this Court.

3. This Court has original subject matter jurisdiction over the federal question claims made in this Complaint pursuant to 28 U.S.C. § 1331 to the extent of those claims that arise under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the U.S. Constitution.

3.4. This Court has supplemental jurisdiction over all other claims in this action pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal question claims~~This Court has original subject matter jurisdiction over the claims made in this Complaint pursuant to Article 6, Section 14 of the Arizona Constitution~~.

4.5. The acts and events giving rise to the causes of action alleged herein occurred in Maricopa County, Arizona, and all Defendants are subject to the personal jurisdiction of this Court in accordance with A.R.S. § 12-123 and as otherwise provided under Federal and Arizona law and the Federal and Arizona Rules of Civil Procedure.

5.6. Venue lies in this Court pursuant to 28 U.S.C. § 1391 and A.R.S. § 12-401 in that, among other reasons, Defendants, or certain of them, reside in this District, and the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona~~Venue lies in this Court pursuant to A.R.S. § 12-401 in that, among other reasons, the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona~~.

## THE PARTIES

6.7. Plaintiff Bianca Jimenez-Bencebi ("Bianca") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Bianca resided in Maricopa County, Arizona.

7.8. Plaintiff Jiaro Abrego Zavaleta ("Jiaro") is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, Jiaro resided in Maricopa County, Arizona.

8.9. Plaintiff L.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At most times relevant to the present Complaint, L.J. resided in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9.10.   Plaintiff K.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, K.J. resided in Maricopa County, Arizona.

10.11. Plaintiff K.A.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, K.A.J. resided in Maricopa County, Arizona.

11.12. Plaintiff J.A.J. is an individual, a citizen of the United States, and a resident of Maricopa County, Arizona. At all times relevant to the present Complaint, J.A.J. resided in Maricopa County, Arizona.

12.13. Defendant State of Arizona, is a government entity, operating through several agencies, including the Arizona Department of Child Safety ("DCS"), that which acts by and through its officials, employees, and agents, including, without limitation, each of the other Defendants in this action.

13.14. Defendant Carin Patchin ("Patchin") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Patchin was, at all times relevant to the present Complaint, an employee of the State of Arizona through DCS. At all times relevant to this Complaint, Patchin was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.15. Defendant Tracey Del Fiacco ("Del Fiacco") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Del Fiacco was, at all times relevant to the present Complaint, an employee of the State of Arizona through the DCS. At all times relevant to this Complaint, Del Fiacco was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

15.16. Defendant Amanda Davisson ("Davisson") is an individual who resided in Maricopa County, Arizona, at all times relevant to this Complaint. Davisson was, at all times relevant to the present Complaint, an employee of the State of Arizona through the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

DCS. At all times relevant to this Complaint, Davisson was acting under the color of law as an employee of DCS. She is named herein in her individual capacity, as that term is used within the jurisprudence of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

16.17.  Defendant Michael Faust ("Faust") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Faust served, at times relevant to this Complaint, as the Director of the DCS. At times relevant to this complaint, Faust was the official policymaker for the DCS and acting under the color of law as an employee of the State for DCS. He is named herein in his individual and official capacity.

17.18.  Defendant Gregory McKay ("McKay") is an individual who resided in Maricopa County, Arizona, at times relevant to the present Complaint. Before Faust was the DCS Director, McKay was, at times relevant to this Complaint, the Director of the DCS. At times relevant to this complaint, McKay was the official policymaker and acting under the color of law as an employee of the State and for the DCS. He is named herein in his individual and official capacity.

18.    John and Janes Does 1-5 and Black Entities 1-5 are persons, agents, services, employees, business entities, partnerships, corporations, and/or unincorporated associations subject to suit in a common name whose true names are unknown to Plaintiffs and who are, therefore, designated by fictitious names. Plaintiffs will ask leave of the Court to substitute the true names of the said parties prior to the entry of Judgement herein.

19.    Whenever in this Complaint reference is made to any act of "Defendants" such allegations shall be deemed to mean all named Defendants, John and Jane Does 1-5, and Black Entities 1-5, or their officers, agents, managers, members, representatives, employees, heirs, assignees, customers, tenants, and that they did or authorized such acts while actively engaged in the operation, management, direction, or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged otherwise.

20.    At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiffs alleges, upon information and belief, that each Defendant was

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

and is the agent, employee, principal, employer, co-conspirator, or any combination thereof of each of the remaining defendants, vice versa, or both. In addition, Plaintiffs alleges, upon information and belief, that the Defendants named herein, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above Defendants conspired with, directed, ratified, approved, aided, abetted, jointly collaborated, or any combination thereof, each of the remaining Defendants in committing the acts herein alleged or failed to prevent such acts when having the power, duty, or authority to do so with full knowledge of said acts.

## **FACTUAL ALLEGATIONS**[1]

### I.  **BACKGROUND FACTS**

21.   Bianca  Jimenez-Bencebi ("Bianca")  is the natural mother of L.J. (born in 2005), K.J. (born in 2016), J.M.J. (born in 2017), K.A.J. (born in 2019), and J.A.J. (born in 2020).

22.   Jiaro Abrego Zavaleta ("Jiaro") is married to Bianca and is the father of K.A.J. and J.A.J.

23.   L.J. was living with his natural father in Puerto Rico when DCS began its wrongful interference with this family. L.J. wanted to return to Arizona to be with his mother, as he has a close relationship with her. However, both L.J. and Bianca were fearful that if he returned, he too would be unlawfully seized and detained by DCS, as were all his siblings. As a result, L.J. remained living with his father in Puerto Rico and spoke to his mother by phone daily, and sometimes twice a day.

### A.  **While living in Missouri, Bianca conceives a child by rape.**

24.   In 2016, Bianca was living in Missouri with L.J. and K.J. On or around 30 November 2016, Bianca was raped and J.M.J. was conceived. At the time of the rape, L.J. was 11 years old and K.J. was six months old.

---

[1] Plaintiffs makes the allegations in this Complaint based upon personal knowledge as to those matters in which she had personal involvement and upon information and belief as to all other matters.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

25.     L.J. knew of the rape and was traumatized, but neither L.J. nor Bianca had any trauma therapy to deal with this violent crime. L.J. reported the rape to the police.

26.     When Bianca was eight months pregnant, on 17 July 2017, L.J. was acting out and Bianca allegedly hit and bit him. L.J. called the police~~,~~ and Bianca was arrested. ~~There was no trial.~~

27.     There was no trial. Bianca pled guilty to a misdemeanor charge of physically abusing L.J upon advice of counsel that this would be the quickest path to resolution. Bianca served a 120-day jail sentence for this misdemeanor charge. It was her first, and only criminal offense.

28.     Until this time, there was no question if Bianca could parent her son and daughter. As a single mother, she alone clothed, housed, fed, educated, and cared for her children.

29.     While Bianca served her sentence, J.M.J. was born on 25 August 2017; and K.J. and J.M.J. (after his birth) were placed in foster care. Bianca voluntarily let L.J. live with his father in Puerto Rico.

30.     After her release, Bianca allowed L.J. to stay with his father in Puerto Rico~~, believing this was in his best interest~~.

31.     The State of Missouri returned K.J. and J.M.J. to Bianca in December 2017, a few weeks after she was released from jail.

32.     ~~When~~ After the children were returned, the Missouri social workers monitoring the family wrote many positive things about Bianca's parenting, including the fact~~s~~ that L.J. was polite and well-educated and that K.J. was well-cared for and had a strong bond with her mother. DCS never reported this positive information to the juvenile court during any of the dependency proceedings pertinent to this matter.

**B.     Bianca moves to Arizona.**

33.     In January 2018, Bianca moved from Missouri to Arizona to live with Jiaro, who she later married, and his sister in the sister's home.

34.     Bianca's standards for cleanliness were much higher than ~~her~~ those of Jiaro's

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

sister's.

35.    In late August 2018, Jiaro's sister threw Bianca out of the house because of a dispute over housekeeping. Bianca was pregnant with K.A.J. at the time.

36.    Because of the abrupt eviction, Bianca suffered a temporary period of housing instability which lasted only a few weeks. During this time, Bianca, K. A.J. and J.M.J. spent a few days in a homeless shelter, the Gift of Mary Shelter.

37.    On 06 September 6, 2018, while Bianca, K. A.J. and J.M.J. were homeless, Bianca brought J.M.J. to a medical appointment to keep his vaccinations up to date. This medical professional, and mandatory reporter, noted nothing unusual about J.M.J. and did not report Bianca to the Department of Child Safety for suspicion of abuse or neglect of her children.

37.38.  This was a mere eEight days before later, DCS involvement with this family, when K.J. and J.M.J. were unlawfully seized and removed from Bianca's care and custody by DCS under false pretenses.

## II.    PROCEDURAL HISTORY

38.39.  The procedural history is as follows:

a.    On September 14, 2028, the State through its non-party DCS agents issued a Temporary Custody Notice to seize and remove K.J. and J.M.J. There was no warrant, court authorized removal order, or any other court order directing the seizure and removal of K.J. and J.M.J.

a.b.    K.J. and J.M.J. were wrongfully removed from Bianca's loving care inon September 14, 2018, as the result of Patchin and Davisson's the State through DCS agents' failure to investigate and false allegations of abuse and neglect.

b.c.    The first dependency petition as to K.J. and J.M.J. was filed on in September 19, 2018 as to K.J. and J.M.J.

c.d.    On 24 January 24, 2019, DCS filed a petition to terminate Bianca's parental rights to K.J. and J.M.J.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

e.     During these dependency proceedings, on 5 March 5, 2019, K.A.J. was born and she was removed from her parents' care and custody by DCS immediately at birth.

f.     On March 7, 2019, at the direction and orchestraction of Patchin and Davisson, non-party DCS agents seized K.A.J. via a Temporary Custody Notice ("TCN").

g.     After seizing K.A.J. via a TCN, DCS filed an Application and Declaration for Ex-Parte Removal of K.A.J. to seek post hoc court approval for the seizure.

d.h.     After K.A.J. was removed, Bianca and Jiaro were prohibited by Patchin and Davisson from attending any medical appointments for K.A.J., including well- baby examinations.

e.i.     The removal of K.A.J. was based on Patchin and Davisson's steadfast adherence to a malicious and distorted view that Bianca is an aggressive ex-felon and that Jiaro is too passive to protect his children from this menace.

f.j.     In January 2020, Bianca's parental rights were severed as to K.J. and J.M.J., but the severance was later overturned on procedural grounds.

g.k.     On 14 December 14, 2020, DCS filed another petition to terminate the parent-child relationship, this time as to K.J., J.M.J., and K.A.J.

l.     During these severance proceedings, on 12 February 12, 2020, J.A.J. was born and he was immediately removed from his parents' care and custody by DCS immediately at birth.

m.     On February 13, 2020, Patchin served the parents with a post-hoc Temporary Custody Notice for the seizure of J.A.J.

h.n.     Once J.A.J. was seized and removed, Bianca and Jiaro were prohibited from attending any of J.A.J.'s medical appointments, including all well-baby appointments, immunizations, and other appointments.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

i.o.    On 20 May 20, 2021, DCS amended the December 2020 severance petition to include J.A.J. The severance petition was now for the termination of the parent-child relationship as to all four children, (K.J., J.M.J., K.A.J., and J.A.J.)

j.p.    The decision to remove J.A.J. and to include him in the severance petition was based on Patchin's and Davisson's adherence to their false narrative that Bianca was an aggressive boy-hating felon, and Jiaro cannot protect his children from that menace.

k.q.    On 11 May 11, 2022, the juvenile court ruled from the bench to severe Bianca's rights as to J.M.J., based on neglect under A.R.S. § 8-533(B)(2). The Court denied the severance of K.J., K.A. J., and J.A.J. At the same time, the juvenile court changed the case plan from severance to reunification for K.J, K.A.J., and J.A.J. The court ordered DCS to have a meeting with parents within 30 days of the 11 May 11, 2022, ruling to start the reunification process.

39.40. For the first six weeks after the 11 May 11, 2022, order, DCS through Del Fiacco and Davisson, cancelled all of the parents' Plaintiffs' supervised visits with their children.

40.41. In direct violation of the 11 May 11, 2022, order, DCS and its agents Del Fiacco and Davisson waited more than five months to take any took no affirmative steps toward implementing the reunification case plan until more than five months later.

42.    DCS's heavy-handed involvement with this family continued until May 25, 2023, when the juvenile court dismissed the dependency action and ended the State, DCS and its agents' involvement.

41.43. K.J, K.A.J., and J.A.J. are now living with their parents Bianca and Jiaro.

42.44. Defendant Patchin served as the DCS cCaseworker at all times relevant between October 2018 to March 2021.

43.45. At all times relevant after March 2021, Defendant Del Fiacco was the DCS Caseworkercaseworker.

44.46. At all times relevant, DCS employee Defendant Davisson was the supervisor for Patchin and Del Fiacco. As Patchin's and Del Fiacco's supervisor, of the other defendants affectsendant Davisson is required to be actively involved in key decisions during each open case for services; review relevant case documentation to confirm that DCS procedures have been completed and documented; identify follow-up activity needed; make sure sufficient information is collected; ensure consistency and accuracy of DCS policy application; make senure there is complete and accurate documentation of case activity; be actively involved in all key case decisions including removal, severance and reunification; make ensure case activities align with federal, state, and agency regulations, policies and procedures; make ensure case activities align with all court orders; and address bias and assumptions that might affect or interfere with interactions with the family and/or case outcomes.

45.47. DCS agents Patchin, and Del Fiacco, and Davisson deceived the juvenile court by presenting information that they knew, or reasonably should have known, was incomplete, inaccurate, or patently false.

48. DCS supervisor Davisson directed or ratified Patchin and Del Fiacco's wrongful acts, encouraged the wrongful acts, and failed to follow DCS's own policies on supervision. Davisson also directed, instructed, or allowed Patchin and Del Fiacco to falsify reports to the court, or failed to correct inaccurate, false, or highly prejudicial court reports.

46.49. Davisson, after encouraging, and recommending, or failing to correct the wrongful actions of Patchin and Del Fiaccotaken, then signed Patchin's and Del Fiacco's false court reports filed with the juvenile court, in accordance withas required by DCS policy.

47.50. The actions of the DCS agents Patchin, Del Fiacco, and Davisson in seizing and detaining K.J., J.M.J., K.A.J., and J.A.J. violated Plaintiffs' constitutional rights and statutory rights under federal law and Arizona state law.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### III.    UNLAWFUL SEIZURE AND DETENTION OF K.J. AND J.M.J.

#### A.  DCS removes K.J. and J.M.J. on ~~14~~ September 14, 2018

~~48.~~51. On ~~14~~ September 14, 2018, DCS removed K.J and J.M.J. without Court approval by issuing a Temporary Custody Notice. The following events led to this removal.

a.    While at the Gift of Mary Shelter, money was stolen from Bianca's purse.

b.    When she complained about the theft, Bianca was asked to leave the shelter.

c.    Later, a hotline call was made to DCS. Upon information and belief~~ve~~, the thief called DCS to shift blame ~~shift~~ and to avoid also being removed from the shelter.

d.    DCS failed to investigate this incident thoroughly, and no eyewitnesses were interviewed or produced to testify under oath.

e.    Based only on this hearsay from a~~n~~ anonymous witness ~~who had~~with a motive to lie, ~~C~~caseworker Patchin, at the direction of her s~~S~~upervisor Davisson, reported to the juvenile court that Bianca threatened a person with a knife at the Gift of Mary Shelter, left J.M.J. unattended in his car seat for extended times, prevented others from feeding J.M.J., and only paid attention to K.J.

~~e.~~f.    ~~-~~Supervisor Davisson does not speak Spanish and the parents do not speak English. ~~–~~Davidson took no affirmative steps to ensure bias had not entered the reporting and was not having an ongoing damaging impact on the family.

~~49.~~52. None of the allegations made in the hotline call were true, which would have been discovered with a prompt and thorough investigation.

~~50.~~53. Bianca never threatened anyone verbally or with a knife, and never left J.M.J. unattended in his car seat.

51.54. While it was true that ~~she~~ Bianca did not let strangers at the Gift of Mary Shelter feed J.M.J. all solid foods, any loving, safety-minded mother in this situation would have done the same. J.M.J. was only 12-months-old at the time and ~~he~~ had some difficulties swallowing certain solid foods and had problems digesting cow's milk.

52.55. Both J.M.J. and K.J. were taken to Phoenix Children's Hospital ("PCH") for physical examinations upon removal by DCS on ~~14~~ September 14, 2018.

53.56. ~~Even though t~~There were no physical, medical, abuse or neglect issues found with K.J., yet she was immediately taken into DCS custody, placed in foster care, and never returned to Bianca.

54.57. J.M.J. was admitted to PCH and found to have mild to moderate malnutrition.

**B.  J.M.J. is Admitted to PCH and Released to His "Adoptive" Parents**

55.58. J.M.J. was in-patient at PCH from ~~14~~ September 14, 2018 to ~~20~~ September 20, 2018.

56.59. On the day of removal, the medical records note that J.M.J. could sit on his own, pull to stand, and was active, crawling, playful, and happy, and that he had a total of one small fine scratch (~3/4 inch), one small bruise (~1/4 inch) on his cheek, and three small bruises (~1/4 to 3/8 inch) on his right thigh, all locations not commonly concerning for abuse.

57.60. Mongolian spots were found on his back and buttocks, as well as some areas of hyperpigmentation. He had no bruising *at all* on his back— a location commonly concerning for abuse; and the shape of J.M.J.'s head was normal, and not noted as flat.

58.61. After six days in the hospital, ~~PCH~~ at the instruction of DCS on behalf of the State, PCH discharged J.M.J. to his "adoptive" mothers. Supervisor Davidson knew or should have known this action was in violation of Plaintiffs' due process rights, ~~and~~ nor had the parents ~~mother has not~~ relinquished their parental rights to any of their children. K.J., J.M.J., and K.A.J. also ~~had~~ve a constitutional right to association with their sibling J.M.J.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### C. J.M.J.'s Medical Records Show He Had an Organic Feeding Issue

~~59.~~62. After one week in foster care, J.M.J.~~'s~~ lost weight below ~~h~~is PCH admission weight. J.M.J.'s body weight was 17.3 pounds when he was admitted to PCH on ~~14~~ September 14, 2018, and was 17.1 pounds on ~~26~~ September 26, 2018, after one week in foster care.

~~60.~~63. That is, because of ~~his~~ an organic feeding issue, J.M.J. became more malnourished while in ~~the~~ State and DCS custody.

64.    This exculpatory evidence was immediately evident to Caseworker Patchin, but she knowingly or recklessly ignored it.

~~61.~~65. ~~–~~Similarly, Supervisor Davidson failed in her duties to ensure exculpatory information was reported to the court, and to ~~not~~ root out ~~this and other~~ prejudicial, inaccurate, and biased information or narratives from ~~–that went on the infect the subsequent narrative of the case in~~ case reports to the court that she signed off on and upon which the court and other providers relied. Davidson's failures in supervision led ~~The mounting damaging~~to a false narrative ~~becam~~in~~e~~g baked in under her watch ~~leading to~~resulting in a wrongful and lengthy termination proceeding.

### D. DCS Petition's to Terminate Bianca's Parental Rights to K.J. and J.M.J.

~~62.~~66. On ~~24~~January 24, 2019, DCS filed a petition to terminate Bianca's parental rights as to K.J. and J.M.J.

~~63.~~67. DCS Caseworker Patchin, under the supervision, direction, and advice of Davisson, perpetuated the following false narrative in the DCS petition, reports to the juvenile court, and in sworn testimony:

a.    Bianca was homeless for several months in 2018;

b.    J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.    J.M.J. had a flat head, distended stomach, and non-accidental bruising all over his back;

d.      Bianca did not like J.M.J. because he was a baby conceived by rape;

e.      K.J. had scratches on her face evidencing abuse;

f.      Bianca was aggressive, as reported by a nameless witness at a homeless shelter who was never identified and did not testify; and

g.      Bianca had been convicted of felonious child abuse in Missouri in 2017.

64.68. None of these those allegations are true butand they damaged the family's ability to receive fair and unbiased treatment from caseworkers and avoid an unfair and wrongful termination proceeding. .

65.69. Patchin documented throughout the DCS records her false narrative that at J.M.J.'s removal, he was feeble, severely malnourished, and had non-accidental bruising all over his back. These records were shared with the juvenile Ccourt and with multiple service providers. None of these allegations are true.

66.70. Patchin also falsely alleged in her court reports and in testimony to the juvenile court that Bianca is an aggressive ex-felon who hates boys and is a danger to her children. This allegation is not true yet highly prejudicial and damaging. .

67.71. Patchin's statements were provably false, as follows:

a.      Bianca's home instability was brief, measured in weeks not months.

b.      During the interval of housing instability, Bianca managed to take J.M.J. for his one-year checkup and vaccinations with the assistance of her now husband Jiaro. Bianca did this because she loves her son, and she was doing her best to take care of him. Upon physical exam of J.M.J. this medical provider, a mandatory reporter, saw no reason to report Bianca to DCS just days before DCS wrongfully removed him and his sister from his Mother.

c.      Bianca's purported aggressiveness was actually an attempt at blame-shifting by the thief who stole Bianca's money at the Gift of Mary Shelter.

d.      J.M.J. was not severely malnourished or feeble in any way when in Bianca's care.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

e.     J.M.J. lost weight one week *after* he was taken into DCS custody.

f.     The foster parents also noted that J.M.J. was "choking while eating" and he was evaluated by doctors for a feeding issue after six months in DCS care.

g.     J.M.J.'s mild or moderate malnutrition in September 2018 was most likely attributable to this feeding issue rather that any neglect on Bianca's part.

72.     Davisson, as Patchin's supervisor, failed to root out that false information, and instead endorsed the~~ose~~ highly prejudicial and  inaccurate records despite knowing that they were false. Davisson had a duty to correct those false records and failed to ~~correct the false records~~do so,~~.~~ thus ~~L~~leading to the ~~C~~children's prolonged and unnecessary estrangement and separation from ~~one and other and~~ their parents during fundamental formative years.

~~68.~~73. Within months of DCS involvement, just after Bianca successfully completed parent aid services, Patchin, at the recommendation and direction of her Supervisor Davisson, inexplicably changed the case plan from family reunification to severance as to J.M.J and K.J. This harmed the children immeasurably and prolonge~~rd~~d their separation from ~~one and other and~~ their parents for years.

## IV.     UNLAWFUL SEIZURE AND DETENTION OF K.A.J. AND J.A.J.

### A.     The DCS False Narrative Continues.

~~69.~~74. Patchin, ~~under the supervision~~ at the direction ~~–~~and recommendation of Davisson, continued to fabricate allegations to justify removing K.A.J. and J.A.J., both immediately at birth, and for keeping ~~K.J. and J.M.J.~~them in the State's care for years.

75.     The gravamen of the State and DCS agents' allegations were that Bianca's general aggression and hatred of boys remained uncured, rendering her an unfit parent, and that Jiaro was too passive to protect his children from Bianca.

16

70.76. Davidsson was directly responsible for not correcting this absurd and horrific false narrative that damaged the children and their family and violated on many levels their rights to due process.

71.77. Specifically, Patchin fabricated the following allegations to support removing K.A.J. and J.A.J. and to keep all the children in State's care:

      a.    on one occasion in July 2019 Bianca allegedly shouted at her therapist, Dr. Hanley;

      b.    on one occasion, while in labor in the hospital, Bianca allegedly stated she would name J.A.J. "Motherfucker;"

      c.    Bianca allegedly has gender dysmorphic disorder; and

      d.    Bianca allegedly willfully neglected J.M.J. because she hates boys.

72.78. None of these allegations were true and were never properly investigated by supervisor Davisson, nor were they ever corrected; instead, they went on to infect future reports made to the court and service providers causing great damage to the children and their relationships with one and another and their parents.

79.    Dr. Hanley stated in a report dated 28 August 28, 2019, that "there is a good chance that [Bianca] has completed what she needs to do for DCS." Contrast this with what Patchin along with her supervisor and Davisson falsely reported in a Comprehensive Safety and Risk Assessment dated 8 October 8, 2019: that "[in] August 2019, [Dr.] Rossana [Hanley] was extremely discouraged with the lack of progress by Bianca." The contrast is stark and highly prejudicial and damaging, leading to years of the children's wrongful separation from one and another and their parents.

80.    On June 16, 2018, Dr. Hanley also noted there were serious problems going on with occuring between Bianca and her DCS case manager Patchin. After talking with Patchin, Dr. Hanley had the feeling that Patchin was very angry with Bianca. She and she made attempts to report these concerns to Patichin's supervisor Davisson, but Davisson failed to respond.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

17

~~73.~~81. Again, importantly, neither Davisson nor~~t~~ Patchin spoke Spanish and Bianca did not speak English. The failure in communication was not on the part of ~~the Mother~~Bianca – DCS could have, and should have, involved a Spanish speaking caseworker or interpreter. Patchin was angry ~~Mother~~that Bianca would not endorse her false narrative. ~~and Supervisor~~ Davisson did nothing to correct Patchin's faulty course of action.

~~74.~~82. Dr. Hanley never stated in her notes that Bianca shouted at her or was aggressive towards her in any way.

~~75.~~83. Patchin and Davisson frequently took liberties with the truth to ensure th~~e~~ir reporting on Bianca aligned with th~~e~~ir false agenda.

~~76.~~84. Reports from Jiaro's service providers were also positive, and contrary to DCS's "too-passive to protect" narrative. Still, Patchin ~~along with her supervisor~~and Davisson repeatedly ignored these positive reports. Davisson, in her supervisory role, ~~as Patchin's supervisor~~ was required to ~~make~~ ensure information is properly collected and reported but failed to do so thus leading to a fraud upon the court ~~and~~or judicial deception which prolonged the children's unnecessary separation from one ~~and~~ another ~~r~~and their parents.~~.~~

~~77.~~85. Patchin's allegation that Bianca wanted to name J.A.J. "Motherfucker" while she labored at his birth is wholly unsubstantiated hearsay. Given the intended import of this allegation, it would be reasonable to expect that the hospital medical staff ~~at the hospital~~ would have ~~make~~made a record of it. However, there is no such record as it was a horrific and prejudicial lie made up by Patchin, ~~-~~who was not there, and subsequently endorsed by ~~supervisor~~ Davisson who also was not there at the birth and failed to ensure the accuracy of the allegation or remove it from the court reports~~.~~.

~~78.~~86. Patchin ~~along with~~and Davisson included this highly prejudicial, salacious statement in ~~their~~ her Court Reports and in ~~her~~ Patchin's sworn testimony, and it was part of the basis for DCS's unlawful seizure and wrongful detention of J.A.J.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**B. Bianca does not hate boys, despite DCS's allegations otherwise.**

~~79.~~87. Patchin and Davisson ~~also~~ attributed Bianca's alleged hatred of boys to a made-up mental illness, "gender dysphoria." This diagnosis was never endorsed by any ~~evaluator~~ service provider or mental health professional ~~that~~who evaluated Bianca.

~~80.~~88. "Gender dysphoria" is a diagnosis in the DSM-5 which means a person has a strong desire to be another gender. However, when Patchin and other State and DCS agents used this term, ~~it seems~~they intended to convey that Bianca hates male children because she was raped and therefore posed a safety risk to her male children.

~~81.~~89. Bianca was never diagnosed by any therapist with gender dysphoria.

~~82.~~90. The State and DCS failed to interview ~~her~~ Bianca's oldest son, L.J. If they had, they would have learned that to this day, he loves Bianca very much, was regularly in touch with her from Puerto Rico, ~~and~~missed his sister K.J., and wanted to get to know his other siblings. He did not come to Arizona as he and Bianca reasonably feared he would be summarily removed from Bianca's care by DCS, much like K.A.J. and J.A.J. ~~with the approval of those in charge which would have been those supervised by Davisson~~.

~~83.~~91. The State and DCS also ignored the obvious fact that Bianca is married to Jiaro, a man.

~~84.~~92. There is no credible evidence that Bianca hates boys and men, or ever held such a view.

**C. Patchin's ~~malice~~ Malice and ~~animus~~ Animus towards Bianca is ~~manifest~~ Manifest and Davisson ~~f~~Failed to ~~i~~Intervene ~~and~~ to Excise that Cancer. ~~correct the highly erroneous record that infected the case to the detriment of the children.~~.**

~~85.~~93. Patchin ignored that Bianca was actually diagnosed by her PhD therapist, Dr. Hanley, with "adjustment disorder with depressed mood." An understandable and reasonable diagnosis for one whose children ha~~d~~ve been summarily removed by DCS.~~.~~

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

86.94. According to the DSMS-5, "adjustment disorder" ~~means~~ is "[t]he development of emotional or behavioral symptoms *in response to an identifiable stressor(s)* occurring within 3 months of the onset of the stressor(s)." (*See* Table 3.19, DSM-IV to DSM-5 Adjustment Disorders Comparison - Impact of the DSM-IV to DSM-5 Changes on the National Survey on Drug Use and Health - NCBI Bookshelf (nih.gov)). This diagnosis makes sense, given the fact that Bianca's four children were unjustifiably and summarily removed by DCS – and two of them within moments of their birth. ~~and she remained separated from her children for years and endured not one but two unjust severance proceedings, the later spanning eight months.~~

87.95. Patchin's animus toward Bianca is evident throughout the record. One example is an email exchange, where Bianca raised a concern that her daughter was wearing shoes that were too small at one of the supervised visits. Patchin passed along Bianca's concern to the foster mother, along with a scoffing, "HAHAHAHAHA!!"

88.96. Patchin also wrote several insulting comments in emails to Bianca's service providers, such as accusing ~~her~~ Bianca of being a liar and making derogatory comments about her appearance (i.e., her choice of lipstick). Again, and inexplicably, neither Patchin nor ~~her supervisor~~ Davisson had the ability to communicate with Bianca because they did not speak Spanish.

~~During Patchin's testimony to the Court during the second severance trial, the tone of her voice and her body language demonstrated a tremendous personal scorn towards Bianca.~~

97. Dr. Hanley noted there were~~as~~ serious problems ~~going on with~~occuring between Bianca and ~~her DCS case manager~~ Patchin.  After speaking with Patchin, ~~Dr.~~ Hanley ~~had the feeling~~felt that Patchin was very angry with Bianca and ~~made attempts~~attepmted to report these concerns to ~~Patchin's supervisor~~Davisson, but Davisson failed to respond thus allowing ~~and allowed the~~Patchin's bias to infect the case to the detriment of the children and their family. ~~.~~

89.98. Davisson, as Patchin's supervisor, is required to address bias and assumptions that affected the Department's interaction with this family but she failed to intervene or prevent Patchin's unjust aggression towards this family thus allowing and facilitating the continuation of DCS's false narrative about Bianca. She allowed and facilitated DCS to  so they could continue to pursue their damaging false narrative.

90.99. Patchin's aggressive and malicious prosecution stance toward Bianca was evident in how the State, DCS through Patchin and Davisson, and its agents handled Bianca's visits with her children during the first dependency and severance proceedings. When the juvenile Ccourt severed Bianca's rights as to K.J. and J.M.J. in January 2020, Bianca appealed the severance on procedural grounds. The severance was reversed, and Bianca requested to have visits with her children reinstated with her children. However, DCS, and its agentsthrough Patchin and Davisson -refused to re-intestate these visits, pending the final ruling on their second severance petition. As a result, Bianca has been unable to did not see K.J. since January 2020 or J.M.J. since early November 2018. This conduct was highly presumptive, not in the the children's best interest and caused years of unnecessary separation. Patchin and her supervisorDavisson acted as if principles of due process where irrelevant in juvenile court and that they had the power to determine which court orders they would follow held all the cards and it was only matter of time until they could orchestrated their agenda of permanent separation of these children andfrom their parents.

**D. Caseworker Del Fiacco Rreplaces Caseworker Patchin.**

91.100.       In March or April of 2021, Del Fiacco took over the role of the State's DCS Caseworker. Davisson was also Del Fiacco's supervisor.

92.101.       When Caseworker Del Fiacco took over in March or April 2021, Del Fiacco, at the direction, recommendation, and advice of Davisson, re-alleged Patchin's false narrative and allegations about Bianca, thus perpetuating the damage began by Patchin.-

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

102.   Del Fiacco and Davisson knew Patchin's allegations were false, yet they recklessly disregarded and/or refused to acknowledge any of the exculpatory facts that were evidenced in the record.

93.103.   Del Fiacco and Davisson failed to correct the false narrative and allegations so that shethey could continue to pursue severance of the parents' rights. Patchin and Davisson's false narrative and reckless agenda of wrongfully keeping these children separated and severing them from their parents.

104.   At a 10 January 10, 2022, hearing, Del Fiacco testified that she had met with Mother Bianca only twice in the 10 to 11 months she had been on the case, and that she had never observed the parents during a visit with their children. Still, Del Fiacco falsely alleged that Bianca focused on the "wrong things" during the visits.

94.105.   Davisson allowed this skewed and false narratives to be perpetuated even in the face of consistent positive parenting reports by thoseservice providers who spoke Spanish and were charged with observing MotherBianca with her children and reporting to DCS about those interactions.

95.106.   These "wrong things" referenced by Del Fiacco were that Bianca was concerned that her daughter had a very large bruise on her leg, red marks on her private parts, and tangled unkempt hair, all sustained while in foster care under the auspices of DCS.

96.107.   Del Fiacco was the only individual who considered Bianca's concerns as "wrong things."

97.108.   The parent supervisor at Cradles to Crayons, Christina Martinez, who spoke Spanish and had regular contact with MotherBianca, testified at trial that Bianca's concerns about her daughter were accurate and reasonable.

98.109.   When Ms. Martinez supported Bianca's motion for increased visits with her children at trial, the State provided the following false statement in their response:

"While the current service provider with Cradles to Crayons
stated during trial proceedings that they do not see an issue

22

with increasing visitations, their report dated 05 November 2021 suggests otherwise. Christina Martinez and her Supervisor who both signed off on the report, stated, '*Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children*.' This statement does not suggest Bianca has addressed the behavioral concerns that brought the children into departmental care."

~~99.~~110.    Both Ms. Martinez and her supervisor later stated that the italicized statement above (i.e. "*Ms. Jimenez is not self-aware of how her lack of impulse control is affecting her relationship with her children.*") was provided by ~~the State through~~ DCS at intake and ~~was not reflective of~~ did not reflect their assessment of Bianca on ~~05~~ November 5, 2021.

~~100.~~111.    This distortion evidences ~~shows~~ how the State blindly relied on ~~the State~~, DCS's, ~~and its agents'~~ Del Fiacco's, and Davisson's ~~false narrative to support~~ prop up the unsupportable position the Bianca is a danger to her children. It is a text book example of judicial deception, of the State, through DCS, ~~while~~ blatantly ignoring exculpatory ~~abundant~~ information from provider~~s~~ on the ground in regular contact with Bianca who spoke her language ~~that would refute such a false and damaging notion~~.

~~101.~~112.    DCS and the State deliberately and maliciously refused to correct its course, remove the bias, incorporate accurate, exculpatory ~~–~~information into court case reports ~~to~~that would refute the erroneous prejudicial and oft repeated claim ~~view~~ that Bianca ~~i~~was ~~simply as anything other than~~ a dangerous aggressor.

~~102.~~113.    On February 4, 2022, Carlos J. Vega, PSY.D.~~.~~, issued his report regarding Bianca's psychological evaluation.  Dr. Vega found that the State and DCS were essential mistreating Bianca rather than assisting her, re-victimizing her, that Bianca was struggling with depression due to the removal of her children, there was insufficient reason for the State and DCS to suspect any risk on the part of Bianca and no basis whatsoever that she would be unsafe with her children.  Yet, when the severance was denied, ~~T~~the ~~S~~state, under Davisson's direction, cut off Bianca's ~~Mother~~ and ~~Father~~Jiaro's access to

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

their children and unnecessarily prolonged ~~the~~family reunification ~~of the children with their parents.~~

## V.   THE SECOND SEVERANCE TRIAL ENDS IN MAY 2022.

~~103.~~114.   The juvenile court finally recognized at the end of the second severance trial in May 2022, that the picture of Bianca as man-hating abuser and Jiaro as a passive, inept father painted by the State~~, and~~ DCS~~,~~, through caseworkers Patchin and Del Fiacco and supervisor Davisson, ~~and their agents,' and supervisor's picture of Bianca as an abuser and Jiaro as a passive inept father~~ was inaccurate.

~~104.~~115.   This family has suffered dearly because of the unconstitutional and unlawful removal and detention of K.J., J.M.J., K.A.J., and J.A.J.

~~105.~~116.   Since September 2018 until six weeks after the May 2022 order changing the case plan to reunification, Bianca~~'s has~~ had only limited and, at times, no access to K.J. and J.M.J. In addition, both Bianca and Jiaro were deprived of the joy of taking K.A.J. and J.A.J. home as newborns~~, and~~ watching them grow from birth, attending all their baby wellness examinations, and be present for any ~~immunizations.~~immunizations. This damage and ~~parental violations~~ all occurred under ~~the mismanagement~~the mismanagement of Supervisor Davisson.

~~106.~~117.   L.J.~~,~~ too, has suffered, as he has lost his mother and siblings, and has lived in fear of being taken into foster care if he were to return to Arizona or visit his mother and siblings in Arizona. This irrevocable loss of time is unconscionable. This all occurred under the mismanagement of Supervisor Davisson who allowed the damaging false narrative to ~~persist, refused~~persist, refused to correct the record, and took no affirmative action to do so in ~~violation~~dereliction of her responsibilities.

### A.   Defendants Knew or Should Have Known of Plaintiffs' Legal Rights.

~~107.~~118.   At all relevant times, the State, DCS and its agents, Patchin, Del Fiacco, and Davisson~~, Faust and McKay~~ ("State Defendants")~~,~~ knew or should have known the well-established law that the U.S. Constitution protects the fundamental right of parents

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

to make decisions concerning the care, custody, upbringing, management, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

108.119.    At all relevant times, State Defendants knew or should have known that fit parents are presumed to act in the best interests of their children. *Id*. at 68; *Doe v. Heck*, 327 F.3d 492, 521 (7th Cir. 2003).

109.120.    At all relevant times, State Defendants knew or should have known that in Arizona, until a court declares a parent unfit, the law requires State actors to presume that a parent is fit and acting in the best interest of their child. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 119 (2018). Yet, Supervisor Davidsson, Patchin, and Del Fiacco acted directly contrary to this law, Aand used their influence to advance a damaging agenda of severance of parental rights, which in Arizona has an alarming completion rate of over 99.9% once DCS determines to pursue that route.

110.121.    At all relevant times, State Defendants knew or should have known that the right to family association is sheltered against the government's unwarranted usurpation, disregard, or disrespect, *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996), and families have a well-established constitutional right to live together without governmental interference, *Arce v. Children's Hospital Los Angeles*, 211 Cal.App.4th 1455, 1473 (Cal. App. 2012). Yet, Davidsson, Patchin, and Del Fiacco disregarded this law and acted in direct contravention of their duty under the law by perpetuating a damaging false narrative to advance an unwarranted agenda of severance of parental rights.

111.122.    At all relevant times, State Defendants knew or should have known that State actors are not permitted to ignore the dictates of the United States Constitution. *Wallis v. Spencer*, 202 F.3d 1126, 1130 (9th Cir. 1999).

112.123.    At all relevant times, State Defendants knew or should have known that any motive to protect a child from abuse does not override a parent's constitutional rights. *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999); *Franz v. Lytle*, 997 F.2d 784, 792-93 (10th Cir. 1993).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

25

113.124.     At all relevant times, State Defendants knew or should have known that the government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents. *Calabretta*, 189 F.3d at 820. Davisson's, Patchin's, and Del Fiacco's conduct of abandoning their duties and actively perpetuating the damaging false narrative about the children's parents violated the children's rights as set forth by the law.

114.125.     At all relevant times State Defendants knew or should have known that each parent's conduct must be assessed separately – any implication against one parent does not constitute "specific, articulable evidence" to justify removal from the other parent. *Wallis*, 202 F.3d at 1140-41, 1142 n.14; *Fredenburg v. County of Santa Clara*, 407 Fed. Appx. 114, 115-16 (9th Cir. 2010).

115.126.     At all relevant times, State Defendants knew or should have known that at the time K.J., J.M.J, K.A.J., and J.A.J. were seized, it was well established that by the First, Fourth, and Fourteenth Amendments to the United States Constitution that any infringement upon the right to familial association must be by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest. See, e.g., *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999). Davisson endorsed the wrongful taking of all ofall the children by unlawful means and without just cause by authorizing their warrantless removal in the absence of exigent circumstances.

116.127.     At all relevant times, State Defendants knew or should have known that the Fourth Amendment protects the child from unlawful searches and seizures.

117.128.     At all relevant times, State Defendants knew or should have known that a parent's right to continued custody of their child arises under the First and Fourteenth Amendments and is composed of both a substantive and procedural component. Davisson by her dereliction of duties not only allowed but participated as noted above in the violation of these rights.

118.129.     At all relevant times, State Defendants knew or should have known that a social worker, or other government agent, acts under color of state law while acting or purporting to act in his or her official capacity, or while exercising his or her responsibilities pursuant to state law. *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000).

119.130.     Given the facts of this case, Plaintiffs are entitled to relief under 42 U.S.C. § 1983 and Arizona state law.

## CLAIMS
## CLAIM ONE - UNLAWFUL SEIZURE AND DETENTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs L.J., K.J., J.M.J., K.A.J., and J.A.J.'s Right to Freedom of Association under the First Amendment and Due Process under the Fourteenth and Fourth Amendments to the U.S. Constitution for unlawfully seizing and detaining K.J., J.M.J., K.A.J., and J.A.J. and K.A.J.)**

120.131.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

132.   Patchin and Davisson failed to conduct a prompt and thorough investigation, as is required under A.R.S. § 8-456(C)(1), before issuing Temporary Custody Notices and then filing the dependency petitions for K.J., J.M.J., K.A.J., and J.MA.J. and K.J. which falsely alleged abuse, neglect, aggressive behavior by Bianca, and a failure to protect by Jiaro. They failed to consider material, exculpatory facts that refuted the stated concerns in violation of the law and as required by A.R.S. § 8-456(C)(1).

121.133.     The seizure and removal of each of K.J., J.M.J., K.A.J., and J.A.J. was effectuated by way of a Temporary Custody Notice; none of the four seizures and removals was by way of a warrant, court authorized removal order, or any other court order directing and allowing the seizures and removals before they were effectuated. The TCN seizures of K.J. and J.M.J. were made by State agents – DCS employees who are not parties here. K.A.J.'s TCN seizure was orchestrated and directed by Patchin and Davisson but actually

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

effected by another DCS employee not a party here. J.A.J.'s TCN seizure was effectuated by Patchin, with Davisson's knowledge and approval.

122.134.    After J.M.J. and K.J. and were removed, Patchin and Davisson consistently insisted on and theperpetuated the damaging and highly prejudicial false narrative that J.M.J. was severely malnourished, feeble, unable to sit up, and badly bruised by Bianca, facts which were not supported by hospital records available to DCS at the time.

123.135.    Davisson failed to ensure Patchin's investigation met the statutory requirements under A.R.S. § 8-456(C)(1), to "make a prompt and thorough investigation including those things which would refute the concern" and that the DCS petition was truthful.

124.136.    None of Patchin's and Davisson's allegations were true or supported by any of the hospital or Missouri child welfare records. Yet, Patchin and Davisson continued with and embellished theire false narrative to support keeping K.J. and J.M.J. in foster care and to also remove J.A.J. and K.A.J. from their parents immediately at birth.

125.137.    When Patchin retired, Del Fiacco, at the advice and direction of Davisson, continued to doggedly pursued the same false, highly prejudicial narrative that Bianca was an aggressive mother who hates boys and was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace. This wrongheaded agenda persisted through an eight-month ill-conceived severance trial where Davidsson continued to endorse the false narrative.

126.138.    Patchin and Davisson substantially participated in the unlawful seizure of J.A.J. and K.A.J. by repeatedly perpetuating and enhancing the false narrative in Court juvenile court filings that Bianca abused and neglected J.M.J., that she was an aggressive mother who hates boys, that she was a danger to her children, and that Jiaro was too passive and inept to protect his children from Bianca's menace. They both participated in governmental abuse of these children and their parents by failing to respect and follow the law as set forth herein.

127.139.     Patchin and Davisson substantially participated in the unlawful detention of K.J., J.M.J, J.A.J., and K.A.J. in the State's care by perpetuating their false narrative in juvenile Ccourt filings and to DCS service providers that Bianca abused and neglected J.M.J., that she was an aggressive dangerous parent who hates boys, and that Jiaro cannot protect the children. This false narrative was not endorsed by any of the Spanish speaking DCS service providers who actually interacted with and observed the parents with their children.

128.140.     Del Fiacco and Davisson substantially participated in the unlawful detention of K.J., J.M.J., J.A.J., and K.A.J. by perpetuating the DCS false narrative in Court juvenile court filings and in her Del Fiacco's sworn testimony.

141.   As Patchin and Del Fiacco's supervisor, Davisson substantially participated in the unlawful seizure of J.A.J. and K.A.J. and the wrongful detention of K.J., J.M.J., J.A.J., and K.A.J. in State's care by directing, recommending, and authorizing Patchin and Del Fiacco's false filings and false narrative that kept these children apart from one another for years and apart from their parents.

129.142.     As Patchin and Del Fiacco's supervisor, Davisson set in motion the acts by Patchin and Del Fiacco and knowingly refused to terminate and/or correct Patchin's and Del Fiacco's actions, which Davisson knew were false and harmful to the children and family.

130.143.     At the time Patchin, and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the Fourteenth Amendment protects the rights of parents and children to live together without government interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000).

131.144.     At the time Patchin, and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that the First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Lee v. City of Los Angeles*, 250 F. 3d 668, 685 (9th Cir. 2001).

132.145.    At the time Patchin, and Del Fiacco, and Davisson substantially participated in these unlawful activities, it was well established that a state official or an individual "cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued," the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, and the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1138-1141.

133.146.    At the relevant times when K.J., J.M.J., J.A.J., and K.A.J. were seized and/or detained, DCS agents, Patchin, Del Fiacco, and Davisson did not have any information that established reasonable cause to believe that these children were in imminent danger of serious bodily injury and there were no exigent circumstances, yet they persisted in removing all of the children at various times and keeping them separated from one another and their parents for years.

134.147.    Prior to the relevant times when K.J., J.M.J., J.A.J., and K.A.J. were seized and/or detained, the State and DCS agents, Patchin, Del Fiacco, and Davisson did not first pursue reasonable avenues of investigation. They did not include in their investigation the many positive things noted about Bianca by the Missouri child welfare professionals, nor did they ever seek to speak with Biaca's teenage son, L.J., who would have substantiated his loving bond with his mother.

135.148.    At the relevant times when Patchin, Del Fiacco, and Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J., and K.A.J., the scope of the intrusion was not reasonably necessary to avert any specific injury, and, even if it were, the intrusion was longer than necessary to avert the injury.

136.149.    At the relevant times when Patchin, Del Fiacco, and Davisson substantially participated in the seizure and detention of K.J., J.M.J., J.A.J., and K.A.J., each of them, individually acted under the color of law.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

137.150.    Because of the State's and DCS's wrongful seizure and detention of K.J., J.M.J., J.A.J., and K.A.J., L.J. and Bianca were reasonably afraid to have him L.J. return to live with his mother. L.J. stayed away for four long years, even though he missed his mother and sister K.J. dearly.

138.151.    Patchin, Del Fiacco, and Davisson violated Plaintiffs' L.J., K.J., K.A.J., and J.A.J.'s Bianca, Jiaro, and L.J.'s the constitutional rights with their unlawful conduct.

139.152.    As a direct and proximate result of the violation of their constitutional rights, Plaintiffs L.J., K.J., K.A.J. and J.A.J suffered irreparable harm and will continue to suffer general and special damages, in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TWO - JUDICIAL DECEPTION

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs' right to Due Process under the Fourth and Fourteenth Amendments for making misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.)**

140.153.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

141.154.    It is well established that liability for a § 1983 claim will lie for judicial deception. *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997).

142.155.    Although, the Ninth Circuit has "recognized absolute immunity for social workers ... for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," the "scope of absolute immunity for social workers is extremely narrow." *Miller v. Gammie*, 335 F.3d 889, 989 (9th Cir. 2003).

143.156.    Absolute immunity does not extend to the fabrication of false evidence or perjury. *Hardwick v. County of Orange,* 844 F. 3d 1112 (9th Cir. 2017).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

144.157.      There is no absolute or qualified immunity for making false statements to a court, including signing a petition under penalty of perjury. *Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997); *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008); *Miller*, 335 F.3d at 897; *Hardwick*, 844 F.3d at 1118.

145.158.      At all relevant times, "the constitutional right to be free from the knowing presentation of false or perjured evidence" was clearly established. *Hardwick*, 844 F. 3d 1112; *see also Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000); *Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996).

146.159.      During their testimony under oath and in reports to the juvenile court, Patchin, a nd Del Fiacco, and Davisson made or authorized statements which were false and/or demonstrated a reckless disregard for the truth, including, but not limited to the Patchin's and Del Fiacco's false sworn testimony and the numerous false statements made in case reports signed by Davisson and filed with the juvenile court.

147.160.      Davisson directed, recommended, and authorized Patchin to make made the following false statements in sworn testimony and/or in reports to the juvenile court to support the State's and DCS's false petitions. None of these allegations are true:

a.      Bianca was homeless for several months in 2018;

b.      J.M.J. was so severely malnourished he was feeble and could barely sit up;

c.      J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

d.      Bianca did not like J.M.J. because was a baby conceived by rape;

e.      K.J. had scratches on her face evidencing abuse;

f.      Bianca was aggressive;

g.      Bianca had been convicted of felonious child abuse in Missouri in 2017;

h. on one occasion in July 2019 Bianca shouted at her therapist, Dr. Hanley;

i. on one occasion, while in labor in the hospital, Bianca stated she would name J.A.J. "Motherfucker;"

j. Bianca has gender dysmorphic disorder; and

k. Bianca willfully neglected J.M.J. because she hates boys.

148.161. Davisson instructed and authorized Del Fiacco to reiterated Davisson's and Patchin's false narrative to the juvenile court in testimony and/or in reports to the juvenile court. In addition, Del Fiacco added that Bianca focused on the "wrong things" during her supervised visits with her children. No other State or DCS service provider agreed with this assessment by Del Fiacco.

149.162. Davisson instructed, directed, authorized orand ratified Patchin's and Del Fiacco's wrongful judicial deceptions.

163. Davisson instructed, recommended, approved and signed Patchin's and Del Fiacco's false reports filed with the juvenile court, in accordance with DCS policy.

150.164. Davisson set in motion Del Fiacco's false narrative, knowingly refused to terminate the series of acts by Patchin and Del Fiacco, which Davisson knew or should have known would cause Patchin and Del Fiacco to inflict a constitutional injury on this family to the detriment of the children and their parents causing undue separation from one another for years.

151.165. When committing these acts of judicial deception, Patchin, Del Fiacco, and Davisson were acting individually under color of law.

152.166. As a direct and proximate result of the violations of Plaintiffs' L.J., K.J., K.A.J., and J.A.J.'s constitutional rights by judicial deception, Plaintiffs they suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM THREE - FAILURE TO MAKE REASONABLE EFFORTS**

**(Under 42 U.S.C. § 1983, Defendants Patchin, Del Fiacco, and Davisson are liable for violating Plaintiffs L.J., K.J., K.A.J., and J.A.J.'s right to Due Process under the Fourth and Fourteenth Amendments for failing to make reasonable efforts to preserve the family relationship.)**

~~153.~~167.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

~~154.~~168.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32.  A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

~~155.~~169.    At all relevant times, it was well established that the State and DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

170.   At all relevant times, it was well established that the State and "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019). "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require "DCS to identify the conditions causing the child's out- of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

~~156.~~171.    Davisson worked contrary to the law in actively seeking to keep the children from their parents by using government resources to perpetuate the agenda of severance of parental rights rather than reunification and by allowing case reports she

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

signed to contain highly prejudicial and false information to influence the judge and decision makers toward DCS's agenda of severance of parental rights.

157.172.    At all relevant times, it was well-established that in determining whether the State and DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review the State and DCS' actions during the entirety of time the child has been in the State and DCS' care. *Donald W*., 247 Ariz. at 19, ¶ 49.

158.173.    Patchin, Del Fiacco, and Davisson violated L.J., K.J., K.A.J., and J.A.J.'s Bianca's right to the State's reasonable efforts to reunite them by failing to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and when, among other things, they (1) relied on false hearsay provided by a blame-shifting thief at the Gift of Mary Shelter; (2) failed to investigate the positive information from Missouri social workers; (3) failed to speak with L.J. who loves his mother very much; (4) failed to consider that a J.M.J. was examined by a mandatory reporter only one week prior to the false DCS hotline call; (5) failed to review the medical records which showed that when J.M.J. was placed in foster care, weighed less than he did when he was in Bianca's care; and (6) falsely asserted to the trial court that wanted to name J.A.J. "Motherfucker."

159.174.    Arizona law, specifically A.R.S. § 514(B), requires that the State and DCS "place a child in the least restrictive type of placement available, consistent with the best interest of the child."

160.175.    Arizona law, specifically A.R.S. § 514(B), mandates that placement of a child in a kinship care with a member of the child's family is a less restrictive placement than placement with a foster family.

161.176.    Patchin, Del Fiacco, and Davisson violated L.J., K.J., K.A.J., and J.A.J.'s Bianca's right to the State's reasonable efforts to reunite them with their mother and each other her with her children by failing to keep them with their parents and also by failing to keep all the children together in one foster home.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

162.177.     Patchin and Davisson violated Plaintiffs L.J., K.J., K.A.J., and J.A.J.'s Bianca's right to the State's reasonable efforts to reunite them with their mother and each other her with her children by repeatedly denying her Bianca's visitation rights during the various dependency proceedings, and even after the case plan was changed to reunification in May 2022.

163.178.     When they violated Bianca's Plaintiffs' right to the State's reasonable efforts to reunite them, Patchin, Del Fiacco, and Davisson were acting in their individual capacity and under color of law.

164.179.     As a direct and proximate result of the violations of their constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM FOUR - MEDICAL DECISIONS

**(Under 42 U.S.C. § 1983, Patchin, Del Fiacco, and Davisson, Faust and McKay are liable for violating Plaintiffs Bianca's and Jiaro's right to Due Process under the Fourteenth Amendment to the U.S. Constitution to make medical decisions for E.F.)K.J., J.M.J., K.A.J., and J.A.J.)**

165.180.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

166.181.     At all relevant times, it was well established that the constitutional due process "right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless a "neutral fact finder" determines, through due process hearing, that parent is not acting in child's best interests)).

167.182.     At all relevant times, it was well established that: "All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

36

institution, including: The right to make health care decisions for the minor child, including rights pursuant to §§ 15-873, 36-2271 and 36-2272, unless otherwise prohibited by law." A.R.S. § 1-602(A)(5).

168.183.     At all relevant times, it was well established that until there is a finding of dependency by a court, which legally entitles the State and DCS "to temporarily invade" a parent's rights to "legal custody" of their child, that the state has no legal right to invade the constitutional and legal rights of a parent to make medical decisions for their child. *Diana H. v. Rubin*, 217 Ariz. 131, 134 ¶ 13 (2007).

169.184.     At all relevant times, it was well established that "the requirement that [the state child welfare organization] provide parental notice and obtain consent" before a child in its care and/or custody is provided medical treatment is not "inconsistent with [the state child welfare organization's] obligation to provide routine or emergency medical care to children in its custody." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1163 (9th Cir. 2018).

170.185.     Patchin, Del Fiacco, and Davisson, Faust, and McKay interfered with Bianca's and Jiaro's constitutional right to make medical decisions for their seized and detained children, K.J., J.M.J., K.A.J., and J.A.J., disallowing them from attending all medical appointments the entire while time they children were in State's care.

186.   Patchin, Del Fiacco, and Davisson interfered with Bianca's and Jiaro's constitutional right to make medical decisions for their seized and detained children by prohibiting them from attending their annual check-ups, well-baby examinations, and any other medical treatment needed while in DCS custody.

171.187.     When they violated Bianca's and Jiaro's constitutional rights, their seized and detained children and each of them, individually Patchin, Del Fiacco, and Davisson were acting individually and under color of law.

172.188.     As a direct and proximate result of the violations of her constitutional rights, Bianca suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## CLAIM FIVE - MEDICAL TREATMENTS

**(Under 42 U.S.C. § 1983 Defendants Patchin, Del Fiacco, and Davisson, Faust, and McKay are liable for violating Plaintiffs Bianca's and Jiarp's right to Due Process Right under the Fourteenth Amendment to the U.S. Constitution to be with E.F.K.J., J.M.J., K.A.J., and J.A.J. during medical treatment.)**

173.189.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

174.190.    At all relevant times, it was well established that the "Constitution assures parents that, in the absence of parental consent, [medical treatment] of their child may not be undertaken … at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an [treatment] exist and that the administration of the procedure is reasonable under all the circumstances." Wallis, 202 F.3d at 1141 (9th Cir. 2000). "Moreover, parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id*.

191.    Patchin, Del Fiacco, and Davisson, Faust, and McKay interfered with Bianca's and Jiaro's constitutional right to be present during their seized and detained children's medical appointments.

175.192.    Patchin, Del Fiaccco, and Davisson interfered with Bianca's and Jiaro's constitution right to consent to medical treatment for their seized and detained children by disallowing them from attending their annual check-ups, well-baby examinations, annual immunizations, and any other medical treatment needed while in DCS custody.

1   176.193.      When they violated Bianca's and Jiaro's constitutional rights, Patchin,

2   Del Fiacco, and Davisson, Faust, and McKay and each of them, individually were acting

3   individually and under color of law.

4   177.194.      As a direct and proximate result of the violations of their

5   constitutional rights, Plaintiffs suffered irreparable harm and will continue to suffer general

6   and special damages in an amount not yet ascertained but which shall be shown according

7   to proof at trial.

8   ### CLAIM SIX - NEGLIGENCE PER SE

9
10  **(Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable
    for violating A.R.S. §§ 8-451, § 8-453, and/or § 8-456)**

11  178.195.      Plaintiffs re-allege and incorporate by reference every allegation set

12  forth in the paragraphs above.

13  179.196.      Under Arizona law, "[a] person who violates a legislative enactment

14  that establishes the standard of care or that has been adopted by a court as the relevant

15  standard of care is negligent per se and the violation is conclusive as to negligence." *St.*

16  *George v. Plimpton*, 241 Ariz. 163, 166, 384 P.3d 1243, 1246 (Ct. App. 2016).

17  180.197.      The Arizona legislature has enacted laws which establish the standard

18  of care for DCS and its employees and agents.

19  **FAUST AND MCKAY'S VIOLATION OF A.R.S. § 8-451 AND § 8-453**

20  181.198.      Under A.R.S. § 8-451, "the primary purpose of the department is to

21  protect children."

22  182.199.      Under A.R.S. § 8-453, the State's director of the DCS Department of

23  Child Safety has the duty to "[f]ormulate policies, plans and programs to effectuate the …

24  purposes of the department."

25  183.200.      Upon information and belief, the State and DCS agents acted in

26  accordance with the Department's policies, plans and programs in place at the time, which

27  were not protective of children. For example, the State and DCS has no policies, plans, or

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

programs in place to ensure its agents comply with the safeguarding provisions of A.R.S. § 8-456.

~~184.~~201.    As a direct and proximate cause of Faust's and McKay's negligence per se, minor children L.J., K.J., J.M.J., K.A.J., and J.A.J. were not protected; instead, they were irreparably harmed by undue and prolonged separation from one and other and their parents.

~~185.~~202.    Plaintiffs L.J., K.J., K.A.J., and J.A.J. were directly and proximately harmed by Faust and McKay's violations of A.R.S. §§ 8-451 and 8-453.

~~186.~~203.    Directors Faust and McKay are liable for negligence per se for violations of A.R.S. §§ 8-451 and 8-453.

**PATCHIN'S, DEL FIACCO'S, AND DAVISSON'S ~~VIOLATE~~ VIOLATIONS OF A.R.S. § 8-456(A)**

~~187.~~204.    Under A.R.S § 8-456(A), the State and DCS "shall train all investigators in forensic interviewing and processes and the protocols … [and] [t]he training must include…[t]he duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure."

~~188.~~205.    As alleged in the paragraphs' above, Patchin, Del Fiacco, and Davisson did not protect the legal and due process rights of Plaintiffs L.J., K.J., K.A.J., and J.A.J. when they engaged in repeated judicial deception. ~~to violate Plaintiffs' their constitutional rights.~~

~~189.~~206.    Plaintiffs L.J., K.J., K.A.J, and J.A.J. were directly and proximately irreparably harmed by Patchin's, Del Fiacco's, and Davisson's violation of A.R.S. § 8-456(A).

~~190.~~207.    Patchin, Del Fiacco, and Davisson are liable for negligence per se for violation of A.R.S. § 8-456(A).

**PATCHIN'S, DEL FIACCO'S, AND DAVISSON'S ~~VIOLATE~~ VIOLATION OF A.R.S. § 8-456(C)(1)**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

191.208.    Pursuant to A.R.S. § 8-456(C)(1), Arizona's legislature has sought to protect the rights of parents by requiring the State and DCS to "make a prompt and thorough investigation" of any condition "that would tend to support or refute the allegation that the child is a victim of abuse or neglect."

192.209.    Patchin's, Del Fiacco's, and Davisson's investigations were not thorough, in violation of A.R.S. § 8-456(C)(1).

193.210.    The overwhelming evidence in the State's and DCS's possession at the time of J.M.J.'s and K.J.'s removal and detention, was counter to Davisson's and Patchin's false narrative. This evidence included the medical records from J.M.J.'s hospitalization at PCH in September 2018, which found J.M.J. to be playful, happy, but mildly to moderately malnourished. He was also found to have Mongolian spots on his back, not bruises. Davisson and Patchin willfully distorted these records to report to the Court juvenile court and Bianca's service providers that at removal, J.M.J. was so severely malnourished he could barely sit up and his back was badly bruised.

194.211.    Davisson's and Patchin's misrepresentations became  — was permanently baked into the record and formed the basis for the juvenile court's severance of Bianca's rights as to J.M.J. in May 2022.

195.212.    The State and DCS were also in possession of countless records from various parent aids, such as Christine Martinez, who had worked with the parents over a long period of time and held a positive view of Jiaro and Bianca.

196.213.    The State and DCS knew that Bianca's therapist, Dr. Hadnley, also held a positive view of Bianca.

197.214.    Reports from Jiaro's service providers were also positive, and contrary to the State and DCS's invisible father narrative.

198.215.    Patchin, and Del Fiacco, and Davisson maliciously and falsely provided false reports to the juvenile court and Patchin's and Del Fiacco's sworn testimony that falsely alleged Bianca was an aggressive and dangerous mother, while Jiaro was inept to protect his children from her. This false narrative was not endorsed by the many service

41

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.265.4556

providers who had first-hand interaction with the parents and their children. Patchin, Del Fiacco, and Davisson intentionally withheld positive information from service providers and the juvenile court as it did not conform with their false narrative.

199.216.    Plaintiffs L.J., K.J., K.A.J., and J.A.J. were directly and proximately irreparably harmed by Patchin's, Del Fiacco's, and Davisson's violation of A.R.S. § 8-456(C)(1).

200.217.    Patchin, Del Fiacco, and Davisson are liable to Plaintiffs L.J., K.J, K.A.J., and J.A.J. for negligence per se for violation of A.R.S. § 8-456(C)(1).

### CLAIM SEVEN - ABUSE OF PROCESS

**(Defendants Patchin, Del Fiacco, and Davidson are liable to Plaintiffs for Abuse of Process)**

201.218.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

202.219.    The elements of an abuse-of-process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App.1982).

203.220.    A party can demonstrate the latter element by "showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Id*. In the context of this tort, Arizona interprets "process" as encompassing "the entire range of procedures incident to the litigation process." *Id*. at 352.

204.221.    As alleged in the paragraphs above, Caseworker Patchin and Supervisor Davisson filed two fraudulent dependency petitions and two fraudulent severance petitions.

205.222.    Patchin and Davisson wasere motivated by a malicious, personal dislike of Bianca. Patchin's animus toward Bianca is evidenced in various emails, where she engaged in unbridled ad hominin attacks; for example, characterizing Bianca as a crude liar and insulting her lipstick. This is malice. Davisson failed to address Patchin's bias and assumptions that affected her interaction with this family and/or case outcomes.

206.223.    Patchin and Davisson filed the fraudulent petitions. under the negligent supervision of Davisson.

224.   Davisson knew, or should have known, the overwhelming evidence in the record did not support their Patchin's false allegations. Davisson knew or should have known of Patchin's personal animus toward Bianca, as evidenced in the record. Yet, Davisson supported the malicious crusade against Bianca.

207.  Davisson, as Patchin's supervisor, was required to address bias and assumptions that affected the interaction with this family but she failed to intervene or prevent Patchin's aggression towards this family so they could continue to pursue their false narrative and harmful agenda of severance of parental rights. Defendants are aware that severance of parental rights is a death sentence as it relates to one's familial bonds with their children.

208.225.    Caseworker Del Fiacco, at the recommendation and direction of Davisson, supported Patchin's malicious crusade when Patchin retired. Del Fiacco either knew or should have known that the record did not support Davisson's and Patchin's false and malicious allegations about Bianca and Jiaro. Del Fiacco either knew or should have known of Patchin's personal animus toward Bianca, as was evident in Patchin's emails, in her reports, and in her sworn testimony at trial, which was witnessed by Del Fiacco.

209.226.    Davisson's and Patchin's filing and prosecution of the dependency petitions that were supported only by falsehoods is an abuse of the judicial process.

210.227.    Davisson's and Del Fiacco's prosecution of these petitions was an abuse of the judicial process.

211.228.    Despite the overwhelming evidence that Bianca and Jiaro are fit parents, Patchin, and Del Fiacco, and Davisson, under the direct supervision of Davisson, continued to press charges towards severance of their parental rights..

212.229.    Even after the juvenile court denied the severance as to K.J., K.A.J., and J.A.J. on 11 May 11, 2022, the State, through DCS and DCS agents Del Fiacco and Davisson defied court orders to meet within 30 days to initiate the reunification process.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Instead, the State and these DCS agents refused to initiate any meaningful steps until five months after being ordered to do so. Davisson was required to make sure that case activities align with federal, state, and agency law and regulations, including court orders, but failed and refused to do so.

230.   Plaintiffs L.J., K.J., K.A.J., and J.A.J. were directly and proximately irreparably harmed by Patchin's, Del Fiacco's, and Davisson's abuse of process. Patchin, Del Fiacco, and Davisson are liable for this harm.

213.231.      Plaintiffs Bianca Jimenez-Bencebi and Jiaro Abrego Zavaleta were directly and proximately harmed by Patchin, Del Fiacco, and Davisson failures to initiate the reunification process in direct violation of the juvenile court Court Order in May 2022 and their abuse of process.

## CLAIM EIGHT - GROSS NEGLIGENCE / LEGAL RIGHTS

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Faust, and McKay are liable for exercising Gross Negligence in carrying out their duty to protect the legal rights of children and families.)**

214.232.      Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

215.233.      Under A.R.S. § 8-802 (D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

216.234.      "A statute or regulation typically gives rise to a tort duty premised on public policy only if it is designed to protect the class of persons, in which the Plaintiffs is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Lorenz v. State*, 238 Ariz. 556, 558 (App. 2015).

217.235.      Patchin, Del Fiacco, Davisson, Faust, and McKay acted with gross negligence and breached their duty to protect Plaintiffs L.J, K.J., K.A.J., and J.A.J.'s legal rights when they failed to properly and thoroughly investigate whether the State and DCS should remove these children from their parents's care.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

218.236.    Patchin, Del Fiacco, Davisson, Faust, and McKay and each of them, acted with gross negligence and breached their duty to protect the legal rights of Bianca L.J, K.J., K.A.J., and J.A.J. by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1).

219.237.    Patchin, Del Fiacco, Davisson, Faust, and McKay acted with gross negligence and breached their duty to protect Plaintiffs' legal rights by limiting, and at times forbidding, Bianca and Jiaro's visits with the children from May 2022 after the severance was denied and after -being court ordered to provide visits and actively work toward reunification of the children with their parents.

220.238.    Patchin, Del Fiacco, and Davisson acted with gross negligence and breached their duty to protect Plaintiffs L.J.'s, K.J.'s, K.A.J.'s, and J.A.J.'s legal rights when they made representations to the juvenile court that were false and/or demonstrated a reckless disregard for the truth.

239.    As a direct and proximate result of Patchin's, Del Fiacco's, and Davisson's, Faust, and McKay's breaches of their dutyduties, Plaintiffs L.J., K.J., K.A.J., and J.A.J. suffered irreparable harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

221.240.    As a direct and proximate result of Patchin's, Del Fiacco's, and Davisson's, Faust, and McKay's breaches of their dutyies when they failed to reunite Plaintiffs Bianca Jimenez-Bencebi and Jiaro Abrego Zavaleta with their children pursuant to court order in May 2022, theyBianca and Jiaro suffered harm and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**CLAIM NINE - GROSS NEGLIGENCE / REASONABLE EFFORTS**

**(Under established Arizona law, Defendants Patchin, Del Fiacco, and Davisson, Mr. Faust, and Mr. McKay and each of them, are liable for exercising Gross Negligence in carrying out their duty to make reasonable and/or diligent efforts to preserve the family relationship.)**

222.241.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

223.242.    At all relevant times, it was "well established that the State…has an affirmative duty to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Arizona Dep't of Econ. Sec*., 193 Ariz. 185, 186, ¶ 1 (App. 1999). This duty is "defined [] on constitutional grounds." *Id*. at 192, ¶32.  A "reasonable effort" requires the State "to undertake measures with a reasonable prospect of success." *Id*.

224.243.    At all relevant times, it was well established that the State and DCS agents are "obligated to undertake measures with a reasonable probability of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec*., 193 Ariz. 185, 192, ¶ 34 (App. 1999). The State and DCS agents "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id*. at ¶ 37.

225.244.    At all relevant times, it was well established that the State and "DCS has a constitutional obligation to attempt to unite" a parent with her children. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 24 ¶ 46 (App. 2019).  The State and "DCS is obliged to work with the parent toward a shared goal of reunification throughout the statutory period." *Id*. at 23, ¶ 49. At the "very least," reasonable efforts require the State and "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id*. at 20, ¶ 50.

226.245.    A.R.S. § 8-533(B)(8) requires the State and DCS agents to make a diligent effort to provide appropriate reunification services.

227.246.    At all relevant times, it was well-established that in determining whether the State and DCS has complied with the law and made reasonable efforts to reunite a parent with their children, a juvenile court must view the "totality of the circumstances" and review the State and DCS' actions during the entirety of time the child has been in the State and DCS' care. *Donald W*., 247 Ariz. at 19, ¶ 49. "[A]bsent reasonable

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

46

modifications to…rehabilitative services offered to a disabled parent, a department has failed to perform its duty under the ADA to reasonably accommodate a disability and, in turn, its obligation to make reasonable efforts to rehabilitate the parent." *People in Interest of S.K.*, 440 P. 3d 1240, 1249 (Co. App. 2019).

~~228.~~247.     Patchin, Del Fiacco, and Davisson, ~~Faust, McKay~~ and each of them, acted with gross negligence and breached their duty to make reasonable and/or diligent efforts to preserve the family relationship by failing to complete a prompt and thorough investigation, as required by A.R.S. § 8-456(C)(1) and by perpetuating a false narrative in numerous reports they signed and filed with the juvenile court knowing the juvenile court and DCS service providers would rely on the false information.

~~229.~~248.     As a direct and proximate result of Patchin's, Del Fiacco's, and Davisson's, ~~Faust, and McKay's~~ gross negligence, Plaintiffs L.J., K.J., K.A.J., and J.A.J. suffered irreparable harm, including but not limited to, the ~~permanent~~ loss of valuable and irreplaceable time with their parents ~~her parental rights~~, and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

## CLAIM TEN - GROSS NEGLIGENCE EXERCISED BY DCS EMPLOYEES

**(Under established Arizona law, Defendants Faust and McKay are liable to Plaintiffs for the Gross Negligence exercised by Defendant employees of DCS in carrying out their duties.)**

~~230.~~249.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

~~231.~~250.     Faust and McKay owed a duty to Plaintiffs to ensure that the employees, officers, and agents of the State and DCS were qualified to serve in their respective roles before hiring and assigning employees to act as supervisors, investigators and/or case managers for DCS.

~~232.~~251.     Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that employees, officers, and agents of the State

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

47

and DCS were properly qualified before hiring and assigning employees to act as supervisors, investigators and/or case managers for the State and DCS.

233.252.    Faust and McKay also owed a duty to Plaintiffs to ensure that the employees, officers, and agents of the State and DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

234.253.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that the employees, officers, and/or agents of the State and DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner.

235.254.    Under Arizona law, specifically A.R.S. § 8-456(A)(2), the State and DCS are required to ensure that all the State and DCS investigators were properly trained on their "duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure." This did not happen as these children experienced repeated and highly prejudicial due process violations as set forth herein.

236.255.    Faust and McKay operated with gross negligence and breached the duties described herein by failing to ensure that all the State and DCS investigators were properly trained on their duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.

256.    As a direct and proximate result of Patchin, Del Fiacco, and Davisson, Faust, and McKay's breaches of these duties, Plaintiffs L.J., K.J., K.A.J., and J.A.J. were damaged in that they, among other things, were denied their constitutionally protected individual and familial rights thereby suffering damages from the loss of familial relationships forever, and Plaintiffs will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

237.257.    As a direct and proximate result of Patchin's, Del Fiacco's, Davisson's, Faust's, and McKay's breaches of their duties to reunite the parents with their children as directed in the May 2022 juvenile court order, Plaintiffs Biana Jimenez-Bencebi and Jiaro Abrego Zavaleta were damaged in that they, among other things, were denied

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

their constitutionally protected individual and familial right thereby suffering damage from the loss of familial relationship from May 2022 on, and they will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

CLAIM ELEVEN – UNLAWFUL DCS POLICIES AND PRACTICES

(Under 42 U.S.C. § 1983, Defendant State of Arizona and Arizona Department of Child Safety is liable for the unconstitutional acts of its employees which were committed pursuant to a policy and/or practice of DCS.)

238.  Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

239.  Defendant State and DCS, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

240.  The State and DCS, and those individual defendants in their official and individual capacity who had supervisory and/or policy making authority, had a duty to Plaintiffs to establish, implement, and/or follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiffs under the United States Constitution, including under the First and Fourteenth Amendments. This includes, without limitation, the protection of the right to familial relations; the right to privacy; and the rights to substantive and procedural due process.

241.  The State and DCS established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution. These policies, included, but are not limited to:

a.  the policy of using trickery, duress, fabrications and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the juvenile court, causing an interference with parents' rights, including those as to familial relations;

49

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

b.      the policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agent, employees, and state actors, in providing the constitutional protections guaranteed to individuals and families, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency-type proceedings;

c.      the policy of setting forth allegations in juvenile dependency petitions against parents claiming child abuse and/or neglect and/or other unsubstantiated allegations regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

d.      the policy, practice, or custom of making knowingly false allegations of child abuse and/or neglect in juvenile dependency petitions signed under penalty of perjury, motions, or other documents filed with the juvenile court as a means of intimidating parents, whether or not true, or forcing a parent to adjudicate a matter knowing that the courts most often sustain allegations, whether justified by extant evidence or not;

e.      the policy of fraudulently charging parents with child abuse and/or neglect where none exist; and

f.      the policy of failing to take appropriate action to ensure that appropriate and meaningful visitation occurs.

242.    The customs, policies, and/or practices listed herein are not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency-type proceedings. Bianca reserves their right to amend this pleading as more information becomes available.

243.    It was obvious that the policies described herein that were instituted and/or maintained by the State and DCS would lead to constitutional violations like the violations suffered by Plaintiffs, the State and DCS was deliberately indifferent to the consequent constitutional violations that would inevitably occur as a direct result of its policies.

50

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

244.   ~~The State and DCS was indifferent to the consequences that would be established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies"), which policies were the moving force behind the violation of Bianca's constitutional rights, including those under the First and Fourteenth Amendment of the United States Constitution.~~

245.   ~~The State and DCS, breached its duties and obligations to Plaintiffs including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the State and DCS employees to engage in the unlawful and unconstitutional conduct alleged herein.~~

246.   ~~The State and DCS, knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that the State and DCS employees would, and did, cause Plaintiffs to be injured and damaged by the State's and DCS's wrongful policies, or deliberate lack thereof, or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in the contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies subjected them to injunctive relief which Plaintiffs asserts herein.~~

247.   ~~These actions, and/or inactions, of the State and DCS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs has sustained general and specific damages to an extent and in an amount to be proven at trial. Plaintiffs has incurred and will continue to incur, attorneys' fees, costs, and expenses, including those authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.~~

## CLAIM TWELVE - IIED

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**(Under established Arizona law, Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay are liable to Plaintiffs L.J., K.J., K.A.J., and J.A.J. for Intentional Infliction of Emotional Distress ("IIED")**

248.258.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

249.259.    "The tort of intentional infliction of emotional distress requires proof of three elements: First, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publ'g. Co. v. Miller*, 210 Ariz. 513, 516, ¶ 11, 115 P.3d 107, 110 (2005) (emphasis in original).

250.260.    Patchin's, Del Fiacco's, and Davisson's, Faust, and McKay's conduct was extreme and outrageous. The unwarranted removal of a child from their loving parent and then wrongfully and repeatedly falsely accusing the parent of neglect and abuse is extreme and outrageous. What's worse, is that DCS on behalf of the State repeated this offense four times and then failed to reunite this family when the juvenile court denied their agenda of severance of parental rights and ordered visitation and reunification.to do so. .

251.261.    Bianca was suffering from a very brief interval of home instability at the time J.M.J. and K.J. were removed.

252.262.    Patchin and Davison falsely accused Bianca of abusing and starving her sonJ.M.J., because shethey also falsely claimed the Mongolian spots on his back were bruises, and then because she exaggerated his mild to moderate malnutrition as severe malnutrition, which, in any event, was due to an organic feeding issue, as severe malnutritionand not any abuse or neglect by Bianca.

253.263.    There were absolutely no signs of abuse or neglect of K.J., but DCS on behalf of the State, removed her anyway from her mother's care and immediately placed her in a foster care, where she has remained for the past four years, the last two of which

she was denied access with her mother and told falsehoods about her mother, that she was not wanted by her mother, and that her mother was bad.

254.264.   J.A.J. and K.A.J. were removed immediately at birth from both Bianca and Jiaro, on the outrageous false allegation that Bianca was aggressive and hated boys and that Jiaro could not protect his children. They were also deprived the association of denied living with their siblings.

255.265.   The grief any loving parent would suffer in such circumstances is palpable and immeasurable.

256.266.   Patchin, Del Fiacco, and Davisson, Faust, and McKay intended to cause Plaintiffs' emotional distress or had reckless disregard for the certainty that distress would result from their conduct.

257.267.   Patchin's, Del Fiacco's, and Davisson's, Faust, and McKay conduct caused Plaintiffs L.J., K.J., K.A.J., and J.A.J. severe emotional distress.

258.268.   Plaintiffs L.J., K.J., K.A.J, and J.A.J. will continue to suffer such damages into the future, all in an amount that will be demonstrated at trial.

**CLAIM THIRTEEN**
**NEGLIGENT SUPERVISION, TRAINING AND RETENTION**

**(Under established Arizona Law, Defendants State, DCS, Davisson, Faust and McKay are liable to Plaintiffs for the Negligent Supervision, Negligent Training and Negligent Retention)**

259.269.   Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above.

260.270.   Defendants the State, DCS, Davisson, Faust, and McKay had the duty to supervise the actions of its their agents and employees.

261.271.   Under A.R.S. § 8-802(D)(1), "[a]ll child safety workers shall be trained and demonstrate competency in [their] duty to protect the legal rights of children and families from the time of the initial contact through treatment."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

262.272.    Defendants the State, DCS, Davisson, Faust, and McKay are required to train its their agents and employees to comply with the law and make reasonable efforts to reunite parents with their children.

263.273.    Defendants the State, DCS, Davisson, Faust, and McKay are required to train and supervise their agents and employees to follow the policies, plans, or programs in place as set forth by law, the State and DCS. DCS policies and due process requirements were repeatedly breached by Patchin, Del Fiacco, and Davisson.

264.274.    Defendants the State, DCS, Davisson, Faust, and McKay had a duty to adequately supervise, train, control, and otherwise monitor the activities of its their agents and employees to avoid unreasonable risk of harm to Plaintiffs.

265.275.    Defendants the State, DCS, Davisson, Faust, and McKay allowed Defendants Patchin and Del Fiacco to pursue a false narrative and allegations against Bianca and allowed the unlawful seizure of her children and allowed them to continue their false narrative in Court filings and testimony.

266.276.    Defendants the State, DCS, Davisson, Faust, and McKay knew or should have known that its their employees and agents had received inadequate training and supervision, were failing to follow procedures, and were acting illegally by violating the children's and parents' constitutional rights. .

267.277.    Defendants State, DCS, Davisson, Faust, and McKay had knowledge, either constructive or actual, of the incident in which its their agents and employees, i.e., Patchin and Del Fiacco, failed to adequately protect the Plaintiff's from harm.

268.278.    Defendants the State's, DCS, Davisson's, Faust's, and McKay's inadequate supervision over its their employees and agents, especially, Patchin and Del Fiacco, breached their duty to Plaintiffs.

269.279.    Defendants the State, DCS, Davison, Faust, and McKay had a duty to retain only competent, qualified, and safe employees and agents.  Defendants the State's, DCS, Davisson's, Faust's,, and McKay's breach of their supervisory and training duties to Plaintiffs was the direct and proximate cause of the loss suffered by Plaintiffs.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

54

270.280.     Defendants the State, ~~DCS,~~ Davisson, Faust, and McKay breached their duty of retention to Plaintiffs by retaining negligent, incompetent, unfit, and dangerous employees and agents.

281.   As a direct and proximate result of Defendants the State's, ~~DCS,~~ Davisson's, Faust's, and McKay's negligent supervision, training and negligent retention of incompetent, unfit, and dangerous employees, Plaintiffs L.J., K.J., K.A.J., and J.A.J. suffered irreparable harm and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

271.282.     As a direct and proximate result of Defendants the State's, Davisson's, Faust's, and McKay's negligent supervision, training and negligent retention of incompetent, unfit, and dangerous employees, all Plaintiffs, including Bianca Jimenez-Bencebi and Jiaro Abrego Zavaleta, suffered irreparable harm as a result of Defendants' failures to follow court orders to reunite their family and will continue to suffer general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs prays for relief as follows:**

**A.      General damages and special damages according to proof, but in no event less than $3,000,000, including, but not limited to economic losses, medical costs, hedonic damages, psychological trauma, and emotional distress;**

**B.      For injunctive relief in the form of DCS agreeing to provide training to all DCS case workers regarding**

- When exigent circumstances exist that justify the unwarranted seizure of a child;

- The psychological trauma and harm suffered by children and family that occurs when DCS removes a child from the custody of his or her parent;

- That prior to removing a child from the custody of his or her parent, DCS has a legal and constitutional obligation to conduct a thorough

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

55

investigation into any allegations justifying removal, including investigating facts, witnesses, and evidence that refutes the allegations;

- That it is a violation of the Constitutional rights of children and parents to make misrepresentations or omissions to the court which are false and/or which demonstrate a reckless disregard for the truth; and;

- That facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of the services provided by the State and thus all reasonable efforts must be expended to ensure that a visitation occurs regularly and as scheduled.

**C.** **The training described in (B) above must be provided, at a minimum, annually to all DCS case workers and must be included in the training provided to persons upon their becoming a DCS case worker;**

**D.** **For taxable costs and pre- and post-judgment interest to the extent permitted by law;**

**E.** **For punitive and/or exemplary damages to the extent permitted by law and in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;**

**F.** **For attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and state law, as applicable; and,**

**G.** **For such other relief as the Court deems just and proper under the circumstances.**

**RESPECTFULLY SUBMITTED** this 19th~~1st~~ day of ~~September~~ July 202~~3~~4.

**MILLS + WOODS LAW PLLC**

By_____/s/ Thomas A. Connelly_____
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

**GILLESPIE, SHIELDS & TAYLOR**

    DeeAn Gillespie Strub

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

Jenny D. Jansch
7319 North 16th Street
Phoenix, AZ 85020

*Attorneys for Plaintiffs*