Julie M. Rhodes (016313)
Michael R. Niederbaumer (031931)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7612 – JR
Telephone: (602) 542-8346 – MN
Fax: (602) 542-3393
DefensePhx@azag.gov
Julie.Rhodes@azag.gov
Michael.Niederbaumer@azag.gov

*Attorneys for State Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bianca Jimenez-Bencebi, an individual; Jiaro Abrego Zavaleta, an individual; L.J, a minor, through his parent and guardian, Bianca Jimenez-Bencebi; K.J., a minor, through his parent and guardian, Bianca Jimenez-Bencebi; K.A.J, a minor, through her parent and guardian Bianca Jimenez-Bencebi; and J.A.J., a minor, through his parent and guardian Bianca Jimenez-Bencebi,<br><br>                Plaintiffs,<br><br>vs.<br><br>State of Arizona, a government entity; Carin Patchin, individually and as an employee with the State of Arizona Department of Child Safety; Tracey Del Fiacco, individually and as an employee with the State of Arizona Department of Child Safety; Amanda Davisson, individually and an employee with the State of Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; and Gregory McKay, as Former Director, Arizona Department of Child Safety,<br><br>                Defendants. | Case No: 2:23-cv-02075-DWL<br><br>**MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Defendants State of Arizona, Carin Patchin, Tracy Del Fiacco, Amanda Davisson, Michael Faust and Gregory McKay, collectively ("State Defendants") hereby move to dismiss the Second Amended Complaint ("SAC") for the following reasons: (1) L.J. lacks standing, (2) Eleventh Amendment immunity, (3) absolute immunity for testimony, (4) qualified immunity, and (5) failure to state a claim, and (6) failure to serve a Notice of Claim ("NOC"). This motion is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

State Defendants incorporate by reference the Introduction, Background, and Discussion-Legal Standard sections of the Court's Order (Doc. 17.)

### II.   ARGUMENTS

#### A.   L.J. Lacks Standing.

State Defendants challenge L.J.'s standing under Fed. R. Civil. P. 12(b)(6), not Fed. R. Civ. P. 12(b)(1). As noted by this Court, this equates to a request for dismissal for the lack of statutory standing. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Plaintiff L.J. is named as a party in Counts 1 (seizure and retention); Count 2 (judicial deception); Count 3 (failure to make reasonable efforts); Count 6 (negligence per se); Count 7 (abuse of process); Count 8 (gross negligence); Count 9 (gross negligence); Count 10 (gross negligence); Count 12 (intentional infliction of emotional distress ("IIED"); Count 13 (negligent supervision/training/retention). L.J. requires dismissal because there is no duty owed to him and no causal connection between State Defendants' action and injury to L.J. *Id*. at 1070.

#### 1.   Count One—Seizure and Retention.

This Court interpreted the First Amended Complaint ("FAC") as asserting that L.J. was harmed by a lack of familial association with his mother. (Doc. 17 n. 7.) But, Count One in the SAC specifically articulates that L.J. is asserting a First, Fourteenth, and

1. Fourth Amendment claim for the unlawful seizure and detention of K.J., J.M.J., K.A.J, and J.A.J. ("Minor Plaintiffs".) This Count requires dismissal. The SAC makes it clear that L.J. was never seized or detained by DCS, so he has no viable claims in his own right. (Doc. 21 ¶¶ 132-133.) And, this Court dismissed Plaintiff Jimenez's ("Jimenez") and Plaintiff Zavaleta's ("Zavaleta") claims regarding the unlawful seizure and detention of the Minor Plaintiffs (with the exception of the detention period post May, 2022) as time-barred. So, the only viable claim is whether or not L.J. has a constitutional right to a sibling relationship under the First, Fourteenth and Fourth Amendments—the clear answer is no. (Doc. 21 ¶¶ 131-152.) "Thus far, that familial relationship has been limited to that between a parent and child." *See Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)*, rev'd on other grounds in Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999). *JP by and through Villanueva v. County of Alameda*, 803 Fed.Appx. 106, 109 (9th Cir. 2020) held "[n]o viable loss-of-familial-association claim exists for siblings under the First Amendment." Further, *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991), *as amended*, "explicitly ruled that siblings do not possess a cognizable liberty interest to assert a loss of familial association claim under the Fourteenth Amendment. No basis exists to disregard this precedent simply because the claim is raised under the First Amendment rather than the Fourteenth Amendment." *Ward* addressed the rights of adult non-cohabitating siblings and found they do not possess a cognizable liberty interest in their siblings' companionship. *See also Wright v. Southern Arizona Child Advocacy Center*, 2022 WL4591827 (D. Ariz. 2022) ("Binding precedent precludes Plaintiffs' argument that LAW's siblings have standing to assert familial association claims.")

It is true that a more recent unpublished Ninth Circuit opinion suggests that First Amendment claims asserted by cohabitating siblings are not completely foreclosed and that district courts may apply the *Rotary Club* test to determine whether the relationship in question is sufficiently personal or private to warrant constitutional protection. *See Villasanti v. County of Riverside*, 2024 WL 737303 (C.D. Cal. 2024); *see, e.g., Mann v.*

3

*City of Sacramento*, 2022 WL 2128906, at *1 (9th Cir. 2022). But, in our fact pattern, it is clear that L.J. was not living with any of his siblings when the first dependency was filed, nor did he return to Arizona during the course of the multiple dependencies to establish any relationship with his minor siblings. (Doc. 21 ¶¶ 24-30, 43, 90, 117, 150.) The facts state L.J. last lived with K.J. when she was six months old and he was four years old. (*Id.* ¶ 24.) The SAC further establishes that L.J. still did not reside with his siblings even after the dependency action was dismissed by the state court in May, 2023, despite Plaintiffs' contentions that the harm caused to the child was his inability to move to Arizona for fear of being taken into foster care. (*Id*. ¶¶ 42-43, 117.) Finally, the SAC establishes that L.J. did not even visit his siblings, much less cohabitated with them over the past four years. (*Id.* ¶ 117.) These facts simply do not demonstrate that the critical element of "cohabitating" was ever established. *See Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987). No Ninth Circuit case clearly extended the First Amendment right to familial association to cohabitating siblings, and here, L.J. never cohabitated with two of his sibling and only cohabitated with K.J. for the first six months of her life. L.J. requires dismissal from Count One. Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### 2. Count Two—Judicial Deception/Count Three Reasonable Efforts.

To the extent L.J. is considered a Plaintiff [1] in Counts Two and Three he has not alleged that his rights have been violated. The gist of the allegations in Count Two is that State Defendants filed false reports in the juvenile court and falsely testified. (Doc. 21 ¶¶ 159-160.) None of these allegations notate any false statements about L.J. but instead, complain about statements made regarding Jimenez. The alleged impact of these falsities

---

[1] Count Two generally uses the term "Plaintiffs" but it is not clear which Plaintiffs are being referenced and paragraph 166 specifically names L.J. (Doc. 20-2 Claim 2.)

4

is that the Minor Plaintiffs were removed from Jimenez's care, but L.J. does not fall into that category because he was not in her care and never removed or detained. (*Id.* ¶ 133.)

The same argument applies to Count Three. Count Three alleges that State Defendants violated L.J.'s right to reasonable efforts to reunify Minor Plaintiffs by failing to complete a thorough investigation. (*Id.* ¶ 173.) First, that claim is confusing because the investigation occurred ***prior to the removal*** and had no impact on any "reasonable efforts to ***reunite***" the Plaintiffs. (*Id*. ¶¶ 169-172) (emphasis added.) Count Three then articulates violations of L.J.'s rights by (1) failing to place the Minor Plaintiffs in the least restrictive placement, (2) failing to place the Minor Plaintiffs in the same home, and by (3) denying Jimenez visitation. (*Id*. ¶¶ 174-177.)  Again, L.J. was not removed or detained by DCS so he was not part of the sibling set placed or separated while in foster care nor was he part of the visits.

Next, because L.J. has not established he has any constitutionally-protected relationship with the Minor Plaintiffs, he has no legal basis to maintain any claims under 42 U.S.C. § 1983 for judicial deception or the failure to make reasonable efforts. "Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) violation of rights protected by the Constitution or created by federal statutes, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The Fourteenth Amendment "guarantee[s] that parents and children will not be separated ***by the state*** without due process of law except in an emergency." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) (emphasis added). Here, L.J. cannot contend he was separated from Minor Plaintiffs ***by the state*** because he did not reside in Arizona with his siblings in the first instance and the State took no actions to separate him from anyone. The same logic extends to the alleged separation from Jimenez. The State had no part in their choice to remain separated. (Doc. 21 ¶¶ 115, 117.) Lastly, once the Court signed the orders removing the Minor Plaintiffs from Jimenez's and Zavaleta's care, it was no longer the

State Defendants who were causing the separation; rather it was the juvenile court. *See* A.R.S. § 8-821(B).

### 3. Counts Six, Eight, Nine, Ten, Thirteen—Negligence/Count Twelve—IIED.

To prove negligence, a plaintiff must establish four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *See Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). "Duty is defined as an 'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm.'" *Id.* (citations omitted). "The standard of care is defined as '[w]hat the defendant must do, or must not do … to satisfy the duty.'" *Id*. (citation omitted).

> Plaintiff's state law claims for negligence, gross negligence, and negligent hiring (Counts 11-13) alleged against several individual Defendants require a showing that the individual Defendants acted outside of a reasonable standard of care.

*McCarthy v. Scottsdale Unified School District No. 48*, 409 F.Supp. 789, 814 (D. Ariz. 2019) (*citing Gipson v. Kasey*, 214 Ariz. at 143). Whether a duty exists is a matter of law for the court to decide. *Markowitz v. Ariz. Parks Bd.,* 146 Ariz. 352, 356 (1985). Duty is defined as an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.* at 354. A duty of care may arise from the relationship between the parties. *See Stanley v. McCarver,* 208 Ariz. 219 (2004) (duty may arise from special relationship between parties, based in contract, family relations, or joint undertakings).

Here, L.J. has not established that any State Defendant owed him a duty of care. Per the SAC, the child did not reside in the State of Arizona during the operative timeframes nor did any State Defendant have contact with L.J. during the dependency

as he continuously remained in Puerto Rico.[2] (Doc. 21 ¶¶ 30, 90, 117, 147, 150.) There are no allegations that State Defendants investigated L.J.'s circumstances; in fact, the opposite is alleged. (*Id*. ¶¶ 90, 147.)

Negligence *per se* as alleged in Count Six is even more susceptible to dismissal regarding L.J. because L.J. was not in the class of persons who is owed a duty under A.R.S. §§ 8-451, -453, -456. Negligence *per se* is a doctrine where "a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care." *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054, n 2 (D. Ariz. 2018). Negligence *per se* is limited to situations involving a violation of a specific legal requirement, not a general standard of care. *See Hutto v. Francisco*, 210 Ariz. 88, 91 (2005). "A person who violates a statute enacted for the protection and safety of the public is guilty of negligence *per se*." *Good v. City of Glendale,* 150 Ariz. 218, 221 (App. 1986).

Here, L.J. asserts that A.R.S. §§ 8-451, -453, -456 all impose a duty and State Defendants were negligent *per se* by violating statutes enacted for the protection of the public. (Doc. 21 ¶¶ 195-207.) It is well-settled that DCS was created by A.R.S. § 8-451 with the explicit purpose to protect the welfare of children, but that does not extend to non-resident children.[3] *See Black v. State,* 2021 WL2435626, * 2 (App. 2021). So, L.J. cannot assert negligence *per se* because he does not fall into the class of persons warranting protection under the child safety statutes. *Id.* (*citing Good*, 150 Ariz. at 221). A.R.S. § 8-202(B) grants the juvenile court exclusive original jurisdiction over

---

[2] The SAC is internally inconsistent. Paragraph 9 states that L.J. is a resident of Maricopa County and at most times relevant to the SAC resided in Arizona in contrast to paragraph 43 which does not list L.J. as living with Jimenez and Zavaleta and paragraph 150 which states he was afraid to come to Arizona.

[3] The protection of children is referencing the protection of the children of Arizona subject to dependency proceedings, but L.J. was not a resident of Arizona during the investigations into his siblings and never subject to a dependency proceeding in Arizona. A.R.S. § 8-202.

7

dependency matters, but there are no allegations that L.J. was subject to any dependency proceedings. (*See generally* Doc. 20-2.)

L.J.'s allegations pertaining to IIED are premised on the unwarranted removal of the child from "their loving parent" which did not occur as to L.J. because he was never removed by the State. (*Id.* ¶¶ 133, 150, 258-268.) L.J. cannot meet the elements of this claim because there was no underlying "conduct" that could be characterized as extreme and outrageous or that any State Defendant intended to cause L.J. emotional distress; thus, dismissal is warranted. *See Macias v. Kaplan-Siekmann*, 2024 WL 83448, *6 (D. Ariz. 2024).

### 4. Count Seven—Abuse of Process.

L.J. equally cannot meet the elements of the tort abuse of process—a willful act in the use of the judicial process for an ulterior motive not proper in the regular conduct of the proceedings. *See Nienstedt v. Wetzel,* 133 Ariz. 348, 353 (App. 1982). The gist of the SAC is that Patchin and Davisson filed two fraudulent dependency petitions and two fraudulent severance petitions that were motivated by malice. The claim appears to argue a malicious crusade against Jimenez and Zavaleta resulting in the filing of these documents to remove the Minor Plaintiffs. (Doc. 21 ¶¶ 218-231.) But because L.J. was never removed and no dependency or severance petitions were filed regarding him, it is impossible for him to establish an abuse of process claim. Simply put, L.J. was never part of the judicial process so he cannot establish it was being utilized for an ulterior motive. (*Id.* ¶ 39.)

### B. Eleventh Amendment Immunity Applies. Count Thirteen—Negligent Supervision, Training, and Retention/Count Six— Negligence *Per Se*.

State Defendants urge dismissal of Count Thirteen against the three State Defendants—the State, Faust, and McKay—under principles of Eleventh Amendment immunity. The party asserting the Eleventh Amendment immunity bears the burden of proof. *See Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008). Two issues are at play. First, we must analyze whether or not the State and State officials waived their Eleventh

Amendment immunity by removing an action from state court to federal court thereby consenting to jurisdiction. As this Court noted in the Order (Doc. 17), whether waiver attaches or not is more complicated than stating "removal equals consent" barring any immunity protections for state law claims. *See Lapides v. Bd. of Regents of Univ. System*, 535 U.S. 613, 624 (2002). It is clear that the language in 42 U.S.C. § 1983 does not express the requisite "unequivocal intent" to abrogate the states' Eleventh Amendment immunity from suit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). And, the holding of *Lapides* was limited in *Kendrick v. Conduent State & Local Sols., Inc.*, 20018 WL 6566978, *3 (9th Cir. 2018). *Kendrick* held:

> Moreover the Supreme Court's holding in *Lapides'* was limited. A state waives Eleventh Amendment immunity by removal only for state-law claims "in respect to which the State has explicitly waived immunity from state-court proceedings." *Id*. at 617, 122 S.Ct. 1640. Here, the record does not reflect that *Conduent* waived immunity in state court. Accordingly, it is not dispositive. *See id*. at 617-618, 122 S.Ct. 1640. ("[n]or need we address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court.")

This leads to the second question and whether immunity protections extend to state law claims. This question is answered in the affirmative.

> We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. (citations omitted). We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

*See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124-125 (1984). This rule is addressed again in S*priestersbach v. Hawaii, City and County of Honolulu* 2024 WL 1142830, *4 (D. Haw. 2024). "As such, [s]tates, their agencies, and their officials in their official capacities are immune from damage suits under state or federal law by private parties in federal court unless there is a valid abrogation of that immunity or an unequivocal express waiver by the state." (citations omitted). In Arizona, a public employee performing discretionary acts encompassed within his public duties is shielded

9

1  from liability for negligence, which is the allegation contained in Count Thirteen. *See*
2  *Spooner v. City of Phoenix*, 246 Ariz. 119, 124 (App. 2018) (*citing Chamberlain v.*
3  *Mathis*, 151 Ariz. 551, (1986). These protections exist even if the immunity protection is
4  not codified, as in the case at bar. *Id.* at 123.

> Some remaining areas of immunity are prescribed by statute within Arizona's Governmental Tort Claims Act, *see, e.g.,* A.R.S. § 12-820.02, but the legislature has directed that its statutory grant of immunity for certain acts "shall not be construed to affect, alter or otherwise modify any other rules of tort immunity regarding public entities and public officers as developed at common law." *See* A.R.S. § 12-820.05(A); *see also Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 203, ¶ 27, 16 P.3d 757, 764 (2001) (acknowledging that common law immunity principles apply in the absence of statutory direction) (citations omitted).

*See also Redgrave v. Ducey*, 251 Ariz. 451 (2021) ("Arizona has not consented to damages liability for a state agency's violation of the FLSA's minimum wage or overtime provisions.") Here, this Court can and should dismiss Count Thirteen for negligent supervision, training and retention against the State and State officials, Faust and McKay. This argument is equally valid for Count Six alleging Faust and McKay violated A.R.S. §§ 8-451, -453 because the allegations of negligence arise from Faust and McKay being the official policy makers for the State.

### C. Under § 1983 State Defendants Have Absolute Immunity for Their Testimony.

Both private individuals and government officials who serve as witnesses have absolute immunity from civil damages under § 1983 with respect to their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983); *see also Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001). Crucially, this immunity applies even where the witness commits perjury. *Briscoe*, 460 U.S. at 342–45. Moreover, in the Ninth Circuit, "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa County Dep't of Social Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987), *cert denied*, 484 U.S. 829 (1987). This immunity extends to testimony given at family court

1  hearings, such as dependency or custody hearings. *See Nation v. Cholla*, 173 Ariz. 245,
2  252 (App. 1991).
3        Count One alleges that Del Fiacco's sworn testimony included the false narrative
4  (Doc. 21 ¶ 140) and Counts Two and Six both reference Patchin's and Del Fiacco's false
5  sworn testimony. (*Id.* ¶¶ 159-161, 215). Count Seven refers again to Patchin's alleged
6  false testimony. (*Id.* ¶ 225.) The controlling law is clear that State Defendants Patchin,
7  Del Fiacco, and Davisson are granted absolute immunity for any testimony in the juvenile
8  court proceedings so those claims should be stricken from the SAC.

9        **D.**    **Qualified Immunity.**
10           **1.**    **Count One**

11       The Court should affirm its prior ruling that Patchin and Del Faccio are entitled to
12 qualified immunity for the acts of removing the Minor Plaintiffs from Jimenez and
13 Zavaleta—Count One. (Doc. 17 at 55.) Second, Patchin's immunity for any acts
14 occurring post May, 2022, should be affirmed as the amended complaint provides no
15 additional facts. (Doc. 21 ¶¶ 131-152; *Id.* at 56.) In addition, the Court should affirm
16 Patchin has qualified immunity for the remaining allegations in Count One. (Doc. 17 at
17 56.) Finally, this Court should afford Davisson qualified immunity for the removals on
18 the same basis it allowed immunity for Patchin and Del Fiacco. (*Id.*) The Court did not
19 address this point as it dismissed Davisson for other reasons. (*Id.* n 22.) What is known is
20 that the juvenile court assumed jurisdiction over the family beginning in September, 2018
21 until May, 2023. (Doc. 21 ¶¶ 39(a) and 42.) And the SAC states that Jimenez's parental
22 rights to J.M.J. were terminated after a contested severance proceeding in May 11, 2022,
23 on the ground of neglect pursuant to A.R.S. §8-533(B)(2)[4] therefore, a judicial finding

---

[4] Neglect is defined in A.R.S. §8-201(25)(a).

    25. "Neglect" or "neglected" means:

        (a) The inability or unwillingness of a parent, guardian or custodian of a
        child to provide that child with supervision, food, clothing, shelter or
        medical care if that inability or unwillingness causes substantial risk of

11

1  was rendered by the juvenile court that Jimenez neglected J.M.J. This second severance
2  order is consistent with the first severance order issued January, 2020, terminating her
3  rights to both K.J and J.M.J. even though it was overturned for procedural error. (*Id.* ¶
4  39(j).) State Defendants' alleged actions in Count One were all reasonable. "Somewhat
5  more concretely, whether an official protected by qualified immunity may be held
6  personally liable for an allegedly unlawful official action generally turns on the 'objective
7  legal reasonableness' of the action." *Anderson*, 482 U.S. at 639 (*citing Harlow v.
8  Fitzgerald,* 457 U.S. 800, 819 (1982)). Count One should be dismissed in its entirety as to
9  Patchin and for all acts except post-May 11, 2022, for Del Fiacco and Davisson on the
10 basis of qualified immunity.

### 2. Count Two.

Next, the Court should affirm the prior dismissal of Del Fiacco on Count Two for under qualified immunity protections and extend those same protections to Davisson. (*Id.* at 61-62.) As noted in section II(C), any testimony is protected by absolute immunity. There are not allegations that Davisson herself testified, but rather that she supported false testimony and false reports. Again lacking, however, are any allegations that Davisson knew the allegations were false. (Doc. 21 ¶¶ 153-165.) The SAC makes it clear that at the time the first investigation was commenced in September, 2018, Patchin and Davisson knew the following information:

- Plaintiff was pregnant and homeless while having K.J. and J.M.J. in her custody. (Doc. 20-2 ¶¶ 35-37.)

- Jimenez was asked to leave the shelter. (*Id.* ¶ 51.)

- DCS received a hotline report that Jimenez threatened a person with a knife while at the shelter, left J.M.J. unattended in a car seat for extended times, prevented others from feeding J.M.J. and only paid attention to K.J. (*Id.* ¶¶ 51(e), 52.)

---

harm to the child's health or welfare, except if the inability of a parent, guardian or custodian to provide services to meet the needs of a child with a disability or chronic illness is solely the result of the unavailability of reasonable services.

12

- Upon removal J.M.J. was admitted to Phoenix Children's Hospital [PCH] and found to have mild to moderate malnutrition remaining in-patient for **six days**. (*Id*. ¶¶ 57-58) (emphasis added).

- Upon admission J.M.J. had a small fine scratch, one small bruise on his cheek and three small bruises on his right thigh. (*Id*. ¶ 59.)

"[G]overnment officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014) ("The doctrine of qualified immunity protects government officials from liability for civil damages …"). This doctrine seeks to balance two important interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

A two-part analysis for resolving government officials' qualified immunity defenses has been outlined by the Supreme Court. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. First, the Court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201; *see also Scott v. Harris*, 550 U.S. 372, 377 (2007). If there is no constitutional violation, the inquiry ends. *Ioane v. Hodges*, 903 F.3d 929, 933 (9th Cir. 2018). Next, the Court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *see also Wood*, 572 U.S. at 757 ("The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). When properly applied, qualified immunity "protects 'all but the plainly incompetent or those

13

1  who knowingly violate the law.'" *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132–
2  33 (9th Cir. 2018) (quoting *al-Kidd*, 563 U.S. at 743)).

3        Given the above-referenced information known to Patchin and Davisson, qualified
4  immunity applies because the SAC concedes these were known facts and their actions in
5  filing dependency and severance petitions fall within the reasonability standard outlined
6  in *Anderson,* 483 U.S. at 638. The SAC clearly outlines that juvenile court oversight of
7  the family began in September, 2018, and continued until May 25, 2023. (*Id.* ¶¶ 39-43.)
8  Minor Plaintiffs seek to pin all the alleged damages on State Defendants, but they are
9  only one piece of a complicated puzzle. Even assuming Minor Plaintiffs' allegations
10 about an incomplete investigation and false reporting to the court are accurate, the
11 juvenile court still had a duty to weigh the evidence and render its own orders. State
12 Defendants may have initially removed custody, but that removal was reviewed by a
13 court and due process was invoked. Minor Plaintiffs do not assert that State Defendants
14 violated any court orders, with the exception of the order entered May 11, 2022. (*Id.* ¶
15 41.) The State Defendants were not responsible for decisions made by the state court;
16 rather, they provided reports and testimony, subject to cross-examination, in the juvenile
17 proceedings. The judge took all of this information into consideration and entered orders
18 accordingly. *See Stevens v. Arizona* 2024 WL418132, *9-10 (D. Ariz. 2024).

19     **E.**     **Gross Negligence and Intentional Infliction of Emotional Distress ("IIED") Claims Against Faust and McKay Require Dismissal for Failure to State a Claim—Counts Six, Eight and Ten.**

22       Minor Plaintiffs next allege in Counts Six, Eight and Ten that former DCS
23 Directors McKay and Faust were grossly negligent and breached their duty to protect
24 Plaintiffs' rights, operated with gross negligence and breached their duties by failing to
25 ensure that employees were properly qualified, and were negligent *per se*. (Doc. 21 ¶¶
26 198-203, 235-237, 250-257.)[5] "A party is grossly or wantonly negligent if he acts or fails
27 to act when he knows or has reason to know facts which would lead a reasonable person

---

[5] Paragraphs 256-257 add Patchin, Del Fiacco and Davisson but they are not listed in the caption of Count Ten.

to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls v. Arizona Dept. of Public Safety*, 170 Ariz. 591, 595 (App. 1991) (*citing Nichols v. Baker*, 101 Ariz. 151, 153 (1966).

Here, the SAC is devoid of specific details regarding Faust or McKay or their respective knowledge or oversight of the juvenile dependency court case. In essence, the language of the SAC reads as a failure to properly hire, train, and/or supervise the DCS employees but fails to identify specific training, policy, or statutes that were violated by Faust or McKay, with the exception of an alleged violation of A.R.S. § 8-456 previously discussed. The language is vague and does not point to any specific knowledge or involvement by Faust or McKay. Without details, it is difficult to understand how Faust or McKay operated with gross negligence and breached their duties by failing to ensure that "the employees … of DCS were properly trained and possessed the skill and knowledge to perform their assigned job tasks in a competent manner." (Doc. 21 ¶ 253.)

### F. The Amendments to Counts Four and Five Are Still Inadequate and Remain Barred by the Expired Statute of Limitations Under the Continuing Impact Doctrine.

This Court dismissed Counts Four and Five as to Plaintiffs Jimenez and Zavaleta as factually deficient because it failed to include any details consistent with the level of specificity needed to successfully plead interference in medical decisions and appointments, citing *Fidler v. State of Arizona*, 2024 WL 1553703 at *3 (9th Cir. 2024) (mem. dec.).[6] Here, the Minor Plaintiffs did not incorporated any additional facts that State Defendants were responsible for (1) Minor Plaintiffs receiving any medical examinations, (2) without notice to Jimenez and Zavaleta, and (3) without permission for Jimenez and Zavaleta to be present. For these reasons, Jimenez and Zavaleta still have not stated a plausible entitlement to relief.

---

[6] (Doc 17 at 46.)

Further, as this Court noted, the ability to make medical decisions or the attendance at medical appointments falls squarely under the continuing impact theory. "However, [the Ninth Circuit] has repeatedly held that a 'mere continuing impact from past violations is not actionable.'" (*citing Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (cleaned up). In order to salvage Counts Four and Five, this Court directed Jimenez and Zavaleta to provide a tolling or delayed accrual argument, but none was provided in the SAC. (Doc. 17 at 29.) For these reason Counts Four and Five demand dismissal without leave to amend.

### G. Minor Plaintiffs Fail to State a Claim Against Patchin, Del Fiacco and Davisson Violating Rule 8, Fed. R. Civ. P.

#### 1. Count One—Unlawful Seizure and Detention post May 11, 2022.

Setting aside the qualified immunity arguments, State Defendants are entitled to dismissal of Count One for act occurring post-May 11, 2022, for failure to state a claim in violation of Fed. R. Civ. P. 8. The facts are suspect because the exact language in the May 11, 2022, order as outlined in the SAC only required "DCS to have a meeting with parents within 30 days to start the reunification process." (Doc. 21 ¶ 39(q).) The SAC does not state this meeting failed to occur. The second allegation "For the first six weeks … Del Fiacco and Davisson cancelled all of the parent's supervised visits with their children." (*Id*. ¶ 40.) Again this does not explain if or how this may have been connected to the reunification process. Next, the allegation is that "Del Fiacco and Davisson waited for more than five months to take any affirmative steps towards implementing the reunification case plan" (*Id.* ¶ 41) but, nevertheless, fails to explain the language in the original court order that was specifically violated. The final allegation is that "DCS's heavy-handed involvement with this family continued until May 25, 2023, when the juvenile court dismissed the dependency action." (*Id.¶* 42.) Again, this demonstrates that the juvenile court remained involved with this family for one year after the May 11, 2022, order, so all orders regarding placement, visitation, and reunification services were being controlled by the juvenile court.

16

### 2. Count Two—Judicial Deception.

Minor Plaintiffs' amended allegations against Del Fiacco are still insufficient to state a claim. They continue to be limited to her continuation of false narrative created by Patchin after she was assigned to the family in March or April, 2021. (*Id.* ¶¶ 100, 101, 137, 140, 147, 148, 173.) The Court already found this to be insufficient. (Doc. 17 at 63.)

The amended allegations against Davisson are equally troubling. There are no allegations that Davisson testified or wrote false reports, only that she authorized false statements in case reports, instructed, recommended and approved false reports, and set in motion Del Fiacco's false narrative. (*Id.* ¶¶ 159-166.) This Court addressed the need for Plaintiffs to incorporate allegations that Davisson knew the information was false, but they have not done so. (Doc. 17 at 62). The allegations remain conclusory stating that Davisson "knew or should have known … would inflict a constitutional injury to this family." (Doc. 21 ¶ 164.)

### 3. Count Three—Reasonable Efforts.

A review of the red-lined version of the SAC (Doc. 20-1) easily demonstrates that Plaintiffs did not fix the deficiencies noted by this Court. (Doc. 17 at 44.) This Court specifically articulated that Count Three referenced violations of state law and not violations of the U.S. Constitution and there are no amendments to the body of Count Three that addresses this concern. For the reasons already set forth by this Court, Count Three should be dismissed. (*Id.* at 44-45.)

Further, Patchin, Del Fiacco and Davisson are all listed in Count Three for failing to reunify the Minor Plaintiffs with their mother and for failing to keep the children together in one foster home. (*Id.* ¶ 176.) Minor Plaintiffs claim Patchin and Davisson interfered in Jimenez's visitation rights, but again do not express how they did so. (*Id.* ¶ 177.) Del Fiacco is not even mentioned. They next allege a violation of Minor Plaintiffs' constitutional rights by failing to keep the children together in one foster home. (*Id.* ¶ 176.) "[O]nce the state assumes wardship of a child, the state owes the child ... reasonable safety and minimally adequate care and treatment appropriate to the age and

circumstances of the child." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843 (9th Cir. 2010). However, a child who has been taken into the custody of the state does not have a fundamental constitutional right to be placed in foster care with his relatives. *See Lipscomb by and Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992). In *Lipscomb*, the Court held that although there is substantial authority for the proposition that due process places a limit on the state's ability to interfere with certain extant relationships among family members, "[t]he government generally is under no obligation to facilitate or fund the exercise of constitutional rights." *Id.* Because Minor Plaintiffs did not have a constitutional right to be placed in foster care with their siblings, their reasonable efforts claim predicated on 42 U.S.C. § 1983 violations fail as a matter of law. At a minimum, no clear constitutional violation is present because the children were separated into different foster homes, so at a minimum, all State Defendants are afforded qualified immunity. *See Keates,* 883 F.3d at 1239.

### H.   Minor Plaintiffs Never Served a Notice of Claim.

State Defendants wished to preserve any arguments pertaining to the lack of serving a Notice of Claim ("NOC") by any Minor Plaintiffs prior to commencement of the lawsuit. (Doc. 6-1.) The three claimants listed on the NOC are Jimenez, Zavaleta, and L.J. Plaintiffs cannot cure their failure by filing a notice of claim after filing this suit because Arizona law requires a notice of claim be filed before filing suit. *See, Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 294 (Ariz. 2007) ("Before initiating an action for damages against a public entity, a claimant must provide a notice of claim to the entity in compliance with Arizona Revised Statutes (A.R.S.) section 12–821.01 (2003)"). As explained by the Arizona Court of Appeals, allowing individuals to file suit before submitting a notice of claim would "defeat the pre-litigation notification and settlement purposes of the notice of claim statute." *Andress v. City of Chandler*, 298 Ariz. 112, 115 (App. 2000). State Defendants recognize the impact for the failure to serve a NOC is for Minor Plaintiffs to dismiss the lawsuit, serve a NOC, and refile; however, because compliance with the NOC statute is mandatory, State Defendants assert all state

claims on behalf of Minor Plaintiffs demand dismissal—Counts Six, Seven, Eight, Nine, Ten and Thirteen.

### III. CONCLUSION

The SAC does not fare much better than the FAC. Jimenez and Zavaleta have provided no additional facts allowing this Court to revive their expired statute of limitations claims, therefore, the only potential remaining claim by Jimenez and Zavaleta is a 42 U.S.C. § 1983 claim for lack of reasonable efforts for events occurring after May 11, 2022; however, this claim demands dismissal because the facts do not support a constitutional violation. Second, L.J. has no standing to assert any claims and requires dismissal. Third, the State, Faust, and McKay require dismissal under Eleventh Amendment immunity for Counts Six and Thirteen. Fourth, any claims for false testimony by State Defendants are protected by absolute immunity, and all acts with the exception of allegations that Patchin filed a false report are protected by qualified immunity. Minor Plaintiffs failed to state a claim for IIED, so Count Twelve requires dismissal. What remains potentially viable is Counts Two—judicial deception (Minor Plaintiffs and Patchin).

### IV. CERTIFICATION

Pursuant to Local Rule 12.1(c), undersigned counsel certifies that on August 8, 2024, prior to filing State Defendants' Motion to Dismiss the Second Amended Complaint, the parties spoke about the arguments contained therein. No agreements were reached.

DATED this 9th day of August, 2024.

Arizona Attorney General

*/s/Julie M. Rhodes*
Julie M. Rhodes
Michael R. Niederbaumer
Assistant Attorneys General
*Attorneys for State Defendants*

19

1  I certify that I electronically transmitted
2  the attached document to the Clerk's Office using the CM/ECF System for filing and
3  transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and
4  mailed a copy of same to any non-registrants, this 9th day of August, 2024:

5  Thomas A. Connelly
   Robert T. Mills
6  Sean A. Woods
   MILLS + WOODS LAW PLLC
7  5055 North 12th Street, Suite 101
   Phoenix, Arizona 85014
8  docket@millsandwoods.com
   *Attorneys for Plaintiffs*
9
   DeeAn Gillespie Strub
10 Jenny Jansch
   GILLESPIE, SHIELDS & TAYLOR
11 7319 North 16th Street
   Phoenix, Arizona 85020
12 mailroom@gillaw.com
   *Attorneys for Plaintiffs*
13

14 */s/Samantha Linley*
   LMS22-0354 | G202221043-1 | #1216108
15

16

17

18

19

20

21

22

23

24

25

26

27

28

20