Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bianca Jimenez-Bencebi, *et al* <br><br> Plaintiffs, <br><br> v. <br><br> State of Arizona, *et al* <br><br> Defendants. | Case No.: CV-23-2075-PHX-DWL <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> (Honorable Dominic W. Lanza) |

Plaintiffs, by and through their counsel, hereby respond in opposition to the State of Arizona, Carin Patchin, Tracy Del Fiacco, Amanda Davisson, Michael Faust and Gregory McKay ("State Defendants") Motion to Dismiss Second Amended Complaint (Doc. 23) (the "motion"). The following Memorandum of Points and Authority demonstrates why the motion must be denied.

**MEMORANDUM OF POINTS AND AUTHORITY**

## I.   INTRODUCTION

Bianca Jimenez-Bencebi, Jiaro Abrego Zavaleta, L.J., K.J., K.A.J., and J.A.J. (collectively, "Plaintiffs") assert twelve claims (no claim eleven) in the Second Amended Complaint ("SAC") against State Defendants. Claims arising under 42 U.S.C. § 1983 are as follows:  **Claim One** (Unlawful Seizure and Detention by minor Plaintiffs); **Claim Two** (Judicial Deception); **Claim Three** (Failure to Make Reasonable Efforts by minor Plaintiffs only); **Claim Four** (Medical Decisions); **Claim Five** (Medical Treatment) against State Defendants Patchin, Del Fiacco, and Davisson.

Plaintiffs asserted the following state-law claims:  **Claim Six** (Negligence Per Se) against State Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay; **Claim Seven** (Abuse of Process) against State Defendants Patchin, Del Fiacco, and Davisson; **Claim Eight** (Gross Negligence/Legal Rights) against State Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay; **Claim Nine** (Gross Negligence/ Reasonable Efforts) against State Defendants Patchin, Del Fiacco, and Davisson; **Claim Ten** (Gross Negligence Exercised by DCS Employees) against State Defendants Faust and McKay; **Claim Twelve** (Intentional Infliction of Emotional Distress ("IIED") against State Defendants Patchin, Del Fiacco, Davisson, Faust, and McKay; **Claim Thirteen** (Negligent Supervision, Training and Retention) against State Defendants State, Davisson, Faust, and McKay.

State Defendants have moved to dismiss all claims against them on the basis of (1) L.J. lacks standing to sue; (2) Eleventh Amendment immunity applies to Claim Six (negligence per se) and Claim Thirteen (negligent supervision, training, and retention);  (3) absolute immunity for their testimony; (4) Patchin and Davisson are entitled to qualified immunity for Claims One and Two; (5) failure to state a claim for gross negligence and IIED against Faust and McKay in Claims Six, Eight, and Ten; (6) Claims Four and Five are inadequate, time-barred under the continuing impact doctrine; (7) minor Plaintiffs failed to state a claim against Patchin, Del Fiacco, and Davisson for Claims One (unlawful seizure and detention post May 11, 2022), Two (judicial deception), and Three (reasonable

2

1 efforts); and (8) minor Plaintiffs' never served a Notice of Claim. As detailed below, State
2 Defendants' motion must be denied in its entirety as none of these arguments have merit.

## II. FACTUAL BACKGROUND

Plaintiffs incorporate the facts alleged in the Second Amended Complaint (Doc. 21) and Introduction, Background, and Legal Standard Discussion sections of the Court's Order (Doc. 17). Plaintiffs repeat the facts herein only as necessary to address the arguments in State Defendants' Motion.

## III. ANALYSIS

### A. L.J. Has Standing to Bring Claims

State Defendants claim that L.J. lacks standing to bring a constitutional claim because no duty is owed to him and there is not a causal connection between State Defendants' action and any injury to L.J., and he has no viable claim in his own right as he was never seized or detained by DCS. Mot. at 2:13-3:4. State Defendants also argue that they did not owe L.J. a duty of care since he did not reside in Arizona at the time of the seizure. Mot. at 6:5-7. State Defendants are clearly wrong.

"It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that 'the state's interference with that liberty interest without due process of law is remedial under 42 U.S.C. § 1983.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). "[T]his constitution interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Id.* (quotation omitted). In addition, "[t]he First Amendment also protects family relationships, that presupposes 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (quoting *Lee*, 250 F.3d 685*); see also Bd. of Directors of Rotary Int'l v. Rotary Club*

*of Duarte*, 481 U.S. 537, 545 (1987) ("the First Amendment protects…family relationships").

Contrary to State Defendants' position, affirmative duties are owed by state actors to make reasonable efforts to preserve families, including the Jimenez family. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9 (2019) (citing *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 333, ¶ 37 (App. 2007); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (1999). State Defendants also had statutory and constitutional obligations to promptly achieve family reunification following a removal. *Marian P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 236 ¶ 37 (App. 2007). State Defendants foreclosed all efforts to reunite L.J. with his mother and siblings by seeking to sever his mothers' parental rights and foreclose all reasonable efforts to reunite the family by failing to comply with the juvenile court's order on reunification.

It was not the actions of the juvenile court that caused this family to be separated for years by violating their rights to familial association. Rather, the actions of State Defendants providing false and/or misleading information to the juvenile court were the material drivers to that court's decision to continue the separation of this family to achieve its ultimate desired goal of severing mother's parental rights and thus imposing the death penalty on this family. It was State Defendant's continuing false statements, documentation, and other wrongful actions intended to obstruct familial association until the dependency was dismissed in May of 2023 that caused the harms complained about.

**B.     Eleventh Amendment Immunity Does Not Apply to State Law Claims Thirteen (Negligent Supervision, Training, and Retention) or Six (Negligence Per Se)**

State Defendants are urging dismissal of state law claim Claim Thirteen (negligent supervision, training, and retention) against three State Defendants—the State, Faust, and McKay—under principles of Eleventh Amendment immunity. Mot. at 8:22-26. They also argue that this defense applies to state law claim Claim Six (negligence per se) alleging Faust and McKay violated A.R.S. §§ 8-451, 453 since allegations of negligence arise from

Faust and McKay being the official policy makers for the State. Mot. at 10:15-17. Plaintiffs' Complaint was filed in Maricopa County Superior Court on May 8, 2023. Plaintiffs then filed their First Amended Complaint in that same state court on September 1, 2023. On October 3, 2023, State Defendants removed this matter from state court to federal court when they filed their Notice of Removal from State Court Under 28 U.S.C. §§ 1441 and 1446 (Docs.1-3).

"Government liability is the rule in Arizona and immunity is the exception." *Doe ex rel Doe v. State*, 200 Ariz. 174, 176 ¶ 4 (2001). Arizona's Actions Against Public Entities and Public Employees Act (the "Act") statement of purpose and intent, which declares it "the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state" and instructs courts to construe the Act accordingly. 1984 Ariz. Sess. Laws, Ch. 285 §1(A) (2nd Reg. Sess.). Arizona claims statutes "advances the overarching policy of holding a public entity responsible for its conduct." *Backus v. State*, 220 Ariz 101, 104 (2009). It is disingenuous for State Defendants to argue that the State is not subject to suit in state court.

State Defendants removal of this action from the state Superior Court to the federal District Court constitutes a waiver of any alleged Eleventh Amendment immunity from suit. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 624, 122 S. Ct. 1640, 152 L.Ed.2d 806 (2002) (Stating the "clear rule" that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation as a matter (here of state law) in a federal forum"). "We conclude that the rule in *Lapides* applies to federal claims as well as to state law claims and to claims asserted after removal as well as to those asserted before removal. By removing the case to federal court, the State waived its Eleventh Amendment immunity from suit in federal court*." Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004). State Defendants waived immunity by removal; *Lapides* was motivated by the desire to avoid "inconsistency, anomaly, and unfairness" and prevent the "selective use of immunity to achieve litigation advantages." *Lapides*, 535 U.S. at 620, 122 S.Ct. at 1640. State Defendants are attempting to gain an unfair litigation advantage

5

by removing this matter from the state court and then seeking dismissal on Eleventh Amendment immunity grounds for all state law claims. The tactic is contrary to state and federal law, including as articulated by the Supreme Court, and cannot be countenanced.

### C. State Defendants Are Not Entitled to Absolute Immunity for Their Testimony

State Defendants argue that Patchin, Del Fiacco, and Davisson are entitled to absolute immunity for any testimony in the juvenile court proceedings, including false testimony related to Claims Two and Six. Mot. at 11:3-8. Such is not the law. "There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." *Rieman v. Vazquez*, 96 F.4th 1085, 1093 (9th Cir. 2024) (quoting *Hardwick v. Cnty of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017)).

Absolute immunity should be applied only sparingly. *See Genzler v. Longanbach*, 410 F.3d 630, 636-37 (9th Cir. 2005) ("[W]e note that the Supreme Court has 'been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant'") (quoting *Burns v. Reed*, 500 U.S. 478, 487 (1991)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).

The Ninth Circuit has rejected absolute immunity for child protective service workers or social workers who fabricate evidence. *Reiman*, 96 F.4th at 1090. The court in *Reiman* reasoned:

> [S]ocial workers 'are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute.'

*Id.* (quoting *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008)).

*Rieman* restricts a social worker's absolute immunity to acts or omissions which are "similar to discretionary decision about whether to prosecute" and not to testifying or

6

falsifying reports. *Id.* Again, State Defendant's assertion that absolute immunity applies for any testimony is incorrect. The Supreme Court and Ninth Circuit have repeatedly held that those "who knowingly violate the law" or who are "plainly incompetent" are not entitled to any immunity – be it absolute or otherwise. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018); *Hardwick*, 844 F.3d at 1119. Like the defendants in *Rieman*, State Defendants here are not entitled to absolute immunity for providing false information or false testimony to the juvenile court. *See Rieman*, 96 F.4th at 1091.

### D. State Defendants Patchin, Del Faccio, and Davisson are not Entitled Qualified Immunity

State Defendants Patchin, Del Faccio, and Davisson erroneously argue they are entitled to qualified immunity for acts of removing the children alleged in Claim One, Patchin's remaining actions alleged in Claim One regarding reunification, and for actions alleged in Claim Two. Mot. at 11:9-13:4. Simply put, they are wrong.

"Qualified immunity precludes liability if the state actor's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense. *See, e.g.*, *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("Qualified immunity is an affirmative defense that should be plead by defendant"). There is no requirement that a complaint must plead around affirmative defenses – a standard that suggests affirmative defenses are not properly decided by a motion to dismiss. When defendants assert qualified immunity in a Rule 12(b)(6) motion, dismissal is not appropriate unless the court can determine, based on the complaint itself, that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). If the Second Amended Complaint "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are 'entitled to go forward' with their claims." *Keates v. Koile*, 883 F.3d 1228 (2018) (quotations omitted).

"It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that 'the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983.'" *Lee,* 250 F.3d at 685 (9th Cir. 2001) (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985)). "[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Id.* (quotation omitted).

The right of familial association arises from three separate constitutional provisions, one being the Fourteenth Amendment, which prohibits states "from depriving any person of life, liberty, or property, without due process of law." *See Keates,* 883 F.3d at 1233 (quoting the U.S. Const. amend XIV § 1). Our Supreme Court "has stated that 'the interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interest recognized by this court.'" *Id.* at 1236 (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion); *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Additionally, "[t]he First Amendment also protects 'family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Keates*, 883 F.3d at 1236 (quoting *Lee*, 250 F.3d at 685); *see also Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) ("the First Amendment protects…family relationships").

Finally, "[i]n addition to the Fourteenth and First Amendment rights to familial association, "[this court] evaluate[s] the claims of children who are taken into state custody under the Fourth Amendment right to be free from unreasonable seizures rather than the Fourteen Amendment right to familial association." *Keates*, 883 F.3d at 1236 (quotations omitted). Regardless of the constitutional source for the right, the same legal standards apply. *Id* at 1237 (relying on *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000).

"Our cases hold that the Fourteenth, First, and Fourth Amendments provide a guarantee 'that parents will not be separated from their children without due process of law except in emergencies.'" *Id.* DCS and its agents "may not remove children from their parents without a court order unless they have 'information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury." *Id.* "An official 'cannot seize children suspected of being abused or neglected unless reasonable avenues of investigation are first pursued.'" *Id*. at 1237. The court in *Keates* reasoned:

> In sum, our case law clearly establishes that the right of parents and children to familial association under the Fourteenth, First and Fourth Amendments are violated if a state official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigations, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree and duration of the intrusion are reasonably necessary to avert the specific injury at issue.

*Id*. at 1237-38.

The Ninth Circuit has held that the "right to be free from deliberately fabricated evidence in civil child dependency proceedings" is clearly established. *Benavidez v. Cnty of San Diego*, 993 F.3d 1134, 1152 (9th Cir. 2021) (citing *inter alia Costanich v. Dep't of Soc. & Health Services*, 627 F.3d 1101 (9th Cir. 2010)).

***First***, without a reasonable investigation, DCS and its agents removed K.J. and J.M.J. with a Temporary Custody Notice ("TCN") in the absence of a court order or exigent circumstances. SAC ¶¶ 39(a), 51-57. K.J. and J.M.J. were wrongfully removed without a reasonable investigation. *Id*. at 39(b), 74-86. Then on March 7, 2019, even though there was an open dependency action with the juvenile court, at the direction and orchestration of Patchin and Davisson, K.A.J. was seized via TCN and not a court order. *After* seizing K.A.J., DCS filed an Application and Declaration for Ex-Parte Removal of K.A.J. before a *different* juvenile court judge with the same false narrative. *Id*. at 39(f), (g). On February 13, 2020, immediately after J.A.J. was born, Patchin served the parents with a TCN for the

9

seizure of J.A.J., again without a court order and again with the same false narrative. *Id.* at 39(m), (n). A reasonable investigation was not conducted and exigent circumstances did not exist to justify removal via TCN.

***Second***, without a reasonable investigation, contrary to reports received from others, State Defendants Patchin, Del Fiacco, and Davisson moved to sever the parents' parental rights to the minor Plaintiffs based on State Defendants' false narrative.

***Third***, State Defendant Davisson is not entitled to qualified immunity for her role as alleged in SAC ¶¶ 39 (i), (p), 46, 48-49, 51(f), 61, 65, 67, 73-74, 76, 78, 81, 83-84, 87, 97-105, 111-112, 114, 116, 118-130. Not only did Davisson set in motion the false narrative about this family, but she also knowingly refused to terminate the subsequent series of DCS actions, which she knew were false or not justified, and which she knew or should have known would cause State Defendants Patchin and Del Fiacco to inflict a constitutional injury on this family to the determent of the minor Plaintiffs.

State Defendants Patchin, Del Fiacco, and Davisson would have understood, based on the law existing at the time, that providing false or misleading information to the juvenile court to convince that court that they satisfied due process clearly violates Plaintiffs' constitutional rights. In this case, Plaintiffs' Second Amended Complaint plausibly alleges sufficient facts that State Defendants Patchin, Del Fiacco, and Davisson violated Plaintiffs' rights to familial association. They are not entitled to qualified immunity for their actions.

E. **Negligence Per Se, Gross Negligence, and Intentional Infliction of Emotional Distress ("IIED") – Claims Six, Eight, and Ten – Should Not Be Dismissed Against Faust and McKay**

State Defendants disingenuously claim that minor Plaintiffs failed to allege specific facts against Faust and McKay for state law Claims Six, Eight, and Ten. Mot. at 14:19-15:14. Plaintiffs' complaint is not deficient and complies with Fed. R. Civ. P. 8(a)(2). Rule 8 States that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Court is aware, "Arizona

follows a notice pleading standard, the purpose of which is to 'give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved.'" *Cullen v. Auto-Owners, Ins. Co.*, 218 Ariz. 417, 418 ¶ 6 (2008) (quoting *Mackey v. Spangler*, 81 Ariz. 113, 115 (1956)); *see also Biliack v. Paul Revere Life Ins. Co.*, 265 F.Supp.3d 1003, 1011 (D. Ariz. 2017) ("The theory of Rule 8(a), and the federal rules in general, is notice pleading.") (citing and quoting *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011)). Plaintiffs' complaint satisfies the "notice pleading" standard because it contains a "short and plan" statement of Plaintiffs' state law and federal claims and the basis for relief. The complaint's plain language and contents fulfill the purpose articulated in *Cullen* and *Starr* by giving State Defendants "fair notice of the nature and basis of the claim" and a general indication of the type of litigation involved. *Id.* If this Court concludes, however, that the complaint does not adequately provide fair notice of the nature and basis of Plaintiffs' claims, then an opportunity to correct any such deficiency by amendment should be allowed. *See Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (leave to amend pleadings "should be applied with extreme liberality") (internal citations and quotations omitted); *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (determination regarding amendment "should be performed with all inferences in favor of granting" amendment); *see also Owen v. Superior Court*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982) (leave to amend, although discretionary, should be liberally granted).

The issue of gross negligence is a question of fact for a jury. *Walls v. Arizona Dept. of Public Safety*, 170 Ariz. 591, 595 (App. 1991). "A court may withdraw the issue of gross negligence from the jury only when ***no*** evidence is introduced that would lead a reasonable person to find gross negligence." *Id*. (emphasis added).

Under Arizona law, the elements of intentional inflection of emotional distress are: "(1) the defendant's conduct must be capable of being characterized as 'extreme and outrageous'; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that distress will result from his conduct; and (3) the defendant's conduct must have cause severe emotional distress*." Lucchesi v. Frederic N.*

*Stimmell, M.D., Ltd.*, 149 Ariz. 76, 78-79 (1986) (internal citation omitted). Furthermore, it is well established law the *"[w]here reasonable men may differ it is for the jury…to determine whether, in the particular case, that conduct has been sufficiently extreme and outrageous to result in liability."* *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 46 and *Cluff v. Farmers Ins. Exchange*, 10 Ariz. App. 560, 562 (1969) (emphasis added)).

Plaintiffs, in fact, allege in detail specific wrongful conduct by State Defendants and/or their agents. *See* SAC ¶¶ 39-50 (section II. Procedural History), 51-73 (section III. Unlawful Seizure and Detention), 74-113 (section IV. Unlawful Seizure and Detention of K.A.J. and J.A.J), 114-13- (section V. The Second Severance Trial Ends in May 2022). Perhaps, State Defendants overlooked the first paragraph in each of the Claims, each of which directs the reader to the preceding sections of detailed factual allegations by stating in plain language, "Plaintiffs re-allege and incorporate by reference every allegation set forth in the paragraphs above." *See* SAC ¶¶ 131, 153, 167, 180, 189, 195, 218, 232, 241, 249, 258, and 269.

In state law Claim Six, Plaintiffs clearly state the laws McKay and Faust violated and why they were negligent per se. "A person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." *Good v. City of Glendale*, 150 Ariz. 218, 221 (App. 1986). Contrary to State Defendants' argument, this Claim Six is based on negligence per se and *not* gross negligence.

Based upon the above, it is a reasonable inference that adequate training, supervision, or the hiring of appropriate experienced persons would have avoided those harmful actions and failures to act.

In sum, Plaintiffs' state law Claims Six, Eight, and Ten are well-pled and should not be dismissed. In addition, Plaintiffs have adequately pled gross negligence to sustain that claim against Faust and McKay.

**F.** **Plaintiffs' Adequately Pled Claims Four and Five**

State Defendants argue that Claims Four and Five as to Plaintiffs Jimenez and Zavaleta are factually deficient and do not state a plausible entitlement to relief. Mot. at 15:18-26.

"[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth amendment." *Santosky*, 455 U.S. at 753 (citations omitted). More important to this Court's analysis here, however, is the U.S. Supreme Court's declaration that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have…lost temporary custody of their child to the State." *Id.*

Building on this foundation, the Ninth Circuit reached the unremarkable conclusion that the Constitution's Fourteenth Amendment protects "the rights of parents to make important medical decisions for their children, and of the children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Circ. 1999) (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)). Moreover, "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention." *Id.* at 1142; *see also Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1203 (10th Cir. 2003).

In sum, "[p]arents have a constitutional right to be present at their children's [non-emergency] medical examinations and to receive notice in advance of such examinations" notwithstanding the fact that the child had been temporarily detained from the parents' custody. *Meyer v. Cnty of San Diego*, No. 21-CV-00341-GPC, 2021 WL 4924836, at *2 (S.D. Cal. Oct 21, 2021). "This right does not turn on whether the medical examination is investigatory in nature or not." *Id.* (citing *Mann v. Cnty of San Diego*, 907 F.3d 1154, 1161 (9th Cir. 2018). Stemming from their "liberty interest in family association," parents and children also have the right to be together when a child receives medical care. *Wallis,* 202 F.3d at 1142. "Likewise, children have a corresponding right to the love, comfort, and reassurance of their parent while they are undergoing medical procedures." *Id.* When the state wishes to provide medical attention to a child in temporary protective custody, it must:

"(1) notify the parents; (2) obtain either parental consent or a court order in advance; and (3) permit the parent to be present at the [medical appointment]," and the failure to do so absent exigent circumstances amounts to a violation of the parents' Fourteenth Amendment substantive due process rights. *Benavidez*, 993 F.3d at 1150.

Each time that State Defendants failed to notify Bianca and Jiaro, failed to obtain their consent or get a court order in advance, and failed to allow Bianca and Jiaro to be preset at each medical appointment, *i.e.,* well-baby visits, physical examinations, vaccinations, was a new, independent violation of the parents' constitutional rights. For example, following J.A.J.'s seizure immediately after birth on February 13, 2020, neither Bianaca nor Jiaro, the parents, were notified about, and both were prevented from attending, J.A.J.'s numerous doctor visits, including the following:

- well-baby examination 3-5 days after birth;
- well-baby examination one month after birth;
- well-baby examination and vaccinations two-months after birth;
- well-baby examination and vaccinations four-months after birth;
- well-baby examination and vaccinations six-months after birth;
- nine-month checkup;
- 12-month checkup;
- 15-month checkup and vaccinations;
- 18-month checkup and vaccinations;
- 24-month checkup;
- 30-month checkup; and
- 36-month checkup.

The parents were also prevented by State Defendants' actions from knowing about and being present for K.A.J.'s doctor visits after his removal on March 17, 2019. Both J.A.J. and K.A.J. were deprived of having their parents present at each one of these examinations and vaccination doctor visits. This case is akin to *Kuhnle Brothers, Inc v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997). In *Kuhnle*, a county resolution barred Kuhnle from

14

using certain roads for truck travel "deprived [the plaintiff] of liberty interests…created by constitutional right to interstate travel…every day it remained in effect" and thus constituted a continuing violation." *Id.* at 521-22. Here, State Defendants deprived parents Bianca and Jiaro from receiving notice of and the ability to attend every well-baby examination or checkup and doctor's visit where vaccinations were administered. At the same time, State Defendants' actions deprived the minor Plaintiffs of the comfort of their parents being with them at every appointment and examination.

Because the minor Plaintiffs' vaccinations, well-baby checks, and physical examinations were neither required by exigent circumstances and the parents' parental rights were not severed, all Plaintiffs retained their full rights to notice, consent, and opportunity for parents to be present at all these medical events.

### G. Minor Plaintiffs' Adequately Plead Claims Against State Defendants Patchin, Del Fiacco, and Davisson

#### 1. Claim One (Unlawful Seizure and Detention) is adequately pled

State Defendants argue they are entitled to dismissal of Claim One for acts occurring after May 11, 2022, for failure to state a claim in violation of Fed. R. Civ. P. 8. Again, State Defendants argue that there are not sufficient facts alleged about how they failed to act towards reunification. Mot. at 16:12-28. This is not the case.

Here, State Defendants clearly violated a court order for reunification. For example, as this Court noted, after the May 11, 2022, hearing the juvenile court changed the case plan to reunification and ordered DCS to have a meeting with the parents within thirty days of the May 11, 2022, ruling to start the reunification process. SAC ¶ 39(q); (Doc. 17 at 8:16-20). However, Del Fiacco and Davisson failed to follow the juvenile court's order for reunification. SAC ¶¶ 40-42. For the first six weeks after the 11 May 2022 order, DCS, through its agents Del Fiacco and Davisson, cancelled all the parents' supervised visits with their children. *Id.*; (Doc. 17 at 8:21-26). In direct violation of the juvenile court's order, Del Fiacco and Davisson failed to take affirmative steps toward implementing the reunification case plan for five months. *Id.* DCS, Del Fiacco, and Davisson clearly violated

15

the juvenile court's order of reunification and followed their own agenda to sever the parents' parental rights by keeping the children in the State's custody longer than necessary. State Defendants' wrongful actions were not being controlled by the juvenile court. Rather, their actions were in direct violation of the juvenile court's order for reunification. As a result, the children remained in State custody longer than necessary.

### 2. **Claim Two (Judicial Deception) is not deficient**

State Defendant claim that minor Plaintiffs' amended allegation against Del Fiacco and Davisson are still insufficient to state a claim. Mot. at 17:2-13. Again, State Defendants are wrong.

The Ninth Circuit has held that the "right to be free from deliberately fabricated evidence in civil child dependency proceedings" is clearly established. *Benavidez,* 993 F.3d at 1152 (9th Cir. 2021) (citing *inter alia Costanich v. Dep't of Soc. & Health Services*, 627 F.3d 1101 (9th Cir. 2010). "There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." *Rieman*, 96 F.4th at 1093. "To successfully allege a violation of the constitutional right to be free from judicial deception, [Plaintiffs] must make out a claim that includes: (1) a misrepresentation or omission, (2) made deliberately or with reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez*, 993 F.3d at 1147.

Here, minor Plaintiffs judicial deception claim is based in part on State Defendant Davisson's actions throughout the dependency proceeding, which included numerous instances of her own false statements, disregarding the truth of the matter asserted, signing false reports, failure to correct false statements, and she knew the statements were false and yet recklessly disregarded the falsity. SAC ¶¶ 39(f), (i), (p), 46-51, 61, 64-65, 67-69, 71-74, 76-78, 80-81, 83-87, 99-151, 159-166. The judicial deception claim is also based on those times that Del Fiacco, after taking over as case manager, instead of correcting the false record, she continued the false narrative to the determent of this family. SAC ¶¶ 45, 100-151, 159-166. All these actions were material to the juvenile court's decision regarding the dependency and the length of time this family was unnecessarily separated.

16

Minor Plaintiffs' claim for judicial deception is not deficient and should not be dismissed.

### 3. Claim Three (Reasonable Efforts) is not deficient

State Defendants also take yet another stab at having Claim Three dismissed for alleged pleading deficiencies. And, again, State Defendants are wrong.

Federal and state laws require child welfare agencies to make "reasonable efforts" to preserve the family and prevent the child's removal. *E.g.*, 42 U.S.C. § 671(a)(15); A.R.S. §8-846 (2018); *see also* abundant case law cited herein. State Defendants' have an affirmative duty to make reasonable efforts to preserve families. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9 (2019) (citing *Marina P. v. ADES*, 214 Ariz. 326, 333, ¶ 37 (App. 2007)); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186 ¶ 1 (1999). State Defendants had long-standing, clearly established statutory and constitutional obligations to quickly reunify this family. *See, e.g., Marian P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 236 ¶ 37 (App. 2007). Reasonable efforts include determining and placing the children in the best placement for working towards reunification. State Defendants foreclosed all efforts to reunite the children with their parents by the wrongful actions alleged in the complaint. As shown above, State Defendants' actions clearly violated Plaintiffs' constitutional rights, as painfully set forth in the complaint.

### H. Minor Plaintiffs Served a Notice of Claim

State Defendants claim that they wish to preserve any argument pertaining to the lack of serving a Notice of Claim ("NOC") by any minor Plaintiffs prior to filing suit. Mot. at 18:14-17. State Defendants then argue that the only three claimants listed on the NOC are the parents (Bianca Jimenez-Bencebi and Jiaro Zavaleta) and minor L.J. *Id* at 18:18-19. Such is not the case. On the first page of the NOC, it states:

> Bianca Jimenez-Bencebi is the *mother of five minor children*: L.J., K.J., J.M.J., K.A.J., and J.A.J. Bianca is married to Jiaro Abrego Zavaleta, who is the father of K.A.J. and J.A.J. At the time of DCS's interference with this family, L.J. was living with his father in Puerto Rico.

17

**Exhibit A at 1** (emphasis added). The second page of Plaintiffs' NOC states the following in identifying the claimants:

### WHO ARE THE CLAIMANTS?

> Bianca Jimenez-Bencebi ("Bianca") is the mother of L.J. (DOB 06/27/2005), K.J. (DOB 05/16/2016), J.M.J. (DOB 08/25/2017), K.A.J. (DOB 03/05/2019), and J.A.J. (DOB 02/12/2020). Jiaro Abrego Zavaleta ("Jiaro") is married to Bianca and is the father of K.A.J. and J.A.J.

**Exh. A at 2** (bold emphasis in original). Then, again on pages 3-4, the NOC states:

### ADDITIONAL FACTS UPON WHICH LIABLITY IS CLAIMED

#### I. The Claimants

> Bianca is the mother of L.J., K.J., J.M.J., K.A.J. and J.A.J. Jiaro is the father of K.A.J. and J.A.J. At the time of DCS's first involvement with this family in 2018, L.J. was living with his father in Puerto Rico. L.J. has a close relationship with his mother and he wanted to return to live with her Arizona. However, during the dependency proceedings for K.J., J.M.J., K.A.J. and J.A.J., L.J. and Bianca were both understandably afraid that he too would be unlawfully seized and detained by DCS. L.J. stayed with his biological father in Puerto Rico, and spoke to his mother by phone daily, and sometimes twice a day throughout this ordeal. When the final ruling was handed down in May 2022, L.J. finally was able to visit with his mother in person. L.J. now lives with Bianca in Arizona and has recently joined the military.

**Exh. A at 3-4** (bold emphasis in original).

State Defendants were provided with more than enough information in the NOC to allow an opportunity to investigate and assess their liability, engage in settlement discussions, and assist their employer, the State, in its financial planning, which is the purpose of a notice of claim. Furthermore, specific, detailed allegations concerning all five minor Plaintiffs appear throughout the 14-page NOC. And all throughout, the NOC clearly sets out that claims are being asserted for all five minors, not just L.J. For example, the NOC states: "At the time K.J., J.M.J, K.A.J., and J.A.J. were seized, it was well established that the First, Fourth, and Fourteenth Amendments to the United States Constitution that

18

any infringement upon the right to familial association must be by the least intrusive means possible and only to the extent necessary to accomplish a compelling State interest." **Exh. A at 10**. The content of the 14-page, single-spaced NOC is a detailed narrative describing the factual basis for the lawsuit, including claims by all Plaintiffs. State Defendants all have personal knowledge of the work they each performed regarding the events described in the NOC.

Even more, the claims belonging to the minor Plaintiffs have yet to accrue due to their minority. *See* A.R.S. §12-502; A.R.S. § 12-821(D). Therefore, even if the NOC was not properly served, which it was, the minor Plaintiffs should have the opportunity to re-serve a NOC and then pursue those claims here, as alleged, or refile their state law claims in a separate action.

## IV. CONCLUSION

State Defendants' motion to dismiss can be granted only if, when drawing all reasonable inference in favor of Plaintiffs, there is no cognizable factual or legal bases for Plaintiffs' claims. *See Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atl. Corp*, 550 U.S. at 556, 127 S.Ct at 1965; *Earth Islan, Inst.*, 464 F. Supp. 3d at 1141. Here, State Defendants failed to meet their burden. Plaintiffs' claims are well-pled and timely.

WHEREFORE, Plaintiffs request that this Court deny State Defendants' Motion to Dismiss in its entirety.

**RESPECTFULLY SUBMITTED** this 6th day of September 2024.

**MILLS + WOODS LAW PLLC**

By  */s/ Thomas A. Connelly*
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

**GILLESPIE, SHIELDS & TAYLOR**

    DeeAn Gillespie Strub
    Jenny D. Jansch

19

<div style="margin-left:auto; text-align:left; width:fit-content;">
7319 North 16th Street  
Phoenix, AZ 85020

*Attorneys for Plaintiffs*
</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of September 2024, I electronically transmitted the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

  /s/  *Thomas A. Connelly*

20