Julie M. Rhodes (016313)
Michael R. Niederbaumer (031931)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7612 – JR
Telephone: (602) 542-8346 – MN
Fax: (602) 542-3393
DefensePhx@azag.gov
Julie.Rhodes@azag.gov
Michael.Niederbaumer@azag.gov

*Attorneys for State Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bianca Jimenez-Bencebi, et al., | Case No: 2:23-cv-02075-DWL |
| Plaintiffs, | |
| vs. | **STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| State of Arizona, et al., | |
| Defendants. | |

Defendants State of Arizona, Carin Patchin, Tracy Del Fiacco, Amanda Davisson, Michael Faust and Gregory McKay, collectively ("State Defendants") hereby reply in support of their Motion to Dismiss the Second Amended Complaint ("SAC"). L.J. lacks statutory standing, has not established any duty was owed to him, or established that any constitutional violations of his rights occurred. Eleventh Amendment immunity protects the State, McKay, and Faust for the alleged state law violations; absolute immunity protects any witness testimony; and State Defendants enjoy qualified immunity. Finally, Plaintiffs have failed to state a cause of action and waived arguments by failing to address them in their Response. (Doc. 28.) Dismissal without leave to amend is proper as Plaintiffs failed to comply with the specific Court directives (doc. 17) and prior

amendment has been allowed. This motion is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. ARGUMENTS

    A. **L.J. Lacks Standing.**

Plaintiffs' imprecise arguments provide no additional legal theories allowing this Court to confer standing on L.J. and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate. First, Plaintiffs focus on the parents' fundamental liberty interest in the companionship of his or her child, but since this Court already dismissed Jimenez's and Zavaleta's claims as time-barred, it is inaccurate to focus on their rights. *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001). Second, L.J.'s standing is premised on legal duties owed by state actors to make reasonable efforts to preserve the family after removal. (Doc. 28 at 3-4.) Here, L.J. was never removed so the various cases cited by Plaintiffs are inapplicable and should be disregarded including *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9 (2019) (citing *Marina P., v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 333, ¶ 37 (App. 2007); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 185, 186, ¶ 1 (1999); and *Marian P. v. Ariz. Dep't of Econ. Sec.,* 214 Ariz. 236, ¶ 37 (App. 2007)). Plaintiffs' Response lacks any teeth because no legal authority exists creating standing for L.J. under Fed. R. Civil. P. 12(b)(6), and dismissal is necessary when no duty is owed to him and no causal connection is present. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Plaintiffs attempt to obfuscate the argument by alleging "State Defendants foreclosed all efforts to reunite L.J. with his mother and siblings by seeking to sever his mother's parental rights and foreclose all reasonable efforts to reunite the family." (Doc. 28 at 4.) This is clearly a backdoor attempt to assert rights on behalf of Jimenez, not on behalf of L.J., and lacks any plausible causal connection to a duty owed to L.J. Neither the State Defendants, nor the state court at the urging of State Defendants, took any steps against L.J. (Doc. 21 ¶¶ 146-151.) So, the proper question is how did State Defendants

2

violate L.J.'s constitutional rights through the alleged efforts to terminate Jimenez's legal relationship with her other children?

There is no constitutionally protected sibling relationship. *JP by and through Villanueva v. County of Alameda*, 803 Fed. Appx. 106, 109 (9th Cir. 2020) held "[n]o viable loss-of-familial-association claim exists for siblings under the First Amendment." And, Plaintiffs have not countered that L.J. ever cohabitated with his siblings sufficient to apply the *Rotary Club* test. (Doc. 21 ¶¶ 23-30, 43, 90, 117, 150.) *See Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987). This is particularly significant since L.J. is still not living with Jimenez. (Doc. 21 ¶ 43.) There is no avenue to argue a constitutionally protected sibling relationship and because Jimenez's claims have been dismissed (doc. 17 at 29) it is impossible for L.J. to present a cognizable legal theory and dismissal as a party is appropriate. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Plaintiffs did not address the remaining arguments addressing L.J. as a potential Plaintiff—counts 2, 3, 6, 7, 8, 9, 10, 12, and 13 (*see* doc. 17 n. 8), despite those claims being addressed in the Motion to Dismiss SAC. (Doc. 25 at 4-8.) Because Plaintiffs provided no cohesive or compelling response to dismissing L.J. from these counts, they have waived those arguments and the Court should dismiss L.J. from the entire SAC. *See David-Rynn v. UHS of Phoenix, LLC*., WL 424261, *3 (App. 2022) (mem. dec.) ("The superior court found *Rynn's* responsive pleading failed to answer those arguments, and thus consented to the superior court granting the motion to dismiss."). Futility alone justifies denying a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

**B.    Eleventh Amendment Immunity Applies to State Law Claims Six and Thirteen.**

The act of removing this matter to federal court is not clearly dispositive on application of Eleventh Amendment immunity to the state law claims, as this Court noted when it invited additional briefing on whether the State waived its immunity on the state

law claims. (Doc. 17 at 19.) *Lapides* does not provide a complete analysis. *Lapides v. Bd. of Regents of Univ. System*, 535 U.S. 613, 624 (2002).This Court must look beyond *Lapides* and consider both *Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019) and *Kendrick v. Conduent State & Local Sols.*, Inc., 910 F.3d 1255, 1260 (9th Cir. 2018). *Walden* required the State to statutorily waive its immunity from suit on the state law claims in state court as a precursor to applying immunity in federal court on those state law claims. *Walden* at 1093. Ultimately, the Walden court only focused on federal claims and did not render a ruling on the state law claims.

Nevertheless, this is consistent with *Kendrick*, which held that if the State's sovereign immunity has not been waived or abrogated in state court, then Eleventh Amendment immunity is not necessarily precluded in the federal matter.

> Moreover the Supreme Court's holding in *Lapides'* was limited. A state waives Eleventh Amendment immunity by removal only for state-law claims "in respect to which the State has explicitly waived immunity from state-court proceedings." *Id*. at 617, 122 S. Ct. 1640. Here, the record does not reflect that *Conduent* waived immunity in state court. Accordingly, *Lapides* is not dispositive.

*Kendrick* at 1260. This Court must look to Arizona law for guidance on the question of whether the State has explicitly waived immunity in state-court proceedings. *Spooner v. City of Phoenix*, 246 Ariz. 119, 124 (App. 2018) addressed the general proposition that public entities and employees are subject to tort liability for negligence (citing *Ryan v. State*, 134 Ariz. 308, 309-10 (1982), but added that certain areas of immunity remain including those articulated in A.R.S. §§ 12-820-826. The Arizona Governmental Tort Claims Act codified absolute and qualified immunity protections for state employees taking care not to alter or modify common law tort immunities. *See* A.R.S. § 12-820.05(A). It is well established that social workers such as State Defendants enjoy absolute and/or qualified immunity for various acts connected to their duties. *See Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (Government official who serve as witnesses have absolute immunity.); *Meyers v. Contra Costa County Dep't of Social Serv.*, 812 F.2d 1154, 1157 (9th Cir. 1987) (Social workers have absolute immunity when performing

4

quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.); *Mabe v. San Bernardino County, Dept. of Public Social Services*, 237 F.3d 1101, 1106 (9th Cir. 2001) (Qualified immunity shields a government official from liability for civil damages…)

### C. Under § 1983 State Defendants Have Absolute Immunity for Their Testimony.

Plaintiffs conflate the "act of testifying" with the "act of fabricating evidence" to support the idea that State Defendants do not enjoy absolute immunity. This misstates the law. The cases cited by Plaintiffs focus on the provision of false information in documentation provided to the court. *See Rieman v. Vazquez*, 96 F.4th 1085, 1093 (9th Cir. 2024) (Social workers provided false information to the Court about why mother was not noticed for the hearing.) State Defendants never asserted the defense of absolute immunity connected to alleged false information provided to the court (count two); instead their argument is application of immunity when government officials serve as witnesses. *Briscoe,* 460 U.S. at 425 (Alleged perjured testimony of a police officer was protected under absolute immunity.) *Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001) analyzed witness testimony versus non-testimonial conduct and applied absolute immunity to the testimony.

> First, this immunity does not shield non-testimonial conduct. As this court recently held, even though defendant police officers are absolutely immune from liability for their alleged perjury and for any alleged conspiracy to commit perjury they '[o]bviously' enjoy no immunity for 'non-testimonial acts such as fabricating evidence' (citation omitted).

*Id*. at 981. This is true because of the function of the judicial proceeding itself to determine where the truth lies. *Briscoe,* 460 U.S. at 335 (citing *Imbler v. Pachtman*, 424 U.S. 409, 439 (1976)). Absolute immunity encompasses social workers providing testimony given during a dependency proceeding. *See Nation v. Cholla*, 173 Ariz. 245, 252 (App. 1991). All alleged false testimony by any State Defendant is protected by absolute immunity. (Doc. 21 ¶¶ 140, 159-161, 215, 225). *Lisker v. City of Los Angeles*,

780 F.3d 1237, 1241 (9th Cir. 2015) (noting "[w]itnesses . . . are absolutely immune from liability for testimony at trial").

### D. Qualified Immunity Applies to Act Alleged in Count One—The Investigations and Removals were Reasonable.

Davisson was dismissed from count one (doc. 17 at 38) because the allegations were unsupported and conclusory. The SAC does not fix these deficiencies. As an example, the SAC now states that "Patchin and Davisson…before issuing Temporary Custody Notices…" but then in paragraph 39 states that other non-party DCS agents issued the same Temporary Custody Notice. (Doc. 21 ¶ 132, 39.) This happened a second time with the March 7, 2019 Temporary Custody Notice for K.A.J., which again was not actually issued by Davisson or Patchin, but rather issued by non-party DCS agents. (*Id*. ¶ 39(f)). Incorporating language "at the direction of her supervisor Davisson" does not alter the conclusory nature of the pleading. (*Id*. ¶ 51(e)). Essentially, no additional substance was added to the allegations against Davisson, so dismissal remains appropriate from count one for a second time.

In regard to Patchin and Del Fiacco, this Court separated count one into two timeframes (pre-May 2022 and post-May 2022) and found "[f]or similar reasons if Count One were based solely on Patchin's and Del Fiacco's efforts to cause the children to be removed…the Court would conclude they are entitled to qualified immunity…" (Doc. 17 at 55.) Plaintiffs had the option to amend the language to include facts that would defeat application of qualified immunity to the investigation and subsequent removals, but they failed to do so. Qualified immunity is viewed through the lens of reasonableness, and here, reasonableness is confirmed by the state court's act in approving the three removals.

It is well-established that qualified immunity protects an official from civil liability in a section 1983 action for conduct which does not violation clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). So, the inquiry must focus on the reasonableness of the conduct. This case is identical to *Fidler v. State of Arizona*, WL

1553703 (9th Cir. 2024) (mem.dec.)[1]. In *Fidler*, the Ninth Circuit found the DCS investigation to be reasonable by relying on the state court's issuance of the temporary order. "The state court accepted Burns' investigation as sufficient to issue a temporary dependency order. Under these circumstances, Burns was not on notice that her conduct was constitutionally deficient." *Id*. at *2. This is exactly the same fact pattern presented in this situation. Minor Plaintiffs complain that all three removals occurred after "unreasonable investigations" and "without court orders" but that is not a fully accurate reflection of the state court proceedings. This Court can and should consider that a continual review process occurs after a dependency petition is filed, which incorporates a review of the removal itself. *Department of Child Safety v. Stocking-Tate in and for County of Yuma*, 247 Ariz. 108, 113 (App. 2019). "The continuous-review process promulgated by our legislature and Supreme Court begins as soon as a child is removed from the home." *Id*. at 113. The facts contained in the SAC regarding the investigations, removals, and court oversight led to the same conclusion as *Fidler*—this Court can determine the investigations were reasonable based on the state court actions.

- On September 14, 2028[2] K.J. and J.M.J. were removed with a temporary custody notice (Doc. 21 ¶¶ 39(a), 51-57.) The first dependency petition was filed on September 19, 2018. (*Id*. at 39(c)).

- On March 7, 2019, at the direction and orchestration of Patchin and Davisson, non-party DCS agents seized K.A.J. via a Temporary Custody Notice ("TCN"). (*Id*. at 39(f)). After seizing K.A.J. via a TCN, DCS filed an Application and Declaration for Ex-Parte Removal of K.A.J. to seek post hoc court approval for the seizure. (*Id*. at 39(g)).

- On February 13, 2020, Patchin served the parents with a post-hoc Temporary Custody Notice for the seizure of J.A.J. (*Id*. at 39(m)).

- Dependency petitions were filed for all four children. (*Id.* at 132.)

---

[1] Thomas Connelly is Plaintiff's counsel in Fidler.
[2] This is being treated as a typographical error with the correct year being 2018. (Doc. 21¶ 39(a)).

7

- The severance petition was now for the termination of the parent-child relationship as to all four children, K.J., J.M.J, K.A.J., and J.A.J. (*Id*. at 39(o)).

- DCS's heavy-handed involvement with this family continued until May 25, 2023, when the juvenile court dismissed the dependency action. (*Id*. at 42).[3]

The seizure of all four children was affirmed by the state court, thereby, providing the same determination of reasonableness as seen in the *Fidler* matter. *See also Stevens v. Arizona* WL418132, *9-10 (D. Ariz. 2024) ("The judge took all of this information into consideration and entered orders accordingly.")

Because of these findings in state court, Minor Plaintiffs cannot now establish that State Defendants' conduct during the investigation was not ultimately reasonable. To do so is contrary to the actual state court records, as outlined in the SAC, and viewed in the light most favorable to Plaintiffs. If State Defendants' conduct was reasonable—as the state court already determined—then qualified immunity applies to all allegations regarding the investigations. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The second timeframe in count one is the "timely failure" to allow visitation post-May 2022 court order to do so.[4] The Response imprecisely alleges that State Defendants violated an order for reunification entered on May 11, 2022, but a detailed review of the actual court language is not consistent with this claim. The order does not mandate State Defendants to reunify the Minor Plaintiffs in any set timeframe; instead it states they were required to conduct a meeting. (Doc. 28 at 15.) The exact language matters, and the language stated by Plaintiffs in the SAC is as follows:

---

[3] This Court can infer from the above-alleged facts contained in the SAC that court orders were entered for each child continuing the child in DCS custody until May 25, 2023. "Establishing the plausibility of a complaint's allegations is a two-step process that is context-specific and requires the reviewing court to draw on its judicial experience and common sense." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir. 2014).

[4] State Defendants do not concede this was the language in the state court order nor do they concede that State Defendants violated any court order.

8

> On May 11, 2022, the juvenile court ruled from the bench to severe Bianca's rights as to J.M.J., based on neglect under A.R.S. § 8-533(B)(2). The Court denied the severance of K.J., K.A.J., and J.A.J. At the same time, the juvenile court changed the case plan from severance to reunification for K.J, K.A.J., and J.A.J. The court ordered DCS to have a meeting with parents within 30 days of the May 11, 2022, ruling to start the reunification process.

(Doc. 20 ¶ 39(q). There are no allegations State Defendants failed to hold this meeting and even if it did allege this failure, nothing supports a potential constitutional violation simply because a meeting was not held in violation of a state court order. Also, procedural due process was afforded the Plaintiffs because the state court continued oversight until May, 2023. *(Id.* ¶ 42.)

### E.  Qualified Immunity Applies to Count Two.

#### 1.  Davisson

Plaintiffs were specifically instructed to incorporate allegations in the SAC supporting the proposition that Davisson knew the information being conveyed to the state court was false to adequately plead judicial deception. (Doc. 17 at 62). Plaintiffs' amended assertions that "Davisson directed, recommended, and authorized Patchin to make…false statements…in reports to the juvenile court…" remains factually insufficient to establish judicial deception. (Doc. 21 ¶ 160.) Plaintiffs still do not explain (1) that the statements were actually false, (2) how Davisson knew the reports were false, or (3) how she authorized the statements. It is not factually inaccurate to state that Jimenez was staying at Gift of Mary Shelter, that she was asked to leave, and that DCS received a hotline report. (*Id.* ¶ 51.) The content of the information provided to the hotline is also not disputed, even though Plaintiffs dispute the accuracy of the report. (*Id.* ¶ 51(e)). The SAC itself states that the hotline report was anonymous, so State Defendants could not have followed up on the report or ensured that bias was not part of the reporting. (*Id.* ¶ 51(f), 52.)

For instance, in paragraph 61, Plaintiffs allege that J.M.J. was discharged from the hospital to his "adoptive mothers" in violation of Plaintiffs' due process rights, but DCS

9

had legal custody of the child and placement was being monitored and approved by the juvenile court so it is unclear how this violated a due process right. (*Id.* ¶ 61.) Further, stating the child was placed with "adoptive mothers" is incorrect as the case plan was not changed to severance until January 24, 2019, and the removal and placement occurred in September 2018. J.M.J. was placed in foster care which is not a constitutional violation if Plaintiff was afforded due process through the state court proceedings. (*Id.* ¶ 39(b)(d), 61.) In sum, the allegations against Davisson do not comply with the Court's directive and further amendment should be denied. (Doc. 17 at 62); *Bonin*, 59 F.3d at 845.

### 2. Del Fiacco

The amended allegations against Del Fiacco under count two do not defeat her qualified immunity. (Doc. 20 ¶¶ 153-166.) Plaintiffs cannot establish that Del Fiacco knew any of the allegations were false, and their allegations remain focused on Del Fiacco "continuing the false narrative". This Court already stated that is insufficient. (Doc. 17 at 61-63.)

### F. Plaintiffs Fail to State a Claim Because Specific Acts by State Defendants Are Not Constitutional Violations When Plaintiffs are Provided Procedural Due Process.

Because Plaintiffs were afforded due process through the state court proceedings, any alleged violations occurring after the state court took jurisdiction cannot equal a Fourteenth Amendment violation unless State Defendants took affirmative steps and failed to provide notice to Minor Plaintiffs and/or failed to provide them with the opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). There are no amended allegations that State Defendants failed to provide Plaintiffs notice of the court proceedings, nor that they impacted their ability to be heard in those proceedings. In fact, the exact opposite is alleged as the SAC outlines what occurred in the state court proceedings. (Doc. 21 ¶ 39.)

### 1. Filing Motions.

1  Next, without providing any legal argument, Plaintiffs assert that moving to sever parental rights based on a "false narrative" is not protected by qualified immunity, but do not explain how filing a severance motion violates the Constitution. (Doc. 28 at 10.) Again, basic constitutional law principles hold that if due process is afforded to the Plaintiffs then a constitutional violation cannot result. *Mathews*, 424 U.S. at 333. The act of filing a pleading requesting a state court terminate the parent-child relationship is the embodiment of due process as the state court makes the final determination.

### 2. Failing to Reunify/Impeding Visits/Placement Post-Removal.

Plaintiffs did not fix the deficiencies noted by this Court regarding count three so that requires dismissal as well. (Doc. 17 at 44.) The Response does not provide any clarification or legal authority establishing that failing to provide "reasonable efforts" equates to a violation of the Constitution. Providing reasonable efforts encompasses all the allegations for (1) failing to reunify with the parents, (2) interference in visitation rights, or (3) placement of the children post-removal. (Doc. 21 ¶ 176-177.)

The decision to reunify the Minor Plaintiffs with their parents was controlled by the state court after the court assumed jurisdiction at the filing of the dependency petition. "Arizona recognizes absolute quasi-judicial immunity when an official: (1) acts pursuant to a court order." *Adams v. State*, 185 Ariz. 440, 444 (App. 1995). The only court order Plaintiffs claim State Defendants failed to comply with is the May 11, 2022 order. *Supra* II(D); n. 4. Any other assertions for violations of "reasonable efforts" are protected by immunity.

Second, because there is no constitutionally protected right for siblings to be placed together, nor to be placed in a specific placement, as a matter of law, count three fails. *See Lipscomb by and Through DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992). Theoretically, impeding visitation may constitute a violation of constitutional rights, but with the exception of claims arising from the May 11, 2022 order (n. 4), there are not enough details outlining when or how each State Defendant interfered in these visits to put State Defendants on notice. A claim must be stated clearly enough to provide

11

**each defendant** fair opportunity to frame a responsive pleading. *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996) (emphasis added).

### G. Negligence and IIED Claims Against Faust and McKay Contain Insufficient Facts.

Plaintiffs reiterate case law regarding the level of detail needed to comply with Rule 8 but incorporate no additional facts in the SAC that put Faust and McKay on notice regarding the nature and basis of the claim and their specific involvement. *Cullen v. Auto-Owners, Inc. Co.*, 218 Ariz. 417, 418, ¶ 6 (2008). Their vague assertions that these State Defendants violated A.R.S. §§ 8-451,-453 are not sufficient. Plaintiffs identified no specific policies or statutes that either Faust or McKay violated, with the exception of failing to properly train under A.R.S. § 8-802(D)(1). The SAC contains no allegations that Faust or McKay had any involvement whatsoever with Plaintiffs. They were not alleged to have (1) provided oversight to any acts by other State Defendants, (2) participated in the investigation or removal of any of the children, (3) drafted or supplied documentation to the state court, (4) interfered in Jimenez or Zavaleta's visits with the children, (5) testified during the state court proceedings, or (6) participated in reunification decisions regarding the family. *See generally SAC*. Even incorporating by reference all the previous allegations does not salvage their claims against State Defendants Faust and McKay.

### H. Counts Four and Five Remain Deficient.

Once again, looking to the *Fidler* case, this Court previously held that vague references to interference in medical decisions and attendance at medical appointments are insufficient. (Doc. 17 at 46); *Fidler* at *3. The general proposition that parents have a constitutional right to make medical decisions and attend medical appointments does not transform the deficiencies contained in the SAC because they have not alleged an actual "interference" or facts supporting that State Defendants infringed on these rights. Plaintiffs assert they were not allowed to attend well-baby checks and incorporate a long list of potential appointments in the Response, but do not provide any factual substance

such as the actual date of the appointment, who attended the appointment, whether they were specifically notified about the appointment, and any potential reason why they failed to attend the appointment. Without these details, State Defendants cannot plausibly defend the cursory allegations. (Doc. 28 at 14.)

Furthermore, Plaintiffs failed to address State Defendants' arguments that making medical decisions and/or attending appointments are time-barred under the continuing impact theory, therefore, said arguments are now waived. *See David-Rynn,* *3; *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). This Court was clear that Plaintiffs needed to provide a tolling or delayed accrual arguments, which they categorically failed to do.

**I.     Minor Plaintiffs Never Served a Notice of Claim.**

This Court can review the plain language of the notice of claim and easily ascertain that it was only filed naming Jimenez and Zavaleta as claimants. (Doc. 28, Ex. "A"). Simply stating that Jimenez and Zavaleta are parents to the children does not change the plain language. The requirements to comply with the notice of claim statute are not complex so strict compliance is required. *See Deer Valley Unified School Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 9 (2007).

**II.    CONCLUSION**

The SAC does not fare much better than the FAC. L.J. has not amended the complaint sufficient to confer standing, and he requires dismissal. Eleventh Amendment immunity protects the State, Faust, and McKay from state law claims because those protections were never waived in state court. Absolute immunity protects any testimony and qualified immunity protects the investigation, removal, and lack of reasonable efforts assertions because the acts were deemed reasonable by the state court and State Defendants were acting under court order once the state court assumed jurisdiction. Any claims by Jimenez and Zavaleta for lack of reasonable efforts for events occurring post-May 11, 2022, are also protected by immunity because State Defendants were acting according to a court order and because the order itself was not violated. To conclude, the only remaining potentially viable claim to survive this Motion to Dismiss is a judicial

deception by State Defendant Patchin in documents provided to the state court relating to Minor Plaintiffs between 2018 and April, 2021. (Doc. 21 ¶ 100.)

DATED this 12th day of September, 2024.

Arizona Attorney General

*/s/Julie Rhodes*
Julie M. Rhodes
Michael R. Niederbaumer
Assistant Attorneys General
*Attorneys for State Defendants*

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 12th day of September, 2024:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com
*Attorneys for Plaintiffs*

DeeAn Gillespie Strub
Jenny Jansch
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
mailroom@gillaw.com
*Attorneys for Plaintiffs*

*/s/Samantha Linley*
LMS22-0354 | G202221043-1 | #12140934