Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bianca Jimenez-Bencebi, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>State of Arizona, *et al.*,<br><br>Defendants. | Case No.: CV-23-2075-PHX-DWL<br><br>**RULE 26(f) JOINT CASE MANAGEMENT REPORT** |

Pursuant to Rule 26(f), the undersigned have conferred and now submit this Rule 26(f) Joint Case Management Report.

**1.    The parties who attended the Rule 26(f) Meeting and assisted in developing the plan.**

*Plaintiffs:*    Thomas A. Connelly and Jenny D. Jansch

*Defendants:*    Julie M. Rhodes and Michael R. Niederbaumer

**2.    A list of all parties in the case, including any parent corporations or entities (for recusal purposes).**

*Plaintiffs*:        K.A.J.
                     J.A.J.

*State Defendants*:  Carin Patchin

**3.    Any parties that have not been served and an explanation of why they have not been served, and any parties that have been served but have not answered or otherwise appeared.**

All parties have been served, and Defendant Patchin has answered.

**4.    A statement of whether any party expects to add additional parties to the case or otherwise to amend the pleadings.**

The parties should be allowed 180 days from the issuance of the Rule 16 Scheduling Order to add additional parties to the case or otherwise amend the pleadings. Should any party believe that further amendment is required after that date due to the discovery of the identity of additional parties or claims, they will seek leave from court.

**5.    The names of any parties not subject to the Court's personal (or in rem) jurisdiction.**

None.

**6.    A description of the basis of the Court's subject matter jurisdiction (including a statement of citizenship of every party and a description of the amount in dispute if Jurisdiction is based on diversity of citizenship), citing specific jurisdictional statutes.**

Plaintiffs bring this civil-rights lawsuit pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, Arizona Revised Statutes § 12-641, and Arizona common law. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in federal court for all suits brought under 42 U.S.C. §1983. Jurisdiction is also proper under 28 U.S.C. § 1331 because this action asserts claims for relief which derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 42 U.S.C. § 1367(c).

Plaintiffs are Arizona residents. Patchin is not an Arizona resident.

Jurisdiction is not based on diversity, but, nonetheless, the amount in controversy exceeds the minimal limits of this Court.

**7.  A short statement of the nature of the case (nor more than 3 pages), including a description of each claim, defense, and affirmative defense.**

**a. Plaintiffs' Claims:**

Bianca Jimenez-Bencebi is the mother of L.J., K.J., J.M.J.[1], K.A.J., and J.A.J.; Jiaro Arbrego Zavaleta is the father of K.A.J. and J.A.J. It is alleged that the removal of K.A.J. and J.A.J. was wrongful as the result of unlawful conduct by Patchin. It is further alleged that the conduct of Patchin caused injury to Plaintiffs.

In November 2016, Bianca was raped resulting in the conception of J.M.J. L.J. knew of the rape and was also traumatized but neither L.J. nor Bianca received trauma therapy to deal with that violent crime. L.J. was living with his natural father in Puerto Rico when the Arizona Department of Child Safety ("DCS") began its wrongful interference with this family. L.J. and Bianca were fearful that if he returned to Arizona, he, too, would be unlawfully seized and detained by DCS, as had been his siblings.

In September 2018, while at Gift of Mary Shelter, money was stolen from Bianca's purse. When she complained, she was asked to leave. Later, a hotline call was made to DCS about Bianca residing in a shelter with children. Upon information and belief, the thief made the call to divert blame for the theft. DCS failed to investigate the theft or the facts and circumstances pertinent to the hotline call allegations. No eyewitnesses were produced to testify. Based on the uninvestigated hearsay statements from the anonymous hotline caller who had reason to lie, Defendant Patchin swore under penalty of perjury to the juvenile court that Bianca threatened a person with a knife at the Gift of Mary Shelter, left J.M.J. in his car seat for extended periods of times, and prevented others from feeding J.M.J.

---

[1] J.M.J. was a child of Bianca who was unlawfully seized in September 2018 but is not a party to this lawsuit, and no claims are being brought on J.M.J.'s behalf.

On 14 September 2018, as the result of Patchin's and Davisson's failure to investigate the (false) allegations of abuse and neglect, K.J. and J.M.J. were wrongfully seized from Bianca's care and custody. Both J.M.J. and K.J. were taken to Phoenix Children's Hospital ("PCH") for forensic medical examinations upon seizure by DCS. Even though there were no issues of abuse or neglect found with K.J., she was immediately taken into foster care and never returned to Bianca.

The first dependency petition was filed in September 2018 as to K.J. and J.M.J. Davisson failed to ensure that Patchin's investigation met the statutory requirements under A.R.S. § 8-456(D)(1). During the dependency proceedings, in March 2019, K.A.J. was born and immediately seized from Bianca at birth. The removal of K.A.J. was based on Patchin's and Davisson's steadfast adherence to a malicious and distorted view that Bianca is an aggressive ex-felon and that the father, Jiaro, is too passive to protect K.A.J. from this menace of a mother.

In January 2020, Bianca's parental rights were severed as to K.J. and J.M.J., but the severance was overturned on procedural grounds.

On 14 December 2020, DCS filed another petition to terminate the parent-child relationship between Bianca and K.J., J.M.J., and K.A.J. During those proceedings, in February 2021, J.A.J. was born and immediately seized from Bianca at birth.

In March 2021, Del Fiacco took over as the DCS caseworker. Then, on 20 May 2021, DCS amended the December 2020 severance petition to include J.A.J. Thus, the State was now seeking termination of the parent-child relationship as to all four children (K.J., J.M.J., K.A.J. and J.A.J.) based on Patchin, Del Fiacco, and Davisson's adherence to the false narrative that Bianca was an aggressive boy-hating felon and Jiaro cannot protect his children.

At the end of the second severance trial in May 2022, the juvenile court finally recognized that the State's, DCS's, and their agents' portrayals of Bianca as an abuser and Jiaro as a passive, inept father were inaccurate. On 11 May 2022, the juvenile court ruled to (i) sever Bianca's rights as to J.M.J., based on neglect, and (ii) changed the case plan

4

from severance to reunification for K.J., K.A.J., and J.A.J., instructing DCS to have a meeting with the parents within thirty (30) days to start the reunification process. DCS ignored the juvenile court's Order and, for the first six weeks following the Order, cancelled the parent's supervised visits. Patchin, Del Fiacco, and Davisson violated Plaintiffs' rights when they failed reasonable efforts to reunite the parents with their children. DCS took no affirmative steps toward implementing the reunification case plan for more than five (5) months.

DCS's intrusion into this family continued until 25 May 2023, when the juvenile court dismissed the dependency action and ended Patchin's involvement. K.J., K.A.J., and J.A.J. are now living with their parents and thriving.

### b. Defendants' Defenses and Affirmative Defenses:

After this Court resolved two motions to dismiss (docs. 17, 34), the following parties remain: Minor Plaintiffs, K.A.J. and J.A.J. ("Minor Plaintiffs") and State Defendant Patchin ("Patchin"). The operative complaint is the Second Amended Complaint ("SAC") (doc. 21) and two counts remain viable. The first count is the alleged unlawful seizure and detention of K.A.J. and J.A.J. in violation of Plaintiffs' First, Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. K.A.J. was removed by DCS (not Patchin) on March 5, 2019 (Doc. 21 ¶ 39 (e-g). An *Ex Parte* Order for Removal was obtained by DCS. (*Id*.). J.A.J. was removed on February 13, 2020. (*Id*. ¶ 39 (l-m.)

The second remaining count is alleged judicial deception committed by Patchin through her testimony in the juvenile court proceedings and by her submission of Dependency Petitions and court reports in the juvenile court proceedings. (*Id*. ¶ 67.) Specifically, the alleged misrepresentations are as follows:

    a.    Bianca was homeless for several months in 2018;

    b.    J.M.J. was so severely malnourished he was feeble and could barely sit up;

    c.    J.M.J. had a flat head, distended stomach and non-accidental bruising all over his back;

     d.     Bianca did not like J.M.J. because he was a baby conceived by rape;

     e.     K.J. had scratches on her face evidencing abuse;

     f.     Bianca was aggressive;

     g.     Bianca had been convicted of felonious child abuse in Missouri in 2017;

     h.     on one occasion in July 2019 Bianca shouted at her therapist, Dr. Hanley;

     i.     on one occasion, while in labor in the hospital, Bianca stated she would name J.A.J. "Motherfucker;"

     j.     Bianca has gender dysmorphic disorder; and

     k.     Bianca willfully neglected J.M.J. because she hates boys.

(*Id.* 160 (a-k.)

Patchin denies any and all claims that she violated any of Plaintiffs' constitutional rights by the seizure/detention of K.A.J. and J.A.J. or through the alleged judicial deception. Plaintiffs' claims are barred by absolute immunity, qualified immunity, and witness immunity. *Rooker-Feldman*, claim and issue preclusion also apply barring these claims as Plaintiffs received due process in the underlying matter. Patchin asserts any and all defenses raised in her previously filed motions to dismiss (docs. 6, 25) and her answer (doc. 35) including that Plaintiffs have failed to state a claim for relief, Plaintiffs fail to allege sufficient affirmative and individual involvement of Patchin, Patchin acted in good faith and in the belief that her actions were in accordance with the Constitution and law of the United State of America. Further, if Plaintiffs suffered damages, which Patchin disputes, such damages resulted from the actions of others or from Plaintiffs' own conduct, for which Patchin is not responsible. Plaintiffs have failed to mitigate damages, if any, and Plaintiffs waived any and all rights they had against Patchin by their own acts, omission, and course of conduct.

**8. A listing of contemplated motions and a statement of the issues to be decided by these motions (including motions under Federal Rules of Evidence 702, 703, 704, and 705).**

The parties reserve the right to file any motions that are appropriate at the time of filing and permissible under the Federal Rules of Civil Procedure, including Rules 702-705, and the local rules given the then-current state of these proceedings, the nature of the issues raised by the motion, and any standing order of the court regarding the filing of motions. Such motions may include discovery motions or dispositive motions.

The parties anticipate filing a joint motion for protective order.

    a.    **Plaintiffs**: Plaintiffs anticipate seeking partial summary judgment on the issue of liability on their claims for civil rights violations, leaving only the issue of damages to be tried as to those claims. This motion will be based largely on the acts and omissions of Patchin in conducting an inadequate investigation of the hotline call allegations, said failure resulting in the minor child being seized from the care and custody of their parents without a warrant and in the absence of exigent circumstances.

    b.    **Defendants**: Patchin anticipates filing a motion for judgment on the pleadings addressing the alleged unlawful seizure and detention of K.A.J. and J.A.J. As this Court noted in its order regarding the second motion to dismiss (Doc. 34 at 17), the inability to determine whether the removal of these two children was "reasonable" was impaired by the failure of Patchin to attach copies of the pertinent orders to the motion to dismiss.[2] As this Court is willing to accept those orders as exhibits under the judicial-notice doctrine, this error can be easily rectified as the record establishes that both removals occurred after DCS obtained *ex parte* Orders for Removal of a Child on March 7, 2019 and February 13, 2020. And, as noted by this Court, a constitutional violation of interference

---

[2] "The Court also notes that, if such additional orders existed, Defendants could have attached them to their motion and asked that they be considered pursuant to the judicial-notice doctrine, but Defendants did not do so. Thus, on this record and at this stage of the case, the Court must accept the SAC's allegation that the removal of K.J. and J.M.J. in September 2018 occurred without a court order (the only court orders regarding their status were issued in 2020 and 2022) and that no court ever approved the removal of K.A.J. in March 2019 or the removal of J.A.J. in February 2020."

7

in familial association only occurs when a child is removed "without consent or court order and absent reasonable cause to believe that the seizure is necessary to avert imminent, serious bodily harm." (Doc. 34 at 16) (citing *Fidler v. State of Arizona,* 2024 WL 1553703 (9th Cir. 2024). The record establishes the juvenile court issued a second set of orders affirming the removal of both Minor Plaintiffs after the Dependency Petitions were filed, thereby establishing the "reasonableness" of the removal making the removals not actionable under *Keates v. Koile*, 883 F.3d. 1228 (9th Cir. 2018).

Once the record is further developed, Patchin also anticipates filing a motion for summary judgment on the application of *Rooker-Feldman*, claim and issue preclusion, because Plaintiffs received due process protections during the juvenile court proceedings, and they were never prevented from presenting their claims in court. Patchin will argue absolute, qualified and witness immunity protections apply and that Plaintiffs cannot establish the elements of judicial deception: (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021).

**9.    The prospects for settlement, including whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference.**

At this stage of the matter, the prospects for settlement are indeterminate, though that may change as the case progresses and the facts are developed through discovery. Plaintiffs do not object to referral of this case to a Magistrate Judge for settlement purposes; however, at least one party has filed an election for trial by a District Court Judge. Therefore, referral to a United States Magistrate Judge for any purpose may not be appropriate.

**10.    The status of any related case pending before this or other courts.**

None.

**11.    A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information ("ESI"), including the parties' preservation of ESI and the form or forms in which it will be produced.**

8

There are currently no issues relating to disclosure or discovery of electronically stored information. The parties agree to work cooperatively to resolve any issues that might arise in the future.

**12.   A discussion of any issues relating to claims of privilege or work product.**

Currently, the parties do not foresee any issues relating to claims of privilege or work product. The parties agree to work cooperatively to resolve any issues should they arise. In this regard, it is anticipated the parties will file a motion for protective order to address issues of privilege regarding DCS records and other information in this case.

**13.   A discussion of necessary discovery, which should take into account the December 1, 2015, amendments to Rule 26(b)(1) and should include:**

The parties do not propose any limitations on discovery beyond those stated by the rules; however, the parties reserve the right to seek a protective order for any discovery believed to be disproportionate or immaterial to the needs of the case, as proportionality is contemplated in Fed. R. Civ. P. 26(b)(1). In addition, the parties anticipate seeking a protective order to facilitate the disclosure of documents which are otherwise confidential under Arizona law, such as DCS records and juvenile court records.

**a. The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case.**

The parties agree that the scope of discovery should be consistent with Fed. R. Civ. P. 26(b)(1). The parties do not propose any phasing of discovery. The parties do not propose that discovery be limited to focus on any particular issues. The parties anticipate that all discovery is located within, and will take place within, the District of Arizona, or remotely as may be necessary or convenient for out-of-state parties or witnesses.

In addition to written discovery, it is anticipated that the parents, Bianca and Jiaro, and Patchin, or duly identified representatives of any governmental or corporate defendants, will be deposed, along with specially retained experts, totaling approximately twenty (20) individuals in all. There may be third-party witnesses the parties are currently unaware of that may need to be deposed. Should additional depositions be required, the parties will meet and confer to reach agreement before coming to the Court on the issue.

9

**b. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure.**

The parties do not propose any limitations on discovery beyond those stated by the rules; however, the parties reserve the right to seek a protective order for any discovery believed to be disproportionate or immaterial to the needs of the case, as proportionality is contemplated in Fed. R. Civ. P. 26(b)(1). In addition, the parties anticipate seeking a protective order to facilitate the disclosure of documents which are otherwise confidential under Arizona law, such as DCS records and juvenile court records.

**c. The number of hours permitted for each deposition. The parties also should consider whether a total number of deposition hours should be set in the case, such as 20 total hours for Plaintiffs and 20 total hours for Defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time amount witnesses depending on the importance and complexity of subjects to be covered with the witnesses.**

The parties do not anticipate needing to exceed time limits for depositions under Fed. R. Civ. P. Rule 30(d)(1), but if more time is needed than allowed by the Rules, the parties agree to work cooperatively to resolve the issue. If the matter cannot be resolved, only then will the parties request the Court's assistance. The parties do not believe a total number of deposition hours should be imposed in this case.

**14. Proposed deadlines for each of the following events. In proposing deadlines, the parties should keep in mind that civil trials should occur within 18 months of the filing of the complaint. 28 U.S.C. § 473(a)(2)(B). The Case Management Order will specify trial scheduling up to the final pretrial conference. Once the dates have been set in the Case Management Order, the Court will not vary them without good cause, even if the parties would otherwise stipulate to do so. The Court does not consider settlement talks or the scheduling of mediations to constitute good cause for an extension.**

The parties recognize and are cognizant of the Court's suggestion that civil trials should occur within 18 months of the filing of the complaint. The parties are proposing dates that extend beyond 18 months from the filing of the Second Amended Complaint because they reasonably believe additional time will be necessary given the complexity of this matter and the number of parties and witnesses involved.

10

a. **A deadline for the completion of fact discovery, will also be the deadline for pretrial disclosures pursuant to Rule 26(a)(3). This deadline is the date by which all discovery must be completed. Discovery requests must be served and depositions noticed sufficiently in advance of this date to ensure reasonable completion by the deadline, including time to resolve discovery disputes. Absent extraordinary circumstances, the Court will not entertain discovery disputes after this deadline.**

   March 31, 2026

b. **Dates for full and complete expert disclosures and rebuttal expert disclosures.**

   Plaintiffs' Expert Reports:    November 21, 2025

   Defendants' Expert Reports:   December 22, 2025

   Rebuttal Expert Reports:      January 23, 2026

c. **A deadline for completion of all expert depositions.**

   March 31, 2026

d. **A date by which any Rule 35 physical or mental examination will be noticed if such an examination is required by any issues in the case.**

   N/A

e. **A deadline for filing dispositive motions.**

   July 17, 2026

f. **Case-specific deadlines and dates, such as the deadline to file a motion for class certification or a date on which the parties are available for a *Markman* (patent claim construction) hearing.**

   N/A

g. **A date by which the parties shall have engaged in face-to-face good faith settlement talks.**

   April 30, 2026

h. **Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, set forth the reasons).**

All parties have requested a jury trial. Those requests are not contested.

i. **Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

None that the parties are aware of currently.

**15.     A statement indicating whether the parties would prefer that the Court hold a case management conference before issuing a scheduling order—and, if so, an explanation of why this would be helpful.**

The parties do not believe it is necessary for the Court to hold a case management conference before it issues a scheduling order.

**RESPECTFULLY SUBMITTED** this 12th day of February 2025.

                                             **MILLS + WOODS LAW PLLC**

                                             By:     */s/ Thomas A. Connelly*
                                                  Thomas A. Connelly
                                                  Robert T. Mills
                                                  Sean A. Woods
                                                  5055 North 12th Street, Suite 101
                                                  Phoenix, AZ 85014

                                           **GILLESPIE, SHIELDS & TAYLOR**

                                                  DeeAn Gillespie Strub
                                                  Jenny D. Jansch
                                                  7319 North 16th Street
                                                  Phoenix, AZ 85020

                                                  *Attorneys for Plaintiffs*

                                           **ARIZONA ATTORNEY GENERAL'S OFFICE**

                                             By:     */s/ Julie Rhodes*
                                                  Julie Rhodes
                                                  Michael R. Niederbaumer
                                                  2005 North Central Avenue
                                                  Phoenix, Arizona  85007-2926
                                                  *Attorneys for State Defendants*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February 2025, I electronically transmitted the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

  /s/   Thomas A. Connelly

13