CHRIS DEROSE, CLERK
BY _____ DEP
A. RODRIGUEZ, FILED
2018 SEP 19 PM 12: 20

1  MARK BRNOVICH
2  Attorney General

3  ALINE LUTTINGER
4  Assistant Attorney General
   State Bar No. 018833
5  CFP/PSS
   2005 North Central Avenue, C007AG
6  Phoenix, Arizona 85004
7  (602) 542-1645
   PSSDurango@azag.gov
8
9  Attorneys for the Department of Child Safety

10              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11                    IN AND FOR THE COUNTY OF MARICOPA

| In the matter of: | No. JD 3 6 3 7 5 - |
|---|---|
| K.J.<br>d.o.b. ███ 2016<br>J.M.J.<br>d.o.b. ███ 2017 | DCS'S DEPENDENCY PETITION AND PETITION FOR PATERNITY AND/OR CHILD SUPPORT<br><br>(OUT-OF-HOME)<br><br>CHILDS NO. 599953 |
| Person(s) under 18 years of age. | (Honorable _____) |

Petitioner, the Department of Child Safety (DCS or the Department), by and through undersigned counsel, hereby alleges upon information and belief:

I.
Jurisdiction

The Juvenile Court has exclusive original jurisdiction over dependency matters pursuant to A.R.S. § 8-202(B). The Superior Court has original jurisdiction in proceedings to establish paternity pursuant to A.R.S. § 25-801. Arizona has temporary emergency jurisdiction pursuant to A.R.S. § 25-1034 and it is necessary to protect the

ST-JIMENEZ-004097

children as they are threatened with mistreatment or abuse. Upon information and belief, Mother reported that she and the children moved to Arizona from the State of Missouri approximate five months ago. She denies that there any custody orders pertaining to these children. The Department will file a motion to set expedited hearing regarding temporary emergency jurisdiction once it has sufficient information.

## II.
## Venue

Venue in this county is proper pursuant to A.R.S. §§ 8-206(A) and 25-802 as Maricopa County is the residence of the children and/or the acts of dependency are alleged to have occurred in Maricopa County.

## III.
## Identity of Children, Placement and Applicability of the Indian Child Welfare Act

A. ███K.J.███

  1. ███K.J.███ a female child whose date of birth is ███ 2016. This child is under three years of age.

  2. ███K.J.███ a dependent child within the provisions of A.R.S. § 8-201(15).

  3. ███K.J.███ currently placed in a licensed foster home through DCS.

  4. ███K.J.███ not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4).

///

2

ST-JIMENEZ-004098

B.   ███J.M.J.███

1. ███J.M.J.███ s a male child whose date of birth is ███ 2017. This child is under three years of age.

2. ███J.M.J.███ s a dependent child within the provisions of A.R.S. § 8-201(15).

3. ███J.M.J.███ s currently hospitalized at Phoenix Children's Hospital, once he is released he will be placed with DCS.

4. ███J.M.J.███ s not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4).

## IV.
### Parties

The following individuals are alleged to be the parents, guardians, and/or Indian Custodians of the children who are the subject of this Petition, upon information and belief:

A.  BIANCA BENCEBI is the mother of ███K.J.███ nd ███J.M.J.███ ███

1. Her date of birth is ███ 1985.

2. Her address is ███████████████████████████████ r phone number is unknown.

B.  JOHNATHAN GONZALEZ is the father of ███K.J.███

1. His date of birth is unknown.

2. His address is unknown. His phone number is unknown.

3. He was never married to BIANCA BENCEBI.

3

ST-JIMENEZ-004099

4. It is unknown if he has established his paternity of K.J.

5. It is unknown if he has an order granting him custody of K.J.

6. It is unknown if he has a child support order as to K.J.

C. NOEL MENCHACA is the father of J.M.J.

1. His date of birth is unknown.

2. His address is unknown. His phone number is unknown.

3. He was never married to BIANCA BENCEBI.

4. It is unknown if he has established his paternity of J.M.J.

5. It is unknown if he has an order granting him custody of J.M.J.

6. It is unknown if he has a child support order as to J.M.J.

D. JOHN DOE is the father of K.J. and J.M.J.

"JOHN DOE" is a fictitious name used to designate any other male individual claiming to be the father of the child and whose true identity and whereabouts are unknown. John Doe is alleged whenever the identity of the father is unknown; whenever paternity is in question or has not been established by marriage, birth certificate or a Court order; or when there are multiple alleged fathers.

///

///

4

## V.
## Temporary Custody

Upon information and belief, ███ K.J. ███ nd ███ J.M.J. ███ were taken into temporary physical custody under A.R.S. § 8-821(D) on September 14, 2018, at 2:20 p.m.

## VI.
## Allegations

A. Upon information and belief, DCS alleges that ███ K.J. ███ nd ███ J.M.J. ███ re dependent due to neglect as to BIANCA BENCEBI.

1. Mother is neglecting the children and is unwilling or unable to provide proper and effective parental care and control due failing to provide appropriate care and home environment. At the time of the removal, mother was with J.M.J. at an adoption agency. The mother admitted to not wanting to parent child, J.M.J. and wanted to put him up for adoption. There were clear and observable signs of malnourishment, underdevelopment, and the baby having a 2cm scar on his left of his cheek to which the mother said he did it himself. DCS took the child to Phoenix Child Hospital. Medical staff found J.M.J. to be underweight, malnourished, failure to thrive with bruising and scratches. There were scratches to his neck and lower face; a small 0.75 cm bruise to left lateral cheek; bruising to his chest, body, and right posterior thigh with 3 bruises. J.M.J. was found to be in the 1% for development and weight. He is currently hospitalized. Mother does not have stable housing. Mother was asked to leave a homeless shelter due to her

5

ST-JIMENEZ-004101

behaviors. Mother left the shelter and at the time of the removal refused to give DCS a current address. She stated she was living with the father of her unborn child and his sister. She did not want to tell DCS the address in fear of DCS removing his sister's kids. She reported the home is dirty and the father of her unborn child has mental health issues.

2. Mother is neglecting the children and is unwilling or unable to provide proper and effective parental care and control mental health issues. Mother was asked to leave a homeless shelter due to her rude and aggressive behavior. Mother reports a history of abuse and neglect as a child along with sexual abuse. Mother has not addressed her past trauma. She has indicated she is unable to parent J.M.J. as he is a product of rape. Mother's mental health will need to be further evaluated.

B. Upon information and belief, DCS alleges that K.J. dependent due to neglect as to JOHNATHAN GONZALEZ.

1. Father is neglecting the child and is unwilling or unable to provide proper and effective parental care and control by failing to provide for the child's basic needs. Father has failed to provide support for the child, including food, shelter, clothing, proper supervision, and/or medical care. Mother indicated that father has never supported K.J. nor had consistent contact with her. Mother does not know his current whereabouts. She reported that he may be in jail in the State of Missouri or in Mexico.

ST-JIMENEZ-004102

C. Upon information and belief, DCS alleges that [J.M.J.] s dependent due to neglect as to NOEL MENCHACA.

  1. Father is neglecting the child and is unwilling or unable to provide proper and effective parental care and control by failing to provide for the child's basic needs. Father has failed to provide support for the child, including food, shelter, clothing, proper supervision, and/or medical care. Mother indicated that father has never supported [J.M.J.] nor had consistent contact with him. Mother does not know his current whereabouts. She believes he has been deported to Mexico. Mother claims that he raped her and that is how she got pregnant with [J.M.J.]

D. JOHN DOE, a fictitious individual, has failed to establish paternity of [K.J.] nd [J.M.J.] nd failed to establish and maintain a parental relationship, including providing support without just cause. The Department has made a diligent attempt, during the investigation, to confirm the true identity of the father, and will continue to make attempts to confirm his identity.

## VII.
### Aggravating Circumstances

DCS believes that no aggravating circumstances exist at this time pursuant to A.R.S. §§ 8-841(B)(5) and 8-846(D)(1).

///

///

///

7

ST-JIMENEZ-004103

## VIII.
### Paternity

The Department, pursuant to A.R.S. §§ 25-803 and 25-806, alleges:

A. The State of Arizona is entitled to bring this action pursuant to A.R.S. §§ 25-801 through 25-817.

B. The Department requests the Court for any child identified herein whose paternity has not been legally established, enter a judgment of paternity.

C. If any of the identified fathers fails to timely comply with an order from this Court to establish his paternity, the Court may immediately enter a judgment of paternity upon request of DCS.

D. Upon information and belief, Mother alleges that during the time period of conception she had sexual intercourse with JOHNATHAN GONZALEZ and that he is the biological father of K.J.

E. Upon information and belief, Mother alleges that during the time period of conception she had sexual intercourse with NOEL MENCHACA and that he is the biological father of J.M.J.

## IX.
### Facts Supporting Contrary to the Welfare of the Children Finding

Continuation of the children in the home would be contrary to their welfare. At the time of the removal, mother was with J.M.J. at an adoption agency. The mother admitted to not wanting to parent child, J.M.J. and wanted to put him up for adoption. There were clear and observable signs of malnourishment, underdevelopment, and the baby having a 2cm scar on his left of his cheek to which the mother said he did it himself.

8

ST-JIMENEZ-004104

DCS took the child to Phoenix Child Hospital. Medical staff found J.M.J. to be underweight, malnourished, failure to thrive with bruising and scratches. There were scratches to his neck and lower face; a small 0.75 cm bruise to left lateral cheek; bruising to his chest, body, and right posterior thigh with 3 bruises. J.M.J. was found to be in the 1% for development and weight. He is currently hospitalized. Mother does not have stable housing. Mother was asked to leave a homeless shelter due to her behaviors. Mother left the shelter and at the time of the removal refused to give DCS a current address. She stated she was living with the father of her unborn child and his sister. She did not want to tell DCS the address in fear of DCS removing his sister's kids. She reported the home is dirty and the father of her unborn child has mental health issues. Mother is unable to perform essential responsibilities for J.M.J. due to lack of bond and him being a result of rape. Mother reports a history of abuse and neglect as a child along with sexual abuse. Mother has not addressed her trauma.

## X.
### Facts Supporting Reasonable Efforts Finding

It is further requested that the Court find, based upon the verified allegations of the petition that reasonable efforts have been made to prevent removal of the children from the home. At the time of the removal, mother refused to give the Department a current address. She indicated the house is dirty. The Department held a Team Decision Meeting with mother on September 18, 2018. Mother admitted to not wanting to parent J.M.J. due to him being a product of rape. Additionally, she admitted that her current housing is inappropriate due to the home being dirty and issues with the father of her unborn child.

9

ST-JIMENEZ-004105

## XI.
## Facts Supporting Relative or Non-Relative Placement

The Department made attempts to identify and assess placement with the children's grandparent or another member of the children's extended family, including a person who has a significant relationship with the child, but such a placement is not in the children's best interests at this time because no appropriate family member has been identified. The children's current placement is the least restrictive consistent with the children's best interests.

## XII.
## Financial Responsibility for the
## Support of the Child

The parent(s) should pay an appropriate amount as determined by law for the care, maintenance and support of the children while in care pursuant to A.R.S. §§ 8-241, 8-243 and 8-243.01.

## XIII.
## Education

With regard to possible special education issues of any child named herein who is not placed with a parent, or for any child subsequently removed from a parent(s) physical custody, DCS hereby requests an order providing that:

1. In the event a public education agency or Arizona early intervention provider advises DCS that it needs to locate a parent of any child named in this petition to serve as the Individuals With Disabilities Education Act

10

ST-JIMENEZ-004106

(IDEA) parent for that child and a parent can no longer be located by DCS; or

2. In the event the parent or legal counsel for the parent tells the public education agency, or DCS/its legal counsel that the parent will not serve as the IDEA parent for the child named in this petition; or

3. If the parent is subject to a no contact order as to any of the children; or

4. If a public education agency or an Arizona early intervention provider following reasonable efforts to try and get a parent to respond to its requests to act as the IDEA parent for any child named in this petition, fails to obtain a response or any cooperation of a parent, an adult relative, stepparent, or foster parent with whom the child lives (but not staff of a group home or other residential facility) shall have authority to serve as the IDEA parent.

The IDEA parent represents the children's special education interests under Parts B or C of the IDEA. The purpose of such representation is to ensure that a child with a suspected/known disability receives prompt assessment and evaluation for eligibility for early intervention services or appropriate educational services, which may include special education and related services designed to meet the child's unique needs.

///

///

///

///

///

ST-JIMENEZ-004107

## REQUEST FOR RELIEF

Based upon the foregoing allegations, immediate action is required.

WHEREFORE, DCS requests this Court find and/or order that:

1. The Juvenile Court has jurisdiction over the subject matter and, after proper service on the parents, guardians, and/or Indian custodians, the persons before this Court;

2. Venue is proper in this county;

3. The children are made temporary wards of the Court, placed in the care, custody, and control of DCS, 3003 North Central Avenue, Phoenix, Arizona 85012 and in the physical custody of DCS;

4. Continuation of the children in the home would be contrary to their welfare;

5. Reasonable efforts have been made to prevent removal of the children from the home;

6. The Department made attempts to identify and assess placement with a grandparent or extended family, including a person who has a significant relationship with the children and such a placement is not in the children's best interest at this time;

7. The children are not Indian children as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4);

///

///

///

ST-JIMENEZ-004108

8. In accordance with A.R.S. § 25-809 and other applicable law that:

    a. BIANCA BENCEBI is the mother of the child born out of wedlock;

    b. A determination as to the identity of the biological father is necessary to establish paternity for any child named in this petition who was born out of wedlock;

    c. If genetic testing has been ordered, a father's failure to participate may result in an order of paternity naming him the legal father; and

    d. After the establishment of paternity, enter an order requiring the Clerk of the Court to send a certified copy of the paternity order for any child born in the State of Arizona, to the Arizona Office of Vital Records, P.O. Box 3887, Phoenix, Arizona 85030-3887, which shall establish, pursuant to A.R.S. § 36-323, a new birth certificate for the child reflecting the name of the father;

9. A Preliminary Protective Hearing be set pursuant to A.R.S. § 8-824, an Initial Dependency Hearing pursuant to A.R.S. §§ 8-842 and 8-843, a Publication Hearing, and a Permanency Hearing pursuant to A.R.S. § 8-862;

10. The matter be assigned to the Court-Appointed Special Advocate (CASA) Program to determine if it is appropriate for the assignment of an advocate;

11. The matter be assigned to the Foster Care Review Board (FCRB) to perform the duties required by statute;

13

ST-JIMENEZ-004109

12. All persons are prohibited from removing the children from the State of Arizona without prior written approval of DCS;

13. Any judgment and orders for the care, paternity, custody, support or such other relief, as the child's welfare and the interests of the State may require under the provisions of Title 8 and Title 25 of the Arizona Revised Statutes;

14. That the parent(s) or legal guardian(s) shall provide the DCS Child Safety Worker or its attorney with a recent educational history (including the name(s) and location(s) of the school(s) each child named in the Petition recently attended and the grade in which each child was most recently enrolled.) The parent(s) or legal guardian(s) shall also provide or confirm the date of birth of each child named in the Petition;

15. An individual other than a biological or adoptive parent is authorized to act as the IDEA parent under the circumstances delineated herein;

16. All medical, dental and mental health providers, health plans, Regional Behavioral Health Authorities (RBHAs), as well as other Health Insurance Portability and Accountability Act (HIPAA) covered providers who have provided any services to the children, make available to any guardian ad litem for the children and/or attorney for the children the various medical, dental, mental health, genetic and other health care records of the children;

///

///

///

ST-JIMENEZ-004110

17. The allegations in this Petition are true by a preponderance of the evidence and that the children are dependent to all alleged parents, guardians, and/or Indian custodians as defined by A.R.S. § 8-201(15), and that the children be made wards of the court committed to the care, custody, and control of DCS;

18. The parent, guardian, or Indian custodian be advised as follows;

    a. Failure to appear without good cause may result in a finding that the parent, guardian or Indian custodian has waived his/her legal rights and admitted the allegations in the dependency petition;

    b. That hearings may go forward in his/her absence and may result in an adjudication of dependency, permanent guardianship or termination of parental rights based upon the record and evidence presented to the Court, as well as an order of paternity, suspension or termination of an existing current child support order, custody, or change of custody in a consolidated family law matter and an order for child support if paternity has been established;

    c. Proceedings for permanent guardianship pursuant to A.R.S. §§ 8-871 and 8-872 or proceedings for termination of parental rights pursuant to A.R.S. § 8-533 may be initiated based upon

ST-JIMENEZ-004111

       the grounds set forth in statute or for failure to participate in reunification services; and

  d.   If a child is under three years of age, within six months after removal from the home, the Court will determine whether the parent, guardian or Indian custodian has substantially neglected or willfully refused to participate in reunification services offered by DCS; admonish the parent, guardian, or Indian custodian that substantially neglecting or willfully refusing to remedy the circumstances that cause a child to be in an out-of-home placement, including refusing to participate in reunification services, is a ground for termination of parental rights; and

19.  That the parent(s) or legal guardian(s) provide to this Court, as required by A.R.S. § 8-841(D)(5), at the Preliminary Protective Hearing and/or the Initial Dependency Hearing: the names, type of relationship, and all available information necessary to locate persons related to the children or who have a significant relationship with the children Persons related to the children include the children's grandparents, great-grandparents, brothers or sisters of whole or half-blood, aunts, uncles and first cousins. If the parent(s) or legal guardian(s) do not have sufficient information available to locate a relative or person with a significant relationship with the children, the parent or guardian must inform this Court of this fact. The parent(s) or

ST-JIMENEZ-004112

legal guardian(s) must inform DCS immediately if the parent(s) or guardian(s) becomes aware of information related to the existence or location of a relative or person with a significant relationship with the children.

20. Notice is given that if DCS has temporary custody of a child or legal custody pursuant to a court order, it has the authority to consent to: evaluation and treatment for emergency conditions that are not life threatening; routine medical and dental treatment and procedures, including early periodic screening diagnosis and treatment services, and services by health care providers to relieve pain or treat symptoms of common childhood illnesses or conditions; surgery; blood transfusions; general anesthesia; and testing for the presence of the Human Immunodeficiency Virus (HIV). A.R.S. § 8-514.05(C).

21. Notice is given that DCS is proposing to substantiate any allegations of abuse and/or neglect contained in the dependency petition for placement in the DCS Central Registry. The DCS Central Registry is a confidential list of DCS findings that tracks abuse and neglect. If the court finds your child dependent based upon allegations of abuse and/or neglect contained in the dependency petition, you will be placed in the DCS Central Registry. *See* A.R.S. § 8-804.

22. Notice is given that under the Arizona Rules of Family Law Procedure 5.1(E), during any dependency/guardianship proceeding in the juvenile

ST-JIMENEZ-004113

division, the assigned juvenile division may suspend, modify, or terminate a child support order for current support if the parent entitled to receive the child support no longer has legal or physical custody of the child, and, except in Title IV-D cases may make appropriate orders regarding any past due support or child support arrears. The assigned juvenile division may direct that the wage assignment be quashed or modified.

RESPECTFULLY SUBMITTED this ___19th___ day of September, 2018.

MARK BRNOVICH
Attorney General

ALINE LUTTINGER
Assistant Attorney General

ST-JIMENEZ-004114

**VERIFICATION**

STATE OF ARIZONA      )
                     ) ss.
COUNTY OF MARICOPA    )

I, Ricardo Camacho-Gutierrez, being duly sworn, upon oath depose and say:

I am an employee of the Petitioner, the Department of Child Safety, and I have been authorized to make this verification on its behalf. I have read the foregoing Petition and believe upon information and belief that the contents thereof are true and correct.

_____
Signature of Ricardo Camacho-Gutierrez

Investigations Specialist
Title

SUBSCRIBED and SWORN to before me this 19th day of September, 2018.

_____
Notary Public

HD/JIMENEZ/BENCEBI/HDM#4378453

JESSICA R. ALVARADO
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 550081
Expires July 22, 2022

20

ST-JIMENEZ-004115

CSO-1000A (6-18)  
PAGE 2 ON REVERSE

ARIZONA DEPARTMENT OF CHILD SAFETY  
TEMPORARY CUSTODY NOTICE

On (Date) 09/14/18 At (Time) 2:11 ☐ AM ☒ PM, temporary custody of (child's name) **K.J.** **J.M.J.** was taken at (Address) 2511 E University Dr. Ste 150 Phx by (Agency) DCS

Type of abuse or neglect requiring temporary custody: Select the circumstance(s) that most clearly describe the danger to the child(ren) and reason temporary custody is necessary.

- ☒ Medical examination is required to diagnose abuse.
- ☐ The child is unsupervised or alone now or on a daily basis, or has been left with a person who is unwilling or unable to provide adequate care.
- ☒ The caregiver is unable to perform essential parental responsibilities due to substance use, mental illness, physical impairment, cognitive limitations.
- ☐ The caregiver is unable or unwilling to perform essential parental responsibilities and there is no other appropriate caretaker immediately available.
- ☐ The caregiver is out of control and cannot focus or manage his/her behavior in ways to properly perform parental responsibilities.
- ☐ The caregiver's behavior is violent, bizarre, erratic, unpredictable, incoherent, or totally inappropriate and is a threat to child safety.
- ☐ The caregiver is brandishing weapons, known to be dangerous and aggressive, or is behaving in attacking or aggressive ways that are a threat to child safety.
- ☐ The caregiver has not, cannot, or will not protect the child from serious or severe harm, including harm from other persons having access to the child.
- ☐ Dynamics in the household include a person establishing power, control, or coercion over a caregiver in a way that impairs necessary supervision or care of the child and has caused, or will likely cause, serious or severe harm to the child's physical, mental, or emotional health.
- ☒ The caregiver has an extremely negative perception of the child, and/or has extremely unrealistic expectations for the child's behavior.
- ☐ Physical conditions in the home are hazardous and immediately threaten the child's safety.
- ☐ The caregiver is subjecting the child to brutal or bizarre punishment or there is severe to extreme maltreatment alleged to be occurring.
- ☐ The child requires immediate medical attention, and the absence of medical treatment could seriously affect the child's health and well-being.
- ☐ The child is actively endangering self or others and the caregiver cannot or will not control the child's behavior or arrange or provide necessary care.
- ☐ There is evidence of recent sexual abuse, the perpetrator currently has access to the child, and no protective action is being taken by a caregiver.
- ☐ The child has injuries such as facial bruises, injuries to the head, multiple plane injuries, injuries to a non-ambulatory child, immersion burns.
- ☐ The child has serious injuries that the caregivers and others cannot or will not explain, or the explanation is inconsistent with the child's injuries or condition.
- ☐ The caregiver deliberately harmed the child, or caused or threated to cause serious or severe harm to the child.
- ☐ The child is profoundly fearful (terrified) of their present home situation, or a particular person living in or having access to the home.
- ☐ The caregiver previously endangered a child and/or caused harm to a child and circumstances indicate the person will likely cause severe harm to the child.
- ☒ There is evidence of abuse or neglect and the caregiver cannot produce the child, refuses access to or is likely to flee with the child, or actively avoids DCS.
- ☐ Criminal activity by the caregiver or criminal activity of other persons living in or having access to the home will likely result in severe harm to the child.

Select how temporary custody was obtained: ☐ Parent or Guardian Consent ☐ Court Authorized ☒ Exigent Circumstances

The Department of Child Safety (DCS) must:

- Return your child within 72 hours (not including weekends and holidays) unless DCS files a legal paper, called a petition, with Juvenile Court. If a petition is filed, your child will be kept in the temporary custody of DCS.
- Return your child within 12 hours if your child was removed for a medical examination, unless abuse is revealed, and
- Inform you of the right to give a verbal, telephonic or written response to the allegations and have the response included in the investigation report. Any documentation you give, what you say or write, will be included in the case record and can be used in court proceedings.

DCS REPRESENTATIVE'S NAME (Please print): Ricardo Camacho Gutierrez   AREA CODE AND PHONE NO. 602 309 9675  
ARIZONA DEPARTMENT OF CHILD SAFETY ADDRESS (No., Street, City, State, ZIP): 3221 N 16st Suite 400 Phoenix, Arizona 85033  
DCS SUPERVISOR'S NAME (Please print): Stacy Laborde   AREA CODE AND PHONE NO.  
METHOD OF NOTICE: On (date) 9/14/18 at (time) 2:20 ☐ AM ☒ PM, I served noticed to (parent, guardian or custodian) (print name) Bianca Jimenez  
Method used: ☒ In-Person ☐ Left at Residence ☒ Verbal ☐ Fax   Date: 9/14/18   Time: 2:20  
Address where mailed/left/given (No., Street, City, State, ZIP): _____  
What is the child or child's parents American Indian heritage/ancestry: _____   Has the tribe been notified? ☐ Yes ☐ No ☒ N/A  
PARENT, GUARDIAN OR CUSTODIAN'S SIGNATURE: _____

DCS REPRESENTATIVE'S SIGNATURE (or law enforcement officer): [signature]   DATE: 9/14/18

ROUTING: Original – Parent/Guardian/Custodian; 1st Copy – Sent to Assistant Attorney General to file with the Petition; 2nd Copy – Retained in the case record

ST-JIMENEZ-004116