1
2

Kristin K. Mayes
Attorney General

3
Julie M. Rhodes (016313)
Michael R. Niederbaumer (031931)

4
Assistant Attorneys General

5
2005 North Central Avenue
Phoenix, Arizona 85007-2926

6
Telephone: (602) 542-7612 – JR
Telephone: (602) 542-8346 – MN

7
Fax: (602) 542-3393

8
DefensePhx@azag.gov
Julie.Rhodes@azag.gov

9
Michael.Niederbaumer@azag.gov

10
*Attorneys for Patchin*

11
**IN THE UNITED STATES DISTRICT COURT**

12
**FOR THE DISTRICT OF ARIZONA**

13
Bianca Jimenez-Bencebi, et al.,                    Case No: 2:23-cv-02075-DWL

14
                    Plaintiffs,

15
vs.                                                **PATCHIN'S REPLY IN SUPPORT**

16
                                                   **OF THE MOTION FOR JUDGMENT**
                                                   **ON THE PLEADINGS**

17
State of Arizona, et al.,

18
                    Defendants.

19

20
        Plaintiffs' opposition to Patchin's Motion for Judgment on the Pleadings provides

21
little new legal authority and no new facts to support continued litigation regarding the

22
sole remaining count for judicial deception.[1] Patchin incorporates by reference the Motion

23
for Judgment on the Pleadings (Doc. 44) and exhibits C, F, and J.[2] Plaintiffs' Response

24

25
[1] Plaintiffs concede the only remaining Plaintiffs are K.A.J. and J.A.J., the only remaining

26
Defendant is Patchin, and Count One demands dismissal. Thus, the only remaining claim
is Count Two. Bianca Jimenez-Bencebi will be referred to as "Bianca" and Jairo Abrego-

27
Zavaleta will be referred to as "Jairo".
[2] (Preliminary Protective Hearing Minute Entry dated March 18, 2019, attached as Exhibit

28
"C"); (Order May 11, 2020, attached as Exhibit "F"); (Dependency Petition September
19, 2018, attached as Exhibit "J".)

1   does not adequately address the pleading requirements of Fed. R. Civ. P. 12(c) nor does it

2   provide any convincing arguments that the alleged misrepresentations were deliberately

3   made by Patchin, resulted in any constitutional violations, or were material to any juvenile

4   court decisions. This reply is supported by the following Memorandum of Points and

5   Authorities, as well as the entire record in this matter.

6   **I.      DISCUSSION**

7          The Court reduced this case to one count of judicial deception, including two sets

8   of statements. The first grouping incorporates statements that originated with the

9   investigative case specialist, Ricardo Camacho-Gutierrez, in 2018 and were subsequently

10  ***repeated*** by Patchin in various court reports and testimony. (Doc. 21 ¶¶160; Doc. 44 at 9.)

11  There is no factual dispute that these statements ***originated*** with Camacho-Gutierrez as

12  they were first stated in the Dependency Petition and attached filings with the Court in

13  September, 2018, before Patchin was assigned the case. (Ex. J; Doc. 21 ¶ 44.) The second

14  grouping of statements originated with Patchin during the dependency proceedings, but

15  Plaintiffs cannot articulate any facts that demonstrate they resulted in a constitutional

16  violation or were material.

17         Both sides agree that Plaintiffs, K.A.J. and J.A.J., have a broad Fourteenth

18  Amendment substantive due process right not to be separated from their parents.

19  *Sankowsky v. Kramer*, 455 U.S. 745 (1982). And, that a parent and child have a right to

20  be free from judicial deception when a child is removed from their custody. *David v.*

21  *Kaulukukui*, 38 F.4th 792, 802 (9th Cir. 2022). But judicial deception in this context

22  requires an official to deliberately falsify information during a civil investigation, thereby

23  depriving a protected liberty interest. *Costanich v. Dep't of Soc. And Health Servs.*, 627

24  F.3d 1101, 1115 (9th Cir. 2010). "[M]ere allegations that defendants ... violated state

25  regulations, without more, cannot serve as the basis for a claim under § 1983." *Id*. Here,

26  Plaintiffs cannot establish that Patchin falsified any facts, only that she repeated facts that

27  they assert were erroneous, thereby negating any intent. Second, Plaintiffs cannot establish

28

1    that Patchin's statements during the juvenile court case resulted in a constitutional
2    violation or were material to any Court decision.

3            **A.     Alleged Misrepresentations Repeated by Patchin.**

4          A review of the underlying juvenile court documents affirmatively concludes that
5    a large portion of the alleged misrepresentations were facts that other DCS employees
6    gathered and Patchin repeated in her court reports,[3] which actions do not align with the
7    definition of judicial deception. An official commits judicial deception by making "(1) a
8    misrepresentation or omission (2) made deliberately or with a reckless disregard for the
9    truth, that was (3) material to the judicial decision." *Benavidez v. Cnty. of San Diego*, 993
10   F.3d 1134, 1147 (9th Cir. 2021). There must be a deliberateness to the official's act.
11   *Keates v. Koile,* 883 F.3d 1228, 1240 (9th Cir. 2018). The term "deliberate fabrication"
12   encompasses both statements that the official knew were false and those the official would
13   have known were false had he not recklessly disregarded the truth. *Benavidez*, 993 F.3d
14   at 1147. "Deliberate" means that it was "formed or arrived at or determined upon as a
15   result of careful thought and weighing of considerations for and against the proposed
16   course of action." *People v. Houston*, 54 Cal.4th 1186, 1216 (S.D. Cal. 2012). The
17   showing must also be substantial. "A plaintiff asserting a claim of judicial deception must
18   make (1) a substantial showing of deliberate falsehood or reckless disregard for the
19   truth…" *Schindler v. Contra Costa County*, 2023 WL 2414864 (N.D. Cal. 2023) (citing
20   *Hart v. City of Los Angeles*, 649 F.Appx. 462, 463 (9th Cir. 2016).

21         Because Patchin did not create the misrepresentations, Plaintiffs must make a
22   substantial showing that she was reckless in relying upon her colleague's investigation.
23   Patchin's negligent repetition of statements does not constitute judicial deception, nor can
24   it be based on her erroneous assumptions or good faith mistakes about the evidence she
25   received. *Ewing v. City of Stockton*, 588 F.2d 128, 1224 (9th Cir. 2009).

26

27

28

---

[3] DCS case specialists are required to submit court reports pursuant to A.R.S. § 8-824. This report must include the reason for DCS involvement. *See* A.R.S. § 8-824(H)(1).

1       Tellingly, Plaintiffs provide no legal authority supporting the proposition that

2   Patchin is required to conduct her own investigation into the veracity of the facts conveyed

3   to her by the investigator. In fact, the opposite is true. Case law allows Patchin to

4   reasonably rely on other professionals, including her colleagues. In *Daschke,* the Court

5   found DCS Defendants could rely on statements provided by law enforcement and further,

6   that there was no affirmative duty to replicate law enforcement's efforts in order to

7   confirm the veracity of the statements. *Dashcke v. Hartenstein*, 420 F.Supp.3d 919, 944

8   (D. Ariz. 2019). The act of repeating false statements provided by law enforcement was

9   insufficient to establish a civil rights violation because DCS had no cause to doubt the

10  veracity of the information provided by law enforcement. *Id*. In *Mueller*, the Court found

11  that it was objectionably reasonable for a police officer, during an investigation, to rely

12  on a medical professional, even if the doctor's assessment was later discovered to be

13  wrong. *Mueller v. Auker*, 700 F.3d. 1180, 1188 (9th Cir. 2012). This proposition is well-

14  settled law. "But this view is contrary to well-established precedent, which holds that

15  "[l]aw enforcement officers *and agencies* are entitled to rely *on one another* to a certain

16  extent." *Sjurset v. Button*, 810 F.3d 609, 621 (9th Cir.2015) (citing *Guerra v. Sutton,* 783

17  F.2d 1371, 1375 (9th Cir.1986) (emphases added).

18      This was addressed in the context of intra-agency reliance as well. "However,

19  "[a]bsent some indication to a supervisor that an investigation was inadequate or

20  incompetent, supervisors are not obliged either to undertake *de novo* investigations or to

21  cross-examine subordinates reasonably believed to be competent as to whether their

22  investigations were negligent." *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005)

23  (citation omitted). "Effective and efficient law enforcement requires cooperation and

24  division of labor to function. For that reason, law enforcement officers are generally

25  entitled to rely on information obtained from fellow law enforcement officers." *Id.*

26  Reliance on observations and knowledge of others was acceptable, even if some of the

27  critical information was not communicated. *United States v. Jensen,* 425 F.3d 698 (9th

28  Cir.2005). It has been deemed acceptable to rely on other officers even when the arresting

1  officer lacks actual, personal knowledge of the facts. *United States v. Butler,* 74 F.3d 916,

2  921 (9th Cir. 1996). No constitutional violation occurred because Patchin was not reckless

3  in relying on information supplied to her by Camacho-Gutierrez, and she cannot be found

4  to have deliberately fabricated a statement that she was simply repeating.

5      As outlined in the Motion for Judgment on the Pleadings (Doc. 44 at 9-10), when

6  comparing the six specific misrepresentations that Plaintiffs attribute to Patchin (Doc. 47

7  at 3), with the actual language of the Dependency Petition verified by Camacho-Gutierrez

8  (Ex. J), it is clear that Patchin was not involved any judicial deception, even if she repeated

9  these statements in subsequent court filings. (Doc. 44 at 9-10.)

10      **B.  Statements Originating with Patchin.**

11      The remaining challenged misrepresentations allegedly authored by Patchin about

12  Bianca[4] are as follows:

13      (1)  she shouted at her therapist in 2019;

14      (2)  stated she would name J.A.J. "Motherfucker";

15      (3)  had gender dysmorphic disorder; and

16      (4)  willfully neglected J.M.J. because she hates boys. (Doc. 21 ¶ 160; Doc. 47

17  at 4.)

18      **1.  These Statements Did Not Result in a Constitutional Violation.**

19      Plaintiffs incorporate insufficient facts to demonstrate that these statements are

20  false, that any of these four statements resulted in a constitutional violation, or that any of

21  them were material to any Court decision. The SAC is vague as to where these statements

22  actually appeared, but focus on Patchin's testimony and court reports drafted during her

23  tenure as the DCS case specialist between October, 2018 and March, 2021. (Doc. 21 ¶¶

24  159-161, 44.) Since testimony is absolutely privileged, the focus turns to statements in the

25  court reports. *See Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).

26      Patchin's window of alleged culpability in swaying the juvenile court with her

27  misrepresentations narrows even further because K.A.J. was not born until March 7, 2019,

28

[4] There are no misrepresentations in the SAC regarding Jairo.

5

1   so her rights could not have been impacted before that date. (Doc. 21 ¶ 39.) Similarly,

2   J.A.J. was not born until February 12, 2020, so his rights could not have been impacted

3   before then. (*Id.*) The window that remains where Patchin could have negatively impacted

4   Plaintiffs' constitutional rights through her judicial deception is between March 2019 and

5   March 2021. Plaintiffs did not contest judgment as to count one,[5] therefore, the only viable

6   remaining claims surround alleged misrepresentations post-removal. But, because the

7   parental rights of J.A.J. and K.A.J were never terminated, the parents did not contest the

8   finding of dependency for K.A.J. on March 18, 2019 or J.A.J. on May 11, 2020, how did

9   any of her statements result in a constitutional violation? (Exs. C and J.) Jairo and Bianca

10  agreed that Plaintiffs remain in State care by their own actions even though they had the

11  opportunity to contest each removal and the continued detention of their children. Without

12  an underlying identified constitutional violation, judicial deception fails. *L.M.W. v.*

13  *Arizona*, 2024 WL 3742402 (D. Ariz. 2024) (Alleging judicial deception with false

14  statements impacting where a child is placed is not supported when there is no

15  constitutional right to dictate a specific placement.) Even assuming these four statements

16  were made by Patchin and were false, the SAC fails to identify which specific

17  constitutional violations occurred as a result of the statements.

18                    **2.      These Statements Were Not Material.**

19       Second, Plaintiffs do not connect any of the four above-referenced statements to

20  any specific court decisions, as required to survive a motion for judgment on the pleadings

21  under Fed. R. Civ. P. 9(b) and 12(c). Claims for judicial deception are held to a heightened

22  pleading standard of Fed. R. Civ. P. 9(b). *Benavidez*, 993 F.3d at 1145. Further, the Court

23  is tasked with reviewing the SAC and determining materiality. *Hervey v. Estes*, 65 F.3d

24  784, 789 (9th Cir. 1995). !

25       Plaintiffs fail to allege the necessary "but-for" connection required to establish

26  materiality. The SAC must articulate that "but-for" the alleged falsities, the judge would

27  have made a different decision. *Schindler,* * 3. Here, the Court never terminated Plaintiffs'

28

[5] Response (Doc. 47 at 1-2.)

1   rights to their relationship with Bianca and Jairo, so they cannot demonstrate materiality

2   to any permanent interference in the familial relationship. (Doc. 21 ¶ 39(q.)) Next, to the

3   extent these statements impeded reunification and extended any perceived familial

4   interference, the statements are insignificant to the juvenile court's decisions regarding

5   K.A.J. and J.A.J. "Determining whether a complaint states a plausible claim for relief [is]

6   ... a context–specific task that requires the reviewing court to draw on its judicial

7   experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The juvenile

8   court's refusal to reunify K.A.J. and J.A.J. cannot plausibly stem from Bianca's alleged

9   outburst at her therapist or inappropriate language during her delivery. The statements

10  about gender dysmorphic disorder and "hating boys" is equally implausible to support the

11  juvenile court's decision to keep the children from both Bianca and Jairo. First, hating

12  boys would have little impact on her ability to parent K.A.J., a female child. Next, these

13  statements were made about Bianca only, so there is no possibility that they were material

14  to the juvenile court's decision to keep the children from Jairo.

15          As noted in *Schindler,* even assuming these statements were misrepresentations, as

16  we must at this stage in the proceedings, Plaintiff has not alleged that but-for these

17  statements, the court's determination in the dependency proceedings would have been

18  different. Plaintiffs vaguely assert that the juvenile court made decisions at various points

19  in the proceedings based exclusively on these alleged false statements (Doc. 47 at 9), but

20  the dots are not sufficiently connected to show that any or all of these four statements

21  caused the juvenile court to keep K.A.J. and J.A.J. from the custody of Bianca and Jairo.

22  Instead, the more plausible common-sense reason for the dependency to exist for each

23  Plaintiff was the fact that Bianca and Jairo did not contest this finding, allowing the

24  children to remain wards of the court. (Exs. C and J.) It is not enough to assert that the

25  allegedly false or omitted evidence "could have contributed" to the judicial officer's

26  decision; rather Plaintiff must establish but-for causation. *Schindler,* *3. Plaintiffs fall far

27  short of a "substantial" showing and the but-for connection. *See Hart*, 649 F.Appx. at 463;

28  *see also Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir.2002). Plaintiffs must sufficiently

1  plead that Patchin's truthfulness during her tenure on the case would have changed the

2  outcome. The facts, as plead, are insufficient because it is unclear (1) when Plaintiffs

3  asserted the children should have been returned, (2) when the misrepresentations were

4  first offered to the Court, and (3) under what circumstances the Court considered these

5  four statements.

6  **II.    CONCLUSION**

7          The sole remaining claim of judicial deception against Patchin must fail as it relates

8  to the last remaining Plaintiffs, J.A.J. and K.A.J. The timeline where Patchin is potentially

9  accountable is narrow and the record demonstrates that no constitutional violations

10 resulted from the alleged misrepresentations and omissions. The Motion for Judgment on

11 the Pleadings should be granted with prejudice because Plaintiffs have been granted leave

12 to amend on two prior occasions and are unable to sufficiently articulate any valid claims.

13 Further amendment is futile. *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995)

14         RESPECTFULLY SUBMITTED this 20th day of June, 2025.

15                                                          Kristin K. Mayes
                                                            Attorney General
16

17                                                          */s/Julie M. Rhodes*

18                                                          Julie M. Rhodes
                                                            Michael R. Niederbaumer
19                                                          Assistant Attorneys General
                                                            *Attorneys for Patchin*
20

21 I certify that I electronically transmitted
   the attached document to the Clerk's Office
22 using the CM/ECF System for filing and
   transmittal of a Notice of Electronic Filing
23 to the following, if CM/ECF registrants, and
   mailed a copy of same to any non-registrants,
24 this 20th day of June, 2025:

25 Thomas A. Connelly
   Robert T. Mills
26 Sean A. Woods
   MILLS + WOODS LAW PLLC
27 5055 North 12th Street, Suite 101
   Phoenix, Arizona 85014
28 docket@millsandwoods.com
   *Attorneys for Plaintiffs*

8

DeeAn Gillespie Strub
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
mailroom@gillaw.com
*Attorneys for Plaintiffs*

*/s/ slf*
LMS22-0354 | G202221043-1 |